UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
SHANE LAVIN,

                Plaintiff,

-against-                             **MEMORANDUM AND ORDER**
                                                 21-CV-3070 (ARR) (TAM)
VIRGIN GALACTIC HOLDINGS, INC.,
MICHAEL A. COLGLAZIER, GEORGE
WHITESIDES, DOUG AHRENS, and JON
CAMPAGNA,

                Defendants.
-----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

On May 28, 2021, Plaintiff Shane Lavin ("Lavin") initiated this putative class action on behalf of investors who purchased publicly traded securities of Virgin Galactic Holdings, Inc. ("Virgin Galactic") from October 26, 2019, to April 30, 2021 (the "Class Period"). (*See* Complaint ("Compl."), ECF No. 1, ¶ 1.) The Complaint alleges violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, by Virgin Galactic, its chief executive officer ("CEO") and president, Michael A. Colglazier ("Colglazier"), his predecessor, George Whitesides ("Whitesides"), as well as its chief financial officer ("CFO"), Doug Ahrens ("Ahrens"), and his predecessor, Jon Campagna ("Campagna"). (Compl., ECF No. 1, ¶¶ 1, 15–19.)

Currently before this Court is a joint stipulation and proposed order to appoint co-lead plaintiffs and co-lead counsel by Robert Scheele ("Scheele") and Mark Kusnier ("Kusnier"). (Stipulation and Proposed Order to Appoint Co-Lead Plaintiffs and Co-Lead Counsel ("Scheele and Kusnier Stipulation"), ECF No. 19.) Previously, on July 27,

2021, Scheele and Kusnier filed competing motions for the appointment of lead plaintiff and approval of lead counsel. (*See* Scheele Mot. to Appoint Counsel and Lead Plaintiff ("Scheele Mot."), ECF No. 11; Kusnier Mot. to Appoint Counsel and Lead Plaintiff ("Kusnier Mot."), ECF No. 9.) In addition, two other motions for appointment of lead plaintiff and approval of lead counsel were filed on the same day by Frank Matassa ("Matassa") and Manuel Rodriguez ("Rodriguez"). (*See* ECF Nos. 6, 14.) On August 9, 2021, and August 10, 2021, respectively, Matassa and Rodriguez filed notices of non-opposition to the competing lead plaintiff motions. (*See* ECF Nos. 15, 17.) On August 10, 2021, prior to filing their joint stipulation, Scheele and Kusnier filed memoranda in opposition to the competing motions and in support of their own motions. (*See* Scheele Mem. in Opp'n ("Scheele Opp'n"), ECF No. 18; Kusnier Mem. in Opp'n ("Kusnier Opp'n"), ECF No. 16.)

For the reasons that follow, the Court grants the relief requested in Scheele and Kusnier's stipulation and proposed order. Robert Scheele and Mark Kusnier are appointed as co-lead plaintiffs, and their choices of counsel, Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A., are appointed as co-lead counsel.[1]

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Virgin Galactic is an aerospace company that "develops human spaceflight for private individuals and researchers in the U.S." (Compl., ECF No. 1, ¶ 2.) The company was formed on October 25, 2019, through a business combination between Social Capital Hedosophia Holdings Corp., a special purpose acquisition company ("SPAC"),

---

[1] As Magistrate Judge Mann recently observed: "An order appointing lead plaintiff and approving lead counsel qualifies as a nondispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure, allowing this Court to issue a written order (i.e., a Memorandum and Order) rather than a recommended disposition (i.e., a Report and Recommendation)." *Darish v. N. Dynasty Mins. Ltd.*, No. 20-CV-5917 (ENV) (RLM), 2021 WL 1026567, at *1 n.3 (E.D.N.Y. Mar. 17, 2021) (citing Fed. R. Civ. P. 72(a)) (collecting cases).

and Legacy Virgin Galactic. (*Id.* ¶ 3.) During the relevant period, Virgin Galactic securities were traded on the New York Stock Exchange under the ticker symbol "SPCE." (*Id.*) Defendant Colglazier has served as Virgin Galactic's CEO and president since July 20, 2020, and Defendant Whitesides served as CEO and president from the beginning of the Class Period until July 2020, and then as the company's "Chief Space Officer" until approximately March 5, 2021. (*Id.* ¶¶ 15–16.) Defendant Ahrens has served as Virgin Galactic's CFO since March 1, 2021, and Defendant Campagna served as CFO during the Class Period until March 2021. (*Id.* ¶¶ 17–18.)

