

Ex Kano S. Sams II
esams@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
T: 310.201.9150

February 15, 2022

**VIA ECF**

The Honorable Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Lavin v. Virgin Galactic Holdings, Inc.*, 1:21-cv-03070

Dear Judge Ross:

Plaintiffs' amended complaint ("Complaint") adequately alleges violations of the Securities Exchange Act of 1934. The Court should deny Defendants' motion to dismiss.

## I.    BACKGROUND

Defendants claimed that Virgin Galactic was at the cusp of sending tourists to space. To reach space, a Virgin Galactic carrier aircraft called Eve takes a shuttle called Unity to approximately 45,000 feet and releases it. Unity then uses its own rocket to get to space. Unity had flown to space twice, with the latter flight taking place on February 2019. Defendants represented that both flights were unqualified successes. Defendants further claimed that Unity "never had any technical issue" and was "safe" and "reliable". These statements were false. And when they artificially inflated Virgin Galactic's stock price, Defendants sold more than $1 billion in Virgin Galactic stock.

## II.    PLAINTIFFS ADEQUATELY PLEAD FALSITY

Defendants made actionable false statements.[1]  For example, Defendant Branson falsely represented that the Company had "never had any major, major technical issues, even, you know, in the last 17 years and [Unity's first full-crewed space flight] was absolutely and utterly flawless." ¶570; *see also* ¶516 (emphasizing "just how safe our spaceship company is" and "we have an architecture that is extremely reliable").

The accounts of eight former Company employees and author Nicholas Schmidle, who spent four years embedded in Virgin Galactic, demonstrate that Defendants' statements were false and misleading. As the Complaint details, when Virgin Galactic started powered test flights in April 2018, it experienced one near catastrophe after another. Not only did most of Unity's test flights nearly end in disaster, Unity and Eve themselves were plagued with serious defects that

---

[1] 15 U.S.C. §78u-4(b)(1)(B); ¶¶497, 499, 501, 503, 505, 507, 509, 512, 514, 516, 518, 520, 522, 524, 526, 528-29, 531, 533, 535-36, 538, 540, 542, 544, 546-47, 549, 551, 553, 555, 557, 559, 561-62, 564, 566, 568, 570.

The Honorable Allyne R. Ross
February 15, 2022
Page 2

Virgin Galactic could not remedy. *See generally* ¶¶149-295. Unity was a mere prototype that had never been designed for regular flight and was well beyond its expiration date. Unity's flight testing plan consisted of one near miss after another. ¶¶153-160. After the February 2019 flight, Virgin Galactic's Vice President of Safety remarked that "I don't know how we didn't lose the vehicle and kill three people", as a key part had torn apart midflight. ¶¶299-305. He resigned after Virgin Galactic failed to respond adequately. ¶¶316-327.

Defendants' assertion that several of their statements are protected by the PSLRA's safe harbor provision is incorrect. Defendants' representations that the Company had made "[g]reat progress" (¶499), was "on track" (*id.*), and that Virgin Galactic completed "today's test flight successfully" (¶538) are not protected because the "misrepresentation of present or historical facts cannot be cured by cautionary language." *P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92, 96-97 (2d Cir. 2004). Defendants' purported warnings, moreover, were ineffective because "[c]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired." *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004). Finally, Defendants ignore that the majority of their false statements were not forward-looking.

Defendants' assertion that their misrepresentations are inactionable opinion statements is also meritless. Under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), the Supreme Court held that opinions, even if sincerely held, may nonetheless be actionable if the speaker omits information that renders the statement misleading to a reasonable investor. *Id.* at 194. Moreover, there are allegations showing that Defendants did not sincerely believe their opinions and were merely positioning Virgin Galactic for public offerings so they could sell their stock. Finally, Defendants' assertion that their statements constituted non-actionable expressions of corporate optimism also fails. Where a company repeatedly emphasizes its commitment to priorities such as safety, the company places "the topic at issue such that [the Court] cannot say that, as a matter of law, investors would not find [certain] representations material." *In re Vale S.A. Sec. Litig.*, 2020 WL 2610979, at *12 (E.D.N.Y. May 20, 2020); *see also City of Pontiac Gen. Empls.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 366 (S.D.N.Y. 2012) (holding that statements that the company "was doing well" and "had no performance issues" were actionable).

