# Exhibit 11

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

**Washington, D.C. 20549**

# SCHEDULE 13D

**Under the Securities Exchange Act of 1934**
**(Amendment No.   6)\***

# Virgin Galactic Holdings, Inc.

**(Name of Issuer)**

**Common Stock**
**(Title of Class of Securities)**

**92766K106**
**(CUSIP Number)**

**James Cahillane Virgin Management USA, Inc.**
**65 Bleecker Street, 6th Floor,**
**New York, NY 10012**
**(212) 497-9050**
**(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)**

**April 12, 2021**
**(Date of Event Which Requires Filing of This Statement)**

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of Rule 13d-1(e), Rule 13d-1(f) or Rule 13d-1(g), check the following box.  ☐

*Note***:** Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See Rule 13d-7(b) for other parties to whom copies are to be sent.

\*    The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

| 1 | Names of Reporting Persons<br><br>Virgin Investments Limited | | |
|---|---|---|---|
| 2 | Check the Appropriate Box if a Member of a Group<br>(a) ☒ (b) ☐ | | |
| 3 | SEC Use Only | | |
| 4 | Source of Funds (See Instructions)<br><br>OO | | |
| 5 | Check if disclosure of legal proceedings is required pursuant to Items 2(d) or 2(e)<br><br>☐ | | |
| 6 | Citizenship or Place of Organization<br><br>British Virgin Islands | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | Sole Voting Power<br><br>0 | |
| | 8 | Shared Voting Power<br><br>56,819,260 | |
| | 9 | Sole Dispositive Power<br><br>0 | |
| | 10 | Shared Dispositive Power<br><br>56,819,260 | |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person<br><br>56,819,260 | | |
| 12 | Check if the Aggregate Amount in Row (11) Excludes Certain Shares<br><br>☐ | | |
| 13 | Percent of Class Represented by Amount in Row (11)<br><br>24.0 % | | |
| 14 | Type of Reporting Person<br><br>CO | | |

| 1 | Names of Reporting Persons<br><br>Virgin Group Investments LLC | | |
|---|---|---|---|
| 2 | Check the Appropriate Box if a Member of a Group<br>(a) ☒ (b) ☐ | | |
| 3 | SEC Use Only | | |
| 4 | Source of Funds (See Instructions)<br><br>OO | | |
| 5 | Check if disclosure of legal proceedings is required pursuant to Items 2(d) or 2(e)<br><br>☐ | | |
| 6 | Citizenship or Place of Organization<br><br>Delaware | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | Sole Voting Power<br><br>0 | |
| | 8 | Shared Voting Power<br><br>56,819,260 | |
| | 9 | Sole Dispositive Power<br><br>0 | |
| | 10 | Shared Dispositive Power<br><br>56,819,260 | |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person<br><br>56,819,260 | | |
| 12 | Check if the Aggregate Amount in Row (11) Excludes Certain Shares<br><br>☐ | | |
| 13 | Percent of Class Represented by Amount in Row (11)<br><br>24.0% | | |
| 14 | Type of Reporting Person<br><br>OO (Limited liability company) | | |

| 1 | Names of Reporting Persons<br><br>Corvina Holdings Limited | | |
|---|---|---|---|
| 2 | Check the Appropriate Box if a Member of a Group<br>(a) ☒ (b) ☐ | | |
| 3 | SEC Use Only | | |
| 4 | Source of Funds (See Instructions)<br><br>OO | | |
| 5 | Check if disclosure of legal proceedings is required pursuant to Items 2(d) or 2(e)<br><br>☐ | | |
| 6 | Citizenship or Place of Organization<br><br>British Virgin Islands | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | Sole Voting Power<br><br>0 | |
| | 8 | Shared Voting Power<br><br>56,819,260 | |
| | 9 | Sole Dispositive Power<br><br>0 | |
| | 10 | Shared Dispositive Power<br><br>56,819,260 | |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person<br><br>56,819,260 | | |
| 12 | Check if the Aggregate Amount in Row (11) Excludes Certain Shares<br><br>☐ | | |
| 13 | Percent of Class Represented by Amount in Row (11)<br><br>24.0% | | |
| 14 | Type of Reporting Person<br><br>CO | | |

