**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANE LAVIN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, JON CAMPAGNA,<br><br>    Defendants. | Case No.: 1:21-cv-03070-ARR-TAM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**LATHAM & WATKINS LLP**

Michele D. Johnson (*pro hac vice*)
Kristin N. Murphy (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: michele.johnson@lw.com
kristin.murphy@lw.com

Kevin M. McDonough
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1246
Facsimile: (212) 751-4864
Email: kevin.mcdonough@lw.com

*Attorneys for Defendants*

February 24, 2023

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   BACKGROUND ......................................................................................................4

      A.    Virgin Galactic Is a Pioneering Aerospace Company ...............................4

      B.    Virgin Galactic Conducted Extensive Flight Testing with the Goal of
            Perfecting Its Spaceflight Systems' Design to Ensure Safe Commercial
            Use .......................................................................................................5

      C.    Virgin Galactic Warned Investors About the Risks Regarding the
            Commercial Space Flight Business, Including Potential Delays.............................6

      D.    Virgin Galactic Delays Branson Flights to Ensure Safety as Testing
            Program Progresses..........................................................................7

      E.    Virgin Galactic Successfully Resolves an FAA Inquiry Into a July 2021
            Space Flight and Continues to Make—and Fully Disclose—Necessary
            Upgrades and Modifications to Eve and Unity.......................................8

      F.    The Court's November 2022 Opinion Significantly Narrows Plaintiffs'
            Case and the Court Urges Plaintiffs to Consider the "Breadth" of Their
            Allegations .........................................................................................9

      G.    Plaintiffs File a Sprawling Second Amended Complaint that Mostly
            Realleges the Same Theories This Court Rejected ..................................9

III.  ARGUMENT........................................................................................................10

      A.    Plaintiffs Do Not Adequately Plead a Section 10(b) Claim ...................10

            1.    Plaintiffs Have Not Alleged Facts Establishing Actionable False or
                  Misleading Statements .................................................................11

                  a.    Defendants' Statements of General Corporate Optimism
                        Are Not Actionable ..........................................................11

                  b.    Defendants' Forward-Looking Statements Are Protected by
                        the PSLRA's Safe Harbor .................................................13

                  c.    Plaintiffs Do Not Allege Facts Rendering Defendants' Test
                        Flight Statements False or Misleading.............................15

                  d.    Plaintiffs Do Not Allege Facts Rendering Defendants'
                        Design and Commercial Progress Statements False or
                        Misleading.........................................................................16

            2.    Plaintiffs Have Not Met their Burden to Plead Particularized Facts
                  Supporting a Strong Inference of Scienter...............................20

i

3.    Plaintiffs Have Not Met their Burden to Plead Loss Causation ................29

    a.    This Court Should (Again) Reject the Previously Rejected Corrective Disclosures ....................................................................30

    b.    The New Alleged Corrective Disclosures Fail ..............................31

    c.    Plaintiffs Fail to Plead Loss Causation with Respect to Statements Regarding Upgrades and Improvements to Horizontal Stabilizers.....................................................................33

    d.    Plaintiffs Have Not Pleaded Loss Causation for Omissions Regarding Eve and Unity's "Cracks" ...........................................34

B.    Plaintiffs Do Not Plead a Viable Claim under Sections 20(a) or 20A ..................35

C.    Plaintiffs Have Failed To State a Claim Against Branson, Palihapitiya, or Virgin Galactic for Insider Trading in Violation of Section 10(b) ........................36

IV.    CONCLUSION.........................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995)...........................................................................................24

*In re Aegean Marine Petroleum Network, Inc.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021).........................................................................26

*Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*,
669 F. Supp. 2d 430 (S.D.N.Y. 2009)...........................................................................9

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)..............................................................11, 14, 28

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................................................................................20, 34

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................................................................................................17

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015)........................................................................34, 35

*Borochoff v. GlaxoSmithKline PLC*,
2008 WL 2073421 (S.D.N.Y. May 9, 2008), *aff'd sub nom. Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671 (2d Cir. 2009) .......................................................22

*Central Bank of Denver v. First Interstate Bank of Denver*,
511 U.S. 164 (1994)......................................................................................................9

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
No. 20-CV-2706 (ARR) (PK), 2022 WL 2872671 (E.D.N.Y. July 21, 2022) .................22, 23

*In re Deutsche Telekom AG Securities Litig.*,
00 CIV 9475 SHS, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ...........................................35

*In re DNTW Chartered Accounts. Sec. Litig.*,
172 F. Supp. 3d 675 (S.D.N.Y. 2016)............................................................................20

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)..........................................................................................10

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018), *aff'd*, 764 F. App'x 127 (2d Cir. 2019) ...21, 27

*In re Gentiva Sec. Litig.*,
   971 F. Supp. 2d 305 (E.D.N.Y. 2013) ...................................................................25

*In re Gildan Activewear, Inc. Sec. Litig.*,
   636 F. Supp. 2d 261 (S.D.N.Y. 2009)...............................................................24, 25

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)...................................................................24

*Glover v. DeLuca*,
   No. 2:03-CV-0288, 2006 WL 2850448 (W.D. Pa. Sept. 29, 2006)........................26

*Gordon v. Sonar Cap. Mgmt. LLC*,
   962 F. Supp. 2d 525 (S.D.N.Y. 2013).....................................................................34

*Gregory v. ProNAi Therapeutics Inc.*,
   297 F. Supp. 3d 372 (S.D.N.Y.) *aff'd*, 757 F. App'x 35 (2d Cir. 2018)..................12

*Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*,
   No. 04 CIV. 3318 (LAP), 2005 WL 736217 (S.D.N.Y. Mar. 30, 2005), *aff'd*, 159 F. App'x
   317 (2d Cir. 2005)..................................................................................................24

*In re Investment Tech. Grp., Inc. Sec. Litig.*,
   251 F. Supp. 3d 596 (S.D.N.Y. 2017)................................................................2, 10

*Jackson v. Abernathy*,
   960 F.3d 94 (2d Cir. 2020).............................................................................20, 29

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)..................................................................................20

*Kowal v. IBM* (*In re IBM Corp. Sec. Litig.*),
   163 F.3d 102 (2d Cir. 1998)......................................................................2, 10, 14

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)...........................................................................29, 34

*Liu v. Intercept Pharms., Inc.*
   No. 17-cv-7371 (LAK), 2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020)..................26

*Livingston v. Cablevision Sys. Corp.*,
   966 F. Supp. 2d 208 (E.D.N.Y. 2013) ...................................................................11

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).........25

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)...................................................................................................9

*Monroe Cnty. Employees' Ret. Sys. v. YPF Sociedad Anonima*,
    15 F. Supp. 3d 336 (S.D.N.Y. 2014)..................................................................................28

*Mucha v. Winterkorn*,
    2022 WL 774877 (2d Cir. Mar. 15, 2022) .........................................................................21

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..........................................................................................21, 24

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007)...............................................................................35

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Comm.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)...............................................................................10

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).................................................................................................9

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)................................................................................................25

*S.E.C. v. Obus*,
    693 F.3d 276 (2d Cir. 2012)..............................................................................................36

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d (2d Cir. 2015).....................................................................................................17

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)..............................................................................................18

*Tung v. Bristol-Myers Squibb Co.*,
    No. 1:18-cv-01611 (MKV), 2020 U.S. Dist. LEXIS 182053 (S.D.N.Y. Sept. 30, 2020) .......26

*Villare v. Abiomed, Inc.*,
    No. 19 CIV. 7319 (ER), 2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) ..........................11, 13

**STATUTES**

15 U.S.C.
    § 78t ...................................................................................................................................34
    § 78t-1(a)............................................................................................................................34
    § 78u–4(b)(1) .......................................................................................................................9
    § 78u–4(b)(4) .....................................................................................................................29

§ 78U-4(B) ....................................................................................................................10

  § 78U-4(B)(2) .........................................................................................................20

  § 78U-5 ....................................................................................................................12

  § 78U-5(C)(1)(B) .....................................................................................................14

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 10b–5 ......................................................................................................17

Fed. R. Civ. P. 12(b)(6) ....................................................................................................1

Defendants Virgin Galactic Holdings, Inc. ("Virgin Galactic" or the "Company"), Sir Richard Branson, Chamath Palihapitiya, George Whitesides, and Michael Colglazier (the "Individual Defendants" and with Virgin Galactic, "Defendants") submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint (the "SAC" or "Complaint") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995.

## I.  PRELIMINARY STATEMENT

Plaintiffs' expansive SAC does not present a viable theory of securities fraud against any Defendant and should be dismissed for failure to state a claim.  On November 7, 2022, the Court issued an order dismissing the First Amended Complaint ("FAC") in significant part, narrowing the scope of the case to just four (out of 35) challenged statements regarding two test flights in February 2019 and July 2021, and dismissing claims against the Individual Defendants except Branson.  In so doing, the Court largely rejected Plaintiffs' theory that Defendants fraudulently misled investors about the success of Virgin Galactic's progress towards commercial operations. The Court granted Plaintiffs leave to amend their complaint, but "strongly urge[d]" Plaintiffs "to consider the breadth of their pleading in light of [the Court's] analysis of their claims[.]"  Dkt. No. 58 at 54 ("Nov. 7, 2022 Order").

Plaintiffs did the opposite.  They filed a sprawling 406-paragraph SAC, in which they challenge a number of statements this Court already rejected as the basis for securities fraud claims, rename defendants the Court dismissed for lack of scienter, extend the class period by nearly ten months (to encompass a total of over ***three years***), challenge multiple new statements, allege new corrective disclosures, and add a new count under the Exchange Act—all based largely on allegations the Court already found deficient.  The allegations in the SAC provide no justification for expanding the claims or resuscitating the many aspects of Plaintiffs' case the Court previously

1

rejected. And moreover, the SAC lays bare fatal flaws in Plaintiffs' theory of fraud as to the four challenged statements and two defendants (Virgin Galactic and Branson) that remained in the case following Defendants' prior motion to dismiss.

