# EXHIBIT 2

As filed with the Securities and Exchange Commission on August 7, 2019

Registration No. 333-

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

**Washington, D.C. 20549**

## FORM S-4

## REGISTRATION STATEMENT

*UNDER*
*THE SECURITIES ACT OF 1933*

# Social Capital Hedosophia Holdings Corp. *

**(Exact Name of Registrant as Specified in Its Charter)**

| **Cayman Islands*** | **4789** | **98-1366046** |
|---|---|---|
| **(State or other jurisdiction of incorporation or organization)** | **(Primary Standard Industrial Classification Code Number)** | **(I.R.S. Employer Identification Number)** |

**120 Hawthorne Avenue**
**Palo Alto, California 94301**
**(650) 521-9007**

**(Address, including zip code, and telephone number, including area code, of Registrant's principal executive offices)**

**Chamath Palihapitiya**
**Chief Executive Officer**
**Social Capital Hedosophia Holdings Corp.**
**120 Hawthorne Avenue**
**Palo Alto, California 94301**
**(650) 521-9007**

**(Name, address, including zip code, and telephone number, including area code, of agent for service)**

*Copies to:*

| | | |
|---|---|---|
| **Howard L. Ellin** | **Matthew Gardner** | **Justin G. Hamill** |
| **Christopher M. Barlow** | **Michael Johns** | **Shayne Kennedy** |
| **Skadden, Arps, Slate, Meagher &** | **Michael Lockwood** | **Josh Dubofsky** |
| **Flom LLP** | **Maples and Calder** | **Charles K. Ruck** |
| **Four Times Square** | **PO Box 309, Ugland House,** | **Latham & Watkins LLP** |
| **New York, NY 10036** | **Grand Cayman, KY1-1104,** | **885 Third Avenue** |
| **(212) 735-3000** | **Cayman Islands** | **New York, NY 10022** |
| | **(345) 949-8066** | **(212) 906-1200** |

**Approximate date of commencement of proposed sale of the securities to the public:** As soon as practicable after this registration statement is declared effective and all other conditions to the business combination described in the enclosed proxy statement/prospectus have been satisfied or waived.

If the securities being registered on this Form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box:  ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering:  ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering:  ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer", "accelerated filer", "smaller reporting company", and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☒ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☒ |
| | | Emerging growth company | ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 7(a)(2)(B) of the Securities Act.  ☐

If applicable, place an X in the box to designate the appropriate rule provision relied upon in conducting this transaction:

Exchange Act Rule 13e-4(i) (Cross-Border Issuer Tender Offer)  ☐

Exchange Act Rule 14d-l(d) (Cross-Border Third-Party Tender Offer)  ☐

public shareholder, alone or acting in concert or as a group, seeks to redeem more than 15% of the public shares, then any such shares in excess of that 15% limit would not be redeemed for cash.

The Sponsor, and each officer and director of SCH have agreed to, among other things, vote in favor of the Merger Agreement and the transactions contemplated thereby, and to waive their redemption rights in connection with the consummation of the Business Combination with respect to any ordinary shares held by them, in each case, subject to the terms and conditions contemplated by the Sponsor Support Agreement, dated as of July 9, 2019, a copy of which is attached as Annex D to this proxy statement/prospectus (the "Sponsor Support Agreement"). The ordinary shares held by the Sponsor will be excluded from the pro rata calculation used to determine the per-share redemption price. As of the date of the accompanying proxy statement/prospectus, the Sponsor owns 20% of the issued and outstanding ordinary shares.

The Merger Agreement provides that the obligations of VG to consummate the Mergers are conditioned on, among other things, that as of the Closing, the amount of cash available in the trust account, after deducting the amount required to satisfy SCH's obligations to its shareholders (if any) that exercise their rights to redeem their public shares pursuant to the Cayman Constitutional Documents ("Trust Amount"), is at least equal to the sum of (x) $400.0 million plus (y) if applicable, an aggregate of approximately $24.2 million of deferred underwriting commissions being held in the trust account (the "Minimum Available Cash Amount"). However, if the Trust Amount as of the Closing is less than the Minimum Available Cash Amount, then V10 and its affiliates will have the right (but not the obligation) to purchase (or seek a third party to purchase) additional shares of VGH, Inc. common stock at a price per share of $10.00 (the "Additional Holder Equity Amount") up to the Minimum Available Cash Amount less the amount of the aggregate purchase price paid to SCH by Mr. Palihapitiya in any Primary Purchase (the "Investment Amount"). If the Trust Amount when added to the Additional Holder Equity Amount and the Investment Amount (such aggregate amount, the "Available Cash") is equal to or greater than the Minimum Available Cash Amount, then this condition will be deemed to have been satisfied (such condition, the "Minimum Cash Condition"). This condition is for the sole benefit of VG except that this condition may not be waived by VG if the Trust Amount is less than $200.0 million, provided that V10 and its affiliates will have the right (but not the obligation) to purchase (or seek a third party to purchase) additional shares of VGH, Inc. common stock at a price per share of $10.00 in an aggregate amount such that the Available Cash is, at or immediately prior to the Closing, equal to at least $200.0 million after giving effect to such purchases. If such condition is not met, and such condition is not or cannot be waived under the terms of the Merger Agreement, then the Merger Agreement could terminate and the proposed Business Combination may not be consummated. In addition, pursuant to the Cayman Constitutional Documents, in no event will SCH redeem public shares in an amount that would cause VGH, Inc.'s net tangible assets (as determined in accordance with Rule 3a51-1(g)(1) of the Exchange Act) to be less than $5,000,001.

The Merger Agreement is also subject to the satisfaction or waiver of certain other closing conditions as described in the accompanying proxy statement/prospectus. There can be no assurance that the parties to the Merger Agreement would waive any such provision of the Merger Agreement.

SCH is providing the accompanying proxy statement/prospectus and accompanying proxy card to SCH's shareholders in connection with the solicitation of proxies to be voted at the extraordinary general meeting and at any adjournments of the extraordinary general meeting. Information about the extraordinary general meeting, the Business Combination and other related business to be considered by SCH's shareholders at the extraordinary general meeting is included in the accompanying proxy statement/prospectus. **Whether or not you plan to attend the extraordinary general meeting, all of SCH's shareholders are urged to read the accompanying proxy statement/prospectus, including the Annexes and other documents referred to therein, carefully and in their entirety. You should also carefully consider the risk factors described in " *Risk Factors* " beginning on page 33 of this** proxy statement/prospectus.

**After careful consideration, the board of directors of SCH has unanimously approved the Business Combination and unanimously recommends that shareholders vote "FOR" adoption of the Merger**