# EXHIBIT 6

DEF 14A 1 spce4040081-def14a.htm DEFINITIVE PROXY STATEMENT

**Table of Contents**

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of the
Securities Exchange Act of 1934 (Amendment No. )

☑ Filed by the Registrant

☐ Filed by a party other than the Registrant

CHECK THE APPROPRIATE BOX:

| | |
|---|---|
| ☐ | Preliminary Proxy Statement |
| ☐ | Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2)) |
| ☑ | Definitive Proxy Statement |
| ☐ | Definitive Additional Materials |
| ☐ | Soliciting Material under §240.14a-12 |



## Virgin Galactic Holdings, Inc.

(Name of Registrant as Specified In Its Charter)
(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

PAYMENT OF FILING FEE (CHECK ALL BOXES THAT APPLY):

| | |
|---|---|
| ☑ | No fee required |
| ☐ | Fee paid previously with preliminary materials |
| ☐ | Fee computed on table in exhibit required by Item 25(b) per Exchange Act Rules 14a-6(i)(1) and 0-11 |

represent the one decreased designee and Mr. Palihapitiya caused Mr. Bain to offer to tender his resignation from the Board. The Board formed a subcommittee consisting of Dr. Austin, Ms. Jonas and Mr. West to consider the offers to resign and make a recommendation to the Board to accept or deny such offers to resign. The subcommittee of the Board met and considered the business skills and experience of the directors, as well as the total composition of the Board, and recommended that the Board not accept the offers to resign. Following a deliberation, and taking into consideration the recommendation of the subcommittee, the Board determined to not accept such offers to resign.

VIL currently has the right to designate two directors. Messrs. Kreeger and Lovell serve as the VIL designees, and Dr. Austin serves as the Other designee. Dr. Ryans, a former director and an Other designee, stepped down from the Board in February 2021 and, in connection with this departure, the Board identified and recommended Mr. West as a director nominee. In June 2021, the Board increased the size of the Board to nine directors and identified and recommended Ms. Jonas as a director nominee. In December 2021, the Board increased its size to ten directors and identified and recommended Ms. Sigur as a director nominee. In February 2022, Mr. Palihapitiya resigned as Chair and member of the Board, and the Board appointed Mr. Lovell as interim Chair of the Board until such time that a permanent Chair of the Board has been identified and appointed. Mr. Colglazier became the CEO designee in connection with his appointment as the Company's Chief Executive Officer in July 2020.

Pursuant to the terms of the Stockholders' Agreement, the VG designees, and the Other designees are only able to be removed with or without cause at the request of VIL. In all other cases and at any other time, directors are only able to be removed by the affirmative vote of at least a majority of the voting power of our common stock. Pursuant to the terms of the Stockholders' Agreement, the CEO designee will be removed at such time when the individual ceases to serve as Chief Executive Officer of the Company.

In addition, under the amended and restated trademark license agreement (the "Amended TMLA"), to the extent the Virgin Group does not otherwise have a right to place a director on our Board of Directors, such as VIL's right to designate the VG designees under the Stockholders' Agreement, we have agreed to provide Virgin Enterprises Limited ("VEL") with the right to appoint one director to our Board of Directors (provided the designee is qualified to serve on the Board under all applicable corporate governance policies and regulatory and New York Stock Exchange ("NYSE") requirements).

