**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SHANE LAVIN, Individually and On Behalf of All Others Similarly Situated,

               Plaintiff,

VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, JON CAMPAGNA,

               Defendants.

Case No.: 1:21-cv-03070-ARR-TAM

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**LATHAM & WATKINS LLP**

Michele D. Johnson (*pro hac vice*)
Kristin N. Murphy (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: michele.johnson@lw.com
kristin.murphy@lw.com

Kevin M. McDonough
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1246
Facsimile: (212) 751-4864
Email: kevin.mcdonough@lw.com

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
Email: colleen.smith@lw.com

*Attorneys for Defendants*

May 5, 2023

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   ARGUMENT ...........................................................................................................3

      A.    Challenged Statements Made Before October 25, 2019, Should Be
            Dismissed .......................................................................................................3

            1.    Pre-Class Period Statements Are Not Actionable......................................3

            2.    Plaintiffs Lack Standing To Challenge Statements Made Before
                  Virgin Galactic Became Publicly Traded ....................................................5

      B.    Plaintiffs Do Not Sufficiently Allege Falsity..............................................6

            1.    The Statements This Court Previously Dismissed On Falsity
                  Grounds Should Be Dismissed Once Again ................................................6

            2.    Plaintiffs' Challenges To The Additional Statements Likewise Fail...........7

      C.    Plaintiffs Fail to Allege Scienter................................................................15

      D.    Plaintiffs' Loss Causation Arguments Fail ................................................24

            1.    The Previously Rejected Corrective Disclosures Should Be
                  Dismissed Again ......................................................................................24

            2.    The New Corrective Disclosures Should Be Rejected .............................26

      E.    Plaintiffs Do Not Plead a Viable Claim Under Section 20(a) .............................29

      F.    Plaintiffs' Insider Trading Claims Under Section 20A And Section 10(b)
            Fail ..............................................................................................................29

III.  CONCLUSION.......................................................................................................31

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
   456 U.S. 556 (1982).................................................................................................23

*American Fed. Grp., Ltd. v. Rothenberg*,
   136 F.3d 897 (2d Cir. 1998).......................................................................................5

*In re Aphria, Inc. Sec. Litig.*,
   2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020)..........................................................20

*Behrendsen v. Yangstze River Port & Logistics Ltd.*,
   2021 WL 2646353 (E.D.N.Y. June 28, 2021) ...........................................................23

*Berk v. St. Vincent's Hosp. & Med. Ctr.*,
   380 F. Supp. 2d 334 (S.D.N.Y. 2005)........................................................................28

*Bishins v. CleanSpark, Inc.*,
   No. 21 CV 511 (LAP), 2023 WL 112558 (S.D.N.Y. Jan. 5, 2023)...........................14

*In Re Carlotz, Inc. Sec. Litig.*,
   2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) .............................................................5

*In re Chembio Diagnostics Inc. Sec. Litig.*,
   586 F. Supp. 3d 199, 219-22 (E.D.N.Y. 2022)....................................................21, 22

*ECA & Loc, 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009).......................................................................................18

*Exkae Ltd. v. Domo, Inc.*,
   2020 WL 7352735 (D. Utah Dec. 15, 2020)..............................................................14

*Fidel v. Rampell*,
   2005 WL 5587454 (S.D. Fla. Mar. 29, 2005).............................................................19

*GAMCO Investors, Inc. v. Vivendi, S.A.*,
   917 F. Supp. 2d 246 (S.D.N.Y. 2013)........................................................................26

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000)........................................................................................26

*Garnett v. RLX Tech. Inc.*,
   2022 WL 4632323 (S.D.N.Y. Sept. 30, 2022).............................................................9

*In re Garrett Motion Sec. Litig.*,
   2022 U.S. Dist. LEXIS 60843 (S.D.N.Y. Mar. 31, 2022) .......................................................4

*In re Gilat Satellite Networks, Ltd.*,
   2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ....................................................................3, 4

*Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   317 F.3d 16 (1st Cir. 2003) ...............................................................................................23

*Ill. State Bd. of Inv. v. Authentidate Holding Corp.*,
   369 F. App'x 260 (2d Cir. 2010) .........................................................................................8

*In re Int'l Bus. Machs. Corp. Sec. Litig.*,
   163 F.3d 102 (2d Cir. 1998)............................................................................................3, 4

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005)................................................................................23

*Kleinman v. Elan Corp.*,
   706 F.3d 145 (2d Cir. 2013)...............................................................................................9

*Lea v. TAL Educ. Grp.*,
   837 F. App'x 20 (2d Cir. 2020) ....................................................................................21, 22

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)..............................................................................................26

*Livingston v. Cablevision Sys. Corp.*,
   966 F. Supp. 2d 208 (E.D.N.Y. 2013) ...............................................................................11

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
   2000 U.S. Dist. LEXIS 4617 (S.D.N.Y. Apr. 6, 2000).........................................................5

*Local No. 38 IBEW Pension Fund v. Am. Express Co.*,
   724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010) .......................................................................18

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
   2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ......................................................................20

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)........................................................................................24, 28

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014)...................................................................................8

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).........................................................................................................22

*Meisel v. Grunberg*,
651 F. Supp. 2d 98 (S.D.N.Y. 2009)........................................................................22

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)....................................................................................13

*Moshell v. Sasol Ltd.*,
481 F. Supp. 3d 280 (S.D.N.Y. 2020).....................................................................13

*Nguyen v. New Link Genetics Corp.*,
297 F. Supp. 3d 472 (S.D.N.Y. 2018).....................................................................27

*In re NovaGold Res., Inc. Sec. Litig.*,
629 F. Supp. 2d 272 (S.D.N.Y. 2009).....................................................................15

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)....................................................................................20

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
58 F.4th 195 (5th Cir. 2023) ...................................................................................12

*In re Omnicom Group, Inc. Sec. Litig.*,
541 F. Supp. 2d 546 (S.D.N.Y. 2008).....................................................................27

*In re Plug Power, Inc. Sec. Litig.*,
2022 U.S. Dist. LEXIS 178635 (S.D.N.Y. Sept. 29, 2022)....................................19

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*,
694 F. Supp. 2d 287 (S.D.N.Y. 2010).....................................................................16

*Precedo Cap. Grp. Inc. v. Twitter Inc.*,
33 F. Supp. 3d 245 (S.D.N.Y. 2014).......................................................................22

*Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015)....................................................................................20

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)......................................................................................18

*Schwab v. E\*Trade Fin. Corp.*,
285 F. Supp. 3d 745 (S.D.N.Y.), *aff'd*, 752 F. App'x 56 (2d Cir. 2018)................16

*Sheet Metal Workers Loc. 32 Pension Fund v. Terex Corp.*,
2018 WL 1587457 (D. Conn. Mar. 31, 2018) ........................................................25

*Smith v. Foster*,
168 F. Supp. 3d 654 (S.D.N.Y. 2016)........................................................................9

*Steginsky v. Xcelera Inc.*,
741 F.3d 365 (2d Cir. 2014).................................................................................................30

*Stevelman v. Alias Rsch, Inc.*,
174 F.3d 79 (2d Cir. 1999)...................................................................................................15

*In re The Warnaco Grp., Inc. Opinion Sec. Litig. (II)*,
388 F. Supp. 2d 307 (S.D.N.Y. 2005)....................................................................................4

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
2022 WL 4085677 (S.D.N.Y. Sept. 2, 2022).........................................................................13

*U.S. v. Hoskins*,
2020 WL 914302 (D. Conn. Feb. 26, 2020), *aff'd*, 44 F.4th 140 (2d Cir. 2022) ....................22

*U.S. v. O'Hagan*,
521 U.S. 642, 117 S. Ct. 2199 (1997).................................................................................30

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016).................................................................................................12

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)...................................................................................................4

## STATUTES

15 U.S.C.
§ 78u-5(i)(1).........................................................................................................................12
§ 78u-5(c).........................................................................................................................12, 13

v

## I.    PRELIMINARY STATEMENT

After the Court dismissed 31 of the 35 statements challenged in the First Amended Complaint ("FAC"), Plaintiffs again challenged in their Second Amended Complaint ("SAC") seven of those same dismissed statements, plus 20 additional statements. Defendants' Motion demonstrated that all of the challenged statements in the SAC suffer from the same deficiencies the Court identified in its Order dismissing most of the FAC. In response, Plaintiffs seek to recast their theory of fraud by claiming that whereas the FAC accused Defendants of misleading investors about the "safety" of Virgin Galactic's commercial spaceflight program, the SAC accused Defendants of overstating the "progress" of that program. But Plaintiffs' recast theory is the same one the Court substantially rejected, and the SAC should be dismissed in its entirety.