The Complaint alleges that Defendants made false or misleading statements and material omissions to the public, including through several reports and documents filed with the Securities and Exchange Commission ("SEC") following the formation of Virgin Galactic in October 2019, leading to a decline in the company's stock price and causing investors to suffer losses. (*Id.* ¶¶ 5–8, 39.) Specifically, on November 12, 2019, a few days after an October 29, 2019 press release announcing the formation of the company, Virgin Galactic filed a Form 10-Q report for the quarterly period ending on September 30, 2019, attesting to the effectiveness of the company's internal controls over financial reporting. (Compl., ECF No. 1, ¶¶ 25–26.) The quarterly statement included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Whitesides and Campagna. (*Id.* ¶ 27.) On February 25, 2020, Virgin Galactic held an earnings call with investors, during which Defendant Campagna stated that the company had "$452 million of cash" on its balance sheet and was "working closely with the SEC" in order to register "the shares issuable upon exercise of approximately 31 million outstanding warrants." (*Id.* ¶ 28.)

On February 28, 2020, Virgin Galactic filed a Form 10-K annual report for the fiscal year ending on December 31, 2019, identifying two material weaknesses in the

3

company's internal controls over financial reporting during the prior two years. (*Id.* ¶ 29.) The first material weakness related to the company's "lack of a sufficient number of personnel to execute, review and approve all aspects of the financial statement close and reporting process," and the second, to a "need to augment [the company's] information technology and application controls in [their] financial reporting." (*Id.*) The report outlined several steps intended to "improve [the company's] internal control over financial reporting and remediate the material weaknesses." (*Id.*) The annual statement included SOX certifications signed by Defendants Whitesides and Campagna. (*Id.* ¶ 30.)

Subsequently, on May 6, 2020, August 3, 2020, and November 6, 2020, Virgin Galactic filed 10-Q reports for the quarterly periods ending on March 31, 2020, June 30, 2020, and September 30, 2020, respectively, which included similar assertions as to the remedial steps being taken with respect to the effectiveness of the company's internal controls over financial reporting, and finding said controls and procedures to be effective. (*Id.* ¶¶ 31, 33, 35.)[2] In addition, on March 1, 2021, Virgin Galactic filed a Form 10-K annual report for the fiscal year ending on December 31, 2020, containing substantially the same language and assurances regarding the company's financial reporting as the three prior quarterly reports. (*Id.* ¶ 37.) The 2020 annual statement included SOX certifications signed by Defendants Colglazier and Campagna. (*Id.* ¶ 38.)

After the close of the market on Friday, April 30, 2021, Virgin Galactic issued a press release stating that their quarterly reporting for the first quarter of 2021 would be

---

[2] The May 6, 2020 quarterly statement included SOX certifications signed by Defendants Whitesides and Campagna. (Compl., ECF No. 1, ¶ 32.) The August 3, 2020 quarterly statement included SOX certifications signed Defendants Colglazier and Campagna. (*Id.* ¶ 34.) The November 6, 2020 quarterly statement included SOX certifications signed by Defendants Colglazier and Campagna. (*Id.* ¶ 36.)