## III.    PLAINTIFFS ADEQUATELY PLEAD SCIENTER

Plaintiffs also adequately allege that Defendants acted with scienter. 15 U.S.C. §78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). First, Defendants Branson and Palihapitiya sold Virgin stock worth more than $890 million and $320 million, respectively. These sales could not have occurred without the false statements that allowed Virgin Galactic to go public and sustained its stock price thereafter. ¶¶2, 8, 400, 442-43, 606-10. Further, eight former Company employees and Schmidle provide detailed information, to which Defendants had access, that contradict their public representations.[2] For example, not only did Defendant Moses's desk physically oversee Unity in its hangar, ¶¶470-72, he personally witnessed Unity's dire condition after its disastrous February 2019 flight and participated in an investigation

---

[2] ¶¶38-45, 78, 151, 154-60, 165-70, 172-73, 175-76, 178, 182-92, 196-99, 201, 203-20, 220-28, 231, 233, 235, 237, 239, 242, 246-53, 255, 256, 258-61, 263, 265-70, 272-74, 280-83, 285, 286, 289-95, 305, 307-09, 311-13, 315, 321, 336, 338, 346, 347, 349, 380, 415-21, 467, 469-73, 475.

The Honorable Allyne R. Ross
February 15, 2022
Page 3

thereof.    ¶¶302, 323, 327.   The Complaint draws detailed allegations from Schmidle's fact-checked book by[3] as well explanations from Greg Meholic, an aerospace expert.[4]   Additional facts bolster the strong inference of scienter alleged, including that: (1) Defendant Branson needed to take Virgin Galactic public to save Virgin Atlantic and his other holdings (¶¶423-43); (2) Virgin Galactic sold more than $1 billion of its shares during the Class Period (¶¶444-45); (3) Defendant Palihapitiya needed the Virgin Galactic De-SPAC transaction to close to prevent it and his four other SPACs from failing (¶¶446-62); and (4) Virgin Galactic is a small company and Defendants Whitesides and Moses worked there for more than a decade (¶¶463-75).

Defendants' scienter arguments also fail.  That Defendants were ultimately forced to delay flights does not undermine the strong inference of scienter alleged, it supports it.  Similarly, Defendants' assertion that the former employees purportedly left the Company before the Class Period or had no contact with senior management is meritless because "[a]ny information that sheds light on whether class period statements were false or materially misleading is relevant." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001). Schmidle's book sets out instances in which Defendants actually discussed amongst themselves the information Plaintiffs allege Defendants withheld.  ¶¶229-31, 241-44, 297, 299-305, 316-27, 397-94 Lastly, courts routinely rely on allegations based upon expert opinions. *See, e.g.*, *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 150 (2d Cir. 2021).

## IV.    PLAINTIFFS ADQUATELY PLEAD LOSS CAUSATION

Plaintiffs have adequately alleged loss causation by providing Defendants "with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (pleading loss causation is "not meant to impose a great burden upon a plaintiff."). During the Class Period, the risks concealed by Defendants' failure to disclose Unity's defects and overall dire state materialized and/or were revealed to the market through a series of lengthy delays and flight failures that caused Virgin's share price to decline, damaging investors.  ¶¶20-22, 331-32, 356-66, 376-408. This meets the standard set by *Dura*.

## V.    PLAINTIFFS ADEQUATELY PLEAD CONTROL PERSON LIABILITY

Because Plaintiffs have adequately pled a primary violation as well as the Individual Defendants' control over the Company (¶¶31-36, 600-04), Plaintiffs have sufficiently alleged a control person claim. *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 414 (S.D.N.Y. 2003).

Respectfully submitted,

*s/Ex Kano S. Sams II*

*s/Jonathan Horne*

cc:    All counsel of record (via ECF)

---

[3]  ¶¶21, 46-47, 78-79, 117, 228-30, 241, 243-44, 297, 300, 302-07, 310-12, 317, 322-26, 335-37, 343-44, 365, 394-99, 407.
[4]  ¶¶49, 161-63, 171, 174, 177, 183, 236, 238, 257, 284, 340, 348.