| 1 | Names of Reporting Persons<br><br>Virgin Group Holdings Limited | | |
|---|---|---|---|
| 2 | Check the Appropriate Box if a Member of a Group<br>(a) ☒ (b) ☐ | | |
| 3 | SEC Use Only | | |
| 4 | Source of Funds (See Instructions)<br><br>OO | | |
| 5 | Check if disclosure of legal proceedings is required pursuant to Items 2(d) or 2(e)<br><br>☐ | | |
| 6 | Citizenship or Place of Organization<br><br>British Virgin Islands | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | Sole Voting Power<br><br>0 | |
| | 8 | Shared Voting Power<br><br>56,819,260 | |
| | 9 | Sole Dispositive Power<br><br>0 | |
| | 10 | Shared Dispositive Power<br><br>56,819,260 | |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person<br><br>56,819,260 | | |
| 12 | Check if the Aggregate Amount in Row (11) Excludes Certain Shares<br><br>☐ | | |
| 13 | Percent of Class Represented by Amount in Row (11)<br><br>24.0% | | |
| 14 | Type of Reporting Person<br><br>CO | | |

| 1 | Names of Reporting Persons<br><br>Sir Richard Branson | | |
|---|---|---|---|
| 2 | Check the Appropriate Box if a Member of a Group<br>(a) ☒    (b) ☐ | | |
| 3 | SEC Use Only | | |
| 4 | Source of Funds (See Instructions)<br><br>OO | | |
| 5 | Check if disclosure of legal proceedings is required pursuant to Items 2(d) or 2(e)<br><br>☐ | | |
| 6 | Citizenship or Place of Organization<br><br>United Kingdom | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | Sole Voting Power<br><br>0 |
| | 8 | Shared Voting Power<br><br>56,819,260 |
| | 9 | Sole Dispositive Power<br><br>0 |
| | 10 | Shared Dispositive Power<br><br>56,819,260 |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person<br><br>56,819,260 | | |
| 12 | Check if the Aggregate Amount in Row (11) Excludes Certain Shares<br><br>☐ | | |
| 13 | Percent of Class Represented by Amount in Row (11)<br><br>24.0% | | |
| 14 | Type of Reporting Person<br><br>IN | | |

**Explanatory Note**

This Amendment No. 6 to Schedule 13D ("Amendment No. 6") amends and supplements the Schedule 13D filed with United States Securities and Exchange Commission on November 4, 2019 (as amended to date, the "Schedule 13D") relating to the common stock, par value $0.0001 per share (the "Common Stock"), of Virgin Galactic Holdings, Inc., a Delaware corporation (the "Issuer"). Capitalized terms used herein without definition shall have the meaning set forth in the Schedule 13D.

**Item 4.        Purpose of the Transaction.**

Item 4 of the Schedule 13D is hereby amended and supplemented as follows:

*10b5-1 Plan*

On March 12, 2021, VIL entered into a 10b5-1 plan (the "10b5-1 Plan"), pursuant to which Credit Suisse (USA) LLC (the "Broker") has been appointed to sell shares of Common Stock sufficient to generate at least $150 million in proceeds to VIL and may sell additional shares based on the market price of the Common Stock. VIL reserves the right to terminate the 10b5-1 Plan or the appointment of the Broker at any time. Following a 30-day cooling off period, sales pursuant to the 10b5-1 Plan commenced on April 12, 2021.

The foregoing description of the 10b5-1 Plan is qualified in its entirety by reference to the full text of the 10b5-1 Plan, which is filed as an exhibit to this Amendment No. 6 and incorporated by reference herein.

**Item 5.        Interest in Securities of the Issuer.**

Item 5(a) - (b) of the Schedule 13D is hereby amended and restated in its entirety by inserting the following information:

The following sets forth, as of April 14, 2021, the aggregate number of shares of Common Stock and percentage of Common Stock beneficially owned by each of the Reporting Persons, as well as the number of shares of Common Stock as to which each Reporting Person has the sole power to vote or to direct the vote, shared power to vote or to direct the vote, sole power to dispose or to direct the disposition of or shared power to dispose or to direct the disposition of, as of the date hereof, based on 236,944,263 shares of Common Stock outstanding as of February 22, 2021:

| Reporting Person[1] | Amount beneficially owned | Percent of class | Sole power to vote or to direct the vote | Shared power to vote or to direct the vote | Sole power to dispose or to direct the disposition | Shared power to dispose or to direct the disposition |
|---|---|---|---|---|---|---|
| Virgin Investments Limited | 56,819,260 | 24.0% | 0 | 56,819,260 | 0 | 56,819,260 |
| Virgin Group Investments, LLC | 56,819,260 | 24.0% | 0 | 56,819,260 | 0 | 56,819,260 |
| Corvina Holdings Limited | 56,819,260 | 24.0% | 0 | 56,819,260 | 0 | 56,819,260 |
| Virgin Group Holdings Limited | 56,819,260 | 24.0% | 0 | 56,819,260 | 0 | 56,819,260 |
| Sir Richard Branson | 56,819,260 | 24.0% | 0 | 56,819,260 | 0 | 56,819,260 |

(1)    Does not include shares held by SCH Sponsor Corp. (the "Sponsor"), Chamath Palihapitiya and Aabar. The Reporting Persons expressly disclaim beneficial ownership of the shares of Common Stock held by the Sponsor, Mr. Palihapitiya and Aabar.

VIL is the record holder of the securities reported herein. VGIL is the sole shareholder of VIL. VGIL's sole managing member is Corvina, whose sole shareholder is VGHL. As a result, each of the foregoing entities may be deemed to share beneficial ownership of the securities held of record by VIL.

Sir Richard Branson owns and has the ability to appoint and remove the management of VGHL and, as such, may indirectly control the decisions of VGHL regarding the voting and disposition of securities owned by VGHL. Therefore, Sir Richard Branson may be deemed to have indirect beneficial ownership of the securities owned by VGHL.

(c) From April 12, 2021 through April 14, 2021, the Reporting Persons disposed of 5,584,000 shares of Common Stock, in a series of transactions pursuant to the 10b5-1 Plan at prices ranging from $26.41 to $28.91 per share in open market transactions on the New York Stock Exchange. Details by date, listing the number of shares of Common Stock disposed of and the weighted average price per share are provided below. The Reporting Persons undertake to provide, upon request by the staff of the SEC, the Issuer, or a security holder of the Issuer, full information regarding the number of shares sold at each separate price for each transaction.

| Date | Shares Disposed Of | Weighted Average Price Per Share | |
|---|---|---|---|
| April 12, 2021 | 1,900,000 | $ | 26.979 |
| April 13, 2021 | 2,200,000 | $ | 26.9126 |
| April 14, 2021 | 1,484,000 | $ | 26.8585 |

Except for the foregoing and the transaction described in Item 4, none of the Reporting Persons has effected any transactions in the Common Stock in the past 60 days.

(d) None.

(e)   Not applicable.

## Item 6.       Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer.

Item 6 of the Schedule 13D is hereby amended and supplemented as follows:

Item 4 above summarizes certain provisions of the 10b5-1 Plan and is incorporated herein by reference. A copy of the 10b5-1 Plan is attached as an exhibit to this Amendment No. 6 and is incorporated herein by reference.

Except as set forth herein, none of the Reporting Persons has any contracts, arrangements, understandings or relationships (legal or otherwise) with any person with respect to any securities of the Issuer, including but not limited to any contracts, arrangements, understandings or relationships concerning the transfer or voting of such securities, finder's fees, joint ventures, loan or option arrangements, puts or calls, guarantees of profits, division of profits or losses, or the giving or withholding of proxies.

## Item 7.       Materials to be Filed as Exhibits.

| Exhibit Number | Description |
| --- | --- |
| 13 | 10b5-1 Plan, dated March 12, 2021 |