*First*, Plaintiffs' falsity allegations do not satisfy the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 9(b). As a threshold matter, Plaintiffs challenge five statements from February 22, 2019, and July 9, 2019, all of which pre-date Plaintiffs' alleged class period of July 10, 2019, through August 4, 2022. Three of those statements were among the four that survived Defendants' prior motion to dismiss. But Plaintiffs cannot recover for statements outside of the class period, *see In re Investment Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 610 (S.D.N.Y. 2017) (a defendant is liable "only for those statements made during the class period") (quoting *Kowal v. IBM* (*In re IBM Corp. Sec. Litig.*), 163 F.3d 102, 107 (2d Cir. 1998)), and accordingly, the Court should reject Plaintiffs' reliance on those statements. Virtually all of the remaining challenged statements—both the statements the Court already rejected and the new statements Plaintiffs seek to add—are not actionable under bedrock legal doctrines protecting general statements of corporate optimism (*i.e.*, puffery) and forward-looking statements, and because Plaintiffs have not presented particularized allegations establishing that any of the challenged statements was false when made.

*Second*, the allegations in the SAC do not support the required "strong" inference of scienter as to any Defendant. This Court has already once dismissed Whitesides and Colglazier from the case for this reason. The SAC provides no basis for disturbing that holding—notwithstanding Plaintiffs' inappropriate reliance on material that was inadvertently and temporarily unsealed by the court in a related stockholder derivative action. That information, which came from documents produced confidentially to certain stockholders in connection with

demands for corporate books and records under Delaware law, does not reveal anything new or inconsistent with Defendants' public statements, and actually undercuts many of Plaintiffs' theories. With respect to Palihapitiya, this Court likewise dismissed the claims against him and there is no reason to upset that ruling now. Nov. 7, 2022 Order at 55. Given that Palihapitiya was an outsider prior to becoming a member of the Virgin Galactic Board of Directors ("Board") in October 2019, when Social Capital Hedosophia ("SCH") merged with Virgin Galactic, Plaintiffs have not pleaded (and cannot plead) any facts to show that Palihapitiya had access to information contradicting his public statements. Nor is there a basis to infer scienter from the desire to complete a deSPAC transaction (a generalized corporate interest) or Palihapitiya's stock sales, particularly given that the deSPAC closed prior to Palihapitiya's only challenged statement within the class period, and Palihapitiya's first stock sale took place over a year later.

Although the Court previously credited Plaintiffs' scienter allegations as to Branson and Virgin Galactic, in full context, the SAC does not support a "strong" inference of scienter as to either one. Branson was not an officer or director of Virgin Galactic either at time of his alleged February 2019 and July 2019 statements or at any point during the class period, and Plaintiffs have not shown that Branson had access to non-public information that contradicted his public statements or rendered his class-period stock sales unusual or suspicious. This is especially true as to Branson's statement lauding the success of his July 2021 flight to space. Branson made this statement the same day of the flight, and Plaintiffs plead no facts to show that Branson was aware of any deviation from Federal Aviation Administration ("FAA") airspace while he was onboard Unity or at any time thereafter. Indeed, ███████████████████████ ███████████████ and it did not inform Virgin Galactic that the deviation constituted a launch incident requiring investigation until August 11, 2021, a full day after Branson commenced

3

the August 2021 stock sales upon which Plaintiffs focus. In any event, Plaintiffs have not established that any Company officer or director acted with scienter, and in turn have failed to show that Virgin Galactic acted with fraudulent intent.

*Third*, Plaintiffs fail to plead loss causation as to the vast bulk of the alleged misstatements and omissions. In addition to recycling loss causation theories this Court already rejected, Plaintiffs allege a hodgepodge of new corrective disclosures that are not connected to any specific alleged misstatement or omission and instead involve generic events, such as rescheduled test flights or a convertible notes offering.

*Finally*, Plaintiffs have not adequately pleaded Section 20(a) control person liability or Section 10(b) or 20A insider trading liability because they have not established the required predicates (a primary violation or scienter) for these claims.

Accordingly, the SAC should be dismissed in its entirety.

## II. BACKGROUND

### A. Virgin Galactic Is a Pioneering Aerospace Company

Virgin Galactic is an innovative aerospace company that designs, manufactures, and tests spaceflight vehicles. *See* SAC (Ex. 1) ¶¶ 2-3, 27, 38-39, 41, 44-45, 124, 194.[1] The Company's spaceflight vehicles are products of years of research, engineering, and testing by Virgin Galactic and its partners. *See id.* ¶¶ 5, 8, 16-17, 33, 44-45.

Virgin Galactic stock became publicly traded on October 25, 2019, as a result of a merger with a special purpose acquisition company (or "SPAC") named SCH. *Id.* ¶¶ 27, 48-49, 51. Virgin Galactic's deSPAC was a success, with its stock trading above the initial $12.34 per-share price

---

[1] Virgin Galactic's corporate structure is complex and underwent a number of changes in the roughly eight-year period covered by the Complaint. For purposes of this motion, Defendants refer to the Virgin Galactic entities collectively.

4

for a large majority (approximately 65%) of the class period. *See generally* Ex. 3 (Virgin Galactic Stock Price History).[2]

Richard Branson, a longtime enthusiast in aerospace innovation, founded Virgin Galactic in 2004. SAC ¶¶ 27-28, 324, 332. Branson is a Virgin Galactic shareholder, but he has never been a director or officer of the Company. *See, e.g.*, Ex. 5 at 76 (Form S-1A filed Feb. 28, 2020) (listing Company management and directors). Palihapitiya, the founder of SCH, became Chairman of Virgin Galactic's Board following the deSPAC merger. He left the Board in February 2022. SAC ¶ 29. Whitesides was Virgin Galactic's CEO from May 2010 to July 2020. *Id.* ¶ 30. He previously served as Chief of Staff for NASA and received the Distinguished Service Medal, the highest award the agency confers. *Id.*; Ex. 6 at 233 (Aug. 7, 2019 S-4). Colglazier is the current CEO and President of Virgin Galactic as well as a sitting Board member. SAC ¶ 31. He has over 30 years of experience in leadership positions at some of the world's most notable companies. Ex. 7 at 87 (Aug. 3, 2020 S-1).

### B.      Virgin Galactic Conducted Extensive Flight Testing with the Goal of Perfecting Its Spaceflight Systems' Design to Ensure Safe Commercial Use

Virgin Galactic operates a multi-stage test flight program designed to ensure that its commercial space flights will be safe. SAC ¶¶ 33-34, 38-39, 44-45. Virgin Galactic's designs

---

[2] All references to "Ex." are to the exhibits attached to the Declaration of Kevin M. McDonough in Support of Defendants' Motion to Dismiss the Second Amended Complaint. In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, public disclosure documents filed with the Securities and Exchange Commission ('SEC'), and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *In re Chembio Diagnostics, Inc. Sec. Litig.*, 2022 WL 541891, at *6 (E.D.N.Y. Feb. 23, 2022) (citation omitted); *see also Barbara v. MarineMax, Inc.*, 2013 WL 12358268, at *3 (E.D.N.Y. Mar. 7, 2013) (taking judicial notice of documents that were "incorporated by reference and integral to and relied upon in the complaint"). Additionally, the Court may judicially notice any fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. ("FRE") 201(b). Here, the Court may consider the entirety of Exhibits 2-3, 6, 9-10, 12 and 13 under the incorporation by reference doctrine, and may further take judicial notice of the contents of Exhibits 2-9, 11-12 and 13.

consist of a "carrier aircraft," or mothership, called Eve, and a spaceship, called Unity. *See id.* ¶ 64. Eve takes Unity to an altitude of about 45,000 feet, and then releases it to continue on to space. *Id.* ¶¶ 3, 64. Virgin Galactic's test pilots are rigorously vetted and rank among "the best test pilots in the world." *Id*. ¶ 44. Among other features, Virgin Galactic's spaceships have proprietary feathering systems that allow them to reenter Earth with limited pilot input (Ex. 6 at 198 (Aug. 7, 2019 S-4)), commercial aviation jet engines (*id*. at 198), the ability to take off and land horizontally (*id.*), and the ability to safely abort at any time during a mission (*id.*). Virgin Galactic is constantly assessing and improving its vehicles' design through a large team of engineers, technicians, and inspectors who perform critical tasks related to vehicle repairs and safety enhancements. SAC ¶¶ 33-34, 137-142.

### C. Virgin Galactic Warned Investors About the Risks Regarding the Commercial Space Flight Business, Including Potential Delays

Both before and throughout the class period, Virgin Galactic repeatedly warned investors of the risks associated with its cutting-edge business plan, including the potential for "additional delay and expense" and the possibility that "actual or perceived safety issues" could negatively impact the Company's financial success. Ex. 4 at 1-2[3] (Risk Disclosures Appendix); *see also* Nov. 7, 2022 Order at 22-23 (finding that the Company's "disclosures properly identified the risk" of future delay); *id.* at 22 ("investors were well-aware of delays in Virgin Galactic's test flight program" as of July 9, 2019). The Company specifically cautioned investors that, given the necessary complexity of its spaceships, "maintenance issues," "design and engineering flaws," and unexpected expenses could occur and materially sidetrack the Company's trajectory. Ex. 4 at 1, 5 (Risk Disclosures Appendix). "And the fact that Virgin Galactic was testing its

---

[3] A complete set of the Company's relevant risk disclosures is included in Exhibit 4.

craft and that further delays were possible after testing were already part of the 'total mix' of information available to the market, both through Virgin Galactic's filings and otherwise." Nov. 7, 2022 Order at 34; *see also* Ex. 4 at 7 (Risk Disclosures Appendix) ("The successful development of our spaceflight systems and related technology involves many uncertainties, some of which are beyond our control, including: timing in finalizing spaceflight systems design and specifications[.]"). The Company likewise warned that additional delay and expense could result from spaceships with shorter-than-anticipated "useful lives" and from changes to regulatory approvals for the Company's space flight program. Ex. 4 at 5, 12-13 (Risk Disclosures Appendix).