# Director Nomination Process

## Criteria for Consideration

The Nominating and Corporate Governance Committee is responsible for recommending candidates to serve on the Board and its committees. In considering whether to recommend any particular candidate to serve on the Board or its committees or for inclusion in the Board's slate of recommended director nominees for election at the annual meeting of stockholders, the Nominating and Corporate Governance Committee considers the criteria set forth in our Corporate Governance Guidelines. Specifically, the Nominating and Corporate Governance Committee considers candidates who have a high level of personal and professional integrity, strong ethics and values and the ability to make mature business judgments. The Nominating and Corporate Governance Committee may consider any factors they deem relevant, including, but not limited to: the candidate's experience in corporate management, such as serving as an officer or former officer of a publicly held company; the candidate's experience as a board member of another publicly held company; the candidate's professional and academic experience relevant to the Company's industry; the strength of the candidate's leadership skills; relevant social policy concerns, the candidate's experience in finance and accounting and/or executive compensation practices and/or governance; whether the candidate has the time required for preparation, participation and attendance at Board meetings and committee meetings, if applicable; and the candidate's diversity of background and perspective, including, but not limited to, with respect to age, gender, race, place of residence and specialized experience, gender identification, self-identified sexual orientation, identification as an underrepresented minority or disability; and any other relevant qualifications, attributes or skills. In determining whether to recommend a director for re-election, the Nominating and Corporate Governance Committee may also consider the director's tenure, performance, past attendance at meetings and participation in and contributions to the activities of the Board and its committees, as well as his or her service on other boards and committees thereof.

**Table of Contents**

# Security Ownership of Certain Beneficial Owners and Management

The following table sets forth information with respect to the beneficial ownership of our common stock as of April 14, 2022 for:

- each person who is known to be the beneficial owner of more than 5% of shares of our outstanding common stock;
- each of our current named executive officers and directors; and
- all of our executive officers and directors as a group.

Beneficial ownership is determined according to the rules of the SEC, which generally provide that a person has beneficial ownership of a security if he, she or it possesses sole or shared voting or investment power over that security, including options and warrants that are currently exercisable or exercisable within 60 days. The beneficial ownership of our voting securities is based on 258,521,776 shares of our common stock issued and outstanding as of April 14, 2022. Each share of our common stock is entitled to one vote on any matter presented to stockholders. Unless otherwise indicated, the Company believes that all persons named in the table below have sole voting and investment power with respect to the voting securities beneficially owned by them.

| Name of Beneficial Owner[1] | Shares Beneficially Owned | |
|---|---|---|
| **Holders of More Than 5%** | Shares | % of Ownership |
| **Virgin Investments Limited[2]** | 30,745,494 | 11.9% |
| **The Vanguard Group[3]** | 16,961,503 | 6.6% |
| **Directors and Named Executive Officers** | | |
| **Evan Lovell** | — | — |
| **Wanda Austin[4]** | 29,625 | * |
| **Adam Bain[5]** | 1,200,000 | * |
| **Tina Jonas[6]** | 6,173 | * |
| **Craig Kreeger[7]** | 29,625 | * |
| **George Mattson[8]** | 29,625 | * |
| **Wanda Sigur** | — | — |
| **W. Gilbert West[9]** | 5,893 | * |
| **Michael Colglazier[10]** | 366,100 | * |
| **Doug Ahrens[11]** | 17,387 | * |
| **Jonathan Campagna[12]** | 223,942 | * |
| **Swami Iyer** | 27,114 | * |
| **Michelle Kley[13]** | 166,584 | * |
| **Mike Moses[14]** | 516,319 | * |
| All Directors and Executive Officers as a Group (11 individuals)[15] | 1,851,012 | * |

\*    Less than one percent

(1)    Unless otherwise noted, the business address of each of those listed in the table above is 1700 Flight Way, Tustin, California 92782.

(2)    VIL is a company limited by shares under the laws of the British Virgin Islands. VIL is wholly owned by Virgin Group Investments LLC, whose sole managing member is Corvina Holdings Limited, which is wholly owned by Virgin Group Holdings. Virgin Group Holdings is owned by Sir Richard Branson, and he has the ability to appoint and remove the management of Virgin Group Holdings and, as such, may indirectly control the decisions of Virgin Group Holdings regarding the voting and disposition of securities held by Virgin Group Holdings. Therefore, Sir Richard Branson may be deemed to have indirect beneficial ownership of the shares held by Virgin Group Holdings. The address of VIL, Virgin Group Holdings Limited, and Corvina Holdings Limited is Craigmuir Chambers, Road Town, Tortola, VG1110, British Virgin Islands. The address of Sir Richard Branson is Branson Villa (Necker Beach Estate), Necker Island, VG 1150, British Virgin Islands.