First, in response to Defendants' citations to settled law that pre-Class Period statements are not actionable, Plaintiffs argue that a statement made after-hours the day before the start of the Class Period is not actually before the Class Period, and that a document hyper-linking back to a pre-Class Period press release brings a statement from that press release into the Class Period. No authority supports Plaintiffs' positions, and their challenges to statements made before July 10, 2019 (the first day of the Class Period) should be rejected. Moreover, new law from this Circuit requires dismissal of the challenged statements that were made before October 25, 2019, when Virgin Galactic went public via its de-SPAC with Social Capital ("SCH"), because Plaintiffs did not hold stock in the pre-merger, private Virgin Galactic company and thus they lack standing to challenge statements made by or about the private company.

Second, regardless of whether Plaintiffs' recast theory relates to the "progress" of Virgin Galactic's space program rather than its "safety," the SAC fails to allege falsity. Plaintiffs' claim that the Company misrepresented how far along it was in its unprecedented, one-of-a-kind

1

commercial space flight program, and how much time was left before operations could begin, has already been largely rejected under bedrock legal doctrines.  Nov. 7, 2022 Order at 20-23, 26-32.  Statements challenged for the first time in the SAC similarly are protected under the PSLRA's safe harbor, are puffery, or are not misleading in context—specifically given the robust risk warnings and other disclosures in Virgin Galactic's public filings throughout the Class Period.

Third, Plaintiffs' attempt to plead scienter against Branson and the Company fails—as does their attempt to overcome the Court's prior dismissal of individual defendants Palihapitiya, Colglazier, and Whitesides.  The Opposition raises new theories as to Branson's and the Company's scienter, including that Branson was personally in the cockpit during the July 11 flight and that Branson was an agent of the Company despite not being an officer or director.  Those theories are not pled in the SAC, and do not support scienter in any event.  As to Palihapitiya, Plaintiffs speculate that he was motivated to lie because he received founder's shares in the de-SPAC transaction.  But generalized allegations of motivation to complete a corporate transaction such as a de-SPAC are insufficient to support scienter, and in any event, no particularized allegations in the SAC support that Palihapitiya had reason to know that his statements of generalized optimism were misleading, or that he otherwise acted with fraudulent intent.  As to Colglazier and Whitesides, Plaintiffs suggest that their receipt of Board materials about Unity's and Eve's repairs and maintenance supports an inference of scienter.  But the SAC does not identify any contradiction between the information in those materials and the challenged statements Colglazier and Whitesides made.

Finally, the Opposition offers no reason to disturb this Court's prior ruling that the December 14, 2020 and October 14, 2021 alleged corrective disclosures were insufficient to plead loss causation.  As to the SAC's new alleged corrective disclosures, they too are unconnected to

2

the alleged misstatements and omissions.  Plaintiffs claim that a February 25, 2021 statement that Unity was a "demonstrator vehicle," that had not yet been flown consistently, somehow corrected a September 5, 2019 prospectus predicting future Unity flight rates.  The two statements are not inconsistent.  Plaintiffs also claim that the Company's January 13, 2022 announcement of a convertible notes offering was a materialization of the risk concealed by a statement made 15 months earlier "that Eve was complete and ready for commercialization."  Opp. at 37.  The Company repeatedly disclosed not only the risk that it would need to raise additional funds to support its space program, but also that Eve and Unity needed additional repairs.  Lastly, Plaintiffs cannot save the alleged August 4, 2022 corrective disclosure by asserting new and unpled facts in their Opposition.  On its face, the August 2022 statement about updating engineering drawings is, at best, only remotely connected to the earlier statements describing the spaceships as "built" or "designed" for commercial service.  And as the Court has already found, the risk of delays from repairs taking longer than expected was well known to investors by this point.

## II.    ARGUMENT

### A.    Challenged Statements Made Before October 25, 2019, Should Be Dismissed

#### 1.    Pre-Class Period Statements Are Not Actionable

Under Second Circuit law, Plaintiffs cannot challenge statements made outside of the Class Period.  *See In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (rejecting challenged statement made one day prior to the class period); Motion to Dismiss ("Mot.") at 11.  Plaintiffs nonetheless argue that they may rely on two pre-Class Period statements in this case.

First, Plaintiffs argue that one of the statements (SAC ¶ 279) can be considered because it was "filed *after* the close of trading on July 9, 2019," *i.e.*, the day before the alleged Class Period begins.  Opp. at 12 (emphasis in original).  The only case Plaintiffs cite for this proposition—*In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)—is a settlement

approval decision that simply describes in the *background section* the parties' contentions that the class period began "the first trading day after the allegedly false statements." *Id.* at \*6.  Nothing in *Gilat*'s recitation of contentions overcomes binding Second Circuit authority holding that statements made even one day before the class period cannot be the basis for liability in a securities class action. *See Int'l Bus. Machs*, 163 F.3d at 107.  July 9 is prior to July 10.  The fact that the statement was made after normal trading hours on July 9, 2019, does not alter the fact that it was made prior to the start of the Class Period on July 10, 2019, and is therefore not actionable.

Second, Plaintiffs argue that a pre-Class Period February 2019 press release (SAC ¶ 298) can be actionable because a Class Period December 2019 press release included a hyperlink to the February press release.  Opp. at 12-13.  Plaintiffs offer no authority to support their position, and the case law is to the contrary. *See, e.g.*, *In re The Warnaco Grp., Inc. Opinion Sec. Litig. (II)*, 388 F. Supp. 2d 307, 315 n.2 (S.D.N.Y. 2005) (rejecting argument that audited annual statements were incorporated by reference into quarterly statements directing investors to the annual statements "for further information"); *In re Garrett Motion Sec. Litig.*, 2022 U.S. Dist. LEXIS 60843, at \*46-49 (S.D.N.Y. Mar. 31, 2022) (no liability for pre-class period statements later incorporated into a class period statement).  The link in the December press release does not repeat any of the February press release (let alone the challenged February statement). *See* SAC ¶¶ 297-298.  Accordingly, the hyperlink does not transform a pre-Class Period statement into a Class Period statement.[1]

---

[1] Plaintiffs seek to challenge another pre-Class Period statement (FAC ¶ 503), which they say was "inadvertently omitted" from the SAC.  Opp. at 13 n.11.  Plaintiffs cannot amend their pleadings via their opposition brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

### 2. Plaintiffs Lack Standing To Challenge Statements Made Before Virgin Galactic Became Publicly Traded

New authority in this Circuit requires that the 11 challenged statements made prior to Virgin Galactic's going public via the October 25, 2019 de-SPAC merger be dismissed. In a decision post-dating Defendants' opening brief, a Southern District of New York court interpreted recent Second Circuit precedent to foreclose statutory standing where, as here, public stockholders challenged statements made by or about a privately held predecessor company. *See In Re Carlotz, Inc. Sec. Litig.*, 2023 WL 2744064, at \*4, 5 (S.D.N.Y. Mar. 31, 2023) ("as a legal matter, the post-merger entity" is not "interchangeable with the pre-merger, privately held company").[2]

Under the reasoning of *Carlotz*, Plaintiffs lack statutory standing to challenge statements made by or about pre-merger Virgin Galactic because, like the plaintiffs in *Carlotz*, Plaintiffs never owned shares in the private, pre-merger entity, and instead owned shares in a new and distinct entity following the de-SPAC transaction. Plaintiffs say they are holders of publicly traded Virgin Galactic common stock, *see* ECF Nos. 10-2 (Kusnier PSLRA Certification), 13-2 (Scheele PSLRA Certification), and they purport to represent a class of "all persons or entities who purchased *the publicly traded* common stock of" Virgin Galactic or SCH from July 10, 2019, to August 4, 2022, SAC ¶ 1 (emphasis added). There was no publicly traded Virgin Galactic common stock prior to the October 25, 2019 de-SPAC transaction because, as Plaintiffs acknowledge, Virgin Galactic was a privately held entity up to that point. *See* SAC ¶¶ 27, 48-51. Plaintiffs acquired Virgin Galactic stock only after Virgin Galactic became a publicly traded company. *See* ECF Nos. 10-2 (Kusnier PSLRA Certification), 13-2 (Scheele PSLRA Certification). And co-Lead Plaintiffs