4

delayed. (*Id.* ¶ 40.) The press release noted, *inter alia*, that "due to the recent statement issued by the [SEC] on April 12, 2021 relating to the accounting treatment of warrants issued by special purpose acquisition companies," the company planned to "restate its consolidated financial statements included in its Annual Report on Form 10-K for the fiscal year ended December 31, 2020." (*Id.*) Virgin Galactic also noted in the press release that the company "expect[ed] to . . . recognize incremental non-operating, non-cash expense for each of the fiscal years ended December 31, 2020 and December 31, 2019." (*Id.*) The following Monday, May 3, 2021, Virgin Galactic's stock price fell $2.01 per share, from $22.15 per share to $20.14, or approximately 9.07 percent. (*Id.* ¶ 41.)

As a result, the Complaint alleges that the named Plaintiff and other putative class members suffered significant losses. (*Id.* ¶ 42.) The Complaint asserts two causes of action: one for violations of Section 10(b) of the Exchange Act and Rule 10b-5 as to Virgin Galactic, Colglazier, Whitesides, Ahrens, and Campagna; and one for violations of Section 20(a) of the Exchange Act as to Colglazier, Whitesides, Ahrens, and Campagna. (Compl., ECF No. 1, ¶¶ 52–67.) The Complaint seeks damages for losses sustained by class members, interest, and costs and fees associated with the action. (*See* Compl., ECF No. 1, Prayer for Relief.)

On July 27, 2021, four movants filed motions asking the Court to appoint them as lead plaintiff and to approve their choice of class counsel. As noted above, two of these motions were later supplemented by notices of non-opposition. (*See* ECF Nos. 15, 17.) Accordingly, the competing motions that remain are the Scheele Motion and the Kusnier Motion. (*See* Scheele Mot., ECF No. 11; Scheele Opp'n, ECF No. 18; Kusnier Mot., ECF No. 9; Kusnier Opp'n, ECF No. 16.) On August 17, 2021, however, Scheele and Kusnier filed a joint stipulation and proposed order to be appointed co-lead plaintiffs. (Scheele and Kusnier Stipulation, ECF No. 19.)

# DISCUSSION

I. <u>Lead Plaintiff</u>

The Private Securities Litigation Reform Act of 1995 ("the PSLRA") directs courts to appoint "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" to be the lead plaintiff in securities class actions. 15 U.S.C. § 78u-4(a)(3)(B)(i); *see also Darish v. N. Dynasty Mins. Ltd.*, No. 20-CV-5917 (ENV) (RLM), 2021 WL 1026567, at *5 (E.D.N.Y. Mar. 17, 2021) (citing *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 111–12 (E.D.N.Y. 2012)).

The rationale behind the PSLRA's lead plaintiff provisions is that "if an investor with a large financial stake in the litigation [is] made lead plaintiff, such a plaintiff . . . [will] be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." *Silverberg v. DryShips Inc.*, No. 17-CV-4547 (SJF) (ARL), 2018 WL 10669653, at *4 (E.D.N.Y. Aug. 21, 2018) (quoting *Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009)). While "the PSLRA contains no presumption in favor of co-lead plaintiffs over one lead plaintiff," *Baughman v. Pall Corp.*, 250 F.R.D. 121, 129 (E.D.N.Y. 2008), courts may appoint co-lead plaintiffs, particularly where "[s]uch a structure . . . will help to ensure that adequate resources and experience are available to the prospective class in the prosecution of this action." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004).

    A. <u>Notice to Class</u>

As a threshold matter, the PSLRA requires a plaintiff who files a complaint to publish "a notice advising members of the purported plaintiff class [] of the pendency

6

of the action, the claims asserted therein, and the purported class period," and notifying them that "any member of the purported class may move the court to serve as lead plaintiff of the purported class" within sixty days. 15 U.S.C. § 78u-4(a)(3)(A)(i); *see also Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 25–26 (E.D.N.Y. 2019). Additionally, such notice must be published "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i).