## SIGNATURES

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

**Date**: April 14, 2021

<div style="margin-left:50%">

**VIRGIN INVESTMENTS LIMITED**

By:  /s/ James Cahillane
Name:  James Cahillane
Title:    Attorney-in-fact

**VIRGIN GROUP INVESTMENTS LLC**

By:  /s/ James Cahillane
Name:  James Cahillane
Title:    Attorney-in-fact

**CORVINA HOLDINGS LIMITED**

By:  s/ James Cahillane
/
Name:  James Cahillane
Title:    Attorney-in-fact

**VIRGIN GROUP HOLDINGS LIMITED**

By:  /s/ James Cahillane
Name:  James Cahillane
Title:    Attorney-in-fact

**SIR RICHARD BRANSON**

By:  /s/ James Cahillane
Name:  James Cahillane
Title:    Attorney-in-fact

</div>

**Exhibit 13**

**10b5-1 Plan (Sales)**

**Rule 10b5-1 Selling Plan**

March 12, 2021

This plan (the "Plan") will confirm the agreement between Virgin Investments Limited (the "Client") and Credit Suisse Securities (USA) LLC ("Credit Suisse"), pursuant to which Credit Suisse has been appointed by the Client to sell outstanding shares of the common stock of Virgin Galactic Holdings Inc. (the "Issuer") named in Exhibit A (the "Shares"). This Plan is being established by the Client and is intended to qualify for the affirmative defense provided by Rule 10b5-1 ("Rule 10b5-1") under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

1.  This Plan shall become effective on the date hereof and shall end on the earliest to occur of the following dates: (i) the date on which either the aggregate number of the Shares sold by Credit Suisse in accordance with this Plan equals the Maximum Number of Shares specified in Exhibit A hereto; (ii) the commencement of any voluntary or involuntary case or other proceeding seeking liquidation, reorganization or other relief under any bankruptcy, insolvency or similar law or seeking the appointment of a trustee, receiver or other similar official, or the taking of any corporate action by the Client to authorize or commence any of the foregoing; (iii) the end of the business day (unless another time is specified in writing) following the date of receipt by the non-terminating party of notice of early termination, in the form of Exhibit B hereto (in the case of the Client); (iv) the failure of the Client to perform its delivery obligations under the Plan and (v) May 7, 2021. The Client will provide Credit Suisse with immediate notice should an event under subsection (ii) of this paragraph occur.

2.  Credit Suisse shall sell Shares on each day on which the NYSE is open for trading and the Shares trade regular way on such exchange commencing on the date specified and as per instructions set forth in Exhibit A. Credit Suisse will promptly, and in any event no later than the day after a trade occurs, provide the Client with the number of Shares sold pursuant to the Plan and the prices at which such shares were sold.

3.  The Client hereby covenants and agrees that it will not take any action that would result in any sales of Shares by Credit Suisse hereunder to fail to be in accordance with Rule 10b5-1.

4.  The Client understands and agrees that it is an affiliate or control person for purposes of Rule 144 under the Securities Act of 1933, as amended ("Securities Act"), and that all sales of Shares under the Plan will be made in accordance with the applicable provisions of Rule 144. Client understands that it will file a Form 144, which shall state the following: "The proposed sale is made pursuant to a plan intended to comply with Rule 10b5-1(c), previously entered into on [insert Plan adoption date], at which time [Client Name] was not aware of material nonpublic information." Credit Suisse will conduct sales pursuant to Rule 144, including applying Rule 144 volume limitations as if the sales under the Plan were the only sales subject to the volume limitations. Client agrees to promptly notify Credit Suisse of any sales of shares by Client or any other person or entity required to be aggregated with sales of Shares subject to the Plan as may be required by Rule 144; and not to take any action that would cause the sales of Shares under the Plan not to comply with Rule 144.

- 1 -

5.    (a) The Client reserves the right to terminate this Plan or the appointment of Credit Suisse hereunder at any time by giving one business day's (defined as a day on which the primary stock exchange or quotation system on which the Shares are listed or quoted is open) advance written notice to Credit Suisse in accordance with Exhibit B.

      (b) The Client acknowledges and agrees that notwithstanding anything in paragraph 5(a) herein to the contrary, any suspension, termination or amendment of this Plan by the Client must comply with the requirements for the amendment of a "plan" as defined in Rule 10b5-1(c).

      (c) The Client acknowledges that terminations of, or modifications or amendments to, a trading plan may affect the Client's ability to rely on Rule 10b5-1.

6.    It is the intent of the parties that this Plan comply with the requirements of Rule 10b5-1(c)(1)(i)(B) and this Plan shall be interpreted to comply with the requirements of Rule 10b5-1(c).

7.    As of the date of this Plan, the Client is not aware of any material nonpublic information regarding the Issuer or the Shares and is not subject to any legal, regulatory or contractual restriction or undertaking that would prevent Credit Suisse from acting upon the instructions set forth in this Plan. The Client shall immediately notify Credit Suisse if it becomes aware of a legal, regulatory or contractual restriction or undertaking that would prevent Credit Suisse from making sales pursuant to this Plan.