      **D.**    **Virgin Galactic Delays Branson Flight to Ensure Safety as Testing Program Progresses**

Virgin Galactic was transparent with investors about the possibility of delays because it wanted safety, not speed, to dictate the pace of vehicle development. *See, e.g.*, SAC ¶¶ 14, 17, 74, 112. For example, although Virgin Galactic had announced its "priority [was] to fly Richard Branson into space on a commercial flight in 2020" (*id.* ¶ 300), it later determined—and publicly disclosed—that the Company needed more time to "advance to the next phase of its test flight program" before flying Branson "in the first quarter of 2021." *Id.* ¶ 207. Rather than press ahead to achieve its targets, Virgin Galactic prioritized the safety of its pilots, passengers, and crew. And far from obscuring the risk that delays might occur, Virgin Galactic repeatedly disclosed that risk, in both general and specific terms. *See id.* ¶¶ 11, 13, 17, 207, 261, 264, 358; Ex. 4 at 1-2 (Risk Disclosures Appendix).

     **E.**      **Virgin Galactic Successfully Resolves an FAA Inquiry Into a July 2021 Space Flight and Continues to Make—and Fully Disclose—Necessary Upgrades and Modifications to Eve and Unity**

On July 11, 2021, the Company performed Unity's first fully crewed space flight, on which Branson flew as a crewmember. SAC ¶ 229. On August 11, 2021, the FAA formally notified Virgin Galactic it had determined that an airspace deviation that occurred during this flight qualified as a "launch incident." *Id.* ¶ 250. The FAA authorized Virgin Galactic to investigate the cause and identify and implement corrective actions. *Id.* ¶ 250. In response to public reporting in early September 2021, the FAA publicly confirmed the incident and indicated that Virgin Galactic was not authorized for new launches until the FAA approved Virgin Galactic's findings and corrective actions. *Id.* Less than a month later, on September 29, 2021, the FAA announced that the Company had satisfactorily addressed the FAA's concerns, closed the inquiry, and cleared Unity for future flights. *See* Ex. 8 (Sep. 29, 2021, Press Release).

Both before and after the FAA cleared Virgin Galactic to resume flights, the Company continued to exercise caution to ensure the safety of its space vehicles. On October 14, 2021, the Company announced that it would accelerate its enhancement program for Unity and Eve to address recently identified issues with the strength of materials, and delayed the next test flight until the fourth quarter of 2022. SAC ¶ 264. The Company subsequently provided the public with periodic updates on the progress of those enhancements and any related scheduling delays. *See e.g.*, *id.* ¶ 320 (Colglazier discussed the status of updates on Eve's pylon replacement during a May 5, 2022 earnings call); *id.* ¶¶ 271-272 (Company updated investors during August 4, 2022 earnings call on discrepancy involving pylon angle and rescheduling of Unity 23 flight for the first half of 2023).

**F.      The Court's November 2022 Opinion Significantly Narrows Plaintiffs' Case and the Court Urges Plaintiffs to Consider the "Breadth" of Their Allegations**

On November 7, 2022, this Court granted Defendants' motion to dismiss Plaintiffs' FAC in significant part, narrowing the case to just four of the original 35 challenged statements (three of which predate the class period) regarding the test flights in February 2019 and July 2021.  The Court dismissed claims against all of the Individual Defendants except Branson, concluding that Plaintiffs had not plead the required "strong inference" of scienter with respect to Whitesides and Colglazier.  *See* Nov. 7, 2022 Order at 49-53, 55.  The Court granted Plaintiffs leave to amend their complaint, but "strongly urge[d]" them "to consider the breadth of their pleading in light of [the Court's] analysis of their claims[.]"  *Id.* at 54.

**G.      Plaintiffs File a Sprawling Second Amended Complaint that Mostly Realleges the Same Theories This Court Rejected**

On December 12, 2022, Plaintiffs filed a 406-paragraph SAC.  Despite the weaknesses this Court identified in Plaintiffs' case in its November 7, 2022 Order, Plaintiffs' SAC relies largely on the same theories and allegations the Court rejected, save for sparse and immaterial new details that Plaintiffs obtained improperly from the now-sealed pleading in a stockholder derivative action (ECF No. 65)[4] and two stock price declines that have no connection to any information supposedly concealed by Defendants during the class period.  SAC ¶¶ 268, 271.

---

[4] Defendants understand Plaintiffs obtained an un-redacted copy of the sealed complaint in *Laidlaw v. Branson et al.*, No. 22-cv-05634-HG (E.D.N.Y.), during the time the court in that case had temporarily and inadvertently unsealed it. The complaint currently is under seal.  *Id.*, Dkt. No. 13.  Plaintiffs filed a pre-motion conference request to intervene in *Laidlaw* and permanently unseal the complaint.  *See id.*, Dkt. No. 10.  Defendants opposed that request and the court has not yet ruled on the issue.

## III.  ARGUMENT

### A.       Plaintiffs Do Not Adequately Plead a Section 10(b) Claim

To state a claim under Section 10(b), a plaintiff must plead: (i) a material misrepresentation or omission; (ii) scienter; (iii) a connection between the misrepresentation or omission and the purchase or sale of a security; (iv) reliance upon the misrepresentation or omission; (v) economic loss; and (vi) loss causation.  *See* Nov. 7, 2022 Order at 14-15 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011)).   Plaintiffs cannot recover damages from individual defendants for misstatements allegedly made by others.  *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994); *Amida Cap. Mgmt. II, LLC v. Cerberus Cap. Mgmt., L.P.*, 669 F. Supp. 2d 430, 436-37 (S.D.N.Y. 2009) (declining to hold merger partner liable for statements made by other merger partner prior to merger).

Section 10(b) claims based on fraud are subject to the rigorous pleading requirements of Rule 9(b) and the PSLRA.  *See* Nov. 7, 2022 Order at 14 (quoting 15 U.S.C. § 78u–4(b)(1) and Fed. R. Civ. P. 9(b)).  Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake," FED. R. CIV. P. 9(b), and in particular to "specify the statements that the plaintiff contends were fraudulent," "identify the speaker," "state where and when the statements were made," and "explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  Similarly, the PSLRA requires a plaintiff to "state with particularity" (i) "each act or omission alleged to violate" Section 10(b); (ii) the "reasons why" those statements or omissions are false or misleading; and (iii) specific "facts giving rise to a strong inference" that each defendant acted with the required intent to defraud—*i.e.*, "scienter."  15 U.S.C. § 78u-4(b); *see also ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  Claims that are based on "speculation and conclusory

10

allegations" must be dismissed.  *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Comm.*, 694 F. Supp. 2d 287, 297 (S.D.N.Y. 2010).

### 1.  Plaintiffs Have Not Alleged Facts Establishing Actionable False or Misleading Statements

Plaintiffs' falsity allegations fail to satisfy the stringent standards of the PSLRA and Rule 9(b).  As a threshold matter, Plaintiffs challenge five statements that pre-date their own alleged class period of July 10, 2019, through August 4, 2022—one made on February 22, 2019, and four made on July 9, 2019.  SAC ¶¶ 275, 277, 279, 281, 298.  Such pre-class period statements are not actionable.  *See Inv. Tech. Grp.*, 251 F. Supp. 3d at 610 (A defendant is potentially liable "only for those statements made during the class period") (quoting *Kowal*, 163 F.3d at 107).  Accordingly, Plaintiffs' claims based on the five statements made before July 10, 2019, must be dismissed.  *See id.*  Virtually all of the remaining statements are inactionable puffery, protected forward-looking statements, and/or statements that Plaintiffs do not allege with particularity were false or misleading (as the Court previously held with respect to many of the statements at issue).

### a.  Defendants' Statements of General Corporate Optimism Are Not Actionable

This Court already held that several of the challenged statements are inactionable puffery.  *See* Nov. 7, 2022 Order at 24-27 (statements about a "tested and tried system that is performing well" (FAC ¶ 520; SAC ¶ 295), the Company's "confiden[ce]" in its progress, its "exciting business model" (FAC ¶ 501), and its achievement of "key milestones" (FAC ¶ 529) were "pure puffery").  There is nothing in the SAC that can transform those puffery statements into actionably false statements under the federal securities laws.

In the SAC, Plaintiffs challenge additional vague and generalized statements of optimism.  *See* SAC ¶ 283 ("The VG Companies have several capabilities that will allow them to scale rapidly

…)[5]; *Id.* ¶ 297 ("Ten weeks after our first flight to space, we did it again, travelling higher and faster than ever before and, for the first time, with a third crew member on board."); *Id.* ¶ 300 ("[T]he third thing is readying the vehicles for long-term, high-rate service. . . . we really want to make that a big focus. . . . What's going to make it a great success *is* having a vehicle that we can turn around relatively rapidly and do that on a consistent basis and then build a fleet of them[.]"); *Id.* ¶ 316 (watching Unity "arc back towards earth" and "feather gracefully for return … validated the inherent safety and design of our system."). Those statements about the Company's capabilities, goals, and focus "convey nothing of substance to a reasonable investor." Nov. 7, 2022 Order at 25; *see also e.g.*, *Livingston v. Cablevision Sys. Corp.*, 966 F. Supp. 2d 208, 220 (E.D.N.Y. 2013) (finding that a statement describing company's "superior products, superior customer service" was puffery). To the contrary, the statements "simply put a positive spin on developments" in Virgin Galactic's progress towards commercialization and thus are not actionable. *Villare v. Abiomed, Inc.*, No. 19 CIV. 7319 (ER), 2021 WL 4311749, at *13-14 (S.D.N.Y. Sept. 21, 2021) (finding statements "containing simple economic projections" are puffery even where they present "a hopeful outlook"); *see also In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757-58 (S.D.N.Y. 2018) (finding that statements that company had "made remarkable progress towards our stated goals" and was "proud" to be "on track" were puffery).[6]

---

[5] Emphasis in SAC omitted unless otherwise noted.