(3)    The information is based solely on a Schedule 13G filed by The Vanguard Group on February 9, 2022 (the "Vanguard 13G"). According to the Vanguard 13G, includes sole voting power with respect to 0 shares, shared voting power with respect to 105,483 shares, sole dispositive power with respect to 16,693,882 shares, and shared dispositive power with respect to 267,621 shares

**Table of Contents**

# Certain Transactions with Related Persons

## Policies and Procedures for Related Party Transactions

Our Board of Directors has adopted a written related person transaction policy setting forth the policies and procedures for the review and approval or ratification of related person transactions. This policy covers, with certain exceptions set forth in Item 404(a) of Regulation S-K, any transaction, arrangement or relationship, or any series of similar transactions, arrangements or relationships, in which we were or are to be a participant, where the amount involved exceeds $120,000 in any fiscal year and a related person had, has or will have a direct or indirect material interest. In reviewing and approving any such transactions, our Audit Committee is tasked to consider all relevant facts and circumstances, including, but not limited to, whether the transaction is on terms comparable to those that could be obtained on terms no less favorable than in arm's length dealings with an unrelated third party and the extent of the related person's interest in the transaction.

## Summary of Related-Person Transactions

### Stockholders Agreement

In connection with the Closing, we entered into a stockholders' agreement (the "Stockholders' Agreement") with Vieco US, the Sponsor and Chamath Palihapitiya. In March 2020, Vieco US distributed its shares of our common stock to Vieco 10 Limited ("Vieco 10") and, in connection with such distribution, Vieco 10 executed a joinder to the Stockholders' Agreement and to the Registration Rights Agreement described below. On July 30, 2020, Vieco 10 subsequently distributed its shares of our common stock to VIL and a third party and, in connection with such distribution, VIL and the third party executed a joinder to the Stockholders' Agreement and the Registration Rights Agreement. As of the Closing, SCH Sponsor Corp. ("Sponsor") and Chamath Palihapitiya were party to the Stockholders' Agreement whereby Mr. Palihapitiya had certain rights under the terms of the Stockholders' Agreement, including the right to designate directors for election to the Board of Directors. As of April 27, 2022, neither Sponsor nor Mr. Palihapitiya are party to the Stockholders' Agreement and have no rights or obligations thereunder.

#### Board Composition

Under the Stockholders' Agreement, VIL has the right to designate 2 VG designees for as long as VIL and the third party beneficially own 28,697,610 or more shares of our common stock, which represents 25% of the number of shares beneficially owned by Vieco US immediately following the Closing and related transactions, provided that when such beneficial ownership falls below (x) 28,697,610 shares, VIL will have the right to designate only 1 director and (z) 11,479,044 shares, VIL will not have the right to designate any directors. For purposes of determining the number of shares beneficially owned by VIL and the extent of VIL's nomination and consent rights under the Stockholders' Agreement, the shares distributed to the third party are deemed to be held by VIL until such time as the third party transfers or sells such shares, subject to certain exceptions, as contemplated by the Stockholders' Agreement.

Under the terms of the Stockholders' Agreement, two directors, each of whom qualify as an "independent director" under stock exchange regulations applicable to us and one of whom must qualify as an "Audit Committee financial expert" as defined under the rules of the SEC, were appointed in accordance with the Stockholders' Agreement and, thereafter, will be as determined by the Board of Directors. In addition, under the terms of the Stockholders' Agreement, the individual serving as our Chief Executive Officer was appointed in accordance with the Stockholders' Agreement to our Board of Directors and will, going forward, be determined by what individual holds the title of our Chief Executive Officer.