---

[2] Defendants are raising this issue "at the first pragmatically possible time." *American Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998); *see also LNC Invs., Inc. v. First Fid. Bank, N.A.*, 2000 U.S. Dist. LEXIS 4617, at \*3 (S.D.N.Y. Apr. 6, 2000).

never owned stock in SCH.  *See id.*  Therefore, there is no class of shareholders who purchased publicly traded common stock in Virgin Galactic from July 10, 2019 through October 24, 2019, SAC ¶ 1, and the challenged statements made during that period were about pre-merger Virgin Galactic, *see Carlotz*, 2023 WL 2744064, at *5.  Like the plaintiffs in *Carlotz*, Plaintiffs here do not have standing to challenge any of the statements made prior to October 25, 2019, about the pre-merger, privately held legal entity in which they owned no stock.  Accordingly, the 11 pre-October 25, 2019 challenged statements should be dismissed.  *See* SAC ¶¶ 298, 275, 277, 279, 281, 283, 285, 287, 289, 291, 293.

### B.    Plaintiffs Do Not Sufficiently Allege Falsity

### 1.    The Statements This Court Previously Dismissed On Falsity Grounds Should Be Dismissed Once Again

This Court previously dismissed for lack of falsity four of the statements challenged in the SAC.  Nov. 7, 2022 Order at 21-22, 25, 28-29.  Plaintiffs attempt to sidestep the Court's prior dismissal of those statements by suggesting that the SAC presents a "new" theory of falsity:  that Virgin Galactic misrepresented the "progress" of its commercial timeline (SAC), rather than the "safety" of its flights (FAC).  Opp. at 2.  But not only did Plaintiffs allege that same "progress" theory about similar statements challenged in the FAC—the Court both considered and rejected it. *See, e.g.*, FAC ¶ 499 ("we are on track for our beautiful spaceship to begin commercial service"); *id*. ¶ 422 (Defendants "concealed the risk of delays pertaining to Eve that they had known about since 2018"); *id*. ¶ 498 ("Unity and Eve were nowhere near ready to take on passengers, if they ever would be."); *id*. ¶ 500 ("Virgin Galactic's testing program was neither on track nor advanced."); *id*. at 73 ("Inexplicable Delays And Press Reports Show Virgin Galactic Is *Nowhere Near Ready For Commercial Flights*, Causing Its Stock Price To Fall") (emphasis added); Nov. 7, 2022 Order at 22 (dismissing each of these statements because "investors were well-aware of

6

delays in Virgin Galactic's test flight program at the time" certain challenged statements "were made"); *see also id.* at 23-24 ("Plaintiffs point to no facts that defendants were aware that Unity's repairs would likely push the start of commercial operations beyond their promised timelines, only that they were aware Unity was grounded.").

Moreover, the SAC's explanations for why the recycled statements are false or misleading are functionally identical to the explanations advanced in the FAC.  *See* Ex. 1 (comparison of explanations for statements dismissed for lack of falsity).[3]  The Court should again dismiss the statements Plaintiffs challenge in Paragraphs 93, 295, 297, and 302 of the SAC.

### 2.    Plaintiffs' Challenges To The Additional Statements Likewise Fail

*Commercial readiness statements.*  As to the challenged statements Plaintiffs describe as being about "readiness" and "commercialization," Plaintiffs distort the content of those statements. *See* Opp. at 14-16; *e.g.*, SAC ¶¶ 281, 283, 287, 293.  In context, the statements are not sufficiently alleged to be false or misleading.

First, Plaintiffs argue that Palihapitiya's July 9, 2019 pre-merger (and pre-Class Period) statement about Virgin Galactic having "all regulatory" approvals in place "was literally false" because the Company had yet "to validate and verify 29 points" through additional test flights. Opp. at 15.  But on its face, Palihapitiya's statement was that "[Virgin Galactic is] licensed by the FAA.  They have all the regulatory elements in place to start commercial operations."  SAC ¶ 281. According to the documents on which Plaintiffs rely, Virgin Galactic *was* licensed by the FAA at the time of the statement and thus *did* have the regulatory approvals needed to commence commercial operations.  *See* Mot. at 18 (citing ECF No. 73-9 at 1).  As to the validation and

---

[3] All "Ex." references are to exhibits attached to the McDonough Declaration in Support of Reply Memorandum of Law.

verification steps yet to be completed, SCH's August 7, 2019, S-4 plainly explained, "In 2016, the FAA granted us our commercial space launch license with a limited number of verification and validation steps that must be completed before the FAA will clear us to include customers on our spaceflights.  We are in the process of completing those steps."  ECF. No. 73-6 at 198 (Form S-4 filed Aug. 7, 2019).  Accordingly, in context, Palihapitiya's statement about having regulatory approvals in place was accurate and not misleading.  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 577-80 (S.D.N.Y. 2014) ("Simply put, these allegations do not render the statements described herein, ***considered in context***, false or misleading.") (emphasis added).

Second, Plaintiffs argue that a slide in September 5 and 26, 2019 investor decks describing Eve and Unity's "Build Progress" was misleading because the slide represented that Unity was "complete" as of September 2019.  Opp. at 14.  Not so.  The slide identifies Unity's *estimated* year of completion as 2019.  *See* SAC ¶ 287.  Moreover, *built* is different than *ready for commercial operations*, as Plaintiffs' allegations acknowledge.  *Id.*  If the two terms were identical, the slide would not have described Eve as being, unlike Unity, built *and* "in operation."  *Id.*  No reasonable investor would have understood the slide to claim that Virgin Galactic was operating Eve commercially.  *See Ill. State Bd. of Inv. v. Authentidate Holding Corp.*, 369 F. App'x 260, 263 (2d Cir. 2010) ("a reasonable investor" would not view statement that made "no guarantee" about an amendment to an agreement as representing "that an amendment was definitively forthcoming").  In fact, the presentation deck itself identifies the estimated start of commercial operations as nine months away.  *See* SAC ¶ 289 ("Financial projections assume June 2020 commencement of commercial operations, starting with one vehicle in service.").  Read fairly and in context, the slide in Paragraph 287 is not alleged to be materially misleading.  *See In re Lululemon*, 14 F. Supp. 3d at 577-580.

8

Third, Plaintiffs challenge Virgin Galactic's statement that it used Oracle for "digital definition and configuration," SAC ¶ 293, because the Company allegedly also used two other "mutually-inconsistent databases," Opp. at 15-16. But the challenged statement says nothing about the functionality or efficiency of Virgin Galactic's use of Oracle. It simply makes the facially true assertion that the Company used Oracle to perform certain functions. SAC ¶ 293; *see Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013) (literally true statement can be materially misleading only if a reasonable investor could ascribe an alternative meaning to it). That Virgin Galactic may have also used two other databases has no bearing on the truthfulness of the Oracle statement. *See Garnett v. RLX Tech. Inc.*, 2022 WL 4632323, at *14 (S.D.N.Y. Sept. 30, 2022) ("An omission is actionable only when disclosure of information is necessary to make [] statements . . . not misleading."); *Smith v. Foster*, 168 F. Supp. 3d 654, 659 (S.D.N.Y. 2016) (similar).

***Design and commercial use statements***. The challenged design and commercial use statements (most of which were made in the pre-merger period), *see* Opp. at 13-16, *e.g.*, SAC ¶¶ 277, 281, 283, 285, 287, are forward-looking statements protected by the PSLRA's safe harbor, as this Court has held. *See* Nov. 7, 2022 Order at 20-23; Mot. at 14. Plaintiffs do not challenge the cautionary language that accompanied these statements or argue Defendants had actual knowledge that the statements were false. Opp. at 16-18. Instead, their only response is an attempt to recast statements about the intended *future* uses of Eve and Unity as *present tense* statements about Eve and Unity's design. *Id*. That argument should be rejected for the same reasons this Court dismissed similar statements discussing existing progress toward future goals. *See* Nov. 7, 2022 Order at 20-21 (rejecting Plaintiffs' effort to avoid the safe harbor because "[e]ach of the statements identified by defendants is 'a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer'").