On May 28, 2021, Pomerantz LLP, counsel for Lavin and Rodriguez, published a notice about the pendency of the instant action in *Business Wire*, informing potential class members of their right to move for appointment of lead plaintiff within sixty days. (*See* PSLRA Early Notice, attached as Ex. A to Decl. in Supp. of Scheele Mot. ("Scheele Decl."), ECF No. 13-1); *see also Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 206 (E.D.N.Y. 2019) ("*Business Wire* is a suitable vehicle for meeting the [PSLRA's] statutory requirement that notice be published." (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*, 229 F.R.D. at 403)). All four movants timely filed on July 27, 2021, the last day of the sixty-day period, and no party has objected to the adequacy of the notice. The procedural requirements of the PSLRA have therefore been satisfied. *See Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004).

    B. <u>Appointment of Lead Plaintiff</u>

"Even when a motion to appoint lead plaintiff is unopposed," as is arguably the case here, "the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff." *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886 (LDH) (SJB), 2020 WL 8225336, at *4 (E.D.N.Y. Dec. 22, 2020) (citing *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-6130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017)). The PSLRA prescribes a two-step process for determining "the most adequate plaintiff." First, there is a presumption that the most adequate plaintiff is:

7

>[T]he person or group of persons that--
>
>(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
>(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(A)(3)(b)(iii)(I); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. at 111–12.

Once a presumptive lead plaintiff has been established, the Court must next determine "whether that presumption has been sufficiently 'rebutted' by a member of the purported plaintiff class." *Darish*, 2021 WL 1026567, at *5 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). Such presumption may be rebutted "only upon proof . . . that the presumptively most adequate plaintiff [] will not fairly and adequately protect the interests of the class; or [] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Because Scheele and Kusnier both made timely motions to be appointed as lead plaintiff, the Court now turns to the appropriateness of their joint request to be appointed co-lead plaintiff and the PSLRA's two remaining elements: the largest financial interest in the relief sought and the satisfaction of Rule 23's requirements.

>1. *Co-Lead Plaintiff Arrangement*

"[T]he PSLRA expressly contemplates the appointment of more than one plaintiff[.]" *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also* 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(I) (noting that "the most adequate plaintiff . . . is the person or *group of persons*" that meets the PSLRA's tripartite test) (emphasis added)). Courts permit "unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Varghese v.*

8

*China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (citing *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49); *see also City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, No. 08-CV-1418 (LDW) (ETB), 2009 WL 10709107, at *4 (E.D.N.Y. Mar. 9, 2009). "It is not necessary that proposed lead plaintiffs have a pre-litigation relationship, but rather that they be able to operate in concert and manage the litigation and the lawyers." *Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*, 354 F. Supp. 2d 18, 24 (D. Mass. 2000); *see also In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 426 (E.D.N.Y. 2018) ("A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive." (quoting *Freudenberg v. E\*Trade Fin. Corp.*, No. 07-CV-10400, 2008 WL 2876373, at *4 (S.D.N.Y. July 16, 2008))). Accordingly, courts look for "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation[.]" *Varghese*, 589 F. Supp. at 392.

Here, although Scheele and Kusnier do not appear to have a pre-litigation relationship, they have stipulated that they are willing and able to take on the responsibilities of lead plaintiff and to represent the class of investors. (*See* Scheele and Kusnier Stipulation, ECF No. 19, at 1–2.)[3] As will be explained below, based on the Court's review of the record — and despite Kusnier's initial opposition to Scheele's

---

[3] The Court is mindful of the appearance that "[P]laintiffs or their attorneys, in an effort to expedite the litigation, compromised their differences . . . and chose . . . the two largest remaining [movants] vying for lead plaintiff status and their counsel to be designated lead plaintiffs and lead co-counsel." *Howard Gunty Profit Sharing Plan*, 354 F. Supp. at 24. However, based on Scheele and Kusnier's joint stipulation that they are "committed to supervising the conduct of this litigation by their counsel and to ensuring that counsel coordinate appropriately," (Scheele and Kusnier Stipulation, ECF No. 19, at 1), and in light of each Plaintiff's significant financial stake in the outcome of this litigation, the Court is satisfied that Scheele and Kusnier are up to the task of serving in a lead capacity for all similarly situated plaintiffs.