8.    The Client is entering into this Plan in good faith and not as part of a plan or scheme to evade the prohibitions of Rule 10b5-1 or any other United States federal securities laws.

9.    The Client will not, while this Plan remains in effect, alter or deviate from the terms of this Plan, and it has not entered into, and will not enter into or alter, any corresponding or hedging transaction or position with respect to the Shares (including with respect to any securities convertible into or exchangeable for the Shares).

10.   The Client is not entering into this Plan (i) to manipulate the price of the Shares (or any security convertible into or exchangeable or exercisable for Shares) or (ii) for any other purpose in violation of applicable federal or state law.

11.   (a) Until the termination of this Plan, the Client agrees not to discuss with Credit Suisse's Monetization Services Group, which is responsible for sales under this Plan, or any other Credit Suisse trading personnel, the Issuer's business, operations or prospects or any other information likely to affect the value of the Shares. Notwithstanding the above, the Client may communicate with Credit Suisse personnel who are not trading personnel and who are not responsible for, and have no ability to influence, the execution of this Plan, *provided* that no such communication may relate to this Plan or to the activities of Credit Suisse hereunder.

      (b) Subject to the terms set forth in this Plan, Credit Suisse shall have full discretion with respect to the execution of all sales, and the Client acknowledges and agrees that it does not have, and shall not attempt to exercise, any influence over how, when or whether to effect such sales of Shares pursuant to this Plan.

12.   This Plan (i) has been duly authorized by the Client; (ii) is a valid and binding agreement of the Client, enforceable in accordance with its terms; and (iii) is not, to the Client's knowledge, prohibited or restricted by any legal, regulatory or contractual restriction or undertaking binding on the Client or any of its subsidiaries or any of its or their property or assets.

- 2 -

13. The Client has consulted its own advisors as to legal, tax, business, financial and other relevant aspects of, and has not relied upon Credit Suisse in connection with, the Client's adoption of this Plan, and the Client acknowledges that Credit Suisse is not acting as a fiduciary or an advisor for the Client. Except as specifically contemplated herein, the Client shall be solely responsible for compliance with all statutes, rules and regulations applicable to the Client and the transactions contemplated hereby, including, without limitation, reporting and filing requirements.

14. The Client understands that, while the Credit Suisse Monetization Services Group is executing transactions on behalf of the Client pursuant to this Plan, other desks at Credit Suisse that are not participating in such transactions and are unaware of Client sales may continue to make a market in the Shares or other securities of the Issuer or otherwise trade the Shares or such other securities for Credit Suisse's own account or to facilitate customer transactions. Nothing herein shall preclude the purchase or sale by Credit Suisse of Shares or other securities of the Issuer for its own account or its solicitation or execution of orders for the account of any client. Credit Suisse hereby represents and warrants that it has implemented reasonable policies and procedures, taking into consideration the nature of Credit Suisse's business, to ensure that individuals making investment decisions will not violate the laws prohibiting trading on the basis of material, nonpublic information.

15. This Plan shall be governed by and construed in accordance with the laws of the State of New York, without regard to such State's conflict of laws rules to the extent such rules may result in the application of the law of any other state or jurisdiction.

16. The Client and Credit Suisse acknowledge and agree that this Agreement is a "securities contract", as such term is defined in Section 741(7) of Title 11 of the United States Code (the "Bankruptcy Code"), entitled to all of the protections given such contracts under the Bankruptcy Code.

17. This Plan (including Exhibit A) constitutes the entire agreement between Credit Suisse and the Client with respect to the subject matter hereof, and supersedes any previous or contemporaneous agreements, understandings, proposals or promises with respect thereto, whether written or oral and may be modified or amended only in writing entered into by the Client and Credit Suisse, at a time when the Client is otherwise permitted to effect sales under Issuer's trading policies, does not possess material nonpublic information and such modification or amendment is consistent with the Issuer's trading policy currently in effect. Further, the Client and Credit Suisse shall execute a completed and executed Modification Agreement substantially in the form of Exhibit C attached hereto.

18. This Plan may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

Please indicate your understanding of and agreement to the foregoing by executing and returning a counterpart hereof.

Sincerely,

Virgin Investments Limited

By: _____

ACCEPTED AND AGREED TO
AS OF THE ABOVE DATE:

Credit Suisse Securities (USA) LLC

By: _____

- 4 -