[6] In Paragraph 302 of the SAC, Plaintiffs challenge a statement that the Court previously held was not adequately alleged to be false or misleading. *See* Nov. 7, 2022 Order at 29 (discussing FAC ¶ 538); *compare* FAC ¶ 538 *with* SAC ¶ 302. That statement qualifies as puffery and is not actionable for that additional reason.

**b. Defendants' Forward-Looking Statements Are Protected by the PSLRA's Safe Harbor**

This Court already held that several challenged statements were protected under the PSLRA's safe harbor for forward-looking statements, including those describing the Company as "on track" to begin commercial service (FAC ¶ 499), targeting commercial operations for "the middle of next year" (*id.* ¶¶ 514, 522), and conveying that the Company was "within spitting distance" of launching commercial service and that "things are going well" (*id.* ¶ 540). *See* Nov. 7, 2022 Order at 20-24. The Court found that the safe harbor applied to these statements for two independent reasons: (i) the statements were "accompanied by meaningful cautionary language," *and* (ii) Plaintiffs did not allege actual knowledge of falsity; *i.e.*, they pointed "to no facts that defendants were aware that *Unity*'s repairs would likely push the start of commercial operations beyond their promised timelines[.]" *Id.* at 23-24; *id.* at 22 ("[I]nvestors were well-aware of delays in Virgin Galactic's test flight program at the time each of these statements were made."); 15 U.S.C. § 78u-5; *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 397 (S.D.N.Y. 2018) *aff'd*, 757 F. App'x 35 (2d Cir. 2018) (forward-looking statements are protected if they are "identified and accompanied by meaningful cautionary language" or immaterial, or if a plaintiff fails to plead "actual knowledge" that the statements were false or misleading when made).

Brushing past the Court's holding, Plaintiffs again challenge Palihapitiya's November 20, 2019, statement predicting that Virgin Galactic "will start commercial operations in the middle of next year." SAC ¶ 93 (FAC ¶ 522).[7] But Virgin Galactic's cautionary language is no less meaningful now than it was when the Court previously applied the safe harbor to this exact

---

[7] Plaintiffs include this statement and two others in the background or loss causation sections of the SAC, but not in the section specifically entitled "Defendants' false statements." SAC ¶¶ 229, 230. Because Defendants cannot determine with certainty whether Plaintiffs have challenged these statements or dropped them from the SAC, Defendants address them as challenged statements.

statement, and Plaintiffs still have not mustered any particularized allegations demonstrating that when Palihapitiya made the November 20, 2019 statement, he had actual knowledge that it was false. As before, the statement qualifies for protection under both inlets to the PSLRA safe harbor. *See Villare*, 2021 WL 4311749, at *17 ("language stating that a company was presently on track with its projected goals was forward looking under the PSLRA").

Plaintiffs' attempt to plead falsity with respect to the additional forward-looking statements (not pleaded in the FAC) fares no better. *See* SAC ¶¶ 277, 283, 285, 287, 289, 291, 300, 302, 306, 308, 310, 312, 318. The new forward-looking statements describe the Company's progress toward launching commercial service as "in the final phases" (*id.* ¶¶ 283, 308), estimate timetables for completing the "refurbishment" and "build out" of space vehicles (*id.* ¶¶ 287, 306, 318), anticipate start dates or usage rates for commercial launches (*id.* ¶¶ 283, 289, 291), or simply suggest that Eve and Unity will be used in future commercial operations (*id.* ¶¶ 277, 285, 300, 302, 310, 312). Once again, Plaintiffs do not and cannot plead facts showing that the cautionary language accompanying these statements was inadequate. Virgin Galactic specifically disclosed the risk of "significant delays" and an inability to operate due to maintenance issues or design and engineering flaws. Ex. 4 at 5 (Risk Disclosures Appendix). Moreover, Plaintiffs allege no particularized facts establishing that Defendants possessed "actual knowledge" that the newly challenged forward-looking statements were false when made. *See* SAC ¶¶ 94, 278, 284, 286; 288, 290, 292, 301, 303, 307, 309, 311, 313, 319. The PSLRA safe harbor therefore applies to the statements challenged in Paragraphs 93, 277, 283, 285; 287, 289, 291, 300, 302, 306, 308, 310, 312, 318. *See* 15 U.S.C. § 78u-5(c)(1)(B) (stating that safe harbor applies if the plaintiff fails to allege that speaker had actual knowledge of statement's falsity); *Aratana*, 315 F. Supp. 3d at 759 (dismissing claim where plaintiffs alleged that defendants "secretly knew" statements were false).

14

### c. Plaintiffs Do Not Allege Facts Rendering Defendants' Test Flight Statements False or Misleading

This Court already dismissed as not materially misleading the Company's December 2019 press release describing prior test flights as "travelling higher and faster than ever before," SAC ¶ 297 (FAC ¶ 524), and the Company's June 2020 press release quoting Whitesides as saying that Virgin Galactic was focused on "ensuring the vehicles and our operations are prepared for long-term, regular commercial spaceflight service," SAC ¶ 302 (FAC ¶ 538); Nov. 7, 2022 Order at 28. Undaunted, Plaintiffs reallege a nearly identical challenge to the June 2020 statement. *Compare* SAC ¶ 303 (alleging falsity "because those vehicles were mere prototypes that were not designed or intended to be used in 'long-term, regular commercial spaceflight service' and Defendants knew that they could not withstand such long-term, regular commercial service"), *with* FAC ¶ 539 (alleging falsity because, among other things, "Unity and Eve were prototypes not suitable for commercial flight"). Plaintiffs also now ask the Court to focus on a *link* in the December 2019 press release to a *different* press release from ten months earlier (and nearly five months before the alleged class period begins). SAC ¶ 298. But Plaintiffs cannot rely on a statement that predates their own alleged class period. *See Kowal*, 163 F.3d at 107 (dismissing statements made a day before the class period started).

Plaintiffs challenge Colglazier's August 5, 2021 statement describing Branson's July flight—which was "livestream[ed]" to "over 19 million viewers around the globe"—as "successful," "further proof of technical readiness," and validating "the inherent safety and design of our system." SAC ¶ 316. Plaintiffs attack this statement on the grounds that Branson's flight "strayed from its FAA airspace" during a portion of the flight, and Virgin Galactic had already admitted that it "was a major deviation that should not happen again." *Id.* ¶ 317. But Plaintiffs do not explain how an airspace deviation—which Virgin Galactic fully resolved with the FAA within

15

weeks of the agency's request for an internal investigation—made Branson's flight unsuccessful, or was in any way connected to the aircraft's "technical readiness." *Id.* ¶ 316. By Plaintiffs' own allegations, it was not until August 11, 2021 (six days after Colglazier's statement) that the FAA notified the Company that a "launch incident" requiring additional internal investigation had occurred. *Id.* ¶ 250. And far from the details having been concealed, as Colglazier notes, millions of people were able to watch the flight live. The flight occurred without injury and without damage to either vehicle, and Plaintiffs do not allege otherwise. It was, as analysts described, "as successful as the company could have hoped." *Id.* ¶ 232.

### d. Plaintiffs Do Not Allege Facts Rendering Defendants' Design and Commercial Progress Statements False or Misleading

The vast majority of the challenged statements in the SAC relate to Virgin Galactic's vehicle design and lifespan and progress towards launching commercial service. SAC ¶¶ 277, 281, 283, 285, 287, 289, 291, 293, 300 (FAC ¶ 533), 302 (FAC ¶ 538), 306, 308, 310, 312, 318, 320. According to Plaintiffs, these statements were false and misleading primarily because Eve and Unity were mere prototypes unsuitable for commercial service and required substantial repairs and modification before commercial flights would be possible. Neither of these allegedly omitted "facts" is inconsistent with Defendants' public statements.

***Design Statements***. Plaintiffs challenge certain statements that Eve and Unity were "designed" and "built for [regular/recurring] commercial service" and "designed to be reused." *See* SAC ¶¶ 277, 283, 285, 289, 310, 312. Plaintiffs claim these statements were false based on allegations that Eve and Unity are prototypes; Unity's wings cracked during flights; Virgin Galactic did not have accurate engineering drawings; the Company's statements did not differentiate Eve and Unity from newer models; and the vehicles needed more testing prior to commercial use. *Id.* ¶¶ 278, 284, 286, 290, 292, 311, 313.

This Court has already rejected Plaintiffs' theory that Virgin Galactic's vehicles were prototypes incapable of commercial service. *See* Nov. 7, 2022 Order at 31-32 (dismissing statement that spacecraft was "designed to fly both humans and science research payloads to space" because the alleged omission that *Unity* was a prototype was "not sufficiently related to the subject matter of the statement to render that statement misleading"). The Court's holding applies with equal force to the SAC: statements that Virgin Galactic "designed" its spacecrafts for commercial flights or that the Company was focused "on ensuring the vehicles and our operations are prepared for long-term, regular commercial spaceflight service" (SAC ¶¶ 302, 303) are not made misleading by the fact that they were once prototypes, or that the vehicles needed additional testing or repairs.[8] That is precisely why the Company was and is constantly updating, modifying, and repairing these vehicles—to use them in commercial operations—and Plaintiffs do not allege otherwise. *See* Ex. 4 at 1-2 (Risk Disclosures Appendix). It is also why the Company was

█████████████████████████████████████████████████████████████████

████████  *See* SAC ¶¶ 100-101.