9

Statements describing Eve's and Unity's current "capabilities," Opp. at 16 (citing SAC ¶¶ 120, 283, 277, 285, 302), fit that same mold.  Each discusses the design of Virgin Galactic's ships for future use in commercial service.  *See* SAC ¶¶ 120, 283 ("[A] single spaceship is designed *to be* reused for hundreds of cycles."); *id.* ¶ 285 (describing Unity as "[t]he world's first private, crewed spaceship *designed for* commercial service to take humans to space"); *id.* ¶ 277 ("VSS Unity, VG's spaceship, was the first and remains the only vehicle *built for* regular commercial service to have put humans into space.") (emphasis added).  That Eve and Unity have not yet taken humans on commercial flights to space does not alter the fact that statements about what the crafts were designed to do in the future are forward-looking statements.  Plaintiffs characterize a June 25, 2020 press release as describing current "capabilities," Opp. at 16, but the statement says otherwise, SAC ¶ 302 ("Our focus for this year remains unchanged on ensuring the vehicles and our operations *are prepared for* long-term, regular commercial spaceflight service").  This statement, like the statements discussing the design of the ships for future use in commercial service, is forward-looking and protected.  *See* Nov. 7, 2022 Order at 20-21.

Plaintiffs' claim that the status of Eve and Unity as "demonstrator" vehicles or "mere prototypes" (Opp. at 3) was somehow inconsistent with the crafts' expected later use as commercial vehicles (*id*. at 16-17) has similarly been rejected.  *See* Nov. 7, 2022 Order at 32 ("Plaintiffs have not shown how, because Unity was a prototype, it could not 'fly both humans and science research payloads to space.'").  Underscoring the lack of any inconsistency, at the very next earnings call after Colglazier "admitted" that Eve and Unity were prototypes, he told investors that Virgin Galactic would "start commercial service with Spaceship Unity and Eve."  SAC ¶ 310.  Plaintiffs attempt to evade the Court's prior ruling by focusing on the anticipated "regularity" of

10

Eve and Unity's use in commercial service at certain commercial flight rates. Opp. at 17, 21-22.[4]

But Plaintiffs still fail to allege a single fact indicating that a prototype could not later be used in "regular" commercial service, or address what regular service (or flight rates) means in the context of space travel. Plaintiffs misread the September 2019 investor slides as representing that "Unity would fly at the same rate as new vehicles." *Id.* at 21-22. The slides do not say that. Instead, they estimate future monthly flight rates for Eve and Unity, and then estimate an overall number of predicted future flights without specifying how many of those flights may be attributable to which vehicles. SAC ¶¶ 289, 291.

Lastly, in response to Defendants' argument that multiple challenged statements constitute inactionable puffery, *see* Mot. at 11-12 (addressing SAC ¶¶ 283, 297, 300, 316), Plaintiffs argue that the portions of the statements describing "a successful spaceflight" and "the inherent safety and design of our system" are not puffery. Opp. at 17. This argument is incorrect. Both the full challenged statements and the portions Plaintiffs now attempt to cherry pick are the types of expressions of corporate optimism that courts routinely find inactionable under the well-settled puffery doctrine, as this Court already found. *See* Mot. at 12 (citing *Livingston v. Cablevision Sys. Corp.*, 966 F. Supp. 2d 208, 220 (E.D.N.Y. 2013) (finding that statement describing company's "superior products, superior customer service" was puffery)); Nov. 7, 2022 Order at 25-26 (dismissing similar statements from FAC as puffery).

***Commercial timeline statements***. Plaintiffs argue that the Defendants' forward-looking commercial timeline statements (SAC ¶¶ 93, 283, 287, 289, 291, 300) are not protected under the PSLRA's safe harbor because the statements (i) are mixed with present statements of fact; (ii) were

---

[4] Plaintiffs categorize the flight rate statements as "commercial timeline statements." Defendants address these statements here because the flight rate statements are more aptly categorized as design and commercial use statements.

11

not accompanied by meaningful cautionary language and were made with actual knowledge of falsity; and (iii) are false by omission.  Opp. at 18.  All three arguments fail.

First, much like their arguments regarding the design of the Company's vehicles, Plaintiffs argue that Defendants' commercial timeline statements are ineligible for safe harbor protection because they conveyed present information regarding the capability of Virgin Galactic's vehicles for future commercial spaceflight, and their current progress toward commercialization.  Opp. at 20-21.  The first argument makes no sense; that the vehicles are capable of commercial flight *in the future* is itself a forward-looking projection, because the Company had, of course, not yet begun commercial flights.  And this Court already rejected the second argument.  *See* ECF No. 56 at 22-23 (arguing that statements indicating that Virgin Galactic is "on track" to begin commercial service constitute statements of present fact); Nov. 7, 2022 Order at 20-21.  *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016), is not to the contrary.  In *Vivendi*, the Second Circuit found that a statement that a company *has* a "very strong balance sheet" was a statement of present fact.  838 F.3d at 246.  Here, Plaintiffs did not say that Virgin Galactic "has" vehicles operating in commercial service; rather, the Company said it would have such vehicles, at a predicted future date.[5]  *See* 15 U.S.C. § 78u-5(i)(1) (forward looking statements include "statement[s] of the plans and objectives of management for future operations" or "any statement of the assumptions underlying or relating to any [such] statement").

Second, Plaintiffs fail to establish that Defendants did not include meaningful cautionary language with their forward-looking statements or made those statements with actual knowledge

---

[5] Plaintiffs' citation to Fifth Circuit law is irrelevant.  *See* Opp. at 21 (citing *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 210 (5th Cir. 2023)).  As this Court recognized, "Courts in *this* circuit have often held that statements that refer to a company being "presently on track" with goals are forward-looking."  Nov. 7, 2022 Order at 21.

of falsity, both of which are required for Plaintiffs to avoid application of the safe harbor. *See* Opp. at 18-20; 15 U.S.C. § 78u-5(c). This Court has already found that Defendants' cautionary language regarding test-flight delays was sufficiently meaningful, rejecting Plaintiffs' arguments that the risks had already materialized. *See* Nov. 7, 2022 Order at 22-23. Plaintiffs do not point to any allegations in the SAC to change that conclusion. Indeed, Defendants warned investors about the risk of "significant delays" and an inability to operate due to maintenance issues or design and engineering flaws. *See* Mot. at 13; ECF No. 73-4 at 1-2, 5, 7 (Risk Disclosures Appendix). Plaintiffs also point to no particularized facts establishing that Defendants knew their commercial timeline predictions were wrong at the time they were made. Instead, Plaintiffs argue that Defendants were aware of certain obstacles to achieving their projections for commercial operations, such as the need to repair Unity's horizontal stabilizers following a February 2019 flight. Opp. at 20. But the need for such repairs was not incompatible with the start of commercial operations almost a year-and-a-half later in June or July of 2020, and Plaintiffs implicitly acknowledge that Virgin Galactic *had* repaired Unity by June 2020 when it conducted its next glide flight test. SAC ¶ 302. Plaintiffs have not pled facts showing that Defendants *knew* the commercial timeline was unattainable, and therefore have not satisfied the demanding "actual" knowledge requirement. *See* 15 U.S.C. § 78u-5(c).[6]

Third, Plaintiffs' theory regarding the statement in Paragraph 289—that Defendants allegedly concealed that Unity was grounded for repair of its horizontal stabilizers, Opp. at 18— does not avoid application of the PSLRA safe harbor. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*,

---

[6] Plaintiffs' safe harbor authorities are inapposite. Opp. at 19 (citing *Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 288 (S.D.N.Y. 2020) (cost estimate not protected where defendant did not disclose change order requiring "billions" in additional costs); *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (addressing non-forward-looking statement)).