appointment as lead plaintiff — both Scheele and Kusnier have significant financial interests in the litigation, satisfy the necessary requirements of Rule 23, and will fairly and adequately represent the interests of the proposed class. *See City of Ann Arbor Employees' Ret. Sys.*, 2009 WL 10709107, at *4 (appointing co-lead plaintiffs where the parties "evidenced an ability to work together, by virtue of their joint motion to be appointed co-lead plaintiffs" and selection of experienced counsel); *see also Howard Gunty Profit Sharing Plan*, 354 F. Supp. at 24–25. The Court thus finds that a co-lead plaintiff structure in this case "will help to ensure that adequate resources and experience are available to the prospective class in the prosecution of this action." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*, 229 F.R.D. at 420. In addition, "in the event that litigation is stalled, expenses become unnecessarily duplicative or wasteful, or the structure becomes otherwise unmanageable," the Court may modify this co-lead plaintiff structure. *Dolan v. Axis Cap. Holdings Ltd.*, No. 04-CV-8564 (RJH), 2005 WL 883008, at *6 (S.D.N.Y. Apr. 13, 2005).

2. *Largest Financial Interest*

"[T]he PSLRA does not specify how to determine which plaintiff has 'the largest financial interest' in the relief sought." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 (E.D.N.Y. 2011). To determine which plaintiff has the largest financial interest, courts in this circuit generally look to the four "*Olsten* factors." *See, e.g., Darish*, 2021 WL 1026567, at *5 (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)); *Chitturi*, 2020 WL 8225336, at *4 (same). These four factors are:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

10

*Rauch*, 378 F. Supp. 3d at 208 (quoting *In re Gentiva Sec. Litig.*, 281 F.R.D. at 112). Additionally, courts in this district recognize that the fourth factor, the approximate financial loss, should be afforded special weight. *See, e.g.*, *Atanasio*, 331 F.R.D. at 26 (citing *Baughman*, 250 F.R.D. at 125); *accord Bensley*, 277 F.R.D. at 234 (citing *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436–37 (S.D.N.Y. 2008)).

During the Class Period, Scheele purchased 189,180 shares of Virgin Galactic costing $4,856,428.65. (Table of Scheele's Calculated Losses ("Scheele Loss Chart"), attached as Ex. C to Scheele Decl., ECF No. 13-3.)[4] Scheele sold 165,730 of these shares during the class period for a total of $4,056,119.49, making his net shares purchased (the difference between shares purchased and shares sold) 23,450 and net funds expended (difference between amount spent and amount received from sales) $800,309.16. (*See id.*) Scheele claims a loss of $355,286.79, calculated by subtracting $445,022.38 (23,450 times $18.9775, the average closing price between the start of the class period and the sale of the retained shares) and $4,056,119.49 (the amount received from sales during the Class Period) from their original purchase cost of $4,856,428.65. (*See id.*; Scheele Opp'n, ECF No. 18, at 4.)[5]

---

[4] The Court generated these calculations by tallying the figures listed in Scheele's Loss Chart. (*See generally* Scheele Loss Chart, ECF No. 13-3; *see also* Scheele Transaction Summary, attached as Ex. B to Scheele Decl., ECF No. 13-2.)

[5] Scheele states that the value of the retained shares sold after the end of the Class Period was calculated "using the greater of: (a) the average closing price between the end of the Class Period and the sales date, or (b) the actual sales price." (Scheele Loss Chart, ECF No. 13-3.) Courts in this district have observed that "if the sale of securities occurred after the end of the class period, courts consider the average price per share of the securities during the 90 days following the disclosure to calculate the damages suffered[.]" *Chitturi*, 2020 WL 8225336, at *4 n.4 (citation omitted). Using the ninety-day average included in Scheele's Loss Chart ($32.2085) rather than the greater of the average closing price or the actual sales price produces an approximate loss smaller than the loss calculation set forth in Scheele's motion papers. However, given (1) Scheele and Kusnier's consent to become co-lead plaintiffs in this case; (2) Scheele's independently substantial financial interest in the case using either calculation; and