***Commercial Development Statements*.** Plaintiffs challenge numerous statements spanning a three-year period relating to Virgin Galactic's progress in preparing for commercial spaceflight, including statements regarding the stage of the Company's progress towards commercialization (*id.* ¶¶ 283, 302, 308), regulatory approval (*id.* ¶ 281), anticipated build completion dates or flight rates (*id.* ¶¶ 287, 291), the need for repairs to the space vehicles (*id.* ¶¶ 306, 310, 320), and even

---

[8] To the extent that Plaintiffs challenge Colglazier's purported comparison of Eve to a commercial airliner (SAC ¶ 312) because Eve allegedly "suffered so much more damage on its flights than an airliner" and its useful life was likely to be short(*id*. ¶ 313), that too fails. No reasonable investor would have assumed that Eve could fly as regularly as a commercial airliner, and in any event, Plaintiffs do not plead a corrective disclosure associated with this statement, *i.e.*, any facts suggesting that Eve's life has been, or will be, cut short.

17

the length of Eve's life (*id.* ¶ 318).  But the allegations in the SAC do not establish that any of these statements was false or misleading.

**First,** in addition to being out-of-scope based on its timing, Palihapitiya's pre-class period statement that Virgin Galactic had "all the regulatory elements" (*i.e.*, an FAA license) "to start commercial operations" (*id.* ¶ 281) was literally true:  Virgin Galactic *did* have an FAA license at the time of this statement.  *See* Ex. 9 at 1 (July 9, 2019, Press Release) ("Virgin Galactic has already been granted its FAA commercial space launch license, and the New Mexico Spaceport has also received its Spaceport license.").  That the FAA would require additional testing and verification before the Company could actually fly passengers (SAC ¶ 282) does not render this statement misleading, especially in light of the Company's other robust disclosures regarding its commercial timeline.  *See* Ex. 4 at 5-12 (Risk Disclosures Appendix).

**Second,** Plaintiffs' theory of falsity regarding SCH's visual depiction of the anticipated "Build Completion" for each of Unity and Eve as 2019 and "In Operation," respectively, does not state a claim.  SAC ¶ 287.[9]  Plaintiffs claim that a "Build Completion" date of 2019 for Unity was misleading because the Company had not completed Unity's design, part fabrication, assembly, and integration, and there were additional repairs and development that would be needed before commercialization.  *Id.* ¶ 288.  They claim the depiction of Eve as "In Operation" was misleading because it was still unsuitable for commercial operations without "significant modifications, replacements, and repairs."  *Id.*  But none of those alleged facts renders the visual depiction untrue at the time:  Plaintiffs do not plead that anyone at the Company believed an end of 2019 *build*

---

[9] Plaintiffs curiously challenge a slide in the same presentation stating that the Company used Oracle for "digital definition and configuration"—claiming that, in reality, Virgin Galactic used multiple systems. SAC ¶ 293. Plaintiffs do not articulate any reason why it was material to investors that Virgin Galactic used multiple computer systems, or attempt to tie this statement to any theory of fraud or subsequent corrective disclosure. *See Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) (Wholesale "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b–5."); *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015).

18

completion date was unattainable for Unity.  Nor do Plaintiffs plead that Eve was not actually "operational" at that time.  The alleged damage that occurred during the February 2019 flight affected Unity, not Eve, and no reasonable investor could have understood—in light of the many other disclosures on this subject—that Eve had begun, or was prepared to begin, *commercial* operations.  *See, e.g.*, *id.* ¶¶ 277, 283; *see Tongue v. Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016) (stating that omitted facts must "conflict with what a reasonable investor would take from the [challenged] statement" to be actionable) (citation omitted).

**Third,** Plaintiffs' challenge to statements by Colglazier in February through August of 2021 discussing "enhancements," "upgrades," and "modifications" to Eve and Unity, and a "life extension program on Eve" fails.  SAC ¶¶ 306,[10] 310, 318.  According to Plaintiffs, the statements were misleading because the vehicles allegedly needed "major repairs or improvements, not mere enhancements," including a ███████████████████████ *Id.* ¶¶ 307, 311, 319.  Plaintiffs likewise challenge Colglazier's statement in May 2022 (presumably to expand the already sprawling class period) regarding a "big milestone" that left Eve "kind of done and ready to go," summarily deeming it misleading because Eve's new pylon allegedly required ████████ ████████████████████████████ *Id.* ¶¶ 320-321.  Defendants disclosed no fewer than five times during the class period that Unity and Eve required additional changes, repairs, and development to achieve the ultimate goal of commercial operations (s*ee, e.g.*, Ex. 6 at 34 (Aug. 7, 2019 S-4)), and similarly disclosed at least 30 times during the class period that changes to the spaceflight systems or additional maintenance may result in delays.  *See generally*

---

[10] Plaintiffs point to information from a March 2021 board presentation (one month *after* the alleged misstatement) ████████████████████████████, to support its claim that the February 2021 statement is misleading. Not only do Plaintiffs fail to allege that Colglazier saw those materials at the time he made the statement, but the materials show the very opposite of what Plaintiffs allege, ████████████████████ ██████████████████████████████████████ *See* SAC ¶¶ 100-101.

Ex. 4 (Risk Disclosures Appendix). And the May 2022 Colglazier statement that Plaintiffs cherry-pick was made in the context of a detailed update on the progress made on modifications to both Unity and Eve, which made clear that the Company had "more things to fit and finish up." SAC ¶ 320.

**Fourth**, Plaintiffs' challenge to statements suggesting that Virgin Galactic was preparing its "vehicles for long-term, high-rate service" and "completing the final work . . . for commercial service, including installation of the cabin interior" fails for similar reasons. *Id.* ¶¶ 300, 302, 308. Plaintiffs claim these statements were misleading because (again) Eve and Unity allegedly are prototypes incapable of recurring commercial use, and because the vehicles cracked and needed major repairs before commercial operations could begin. *See id.* ¶¶ 301, 303, 309. But Plaintiffs again do not plead facts inconsistent with Virgin Galactic's generally stated belief that it was nearing the end of its preparations: the facts as alleged show that Virgin Galactic *was* readying its fleet for commercial service. *See, e.g.*, *id.* ¶¶ 100-101. That those final preparations took longer than anticipated, or that the Company implemented additional, unexpected repairs to ensure safety, does not undermine the truth of these statements at the time they were made. That is particularly true given that Virgin Galactic promptly and repeatedly disclosed delays in its commercial timeline throughout this period. *See* Nov. 7, 2022 Order at 34 ("[T]he fact that Virgin Galactic was testing its craft and that further delays were possible after testing were already part of the 'total mix' of information available to the market, both through Virgin Galactic's filings and otherwise."); *see also* SAC ¶¶ 14, 207 (delay of Branson test flight announced August 4, 2020).

### 2.    Plaintiffs Have Not Met their Burden to Plead Particularized Facts Supporting a Strong Inference of Scienter

The SAC should be dismissed for the independent reason that Plaintiffs' allegations do not support the required "strong" inference of scienter. 15 U.S.C. § 78u-4(b)(2); *Jackson v. Abernathy*,

20

960 F.3d 94, 98 (2d Cir. 2020).  To survive dismissal, the inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *DNTW*, 172 F. Supp. 3d at 684.  To support a "strong" inference of scienter, a plaintiff must allege particularized facts showing that (1) defendants had the "motive and opportunity to commit the fraud," or (2) "strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Where, as here, a "plaintiff has failed to demonstrate that defendants had a motive to defraud the shareholders, he must produce *a stronger inference* of recklessness" and "the strength of the circumstantial allegations must be *correspondingly greater*."  *Kalnit v. Eichler*, 264 F.3d 131, 142-43 (2d Cir. 2001) (emphases added).  Plaintiffs have not cleared this high bar with respect to any Defendant.

*Whitesides*.  This Court has already concluded that Plaintiffs' claims against Whitesides should be dismissed for lack of scienter because, "[a]t most," Plaintiffs have shown only that Whitesides was "cognizant of the damage from the February 2019 flight following a report from [Michael] Moses, but that he also received a Board-commissioned report suggesting that Unity was safe to operate."  Nov. 7, 2022 Order at 50.  Nothing in the SAC justifies a departure from that holding.

Plaintiffs challenge only two new portions of previously challenged statements made by Whitesides, in February and June of 2020:  specifically, his statement that the Company's "focus" was on preparing the vehicles for "long-term" service (SAC ¶¶ 300, 302), and his view that what would make Virgin Galactic "a great success is having a vehicle that [it] can turn around relatively rapidly and do that on a consistent basis and then build a fleet of them." *Id.* ¶ 300.  In addition to the fact that Plaintiffs failed to establish that these statements were false, *see supra* at Section

21

III.A.1, Plaintiffs do not plead any new facts suggesting Whitesides had information contradicting his statements at the time they were made, let alone knew the statements were false. *See* Nov. 7, 2022 Order at 49-50 (rejecting allegations about core operations); *see also In re Ferrellgas Partners, L.P., Sec. Litig.*, 16 Civ. 7840 (RJS), 2018 WL 2081859, at *19 (S.D.N.Y. Mar. 30, 2018) (plaintiffs must show "specific instances in which Defendants received information that was contrary to their public declarations" (citation omitted)), *aff'd*, 764 F. App'x 127 (2d Cir. 2019); *see also Mucha v. Winterkorn*, 21-1511-cv, 2022 WL 774877, at *3 (2d Cir. Mar. 15, 2022) ("[A] plaintiff cannot cure a failure to plead a strong inference of scienter by adding allegations of 'fraud by hindsight.'" (citation omitted)); *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (plaintiffs' conclusory allegations "that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud"). And to the extent Plaintiffs seek to bolster their scienter allegations using the November 2019 memorandum and the December 2019 Board materials—information they improperly obtained from a temporarily and mistakenly unsealed parallel derivative matter— ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SAC ¶¶ 101, 114, 118-119.