13

2022 WL 4085677, at *30 n.17 (S.D.N.Y. Sept. 2, 2022) ("Plaintiffs may not recharacterize their false-statement claims as material-omission claims on the basis that the statements were false because they omitted material contrary information" because "[o]therwise, the PSLRA would have no force"). Plaintiffs do not plead how the grounding of Unity made the projected timeline untenable, or any other facts suggesting it was inconsistent with a July 2020 commencement of operations. *See* Nov. 7, 2022 Order at 22. Their cited cases are easily distinguishable because they involved omitted facts that *directly conflicted* with the defendants' statements. Opp. at 18, citing *Bishins v. CleanSpark, Inc.*, 2023 WL 112558, at *9 (S.D.N.Y. Jan. 5, 2023) (estimate that expansion would be done "by end of summer, 2021" was actionable where company had received a report that the earliest completion date was October 2021); *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 291, 303 (S.D.N.Y. 2018) (statement that introduction of secured loans would increase productivity was actionable because the company was aware that such activities "had already caused productivity to decline, delinquencies to increase, and growth to slow").

***Enhancement period statements***. Plaintiffs argue that Defendants' enhancement period statements (SAC ¶¶ 306, 310, 312, 318, 320) "misstated both the type and scope of work to be done [on Unity and Eve] and the time it would take." Opp. at 22. Plaintiffs' arguments should be rejected because the statements are projections for future timelines and are thus classic forward-looking statements, as the Court already held. *See* Nov. 7, 2022 Order at 21. The statements were accompanied by meaningful cautionary language warning that Unity and Eve may require additional changes, repairs, and development and that such changes may result in delays (over 30 such disclosures during the Class Period). *See* Mot. at 19-20.

The safe harbor applies for the independent reason that Plaintiffs have not stated particularized allegations that Colglazier had actual knowledge that his statements were false.

14

Plaintiffs attempt to satisfy the actual knowledge requirement by arguing Colglazier knew the ███████████████████████████████████, not four as he claimed. Opp. at 22-23. That argument is contradicted by the allegations of the SAC, which make clear that Colglazier learned that the ███████████████████████████████████ the repairs should take four, *see* SAC ¶¶ 306, 307, and on the next earnings call, he updated investors with the new timeline, *id.* ¶ 262. Accordingly, the safe harbor immunizes Colglazier's statements projecting how long the enhancements would take.

Moreover, there is n merit to Plaintiffs' theory that Colglazier underplayed the risk associated with work being performed on the vehicles. Opp. at 22-23. Colglazier's use of the terms "upgrades," "modifications," and "life extension program" to describe the repairs to Eve and Unity did not understate any risk. Opp. at 23; SAC ¶ 310. There are no allegations in the SAC suggesting that Colglazier used those terms to obscure a prior incident or otherwise mislead investors regarding the work left to be done. *See* Opp. at 22-23. Indeed, according to the SAC, the alterations to Eve and Unity during this period were precisely as described: upgrades, modifications, and life extension programs meant to ready the vehicles for commercial service and extend their use. *See* SAC ¶ 307 ███████████████████

███████████████████████████████████████████████████

███████████████

## C.    Plaintiffs Fail to Allege Scienter

The SAC does not contain particularized allegations sufficient to support a "strong inference" that any Defendant acted with fraudulent intent when making the challenged statements. *See Stevelman v. Alias Rsch, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (cited in Opp. at 24).

**Branson**.  Of the four Branson statements Plaintiffs challenge, the Opposition addresses scienter only for three:  two pre-Class Period statements and a July 2021 statement. Opp. at 24-

15

25.  Plaintiffs ignore Branson's alleged statement from October 28, 2019—it thus fails entirely. As to the statements the Opposition does address, Plaintiffs argue that Branson's alleged stock sales and his presence on the July 11, 2021 flight establish a "strong" inference that Branson intended to defraud the market when making his challenged statements.  Opp. at 24-26.  They are wrong as a matter of law.

First, the Court previously held that Branson's May 2020, June 2020, and April 2021 sales do not contribute to an inference of scienter.  Nov. 7, 2022 Order at 46.  Plaintiffs argue that the SAC presented "additional facts" that warrant reconsideration of the Court's holding.  Opp. at 24-25.  None of those alleged facts merits a different outcome the second time around.  Plaintiffs argue that Branson's April 2021 sales were suspicious because the Board allegedly received information on March 24 suggesting Unity and Eve required certain "modifications" and "upgrades," and "point[ed] to trouble ahead."  Opp. at 25.  But Plaintiffs have not alleged that Branson, a non-director, was at the March 24 Board meeting (the Board materials referenced in the SAC reflect he was not, SAC ¶¶ 307, 309[7]) or that he received the information through other channels.  The allegation that Branson had "three board designees," SAC ¶ 100, and a Board observer (unpled but raised in the Opp. at 25) is insufficient absent specific allegations that Branson received the information allegedly conveyed at the Board meetings.[8]  Plaintiffs provide no legal authority for the argument that the knowledge of a Board designee or observer should be

---

[7] The SAC references materials for a March 24, 2021 Board meeting.  Those March 2021 Board materials are incorporated by reference into the SAC and properly considered by the Court.  See Mot. at 5 n.2; *see also* Ex. 2 at 2 (March 2021 Board Materials).

[8] Branson did not have the personal right to appoint designees to the Board.  The stockholders' agreement Plaintiffs cite in their Opposition provides that Vieco 10 Limited had the right to designate three directors to the initial Board, and in future years to designate for nomination and approval three directors provided Vieco 10 Limited met certain thresholds of stock ownership.  Opp. at 25 n.22.

imputed to the person who nominated her, based simply on speculation.  And their mere speculation does not support a strong, cogent, or compelling inference of scienter.  *See* Mot. at 10-11, quoting *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 297 (S.D.N.Y. 2010) ("Claims that are based on "speculation and conclusory allegations" must be dismissed."); *see also Schwab v. E\*Trade Fin. Corp.*, 285 F. Supp. 3d 745, 757 (S.D.N.Y.), *aff'd*, 752 F. App'x 56 (2d Cir. 2018) ("conclusory allegations" that current and former CEO "must have known of [company's] failure to deliver on its promises of best execution" failed to raise a "cogent inference" that they acted with scienter).  For these same reasons, Branson's 2019 and August 2021 stock sales fail to support scienter as well.

With respect to Branson's May and June 2020 stock sales in particular, the Court held that the size of Branson's stock holdings and the amount he sold in 2020 do not alone demonstrate scienter because the sales occurred "during a period in which [the Company's] stock price was relatively low" and "shortly before an increase in Virgin Galactic's share price."  Nov. 7, 2022 Order at 44, 45.  Plaintiffs' response that the 2020 sales "caused" a temporary stock dip and nearly immediate subsequent rebound does not contradict the Court's prior observation that the trading price during the months surrounding Branson's 2020 sales was low when compared to the trading price for the ensuing 10 months.  *See id.*; ECF No. 73-3.  Similarly, Plaintiffs' generic assertion that Branson sold stock "just before investors learned the truth about the summer 2020 commercialization schedule," Opp. at 26, ignores that the sale was still a full two months prior to the August 4, 2020 announcement that his flight would be delayed.

Second, with respect to Branson's involvement in the July 11, 2021 flight, Plaintiffs do not argue or plead that Branson was copied on or otherwise learned of any of the FAA's communications with the Company regarding Unity's brief deviation from approved airspace

17

during the flight. *See* Opp. at 25 n.23. Instead, Plaintiffs point to a September 1, 2021 *New Yorker* article stating that yellow and red "warning light[s]" came on inside the cockpit during the July 11 flight. Opp. at 25 (citing SAC ¶¶ 240-243). Notably absent from those allegations is any reference to Branson. Plaintiffs attempt to cure this pleading failure by claiming, without citation to any alleged fact, that "video issued by Virgin" purportedly shows Branson "looking directly over [Unity's] pilot's shoulder, just as the warning light flashed red." Opp. at 25 n.23. In addition to being absent from the SAC and thus improperly raised in the Opposition, Plaintiffs' newfound theory is entirely speculative: they do not allege any facts suggesting Branson knew what the flashing light signified, let alone that he concluded it meant "major trouble," Opp. at 25, particularly given that the flight reached space and then returned to earth successfully. *See Local No. 38 IBEW Pension Fund v. Am. Express Co.,* 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010) (allegations that defendants received detailed reports, without facts to support such speculation, were "bland assertions" which failed to give rise to an inference of scienter).