11

Kusnier, for his part, purchased 128,500 shares during the Class Period, costing $4,931,100.12. (Kusnier Loss Chart ("Kusnier Loss Chart"), attached as Ex. 3 to Kusnier Mem. in Supp. ("Kusnier Mem."), ECF No. 10-3.) Kusnier sold 78,500 of these shares during the relevant period for a total of $3,188,830.57, making his net shares purchased 50,000, and net funds expended (difference between amount spent and amount received from sales) $1,742,269.55. (*See id.*) Kusnier claims a loss suffered of $130,185.05, calculated by subtracting $1,612,084.50 (50,000 times the estimated lookback price of $32.2417) and $3,188,830.57 (the amount received from sales) from their original purchase cost of $4,931,100.12. (*See id.*)

Based on the record before the Court, and as two other movants in this case have acknowledged through notices of non-opposition (*see* ECF Nos. 15, 17),[6] the Court finds that under the *Olsten* factors, Scheele and Kusnier have the largest financial interest in the case.[7]

---

(3) because this is not a case where "the aggregation of class members is done solely to create an artificially large financial interest," the Court finds that Scheele and Kusnier together have a large enough financial interest that other "potential lead plaintiffs are not being deprived of the PSLRA presumption by the aggregation of parties." *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. at 425.

[6] By comparison, movant Matassa retained 3,500 shares and claimed a loss of $10,500 (Matassa Loss Chart, attached as Ex. B to Decl. in Supp. of Matassa Mot., ECF 8-2); and movant Rodriguez retained 2,410 shares and claimed a loss of $46,954 (Rodriguez Loss Chart, attached as Ex. A to Mem. in Supp. of Rodriguez Mot., ECF 14-4).

[7] Prior to requesting that he be appointed co-lead plaintiff, Kusnier contended that "the Court should limit Scheele's calculation of losses to recoverable losses — i.e., losses Scheele sustained from selling Virgin Galactic shares at reduced prices after April 30, 2021." (Kusnier Opp'n, ECF No. 16, at 4.) Kusnier argued that because Scheele sold a large majority of "the Virgin Galactic stock he owned before the [company's] April 30, 2021 corrective disclosure, . . . he will not be able to recover for those losses." (*Id.*) The Supreme Court has held that "there must be proof of a causal connection between a securities plaintiff's loss and the defendant's fraudulent conduct." *Bensley*, 277 F.R.D. at 237 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005)). Thus, "[a]ny losses incurred based on 'in-and-out' trades — where an investor buys stock and sells it during the class period but before any disclosures — should not be considered." *Afr. v. Jianpu Tech. Inc.*, No. 21-CV-1419 (JMF), 2021 WL 1999467, at *2

12

3. *Rule 23*

Pursuant to the PSLRA, the next step for identifying a lead plaintiff is determining whether such plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Although Rule 23(a) identifies numerosity, commonality, typicality, and adequacy as the four relevant factors for class certification, plaintiffs under the PSLRA "need only make a 'preliminary, prima facie showing' that the typicality and adequacy requirements would be met." *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 350 (E.D.N.Y. 2018) (quoting *Varghese*, 589 F. Supp. at 397).

"Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Rauch*, 378 F. Supp. 3d at 210 (quoting *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923, 2006 WL 1120619, at *3 (E.D.N.Y. Apr. 26, 2006)). Here, both Scheele and Kusnier's claims are based on the same alleged false or misleading statements and omissions attributed to Defendants during the same period as the other potential class members' claims. Furthermore, the legal arguments that will be made by both movants under the various provisions of the Exchange Act are the same as those that would be made by the other

---

(S.D.N.Y. May 19, 2021) (alteration in original) (quoting *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018)).