*Colglazier*. This Court likewise previously dismissed Colglazier from the case for lack of scienter. *See* Nov. 7, 2022 Order at 50. The SAC has not cured that fatal flaw. Plaintiffs accuse Colglazier of falsely describing the enhancement period as a series of voluntary improvements on February 25, May 10, and August 5, 2021 (SAC ¶¶ 306, 310, 312, 318); insinuating that the changes related to Eve's pylon were "done" as of May 5, 2022 (*id.* ¶ 320); and overstating the success of Branson's July 2021 flight. *Id.* ¶¶ 229, 230, 316, 318. But Plaintiffs' allegations do not remotely establish that Colglazier acted with scienter.

22

As to the enhancement-period statements, Plaintiffs point to March 2021 Board meeting materials purportedly showing ███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████ *Id.* ¶¶ 260, 307.  But the March board deck post-dates the February statement and thus cannot be probative of scienter.  *See In re Chembio Diagnostics, Inc. Sec. Litig.*, No. 20-CV-2706 (ARR) (PK), 2022 WL 2872671, at *4 (E.D.N.Y. July 21, 2022) (dismissing individual defendants for lack of scienter when plaintiff failed to allege facts showing they knew the alleged adverse information at the time of their statements).  Moreover, the fact that Eve and Unity needed "upgrades" and "modifications" is not inconsistent with what Colglazier told the market in 2021—indeed, he told stockholders that Eve and Unity required "modifications." SAC ¶ 310; *see Borochoff v. GlaxoSmithKline PLC*, No. 07 Civ. 5574, 2008 WL 2073421, at *8 (S.D.N.Y. May 9, 2008) ("Allegations of defendants' intent to defraud by suppressing negative data are inconsistent with defendants' disclosure of that data [publicly] and to the FDA."), *aff'd sub nom. Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671 (2d Cir. 2009).  Lastly, Plaintiffs do not even attempt to plead any facts supporting scienter for the May 2022 statement. *See* ¶ SAC 321 (alleging generally that the statement was misleading "because the new pylon required that Virgin Galactic make additional structural changes").

As to the July flight, this Court previously found that "Plaintiffs ha[d] not demonstrated that Colglazier knew Branson's flight had departed from its landing cone at the time he made the statements touting the flight's success that same day."  Nov. 7, 2022 Order at 50 ("Absent any allegations that Colglazier was told that the [July 2021] flight deviated from its landing cone prior to making his public statements, I cannot find that his statement was reckless.").  Plaintiffs add no new allegations to alter this conclusion.  They allege merely that the FAA was first informed of

23

the flight deviation on July 23, 2021, by the Albuquerque Air Force Control Center (SAC ¶ 247); that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶ 248); and that Virgin Galactic "briefed the FAA on the incident" on August 3, 2021. *Id.* ¶ 249. As Plaintiffs acknowledge, it was not until August 11, 2021 (six days after the earnings call), that the FAA concluded that a "launch incident" requiring additional internal investigation had occurred. *Id.* ¶ 250. Plaintiffs' allegations thus show only that the FAA was inquiring about the deviation prior to earnings call on August 5, 2021. They do not provide any particularized facts suggesting *Colglazier* knew about this inquiry. *Id.* ¶¶ 244-250. Indeed, the materials on which Plaintiffs rely do not show any involvement at all by Colglazier in these initial conversations with the FAA. *Id.* Accordingly, Plaintiffs have failed to plead the "strong circumstantial evidence" needed to support an inference that Colglazier acted with fraudulent intent as to either of his statements regarding Branson's flight. *See Chembio Diagnostics*, 2022 WL 2872671, at *4 (dismissing claims against individual defendants because plaintiff did not allege they knew the allegedly adverse information, even if plaintiff alleged "someone" at the company knew it).

*Palihapitiya*. The Court already dismissed the claims against Palihapitiya, and Plaintiffs' flawed theory as to his supposed scienter has not changed. Nov. 7, 2022 Order at 55. Plaintiffs allege only two misstatements by Palihapitiya: (1) a pre-class period statement made during a July 2019 interview that Virgin Galactic is "licensed by the FAA" and has "all the regulatory elements to start commercial operations" (SAC ¶ 281); and (2) a forward-looking statement, which the Court already held was protected by the PSLRA safe harbor, during a November 2019 CNBC interview in which Palihapitiya predicted that Virgin "will start commercial operations in the middle of next year." *Id.* ¶ 93. Even if these statements were actionable (they are not), Plaintiffs' allegations fall far short of establishing a strong inference of scienter.

24

Plaintiffs do not allege that Palihapitiya (who joined the Company's Board on October 25, 2019, several months after his July 2019 statement) had access to any particular information that contradicted his initial public statements about Virgin Galactic's licensing. Rather, Plaintiffs theorize that Palihapitiya had motive to mislead investors because he wanted to close an arm's-length transaction between Virgin Galactic and his SPAC, SCH. *See* SAC ¶¶ 48-49. But such a routine corporate objective is insufficient to establish motive to commit fraud. *See Novak*, 216 F.3d at 307 ("Plaintiffs could not proceed based on motives possessed by virtually all corporate insiders," such as the desire to "prolong the benefits of holding corporate office"); *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009) ("General allegations that defendants acted in their economic self-interest are not enough.").

In addition, Palihapitiya himself invested millions of dollars in Virgin Galactic, a fact that cuts against any inference of scienter. SAC ¶ 281; *see Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 592 (S.D.N.Y. 2011) (no inference of scienter where defendant's "holdings . . . actually *increased* during that period"). At a minimum, the supposed desire to close the SPAC merger cannot plausibly establish a fraudulent motive with respect to Palihapitiya's November 20, 2019 statement to CNBC (SAC ¶ 93) because that statement was made nearly a month *after* the de-SPAC transaction closed on October 25, 2019. (*id.* ¶ 51. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (sales by outside director occurring before alleged misrepresentation or omission "fail to provide any inference of an intent to deceive the public"); *Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, No. 04 Civ. 3318 (LAP), 2005 WL 736217, at *3 (S.D.N.Y. Mar. 30, 2005), *aff'd*, 159 F. App'x 317 (2d Cir. 2005) ("As a matter of law, such allegations of irrational motive cannot support a fraud claim under Rule 9(b).").

Further, Palihapitiya's stock sales do not establish motive because they are not suspicious or unusual in timing or amount. *See Rothman v. Gregor*, 220 F.3d 81, 94 (2d Cir. 2000) (insider trading provides an inference of scienter only where trading is "unusual"); *In re Gentiva Sec. Litig.*, 971 F. Supp. 2d 305, 325 (E.D.N.Y. 2013) ("The fact that (1) Slusser was not required to publicly report his transactions in Gentiva common stock until he became the Chief Financial Officer and (2) a material portion of his shares were restricted and not vested does not absolve the Plaintiff of its obligation to make the requisite allegations regarding 'unusual or suspicious' trading activity."). Palihapitiya's first stock sale took place in December 2020, *over a year* after his last supposedly false statement on November 20, 2019, and nearly *a year-and-a-half* after the July 9, 2019 interview. These sales took place after the price had already dropped and, in the case of the December 2020 sale, right before the price rose substantially. *See* Ex. 3 at 1 (Virgin Galactic Stock Price History). That is not the type of "suspicious" timing that courts have found probative of scienter. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ("Though the proceeds of the alleged stock sales are, by any measure, considerable, more is required in order for these trades to give rise to a strong inference that [defendants] acted with an intent to deceive through their public statements during the [c]lass [p]eriod."); *Gildan Activewear*, 636 F. Supp. 2d at 270 ("Insider stock sales are unusual where the trading was in amounts dramatically out of line with prior trading practices *and at times calculated to maximize personal benefit from undisclosed inside information*." (emphasis added)).

And allegations about Palihapitiya's involvement in an unrelated lawsuit concerning someone else's alleged breach of fiduciary duty (SAC ¶ 361) provide no support for a finding of scienter here. *See Liu v. Intercept Pharms., Inc.*, No. 17-cv-7371 (LAK), 2020 WL 1489831, at *19 (S.D.N.Y. Mar. 26, 2020) (defendant's settlement in a different litigation alleging securities

26

fraud was not probative of scienter); *Glover v. DeLuca*, No. 2:03-CV-0288, 2006 WL 2850448, at *23 (W.D. Pa. Sept. 29, 2006) ("The Court declines to accept as evidence of scienter an allegation made in a separate lawsuit in another forum.").

**Branson.** Plaintiffs challenge four Branson statements: two in press releases related to the February 2019 test flight that pre-date the class period (SAC ¶ 298 (Feb. 22, 2019), 279 (July 9, 2019); one (which the Court previously rejected) in a October 28, 2019 interview that Virgin Galactic had a "tested and tried system that is performing well" (*id.* ¶ 295); and one in a July 11, 2021 call describing his flight to space as "flawless." *Id.* ¶ 314.