**Palihapitiya.** Plaintiffs attempt to add Palihapitiya back into the case by arguing he made the July 2019 pre-merger statement about the Company's FAA license and "regulatory elements" with scienter because he purportedly was motivated to close an alleged "self-interested" de-SPAC transaction in which he would "receive 17,250,000 SPAC shares, worth $172.5 million at the IPO price, for free." Opp. at 26. But Plaintiffs' own cases show that a motivation to close a transaction (like the de-SPAC) is not enough to support scienter. *See* Opp. at 26, citing *ECA & Loc, 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009) (motivation to secure a favorable transaction is not enough to demonstrate scienter). The allegations in this case do not remotely approach the allegations that supported an inference of scienter in *Rothman v. Gregor*, 220 F.3d 81, 93-94 (2d Cir. 2000), where the defendant company intentionally refused

18

to mark royalty expenditures as expenses, even after it had already realized the associated losses, in order to inflate its stock price and acquire another company.

In the same vein, Plaintiffs argue that Palihapitiya's November 2019 "regulatory elements" statement was made to further perpetuate and conceal the purported fraud underlying Defendants' pre-merger statements about the projected launch of commercial service. Opp. at 21, 27. The Court already dismissed this statement as protected by the safe harbor. *See* Nov. 7, 2022 Order at 20. Unlike the defendants in *Stevelman* (cited in Opp. at 27), there is no allegation that Palihapitiya had access to any specific facts undermining the truth of this statement at the time he made it.

Plaintiffs' remaining scienter arguments do not salvage their claims against Palihapitiya. Plaintiffs offer no meaningful response to the point that his first stock sale occurred over a year after his alleged November 2019 statement *and* after the Company's stock price had dropped. Mot. at 26. Those facts undercut any inference that Palihapitiya acted with scienter. *See, e.g.*, *In re Plug Power, Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 178635, at \*40-42 (S.D.N.Y. Sept. 29, 2022) ("courts have routinely declined to find trad[es]" which pre- or post-date alleged misstatements by several weeks as "inherently suspicious" or indicative of scienter); *see also* Nov. 7, 2022 Order at 45 (timing and price received in Branson's May and June 2020 stock sales rebutted an inference of scienter). Further, a defendant's substantial personal investment in a company (like Palihapitiya had) cuts against any inference of scienter, as Defendants' unrebutted authorities hold. Mot. at 25 (citing cases). And finally, another court's ruling about a defendant's conduct in an entirely different matter, Opp. at 28, has no bearing the scienter analysis here. *See Fidel v. Rampell*, 2005 WL 5587454, at \*7 (S.D. Fla. Mar. 29, 2005) (rejecting reliance on another case involving the defendant to support an inference of scienter).

19

*Whitesides.*  The Opposition offers no cogent reason for the Court to reverse its earlier dismissal of the claims against Whitesides for lack of scienter.  First, Plaintiffs cherry pick excerpts from November and December 2019 Board materials in order to challenge Whitesides's generic statements that the Company's goal or "focus" was to create "a vehicle that we can turn around relatively rapidly" and to "ensur[e] that the vehicles and our operations are prepared for long-term, regular commercial spaceflight service."  SAC ¶¶ 300, 302.[9]  Those Board materials demonstrate at most that Eve and Unity were undergoing continued design modifications and repairs to prepare them for commercial service and that such work might require additional time to complete.  Opp. at 28-29.  These facts do not contradict statements that the Company was focused on readying the vehicles for commercial spaceflight, and Plaintiffs have not pled that Whitesides had information contradicting what he told investors publicly.  Mot. at 22; *see* Nov. 7, 2022 Order at 49-50; *see also Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (securities fraud is not established merely because a defendant "should have anticipated future events" or "made certain disclosures earlier").  The alleged proximity of Whitesides's office to the hangar containing Eve and Unity (Opp. at 29) does not change this conclusion—in fact, Plaintiffs do not even argue that Whitesides observed anything in the hangar that undermined his May and June 2020 statement.  Instead, Plaintiffs now (for the first time) attribute a September 2019 statement to Whitesides, and claim it was false because he allegedly observed that Unity was not complete as of that date.  Opp. at 30.  Plaintiffs did not plead that Whitesides had any involvement in the September 2019 statement, and in any event, they do not plead that Unity was visibly incomplete in the hangar.[10]

---

[9] Plaintiffs improperly obtained these materials.  *See* Mot. at 22.

[10] Plaintiffs' legal authorities are inapposite because, unlike here, they involved particularized allegations of access to specific, contradictory information.  *See* Opp. at 28, citing *Emp.s' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306-08 (2d Cir. 2015) (defendants hid

*Colglazier.* Plaintiffs' attempt to argue around the Court's earlier scienter holding regarding Colglazier fails for similar reasons. As with Whitesides, Plaintiffs argue that snippets of Board materials demonstrate that Colglazier acted with scienter in making his challenged statements. That argument fails for the reasons noted above, and because the March 2021 Board materials upon which Plaintiffs rely post-date Colglazier's February 2021 statement. Those later Board materials provide no particularized basis for inferring what Colglazier knew at the time of his earlier statement. Mot. at 23, citing *In re Chembio Diagnostics, Inc. Sec. Litig.*, 586 F. Supp. 3d 199, 219-22 (E.D.N.Y. 2022) (no scienter where plaintiff failed to allege facts showing defendants knew adverse information at the time of the statements). Plaintiffs do not even attempt to address this point. Further, even if Colglazier was aware of the March 2021 Board materials at the time of his May 10 statement—a fact Plaintiffs do not plead—those materials ███████████

████████████████████████████████████████████████████████

██████████████████████████ *See* Opp. at 30; Ex. 2 (March 2021 Board materials); *see also* Mot. at 23. Plaintiffs are thus left quibbling with Colglazier's characterization of the work to be done on Eve and Unity as "upgrades," "improvements," and "enhancements," as opposed to "modifications." Opp. at 30-31. But in fact, Colglazier told the market on May 10, 2021 that Eve and Unity required "modifications." Mot. at 23.

---

excess inventory from auditors while simultaneously representing to the market that there were no inventory issues); *In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *9 (S.D.N.Y. Sept. 30, 2020) (defendants conducted due diligence of cannabis company alerting them that Latin American assets were valueless); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *4 (S.D.N.Y. Jan. 27, 2014) (defendant spent "considerable" time in Taiyuan, China, where he "likely observed" the "allegedly massive" fraud at a nearby facility that was "obvious to even a casual observer"); *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 27 (2d Cir. 2020) (officers would have been aware of large transactions intentionally structured to improperly recognize a profit).

21

With respect to Colglazier's August 5, 2021 statement, Plaintiffs have not pled a single fact specifically connecting Colglazier to any internal or external communication regarding the FAA's inquiry (despite having access to Virgin Galactic's confidential documents related to the FAA inquiry) prior to that statement.  Mot. at 22, 24.  Instead, Plaintiffs *admit* in the SAC that August 11, 2021, was the first time the FAA informed the Company that Unity's July 11 airspace excursion constituted a "launch incident" that required a formal investigation and report from the Company. SAC ¶ 250.  That admission is fatal to Plaintiffs' theory (whether framed as "core operations" or not) that Colglazier must have known about the FAA's position when he spoke on August 5.[11]

*Virgin Galactic.*  Plaintiffs' theory of corporate scienter relies on their argument that Branson is an agent of the Company.  Yet, the SAC does not once allege that Branson is an agent of Virgin Galactic, nor does it contain the types of allegations required to find a principal-agent relationship, such as allegations of the principal controlling the agent, holding the agent out to third parties as its representative, or ratifying acts of the agent.  *See U.S. v. Hoskins*, 2020 WL 914302, at \*2 (D. Conn. Feb. 26, 2020), *aff'd*, 44 F.4th 140 (2d Cir. 2022); *Precedo Cap. Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 253-54 (S.D.N.Y. 2014)).  It is simply not enough to allege generally that one party acted on behalf of the other.  *Cf. Meisel v. Grunberg*, 651 F. Supp. 2d 98, 121 (S.D.N.Y. 2009) (allegations that defendant specifically acted as agent for partnership and fraudulently induced plaintiff were sufficient to plead liability for fraud under agency theory).