However, "some courts have been reluctant to apply *Dura* at the appointment-of-lead-plaintiff stage if," for example, "a case involves multiple disclosures and the analysis of recoverable losses is murky and lacks sufficient evidence." *Id.* (quoting *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20-CV-9132 (AJN), 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021)). In this case, given the two remaining movants' significant financial interest in the relief sought — notwithstanding any sales prior to Virgin Galactic's disclosure on April 30, 2021 (*see* Compl., ECF No. 1, ¶ 40) — the Court is satisfied that Scheele has plausibly alleged causation for his losses.

13

class members. Thus, Scheele and Kusnier have demonstrated typicality under Rule 23(a).

Adequacy, on the other hand, "turns on whether that plaintiff 'will fairly and adequately protect the interests of the class.'" *Chitturi*, 2020 WL 8225336, at *5 (quoting *Constance Sczesny Tr.*, 223 F.R.D. at 324). For a lead plaintiff to satisfy this requirement of Rule 23,

> (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy.

*In re Fuwei Films Sec. Litig.*, 247 F.R.D. at 436 (internal quotation marks and citation omitted).

Although Kusnier previously posited that "Scheele is inadequate because he is an atypical high-frequency trader subject to unique defenses," (Kusnier Opp'n, ECF No. 16, at 2), as will be elaborated on below, the Court does not find this argument to be persuasive. In any event, the co-lead plaintiff structure will help to ensure adequate protection of the class and to guard against defenses. In addition, no party has raised, nor is the Court aware of, any conflict between either Scheele or Kusnier's interests and the interests of the class. As discussed, both Scheele and Kusnier have stipulated that they are willing and able to take on the responsibilities of lead plaintiff and to represent the class of investors. (*See* Scheele and Kusnier Stipulation, ECF No. 19, at 1–2.)

Furthermore, both Scheele and Kusnier have retained experienced counsel in Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A., respectively, each of which "has acted as lead or co-lead counsel in several securities class actions cases in federal court, including in this District." *Chitturi*, 2020 WL 8225336, at *6; *Atanasio*, 331 F.R.D. at 31. (*See also* Glancy Prongay & Murray LLP Resume ("Glancy Resume"),

attached as Ex. D to Scheele Decl., ECF No. 13-4; The Rosen Law Firm, P.A. Biography ("Rosen Law Biography"), attached as Ex. 4 to Kusnier Mem., ECF No. 10-4.) Finally, due to Scheele and Kusnier's substantial financial stake in this litigation, the Court is assured that as co-lead plaintiffs, they would "have a sufficient interest in the outcome to ensure vigorous advocacy." *In re Fuwei Films Sec. Litig.*, 247 F.R.D. at 436; *see also Silverberg*, 2018 WL 10669653, at *4.

Accordingly, the Court finds that Scheele and Kusnier have preliminarily satisfied Rule 23's adequacy requirement.

### 4. *Rebuttal of Presumption*

The presumption that Scheele and Kusnier are the "most adequate plaintiff[s]" as defined by the PSLRA "may be rebutted only upon proof" that they "will not fairly and adequately protect the interests of the class" or "[are] subject to unique defenses that render [them] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Rauch*, 378 F. Supp. 3d at 211. No opposition to Kusnier's motion has been raised and there is no indication that he will not adequately protect the interests of the class. However, as mentioned above, Kusnier's memorandum in opposition raised the possibility that Scheele *is* subject to unique defenses. Specifically, Kusnier asserted that "[i]nstead of relying on the misstatements of Defendants and holding the stock long, Scheele looked to the technical price movements of the stock and sold most of his holdings within several days of his purchases," (Kusnier Opp'n, ECF No. 16, at 6), and therefore, Scheele is subject to a defense that he "would have purchased the stock at issue regardless of the misstatement/omission." (*Id.* at 5 (quoting *Applestein v. Medivation Inc*, No. C 10-00998 (MHP), 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010)).) In their stipulation, however, Scheele and Kusnier agree that together they "satisfy the relevant requirements of adequacy and typicality under Rule 23 of the

15

Federal Rules of Civil Procedure and, after further reviewing each other's submissions, . . . believe it is in the putative class' best interest that [they] be appointed as Co-Lead Plaintiffs." (Scheele and Kusnier Stipulation, ECF No. 19, at 1.)