The Court previously found that Plaintiffs had sufficiently alleged scienter as to the pre-class period July 9, 2021 statement and the July 2021 statement. Nov. 7, 2022 Order at 46-47. However, there is ample reason for the Court to dismiss these challenged statements in the context of the SAC. *First*, as to the July 9, 2021 statement, its timing is dispositive: because the statement predates the alleged class period, the Court need not reach the question of scienter because Plaintiffs cannot recover for statements made outside of the class period. *See supra*, at Section III.A.1. In any event, Branson was not an officer or director at the time he made this or any other statement. Allegedly unusual stock sales by an officer or director give rise to an inference of scienter precisely *because* the insider is presumed to have access to insider information. *C.f. In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d 111, 173-74 (S.D.N.Y. 2021) (reasonably inferring that CFO was privy to insider information and traded on that information); *see also Tung v. Bristol-Myers Squibb Co.*, No. 1:18-cv-01611 (MKV), 2020 U.S. Dist. LEXIS 182053, at *21 (S.D.N.Y. Sept. 30, 2020) ("Unusual trades occur when an *executive* profits highly from sales, sells a large portion of his or her stock holdings, or trades drastically more stock during

27

the class period than he or she did before.") (emphasis added).  That is not a presumption that applies to Branson, and is demonstrably false based on Plaintiffs' own allegations.

*Second*, as to the July 2021 statement, the SAC undermines Plaintiffs' theory of fraud. Although Branson was aboard the July 11, 2021 flight, Plaintiffs plead no facts suggesting he was aware of Unity's brief deviation from approved FAA airspace or the ensuing FAA inquiry before the interview he gave on the day of the flight.  *See Ferrellgas Partners*, 2018 WL 2081859, at \*19 (plaintiffs must show "specific instances in which Defendants received information that was contrary to their public declarations" (citation omitted)).  To the contrary, Plaintiffs allege that ███, and that the FAA did not classify the event as a "launch incident" requiring a formal inquiry until August 11, 2021 (the day *after* Branson began selling stock).  SAC ¶ 250.  The internal documents that Plaintiffs incorporated into their Complaint further ████████████ ████████████ Ex. 10 (Aug. 11, 2021 FAA Email).  It is simply not plausible—and not alleged with particularity—that Branson, who was not (and has never been) an officer or director,[11] had any reason to question his subjective assessment of the flight as "flawless."  *See Ferrellgas Partners*, 2018 WL 2081859, at \*19.  In this context, Branson's stock sales between August 10-12, 2021, do not provide sufficient evidence of motive and opportunity to commit fraud.

Nor are any other stock sales by Branson probative of scienter.  This Court previously rejected three of the stock sales Plaintiffs recycle as evidence of scienter in the SAC—namely the May 2020, June 2020, and April 2021 sales, all of which occurred *after* a decline in stock price.

---

[11] Indeed, by the July 11, 2021, statement, Branson wasn't even a majority stockholder, reporting ownership of just 24% of the Company as of April 24, 2021.  Ex. 11 at 5-6 (Schedule 13D filed Apr. 12, 2021).

SAC ¶ 338; Nov. 7, 2022 Order at 45-46; Ex. 3 at 1 (Virgin Galactic Stock Price History). Plaintiffs offer no new allegations to upset that conclusion.  And while Plaintiffs now mention in passing a stock sale on November 11, 2021 (SAC ¶ 253), that sale occurred *after* the FAA's public announcement of the temporary "grounding" on September 2, 2021, and thus does not support scienter.  *See Aratana*, 315 F. Supp. 3d at 763-64 (holding defendants' stock sales not suspicious because they occurred after the relevant disclosure).

  ***Virgin Galactic.*** Plaintiffs likewise have not pleaded scienter as to Virgin Galactic. "Where a defendant is a corporation," scienter "requires pleading facts that give rise to 'a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.'"  *Jackson*, 960 F.3d at 98.  Here, Plaintiffs have not shown that Virgin Galactic acted with scienter because, as stated above, they have not established that any individual employee acted with scienter.  In its prior Order, the Court found that scienter had been established as to Virgin Galactic based on the allegations against Branson.  Nov. 7, 2022 Order at 51.  But Plaintiffs have not offered any reason why the alleged state of mind of Branson, who is not a director, officer, or employee of Virgin Galactic, can establish scienter on the part of the Company.  It cannot.  *C.f. Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 357 (S.D.N.Y. 2014) (finding no corporate scienter based upon majority stockholder's scienter).  Thus, even if Plaintiffs' allegations sufficed as to Branson (though as explained above, they do not), Virgin Galactic should still be dismissed from the case.

   **3.**   **Plaintiffs Have Not Met their Burden to Plead Loss Causation**

  Plaintiffs have not pleaded loss causation for a number of the alleged misstatements because they have not alleged corrective disclosures connected to those statements.  *See* SAC ¶¶ 277, 281, 283, 285, 287, 289, 291, 293, 295, 300, 302, 304, 306, 310, 312, 318, 320.  Loss causation is an essential element of Plaintiffs' case.  *See* 15 U.S.C. § 78u–4(b)(4).  "[T]o establish

29

loss causation, 'a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered,' *i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (emphasis omitted) (alteration in original) (citation omitted). This standard requires allegations that "support an inference that [defendants'] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud." Nov. 7, 2022 Order at 35 (alterations in original) (citing *Lentell*, 396 F.3d at 175). Plaintiffs allege an illogical scheme involving eight different corrective disclosures scattered across three years—many of which do not correct any of the preceding alleged misrepresentations and omissions. This Court has already significantly narrowed Plaintiffs' loss theories, and it should do so again here.

a.      **This Court Should (Again) Reject the Previously Rejected Corrective Disclosures**

In its prior Order, the Court rejected Plaintiffs' loss causation theories based on the December 14, 2020 aborted test flight and the October 15, 2021 delay of the Italian Air Force flight. *See* Nov. 7, 2022 Order at 38-39 ("the actionable misstatements" related to the December 14th aborted test flight "at best tangentially relate to" the risk that materialized during the aborted test flight—*i.e.*, that Unity's new digital control system caused EMI); *id.* at 39 (Plaintiffs had not shown how the delay of the Italian Air Force flight revealed any "undisclosed fact[s]" to investors in light of the February 1, 2021 *Washington Post* article, which reported that Eve's "pylon [wa]s falling apart" and, in any event, had not provided "facts sufficient to apportion the losses between the disclosed and concealed portions of the risk"). These alleged corrective disclosures fare no better the second time around. *See* SAC ¶¶ 211-218, 260-268.

30

b.    **The New Alleged Corrective Disclosures Fail**

Plaintiffs now allege new corrective disclosures, which they claim revealed information that should have been disclosed earlier or demonstrated the materialization of risks Defendants allegedly concealed from investors. *See id.* ¶ 222 (Colglazier's Feb. 25, 2021 admission that Unity "was built as our demonstrator vehicle"); *id.* ¶ 268 (Company's Jan. 13, 2022, announcement of an issuance of senior notes); *id.* ¶ 271 (Aug. 4, 2022 announcement of further delay of commercial operations). None of the new alleged corrective disclosures establishes loss causation as a pleading matter.

**First,** the statement that Unity was built as a "demonstrator vehicle" did not reveal any prior falsity because, as the Court already held, Plaintiffs' theory that "prototypes" cannot be used for commercial operations lacks any basis. Nov. 7, 2022 Order at 31-32. Even Plaintiffs acknowledge that Unity's use as a "demonstrator vehicle" is not inconsistent with its later use as a commercial vehicle. *See* SAC ¶ 319 (describing Virgin Galactic's model as a "prototype-to-operation program"). The statement that Unity served as a "demonstrator vehicle" was thus not a disclosure of the fact that Unity and Eve were incapable of future commercial use. Because Plaintiffs have not sufficiently pleaded that Colglazier's statement corrected any earlier alleged misstatement, they have not satisfied the loss causation element with respect to the statements challenged in SAC ¶¶ 277, 283, 285, 289, 291, 295, 300, 302, 310, 312.[12]

**Second,** Virgin Galactic's decision to issue senior notes on January 13, 2022, does not plausibly reveal that Unity and Eve "needed major repairs" or were incapable of "regular flights." *Id.* ¶ 270. The announcement reveals only that Virgin Galactic wanted to raise debt financing for

---

[12] At a minimum, this February 25, 2021 statement by Colglazier cannot serve as loss causation for statements that post-date it. *See* SAC ¶¶ 310, 312 (May 10, 2021 earnings call).

the continued development of its space flight program, a possibility the Company repeatedly disclosed throughout the class period. *See, e.g.*, Ex. 12 at 27 (Form 10-K filed Feb. 28, 2022). Moreover, this event post-dates a number of disclosures about ongoing modifications and repairs to Eve and Unity, including the information contained in the *Washington Post* article, as well as information about the deviation that occurred during the July 2021 flight. SAC ¶ 219. Plaintiffs do not even attempt to explain why the notes offering reveals alleged prior falsity or undisclosed risks related to Unity or Eve.

**Third**, Plaintiffs allege that the August 4, 2022 delay of commercial operations represented a manifestation of the risk that "Virgin Galactic did not have accurate engineering drawings of Unity or Eve." SAC ¶ 274. As an initial matter, Colglazier had earlier disclosed the need for modifications to Virgin Galactic's engineering drawings during a February 25, 2021 earnings call. And notwithstanding Plaintiffs' egregious cherry-picking of the August 4 statement, Colglazier in fact identified *multiple* factors that contributed to the delay, including general supply chain issues, the difficulty of the work, and labor shortages—none of which is the subject of any challenged statement. *Id.* ¶ 272; Ex. 13 at 12 (Aug. 4, 2022, Earnings Call Transcript).

Nothing about this supposed corrective disclosure supports Plaintiffs' allegation that Virgin Galactic's engineering drawings were so lacking as to make commercial operations impossible. Indeed, this statement could not plausibly disclose anything about Virgin Galactic's initial engineering drawings because the pylon (and the pylon's drawings) were all new. *See* SAC ¶¶ 320-321 (Eve's pylon was replaced prior to May 5, 2022, with a "new part" with a "more robust" structure and design). Plaintiffs do not challenge any statements regarding the state of the new drawings of Eve's new pylon. To the contrary, they focus on the poor quality of initial engineering drawings provided by Scaled Composites. *See id.* ¶¶ 148-201. But defects in Scaled

Composites' old drawings have nothing to do with the disclosure of a discrepancy in Virgin Galactic's *new* drawings of Eve's new pylon. And in any case, the Company repeatedly disclosed the possibility that issues may arise in the design and engineering of its space vehicles. *See generally* Ex 3 (Virgin Galactic Stock Price History). Plaintiffs therefore have not pleaded loss causation with respect to statements about the Company's engineering drawings. *See* SAC ¶¶ 277, 283, 285, 287, 291, 318.

c. **Plaintiffs Fail to Plead Loss Causation with Respect to Statements Regarding Upgrades and Improvements to Horizontal Stabilizers**

In its prior Order, the Court held that Plaintiffs failed to establish loss causation with respect to three statements allegedly mischaracterizing the changes to Unity's horizontal stabilizers as "upgrades" or 'improvements" rather than necessary repairs. Nov. 7, 2022 Order at 40; FAC ¶¶ 551, 553, 555. As to these statements, the Court held that the only allegation of loss "even slightly connected" to these statements was "the allegation that the delay in Branson's flight resulted from the destruction of Unity's prior stabilizers." Nov. 7, 2022 Order at 40. But the Court found that Plaintiffs had "not demonstrated how a statement that leads to the misleading impression that the replacement of Unity's stabilizers was voluntary is causally connected to the fact that materialized on August 4, 2020—that Virgin Galactic's testing and commercialization delays would be longer." *Id.* at 40.

Undeterred, Plaintiffs repeat their challenge to the November 5, 2020, statement, and attack three additional statements for which their theory of loss causation is similarly flawed. SAC ¶¶ 304, 306, 310, 318. With respect to each statement, Plaintiffs accuse Colglazier of concealing the "truth" that the planned modifications to Eve and Unity were not voluntary "enhancements," "upgrades," or "flight extension program[s]," but rather necessary repairs of key vehicle components. *Id.* ¶¶ 307, 311, 319. But even assuming these statements were misleading (and they

33

were not, *see supra* at Section III.A.1), as before, there is no corrective disclosure in the SAC connecting the allegedly concealed information about the involuntary nature of the vehicle modifications to the delays announced on August 4, 2020. Indeed, any delays, like the delay of Branson's flight, represent at most a materialization of the risk that the repairs would take longer than anticipated, not that the repairs were required as opposed to voluntary.[13]

### d. Plaintiffs Have Not Pleaded Loss Causation for Omissions Regarding Eve and Unity's "Cracks"

Plaintiffs fail to allege loss causation related to the alleged omissions regarding Eve and Unity cracking after flight testing. *See* SAC ¶ 277, 283, 285, 291, 312. Plaintiffs do not attribute any of the delays or other flight incidents to cracking. *See id.* ¶ 210 (attributing August 3, 2020 delay of Branson flight to horizontal stabilizers); *id.* ¶ 218 (attributing December 14, 2020 aborted test flight to EMI); *id.* ¶ 258 (suggesting deviation from landing cone resulted from pilot error); *id.* ¶ 267 (attributing delay of Italian Air Force flight to overstatements of Eve's "ruggedness" and lack of understanding about Eve's structure); *id.* ¶ 270 (attributing issuance of notes to need for "major repairs" and fact that Eve and Unity were not capable of regular flights); *id.* ¶ 272 (attributing August 4, 2022, delay of commercial operations to lack of accurate engineering drawings).[14] Because Plaintiffs have not identified any connection whatsoever between the alleged corrective disclosures and alleged misstatements, they have failed to plead loss causation regarding

---

[13] Given Plaintiffs' admission that the February 1, 2021 *Washington Post* article revealed that Virgin Galactic's space ships needed extensive repairs and modifications (SAC ¶¶ 219-221), any statements post-dating the article cannot be misleading for allegedly omitting the facts revealed in the article. *See id.* ¶¶ 310, 318.

[14] In its prior order, the Court found that the August 4, 2020 delay of Branson's trip to space represented materializations of the risks concealed by Defendants' statements about the February 2019 test flight. Nov. 7, 2022 Order at 38 ("[T]he 'something' concealed was not the abstract risk of delays but the destruction of a critical component of *Unity* that led to considerable delays in Virgin Galactic's testing and commercialization efforts."). But the delay of Branson's flight could not have been a materialization of the risks associated with the damage to Unity's horizontal stabilizers because the stabilizers had, at that point, been repaired, and Unity had already been launched on two successful test flights—one on May 1 2020, and one on June 25, 2020.

the alleged omissions about cracks developing in the Eve and Unity vehicles.  *See Lentell*, 396 F.3d at 173.

> **B.       Plaintiffs Do Not Plead a Viable Claim under Sections 20(a) or 20A**

Both a Section 20(a) claim for control person liability and a Section 20A claim for insider trading must have a predicate primary violation of the Exchange Act.  *See* 15 U.S.C. §78t; 15 U.S.C. § 78t-1(a).  Because Plaintiffs fail to state a claim under Section 10(b), the Court should dismiss Plaintiffs' claims under Sections 20(a) and 20A.  *See ATSI*, 493 F.3d at 108 (affirming dismissal of Section 20(a) claim for failure to plead a Section 10(b) claim); *Gordon v. Sonar Cap. Mgmt. LLC*, 962 F. Supp. 2d 525, 528 (S.D.N.Y. 2013) (same).  In any case, Plaintiffs have not pleaded facts to show that Branson was a "control person" within the meaning of Section 20(a), or that either Palihapitiya or Branson controlled another Defendant with respect to any alleged wrongdoing.

As Plaintiffs acknowledge, Branson was a shareholder, not a director or board member. And Plaintiffs have not pleaded facts sufficient to show that Branson as an outsider had "control" over the corporate defendants in this case.  *See In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740-41 (S.D.N.Y. 2015) (rejecting allegations of control based on defendant's status as the company's "largest shareholder"); *id.* at 740 ("Substantial influence is not the same as actual control" and while "the ability to appoint a quarter of [the company's] board and owning about a quarter of the company's common stock afforded [defendant] a great deal of sway over [the company], [] that alone does not rise to the level of actual control."); *In re Deutsche Telekom AG Sec. Litig.*, 00 CIV 9475 SHS, 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002) (rejecting allegations of control based solely on "stock ownership" and alleged "access to copies of the complained of statements prior to and/or shortly after [they] were issued").  Relatedly, as the Court already concluded, no other defendant, including Palihapitiya, "had control over Branson during

35

the class period." Nov. 7, 2022 Order at 52. And Plaintiffs have not alleged any facts giving rise to the inference that Palihapitiya controlled Whitesides or Colglazier, or that either Palihapitiya or Branson was involved in any alleged misstatement by Whitesides, Colglazier, or anyone else at Virgin Galactic. Plaintiffs' Section 20(a) claims should therefore be dismissed for this reason as well.

Plaintiffs' Section 20A insider trading claim against Branson, Palihapitiya, and Virgin Galactic independently falls short. Plaintiffs do not identify what nonpublic information these Defendants possessed and when. Instead, they allege in conclusory fashion that "defendants Branson and Palihapitiya were in possession of material, non-public information concerning Virgin Galactic." SAC ¶ 399. This is wholly insufficient to support their claim. *See In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 256 (S.D.N.Y. 2007) (plaintiff's "conclusory allegations" failed to establish that defendant "was privy to any material, nonpublic information concerning the backdating scheme" required to sustain 20A claim).[15]

### C. Plaintiffs Have Failed To State a Claim Against Branson, Palihapitiya, or Virgin Galactic for Insider Trading in Violation of Section 10(b)

The Court should likewise dismiss Plaintiffs' newfound Section 10(b) insider trading claim against Branson, Palihapitiya, and Virgin Galactic. Like Plaintiffs' primary Section 10(b) claim, this claim too requires a showing of scienter. *See SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012) (Section 10(b) insider trading requires scienter). And as explained above, Plaintiffs have not alleged facts sufficient to support this element. *See supra* at Section III.A.2. In any case, Plaintiffs

---

[15] In addition, as this Court held before, even if Defendants were liable, they would be liable only to plaintiffs trading contemporaneously with them—not to plaintiffs throughout the entire class period or to plaintiffs trading outside the trading window or within three trading days. *See* Nov. 7, 2022 Order at 53 (limiting Plaintiffs' Section 20A claim to trades occurring during the trading window or within three trading days). The SAC nevertheless attempts yet again to expand this window of liability. *See, e.g.*, SAC ¶ 402 (alleging that April 21, 2021, trades are contemporaneous with trades occurring on April 12-14, 2021).

36

make no effort to allege either that Branson (a shareholder) was a "corporate insider" or that he received material non-public information as part of some other fiduciary relationship or breach of fiduciary duty.

## IV. CONCLUSION

For the above-stated reasons, Defendants respectfully request that the Court to dismiss the Complaint, with prejudice.


Dated:   February 24, 2023                         Respectfully submitted,

                                                   */s/ Kevin McDonough*

                                                   LATHAM & WATKINS LLP

                                                   Kevin McDonough
                                                   1271 Avenue of the Americas
                                                   New York, NY 10020
                                                   Telephone: (212) 906-1246
                                                   Facsimile: (212) 751-4864
                                                   Email: kevin.mcdonough@lw.com


                                                   Michele D. Johnson (*pro hac vice*)
                                                   Kristin N. Murphy (*pro hac vice*)
                                                   650 Town Center Drive, 20th Floor
                                                   Costa Mesa, CA 92626
                                                   Telephone: (714) 540-1235
                                                   Facsimile: (714) 755-8290
                                                   Email: michele.johnson@lw.com
                                                   kristin.murphy@lw.com


                                                   *Attorneys for Defendants*

37