---

[11] Plaintiffs' authorities (Opp. at 30-31) are inapposite.  Unlike here, the defendants in each case knew of facts significantly undermining their statements at the time they made them.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45-49 (2011) (reports indicating adverse side effects from medication); *Lea v. TAL Educ. Grp.*, 837 Fed. App'x 20, 27 (2d Cir. 2020) (creation of a fraudulent strawman entity to conceal the seller's identity).  And the court in *In re Chembio* specifically noted that, in light of the PSLRA, the "core operations" doctrine is not sufficient to raise an inference of scienter.  586 F. Supp. 3d at 222 n.9.

It is undisputed that Branson was not an officer, director, or employee of the Company at the time of his challenged statements (or at any time), and Defendants are not aware of any cases finding that a shareholder of a public corporation can be deemed its agent based simply on the size of his stockholdings or the prominence of his public profile.  Plaintiffs' cited cases only underscore their failure to plead apparent authority by an agent as required to plead an agency relationship between the Company and Branson.  Opp. at 32-33, citing *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982) (corporation's subcommittee chairman acted with apparent authority in issuing disadvantageous interpretive letter to a competitor); *Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 317 F.3d 16, 23 (1st Cir. 2003) (former director and controlling shareholder acted with apparent authority when he signed a contract on behalf of the corporation).

Finally, Plaintiffs argue that, even if the Court determines they have not pled scienter as to any individual defendant, the Court can still find an inference of scienter on the part of the Company because its statements during the Class Period were "so dramatic that [they] would necessarily have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false."  Opp. at 33, citing *Behrendsen v. Yangstze River Port & Logistics Ltd.*, 2021 WL 2646353, at \*13 (E.D.N.Y. June 28, 2021) (company's "representations in its SEC filings that it had approximately \$400 million in assets [were] drastically different than the representations its subsidiary made to the Chinese court where it declared bankruptcy"); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 627 (S.D.N.Y. 2005) (holding investment bank would have been aware that supposed \$3.5 billion in trades it made to Enron "were in fact loans" designed to conceal Enron's debt).  But none of the Company's challenged statements, which are by and large routine, generic statements regarding the

23

development of Virgin Galactic's commercial spaceflight program, was so dramatic. *See, e.g.*, SAC ¶¶ 297, 298, 302. Accordingly, Plaintiffs' theory of corporate scienter fails.

### D.   Plaintiffs' Loss Causation Arguments Fail

#### 1.   The Previously Rejected Corrective Disclosures Should Be Dismissed Again

Plaintiffs argue that the Court should depart from its prior holding rejecting the alleged corrective disclosures on December 14, 2020 and October 14, 2021 because the SAC now draws the necessary connection between those disclosures and the statements Plaintiffs challenge. *See* Nov. 7, 2022 Order at 38-39; Opp. at 34, 36. Not so.

*December 14, 2020*. The Court previously rejected Plaintiffs' theory that the aborted flight in December 2020 corrected statements regarding the success of earlier test flights and commercial readiness, finding that there was no alleged connection between any "actionable omission" and the aborted flight. *See* Nov. 7, 2022 Order at 38-39. Plaintiffs now argue that disclosure of the aborted flight in December 2020 corrected Defendants' general statements in 2019 projecting the start of commercial operations and revealed omissions about the status of Unity's fabrication and assembly. Opp. at 34-35 (citing ¶¶ 92-94). This new theory fares no better. Plaintiffs do not allege that the flight was aborted because the assembly and commercial readiness of Unity was not as far along as Defendants suggested months earlier. Instead, Plaintiffs themselves admit that the aborted flight was caused by a specific problem with Unity's digital control system that occurred when the flight was attempted. SAC ¶ 218; Opp. at 34-35. Just as the Court previously found, there is no linkage between the specific problem that caused the aborted flight and the earlier statements that Plaintiffs challenge or any omissions they allege. *See* Nov. 7, 2022 Order at 38-39. The tenuous connection that Plaintiffs seek to draw here stands in stark contrast to the loss causation allegations in the only case Plaintiffs cite on this point—*Loreley Fin. (Jersey) No. 3 Ltd.*

*v. Wells Fargo Sec., LLC*, 797 F.3d 160, 167 (2d Cir. 2015)—where the plaintiffs alleged a specific causal connection between a purportedly omitted fact (that the investments the plaintiffs purchased were designed to fail) and the event resulting in the plaintiffs' losses (the later collapse of those investments). No such specific connection is alleged in the SAC.

***October 14, 2021***. Plaintiffs argue that the delay of the Italian Air Force flight announced on October 14, 2021, in order to conduct "further physical inspection" of Eve, corrected statements that the Company would implement "updates," "upgrades," and "modifications" to Eve and Unity. Opp. at 36 (citing SAC ¶¶ 306, 310, 312, 318). But at most, the October 14, 2021 delay was the later materialization of a disclosed risk that maintenance and repairs of the Company's spacecraft could take longer than anticipated, and therefore is not a corrective disclosure. *See* ECF No. 73-4 at 1-2, 5, 7 (Risk Disclosures Appendix); Nov. 7, 2022 Order at 39.

In fact, Plaintiffs previously argued (and this Court agreed) that a February 1, 2021 *Washington Post* article was a materialization of a concealed risk that the Company's vehicles would require more than "relatively minor" fixes that could result in "considerable delays." Nov. 7, 2022 Order at 38; *see also* FAC ¶¶ 305, 339. Based on this conclusion, the Court found that the October 14, 2021 disclosure revealed nothing new. *See* Nov. 7, 2022 Order at 39. Plaintiffs now pivot away from this theory and argue that the February disclosure "did not reveal the full extent of problems with Eve," and that some of those problems were disclosed in a "much less credible" blog post by a *Washington Post* reporter, rather than in the *Washington Post* itself. Opp. at 36-37; *see also* SAC ¶ 221. But the risk that materialized on February 1, 2021—with or without the added detail in the blog post—is virtually identical to the one Plaintiffs allege materialized on October 14, 2021: it was by that time a *known* risk that these vehicles required additional repairs before commercialization. Mot. at 30, 33-34 n. 13; *see also Sheet Metal Workers Loc. 32 Pension Fund*

*v. Terex Corp.*, 2018 WL 1587457, at \*10 (D. Conn. Mar. 31, 2018) (loss causation not pled where "[p]ossible goodwill impairment was already disclosed to the market and reflected in Terex's stock price by" the date of the alleged corrective disclosure).

Finally, Plaintiffs argue that Defendants' loss causation argument with respect to the October 14, 2021 disclosure is a "truth-on-the-market" defense not appropriate for resolution at the pleading stage. Opp. at 36. They are wrong. Defendants' argument is one of loss causation—that Plaintiffs have not pled sufficient facts to establish the necessary linkage between the challenged statements and the October 14, 2021 statement they contend exposed the truth allegedly concealed in those prior statements. Mot. at 30. Courts routinely grant motions to dismiss on loss causation grounds where, as here, a plaintiff fails to carry its pleading burden. *See* Mot. at 35;[12] *see, e.g.*, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175-77 (2d Cir. 2005) (affirming dismissal for failure to plead loss causation).

### 2. The New Corrective Disclosures Should Be Rejected

Plaintiffs likewise fail to establish loss causation based on the three new corrective disclosures they added in the SAC.

***February 25, 2021.*** Attempting to side-step the Court's prior ruling that Unity's use as a prototype did not "preclude it from flying both humans and science research payloads to space" (Nov. 7, 2022 Order at 32), Plaintiffs now argue that Colglazier's February 25, 2021 description of Unity as a "demonstrator vehicle" that had to-date flown at "a pretty low rate" corrects the

---

[12] Plaintiffs' inapposite authorities do not suggest otherwise. In *GAMCO Investors, Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 254 (S.D.N.Y. 2013), the court addressed only whether the defendant was collaterally estopped from using the truth on the market defense to rebut the presumption of reliance at summary judgment. The court said nothing about a plaintiff's burden to *plead* loss causation. Nor did the court in *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000) foreclose a court from considering disclosed risks when determining whether a plaintiff has alleged loss causation at the pleading stage.

purportedly misleading statement in the September 5, 2019 prospectus that "Unity could fly as frequently as new spaceships." Opp. at 35 (citing SAC ¶¶ 289-290). But the prospectus did not say that. The prospectus shows projected flight rates of 15 per month for Eve, and five per month for Unity. SAC ¶ 289. There is no stated comparison of those rates to the predicted rates for newer vehicles. Colglazier's statement (that Unity had to-date flown at "a pretty low rate") and the prospectus are not inconsistent, and accordingly there was no corrective disclosure on February 25, 2021.

*January 13, 2022.* With respect to the Company's January 13, 2022 announcement that it was offering convertible notes to, among other things, "accelerate the development of its spacecraft fleet," Plaintiffs ignore Defendants' arguments (Mot. at 31-32) and instead simply repeat the SAC's conclusory allegation that the announcement was a materialization of the risk that Unity and Eve needed substantial repairs in order to provide regular commercial service. Opp. at 37. Yet, the Company repeatedly disclosed the risk that it might need to raise additional funds to support its space program. *See, e.g.*, ECF No. 73-12 at 27. The materialization of a known risk does not constitute loss causation. *See Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 500 (S.D.N.Y. 2018). Plaintiffs also have no response to Defendants' argument that there were a number of disclosures pre-dating January 13, 2022, that revealed Eve and Unity needed additional repairs and maintenance, contradicting Plaintiffs' theory that the January 13, 2022 announcement revealed a previously concealed or misstated fact. *See, e.g.*, SAC ¶¶ 221, 267; *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 551-52 (S.D.N.Y. 2008) ("A recharacterization of previously disclosed facts cannot qualify as a corrective disclosure.")

*August 4, 2022.* Colglazier's August 4, 2022 statement attributing the additional delay in commercial service to, among other things, the need to "conform those drawings to the as-builts"

27

does not correct Defendants' earlier statements that the Company's spaceships were "built" or "designed" for regular commercial service or that the Company used Oracle software. Mot. at 32-33; *see, e.g.*, SAC ¶¶ 277, 283, 285, 294. In response, Plaintiffs argue that loss causation can be established even if the revelation of the alleged fraud is just one factor contributing to a loss. Opp. at 38. But as Plaintiffs' own cases recognize, where, as here, the corrective disclosure is only vaguely related to the earlier alleged misstatements, Plaintiffs must "allege enough facts regarding their loss to support the inference that they 'would have been spared all or an ascertainable portion of that loss absent the fraud.'" *Lorele*y, 797 F.3d at 189. Plaintiffs have not so demonstrated, given Colglazier's disclosure of multiple factors contributing to the delay and his earlier February 25, 2021 statement previously disclosing that the Company's engineering drawings would need to be updated as the Company continued to build new spaceships. *See* Mot. at 32.

With respect to Eve, the Company had already announced that it would be installing a new four-point pylon (SAC ¶¶ 320-321), and the unremarkable fact that the Company would need to update its drawings to reflect that update is not causally connected to prior statements regarding Eve's design and build. *See* Mot. at 32. Plaintiffs attempt to use the Opposition to allege new facts in support of their loss causation arguments regarding the August 4, 2022 statement. For example, they argue without citation to the SAC that the challenging physical labor of repairing Eve was actually a result of inaccurate engineering drawings. Opp. at 39. No such alleged fact is pled. And while they apparently concede that the drawings Colglazier references related to Eve's *new* pylon, they claim (again, with no support from their own pleading) that "the new drawings carried over mistakes in the earlier drawings." *Id*. The Court should not credit such an unreasonable and unpled inference. *See Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d

28

334, 342 (S.D.N.Y. 2005) (courts should not draw "unreasonable inferences" in favor of the non-moving party).

Plaintiffs' argument that the August 4, 2022 delay was a further materialization of concealed risks regarding Unity's repair timeline, Opp. at 39-40, likewise fails. Plaintiffs do not point to any particular challenged statements that were supposedly corrected that day; rather, they summarily claim that unspecified "false statements . . . gave the misleading impression that [repair] timelines would be short and that Defendants' timeline was reliable." *Id*. at 39. The risks of delays were well known to investors. *See* Nov. 7, 2022 Order at 22-23, 39. So while Plaintiffs make much of Defendants' statement in the Motion that the August 4, 2022 delay was at most "the materialization of the risk that the repairs would take longer than anticipated," Opp. at 40, this Court already concluded that was a *known* risk, rather than a concealed one, *see* Nov. 7, 2022 Order at 39.

**E.      Plaintiffs Do Not Plead a Viable Claim Under Section 20(a)**

Because Plaintiffs have failed to plead a primary violation of the Exchange Act, Plaintiffs' Section 20(a) claims necessarily fail. *See* Mot. at 35-36. Two additional points on Section 20(a) deserve mention. First, Plaintiffs offer no rebuttal to the argument that the SAC fails to plead a Section 20(a) claim against Palihapitiya. *See* Opp. at 40. The claim should be dismissed for this reason alone. Second, Plaintiffs attempt to support their Section 20(a) claim against Branson by arguing he was a control person by virtue of his status as a majority shareholder for less than a third of the Class Period. *Id.* That argument fails under Plaintiffs' own cases, which make clear that majority stock ownership or the ability to appoint a minority of the corporation's directors alone is insufficient to establish Section 20(a) control person liability. *See id.* (citing cases).

**F.      Plaintiffs' Insider Trading Claims Under Section 20A And Section 10(b) Fail**

29

Plaintiffs' Section 20A claims fail because of the absence of a predicate Section 10(b) violation as well as specifically because Plaintiffs have not alleged facts sufficient to show scienter on the part of Virgin Galactic, Branson, or Palihapitiya. *See* Mot. at 35-36; *supra* at Section III.C. Plaintiffs nonetheless argue that their insider trading claims against Branson and Palihapitiya should stand because both allegedly received material nonpublic information via "Board materials." Opp. at 42. Yet Plaintiffs identify no allegations in the SAC regarding how Branson, who was never a Board member, accessed the materials upon which Plaintiffs rely.[13] *See* Opp. at 41-42. And Plaintiffs' allegations regarding Palihapitiya fail because, as discussed *supra* Section III.B, the Board materials at issue did not disclose the supposed material nonpublic information that Plaintiffs claim, and at most indicated that Eve and Unity were undergoing continued design modifications and repairs—to prepare them for commercial service—that might require additional time. Accordingly, unlike in the cases Plaintiffs cite, the allegations in the SAC do not support an inference that Branson or Palihapitiya had knowledge of material, non-public information when they traded Virgin Galactic shares. *See* Opp. at 41-42, citing *U.S. v. O'Hagan*, 521 U.S. 642, 648 n.1, 117 S. Ct. 2199, 2205 (1997) (holding indictment sufficiently alleged that defendant law partner knew of upcoming tender offer based on his conversation with partner representing offeror); *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 370 (2d Cir. 2014) (insider trading claims required proof that corporate insiders "traded their corporation's securities while knowingly *in possession of* the material nonpublic information").

---

[13] Plaintiffs inaccurately assert that "Branson and Palihapitiya do not dispute that during all their sales before February 2021," they knew allegedly nonpublic information regarding the February 2019 flight and Unity and Eve's readiness. Opp. at 42. Defendants specifically dispute that point in the motion to dismiss. *See* Mot. at 3, 36-37.

Finally, Plaintiffs' claim that their purchases all "occurred within a calendar week of Defendants' trades," Opp. at 42 n. 39, does not satisfy the contemporaneous trading requirement. As this Court held, trades which occur "within three trading days" of each other are "sufficiently contemporaneous to plead a claim under Section 20A." Nov. 7, 2022 Order at 3. Accordingly, Plaintiffs fail to show either that Branson was a corporate insider or that the misappropriation theory of insider trading applies.

## III. CONCLUSION

Defendants respectfully request that the Court dismiss the SAC with prejudice.

Dated:  May 5, 2023

Respectfully submitted,

*/s/ Kevin McDonough*

LATHAM & WATKINS LLP

Kevin McDonough
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1246
Facsimile: (212) 751-4864
Email: kevin.mcdonough@lw.com

Michele D. Johnson (*pro hac vice*)
Kristin N. Murphy (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: michele.johnson@lw.com
kristin.murphy@lw.com

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
Email: colleen.smith@lw.com

*Attorneys for Defendants*

31