Even assuming, for the sake of argument, that Scheele is either a day-trader or an in-out trader, "courts differ as to whether such entities may serve as a lead plaintiff in a standard securities fraud class action involving alleged fraud on the market." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*, 229 F.R.D. at 415. The thrust of this inquiry is whether there is "proof" that a presumptively adequate lead plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render [them] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Without more of a showing regarding *why* Scheele would be inadequate as a lead plaintiff, and against the backdrop of the joint stipulation, the Court cannot conclude that there is sufficient proof that Scheele is subject to a unique defense. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*, 229 F.R.D. at 415 ("In light of . . . the lack of any specific showing as to why transactions by day-traders or in-and-out traders should be disregarded or discounted in an execution price fraud case such as this, [the] allegation does not suffice to establish that [movant] is subject to a unique defense here."); *see also In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-CV-8585 (LJL), 2021 WL 148752, at *8 (S.D.N.Y. Jan. 15, 2021) (citation omitted) ("While presumptive lead plaintiffs may be rejected on the basis of risks of unique defenses, such risks must be supported by proof and rise above the level of mere speculation.").

Considering all of the factors, the Court finds that the interests of the proposed class will be well served by the appointment of Scheele and Kusnier as co-lead plaintiffs, *see, e.g., Chernysh v. Chembio Diagnostics, Inc.*, No. 20-2706 (ARR) (ARL), 2020

WL 9813453, at *5 (E.D.N.Y. Dec. 29, 2020), and hereby appoints Scheele and Kusnier as co-lead plaintiffs. *See Atanasio*, 331 F.R.D. at 31 (citing *In re Gentiva*, 281 F.R.D. at 121).

II. <u>Lead Counsel</u>

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). While the statute does not provide instruction regarding such approval, "the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Brady*, 324 F. Supp. 3d at 352 (internal quotation marks and citations omitted).

As stated above, both Scheele and Kusnier have proposed co-lead counsel that are well qualified. (*See* Scheele and Kusnier Stipulation, ECF No. 19.) Scheele has retained Glancy Prongay & Murray LLP (Glancy Resume, ECF No. 13-4), a law firm that has served as lead counsel in similar litigation in this and other districts. *See, e.g.*, *Atanasio*, 331 F.R.D. at 31. Similarly, Kusnier has retained The Rosen Law Firm, P.A. (Rosen Law Biography, ECF No. 10-4), another law firm that has often served in the lead counsel role. *See, e.g.*, *Chitturi*, 2020 WL 8225336, at *6; Memorandum and Order, *In re 3D Systems Securities Litigation*, 21-CV-1920 (NGG) (TAM) (E.D.N.Y. July 13, 2021), ECF No. 41. Indeed, both firms' biographies demonstrate extensive experience handling securities actions. *See In re Rockwell Med., Inc. Sec. Litig.*, No. 16-CV-1691 (RJS), 2018 WL 1725553, at *4 (S.D.N.Y. Mar. 30, 2018) (noting the appointment of Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A. as co-lead counsel in a private securities class action). The Court therefore approves of Scheele and Kusnier's selection of Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A. to serve as co-lead counsel. *See, e.g.*, *Darish*, 2021 WL 1026567, at *8 (approving the lead plaintiff's selection of lead

17

counsel where the firm had "substantial experience litigating securities fraud class actions").

## CONCLUSION

For the reasons set forth above, and pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Court grants the relief requested in Scheele and Kusnier's stipulation and proposed order (ECF No. 19) and appoints Robert Scheele and Mark Kusnier as co-lead plaintiffs, and Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A. as co-lead counsel. The pending motions by Matassa, Rodriguez, Scheele, and Kusnier (ECF Nos. 6, 9, 11, 14) are terminated as moot.

**SO ORDERED.**

Dated: Brooklyn, New York
September 17, 2021

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE