**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHANE LAVIN, Individually and On Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br><br>VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, JON CAMPAGNA,<br><br>Defendants. | Case No.: 1:21-cv-03070-ARR-TAM |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION, CERTIFICATION FOR INTERLOCUTORY APPEAL, AND/OR ENTRY OF FINAL JUDGMENT

**LATHAM & WATKINS LLP**

Michele D. Johnson (*pro hac vice*)
Kristin N. Murphy (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: michele.johnson@lw.com
kristin.murphy@lw.com

Kevin M. McDonough
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1246
Facsimile: (212) 751-4864
Email: kevin.mcdonough@lw.com

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
Email: colleen.smith@lw.com

*Attorneys for Defendants*

September 19, 2023

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................2

    A.    Reconsideration Is Unwarranted.................................................................2

        1.    The Court Correctly Rejected Plaintiffs' Argument That The February 2019 Press Release Is Actionable Simply Because It Was Hyperlinked In A Later Press Release ...........................................3

        2.    The Court Properly Dismissed The Insider Trading Claims Related To Richard Branson's August 10–12, 2021 Sales .....................................7

    B.    Plaintiffs Cannot Satisfy Section 1292(b)'s Demanding Standard For Certifying An Interlocutory Appeal.................................................................8

        1.    The Court's Application of *Frutarom* To Plaintiffs' Allegations Does Not Involve a "Controlling Question Of Law"................................10

        2.    There Is No "Substantial Ground For Difference Of Opinion" On *Frutarom*'s Application Here .................................................................12

        3.    An Immediate Appeal Would Complicate And Draw Out, Not "Materially Advance," This Litigation ......................................................18

        4.    The Court Should Deny Certification In Its Discretion ............................20

    C.    There Are No Grounds For Entering Rule 54(b) Partial Final Judgment..............20

        1.    The Substantial Overlap Between Plaintiffs' Dismissed And Surviving Claims Disfavors Rule 54(b) Relief.........................................21

        2.    This Is Not The "Infrequent Harsh Case" Justifying Rule 54(b) Relief..................................................................................................23

III.  CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re 127 John St. Assocs.*,
    No. 93-B-46171 (CB), 2005 WL 911488 (S.D.N.Y. Apr. 18, 2005) .......................................12

*In re 650 Fifth Ave.*,
    No. 08-cv-10934 (RJH), 2012 WL 363118 (S.D.N.Y. Feb. 2, 2012)......................................19

*Abortion Rts. Mobilization, Inc. v. Regan*,
    552 F. Supp. 364 (S.D.N.Y. 1982)........................................................................................11

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*,
    769 F.3d 135 (2d Cir. 2014).................................................................................................22

*Adrian v. Town of Yorktown*,
    210 F. App'x 131 (2d Cir. 2006) .....................................................................................24, 25

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
    106 F.3d 11 (2d Cir. 1997)...................................................................................................23

*Albus Denizcilik Ltd. v. Progress Bulk Carriers Ltd.*,
    No. 15-cv-1256 (KAM), 2017 WL 10180556 (E.D.N.Y. Apr. 21, 2017) .................................9

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
    No. 19-cv-10067 (PAE), 2023 WL 4249356 (S.D.N.Y. June 29, 2023).........................11, 18

*Analytical Survs., Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012)..............................................................................................1, 2, 3

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    No. 09-md-2058 (PKC), 2010 WL 4237304 (S.D.N.Y. Oct. 8, 2010)...................................17

*In re Bernard L. Madoff Inv. Sec. LLC*,
    No. 11-mc-12 (KMW), 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011)....................................9

*Bild v. Konig*,
    No. 09-cv-5576 (ARR), 2011 WL 4007895 (E.D.N.Y. Sept. 8, 2011) (Ross, J.) ........... *passim*

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)........................................................................................................15, 16

*In re Buspirone Pat. Litig.*,
    210 F.R.D. 43 (S.D.N.Y. 2002) ...........................................................................................13

*Cap. Recs., LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013)..................................................................................12

*In re CarLotz, Inc. Sec. Litig.*,
   No. 21-cv-5906 (RA), 2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023)............................ *passim*

*Chamarac Props. Inc. v. Pike*,
   No. 86-cv-7919 (KMW), 1994 WL 410902 (S.D.N.Y. Aug. 3, 1994)....................................12

*City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Tr., Inc.*,
   No. 08-cv-1418, 2011 WL 13305169 (E.D.N.Y. Feb. 24, 2011) ..............................................9

*Crespo v. Carvajal*,
   No. 17-cv-6329 (MKB), 2021 WL 4237002 (E.D.N.Y. Sept. 14, 2021) ..........................22, 24

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
   446 U.S. 1 (1980)..................................................................................................................20

*DeLeonardis v. Berg*,
   40 F. Supp. 2d 488 (E.D.N.Y. 1999) ....................................................................................25

*Elkind v. Liggett & Myers, Inc.*,
   635 F.2d 156 (2d Cir. 1980)....................................................................................................6

*O'Bert ex rel. Est. of O'Bert v. Vargo*,
   331 F.3d 29 (2d Cir. 2003)..................................................................................2, 20, 21, 23

*FAT Brands, Inc. v. PPMT Cap. Advisors, Ltd.*,
   No. 19-cv-10497 (JMF), 2021 WL 1392849 (S.D.N.Y. Apr. 13, 2021) ................................24

*In re Flor*,
   79 F.3d 281 (2d Cir. 1996)............................................................................................ *passim*

*Frazier v. Morgan Stanley & Co. LLC*,
   No. 16-cv-804 (RJS), 2020 WL 3791852 (S.D.N.Y. July 7, 2020) (Sullivan, J.) ...................19

*In re Gen. Motors LLC Ignition Switch Litig.*,
   427 F. Supp. 3d 374 (S.D.N.Y. 2019)....................................................................................19

*Ginett v. Comput. Task Grp., Inc.*,
   962 F.2d 1085 (2d Cir. 1992)................................................................................................21

*In re Goldman Sachs Grp. Sec. Litig.*,
   No. 10-cv-3461 (PAC), 2014 WL 5002090 (S.D.N.Y. Oct. 7, 2014) ....................................11

*Hermès Int'l v. Rothschild*,
   590 F. Supp. 3d 647 (S.D.N.Y. 2022)......................................................................................9

*In re Invs. Funding Corp. of New York Sec. Litig.*,
  36 B.R. 1019 (S.D.N.Y. 1983)................................................................................17

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)..............................................................................................5

*Jeffrey v. City of New York*,
  No. 20-cv-2843 (NGG), 2022 WL 2704760 (E.D.N.Y. July 12, 2022) ...............21, 23, 24, 25

*Koehler v. Bank of Bermuda, Ltd.*,
  101 F.3d 863 (2d Cir. 1996)................................................................................8, 12

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
  729 F.3d 99 (2d Cir. 2013)....................................................................................2

*Lichtenberg v. Besicorp Grp. Inc.*,
  28 F. App'x 73 (2d Cir. 2002) ...........................................................................3, 4

*Linde v. Arab Bank, PLC*,
  882 F.3d 314 (2d Cir. 2018)..................................................................................20

*LPD New York, LLC v. Adidas Am., Inc.*,
  295 F. Supp. 3d 275 (E.D.N.Y. 2017) ...............................................................2, 3

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
  54 F.4th 82 (2d Cir. 2022) ........................................................................ *passim*

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
  174 F. Supp. 2d 4 (S.D.N.Y. 2001)..................................................................13, 14

*In re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*,
  No. 09-cv-1796 (GBD), 2016 WL 950955 (S.D.N.Y. Mar. 7, 2016).....................19

*Colon ex rel. Molina v. BIC USA, Inc.*,
  No. 00-cv-3666 (SAS), 2001 WL 88230 (S.D.N.Y. Feb. 1, 2001) ......................13

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)...................................................................................6

*Novick v. AXA Network, LLC*,
  642 F.3d 304 (2d Cir. 2011)...........................................................................2, 21, 22

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89 (2d Cir. 2007)....................................................................................15

*Perez v. Ortiz*,
  849 F.2d 793 (2d Cir. 1988)....................................................................................4

*In re Pfizer Inc. Sec. Litig.*,
    819 F.3d 642 (2d Cir. 2016)........................................................................................6, 16

*In re Pfizer Inc. Sec. Litig.*,
    No. 04-cv-9866 (LTS), 2008 WL 11389170 (S.D.N.Y. Sept. 4, 2008)...................................19

*Pollack v. Laidlaw Holdings, Inc.*,
    No. 90-cv-5799 (PKL), 1993 WL 254932 (S.D.N.Y. June 25, 1993)...................................19

*Ryan, Beck & Co., LLC v. Fakih*,
    275 F. Supp. 2d 393 (E.D.N.Y. 2003) ......................................................................9, 11, 12, 20

*SEC v. Credit Bancorp, Ltd.*,
    103 F. Supp. 2d 223 (S.D.N.Y. 2000)..................................................................................12

*SEC v. Curshen*,
    372 F. App'x 872 (10th Cir. 2010) .......................................................................................6

*SEC v. Tecumseh Holdings Corp.*,
    765 F. Supp. 2d 340 (S.D.N.Y. 2011)..................................................................................6, 7

*Sequa Corp. v. GBJ Corp.*,
    156 F.3d 136 (2d Cir. 1998).................................................................................................8

*In re St. Clair*,
    No. 13-mc-1057 (SJF), 2014 WL 279850 (E.D.N.Y. Jan. 21, 2014) ....................................20

*Storms v. United States*,
    No. 13-cv-811 (MKB), 2015 WL 7429999 (E.D.N.Y. Nov. 20, 2015)..............................9, 13

*Strougo v. Scudder*,
    No. 96-cv-2136 (RWS), 1997 WL 473566 (S.D.N.Y. Aug. 18, 1997) ................................12

*Sussman v. I.C. Sys. Inc.*,
    No. 12-cv-181 (ER), 2013 WL 5863664 (S.D.N.Y. Oct. 30, 2013).....................................18

*TADCO Constr. Grp. Corp. v. Dormitory Auth. of N.Y.*,
    No. 08-cv-73 (KAM), 2012 WL 3011735 (E.D.N.Y. July 23, 2012)....................................24

*In re Teva Sec. Litig.*,
    No. 3:17-cv-558 (SRU), 2021 WL 1197805 (D. Conn. Mar. 30, 2021)..................................8

*Timperio v. Bronx-Lebanon Hosp. Ctr.*,
    No. 18-cv-1804 (PGG), 2020 WL 9211177 (S.D.N.Y. Mar. 9, 2020) ..................................24

*Topps Co., Inc. v. Cadbury Stani, S.A.I.C.*,
    No. 99-cv-9437 (CSH), 2006 WL 3247360 (S.D.N.Y. Nov. 7, 2006) ..................................25

v

*United States v. Greenfield,*
  No. 01 Cr. 401 (AGS), 2001 WL 1230538 (S.D.N.Y. Oct. 16, 2001) ......................................4

*In re Vivendi S.A. Sec. Litig.,*
  838 F.3d 223 (2d Cir. 2016)......................................................................................................16

*Weir v. U.S. Citizenship & Immigr. Servs.,*
  2021 WL 4311154 (E.D.N.Y. Sept. 22, 2021) .........................................................................8

*Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.,*
  964 F.2d 85 (2d Cir. 1992)........................................................................................................9

**STATUTES**

28 U.S.C. § 1292(b) .........................................................................................................................9

## I.  INTRODUCTION

This Court has twice dismissed Plaintiffs' sprawling securities claims in substantial part. *See* Dkt. No. 87 (("Order") on Second Amended Complaint ("SAC")); Dkt. No. 58 (Order on First Amended Complaint).  The second time, the Court's Order significantly narrowed Plaintiffs' class period, and found the vast majority of the allegedly false statements non-actionable.  Plaintiffs now make a kitchen-sink effort to revive the dismissed allegations by seeking (i) reconsideration of this Court's express holding regarding the February 2019 press release, (ii) certification for interlocutory appeal under 28 U.S.C. § 1292(b), and (iii) entry of partial final judgment under Rule 54(b).  *See* Dkt. No. 94 ("Mot.").  Plaintiffs' motion fails to meet the demanding standards for the extraordinary relief they are seeking.

*First*, the "strict" standard for reconsideration requires the moving party to identify "controlling decisions or data that the court overlooked."  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).  Plaintiffs do not come close to meeting this high bar.  They identify no controlling decision that the Court overlooked in its 62-page decision and point to no intervening factual development.  Instead, Plaintiffs seek to relitigate arguments this Court already considered and rejected, which is no basis for reconsideration.  *Second*, and similarly, Section 1292(b)'s requirements are "strictly construed," with certification reserved for "exceptional cases."  *Bild v. Konig*, No. 09-cv-5576 (ARR), 2011 WL 4007895, at *1, *3 (E.D.N.Y. Sept. 8, 2011) (Ross, J.).  Plaintiffs have not demonstrated that this is the "exceptional case," nor have they met *any* of the legal prerequisites for certification.  And, in any event, the Court can (and should) exercise its discretion to deny certification.  *Third*, the Court should deny Plaintiffs' bid for Rule 54(b) relief:  As with Section 1292(b) certification, Rule 54(b) relief should be granted "sparingly," and only when Plaintiffs can show both that (i) an immediate appeal would not lead to "successive appeals . . . on interrelated issues," and (ii) an appeal would avoid

1

"harshness or injustice." *O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29, 40 (2d Cir. 2003); *Novick v. AXA Network, LLC*, 642 F.3d 304, 310–11 (2d Cir. 2011). Here, granting Plaintiffs Rule 54(b) relief would ensure duplicative appellate review, and Plaintiffs fail to identify any equitable concern that this case presents.

In sum, Plaintiffs' requests simply reflect disagreement with this Court's decision. But Plaintiffs offer no sound basis for why that disagreement should entitle them to reconsideration, or to short-circuit the ordinary process for appellate review. The Court should deny their motion in its entirety.

## II.    ARGUMENT

### A.    Reconsideration Is Unwarranted

The standard governing motions for reconsideration "is strict." *Analytical Survs.*, 684 F.3d at 52. Reconsideration is appropriate "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). "A motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'" *LPD New York, LLC v. Adidas Am., Inc.*, 295 F. Supp. 3d 275, 284 (E.D.N.Y. 2017).

Plaintiffs do not identify any intervening, controlling precedent or any newly discovered facts justifying reconsideration. Nor do they (or could they) contend that the Court's dismissal order contained a "clear error" or caused Plaintiffs a "manifest injustice." Plaintiffs' apparent desire to relitigate the Court's decision about the February 2019 press release and to change (without amendment) the allegations in the SAC are not grounds for reconsideration.

2

**1. The Court Correctly Rejected Plaintiffs' Argument That The February 2019 Press Release Is Actionable Simply Because It Was Hyperlinked In A Later Press Release**

Plaintiffs offer no legal basis for reconsideration of the Court's decision dismissing the challenged statement in the February 2019 press release. The Court held that Plaintiffs lacked standing to challenge the February 2019 press release statement because it was made "about" pre-merger Virgin Galactic, an entity in which Plaintiffs did not own any shares. Order at 28. In so doing, the Court rejected Plaintiffs' argument that a hyperlink to the February 2019 statement in a later December press release "transform[ed] the [February] statement into a statement by Post-Merger Virgin Galactic." *Id.* Plaintiffs do not point to any new precedent, overlooked precedent, or newly discovered facts that would undermine the Court's holding. That failure alone defeats Plaintiffs' request for reconsideration. *See Analytical Survs.*, 684 F.3d at 52 ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" (citation omitted)); *see also Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (movant must show the facts or precedent justifying reconsideration were "put before the Court"); *LPD New York, LLC*, 295 F. Supp. 3d at 284 (reconsideration not an opportunity to make new arguments that could have been made before).

Plaintiffs try to justify their reconsideration request by suggesting that Defendants raised this issue for the first time in their Reply brief. *See* Mot. at 8–9. That is wrong. In their *opening* brief, Defendants argued that the February 2019 statement should be excluded because it pre-dated the class period. *See* Dkt. No. 76 at 11. Plaintiffs responded with the same argument they press now: that the February 2019 press release was "incorporated . . . into [the December 2019] press release" and therefore fell within the class period. *See* Dkt. No. 78-3 at 12. Plaintiffs also requested (and Defendants did not oppose) a sur-reply to address a recent district court decision

3

from the Southern District of New York (post-dating Defendants' opening brief), which held that shareholders in a post-merger public company lack standing to sue for statements made by and about the pre-merger entity. While Plaintiffs used that brief to distinguish the recent precedent, they did not argue that they nevertheless had standing to challenge the February statement because it was incorporated into a post-merger statement. In any event, the Court considered and rejected that very incorporation argument. *See* Order at 28. As the Court explained, a mere hyperlink is not sufficient to transform the February statement into a statement made by the post-merger entity. Rather, the February press release—issued long before the class period began—was a statement by pre-merger Virgin Galactic about pre-merger Virgin Galactic. *See id.* Reconsideration is not appropriate simply because Plaintiffs disagree with the Court's conclusion. *See Lichtenberg*, 28 F. App'x at 75 (reconsideration not permitted where request was attempt to "argue [an] issue[] already considered" because Plaintiffs did "not like the way the original motion was resolved."). Plaintiffs cite no cases granting reconsideration in similar circumstances. The cases they do cite— one of which involved an "inadvertent[]" ruling before a reply had been filed, *United States v. Greenfield*, No. 01 Cr. 401 (AGS), 2001 WL 1230538, at \*2 (S.D.N.Y. Oct. 16, 2001), and the other, a *sua sponte* dismissal without any briefing at all, *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988)—are inapposite.

But even if the Court were once again to consider Plaintiffs' rehashed argument, it should be rejected. Plaintiffs suggest that the December 2019 press release was misleading because it claimed, "*we* did it again" while hyperlinking the February 2019 press release—thereby touting the February 2019 spaceflight as a success. Mot. at 9–10, 12–13. But the Court has already *twice* held that the December press release itself was "not materially misleading in context" because it "d[id] not create a misleading impression that the February 2019 flight had no problems." Order

4

at 18.  Plaintiffs offer no reason to conclude that, in so doing, the Court "overlooked" (Mot. at 10) the plain text of the December press release, which contained both the language referring to the pre-merger entity with the word "we" and a reference to the February flight.  As such, neither is a valid basis for reconsideration.

Plaintiffs next assert that the Court misapplied "the *Frutarom* standing test" because "[w]hen Post-Merger Virgin Galactic chose to make the statement again in December 2019, it was talking to Post-Merger investors about the prospects of Post-Merger Virgin Galactic's business[.]" Mot. at 12-13 (citing *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022)).  That assertion misinterprets the Court's order.  It was only the *February* 2019 statement that was dismissed under *Frutarom* because it did not relate to a post-merger Virgin Galactic security.  The *December* 2019 statement—although indeed "talking to Post-Merger investors"— was dismissed because it was not itself misleading, and did not incorporate by reference the February statement.  Order at 18, 28.  So, Plaintiffs' assertion that the December statement was directed at post-merger investors is irrelevant, because that statement was not dismissed on *Frutarom* grounds.  In substance, Plaintiffs' argument is just another re-tread of its argument that the hyperlink incorporates the February statement by reference.

And on that front, the cases cited by Plaintiffs—which they could have cited in prior briefing but did not—provide no reason to alter the Court's conclusion.  Nearly all of those cases do not even address hyperlinked or incorporated statements, but rather deal with the entirely different question of when a third party can be liable for misstatements made by another based upon information the third party provided.  *See* Mot. at 10–11 (citing *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (holding third party not liable for contributing material used to make statement because "the maker of a statement is the person or entity with

5

ultimate authority over the statement, including its content and whether and how to communicate it," not those who merely contribute to its content); *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 657–58 (2d Cir. 2016) (finding question of fact as to whether Pfizer had "ultimate authority" over statements made by employees at other firms); *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 163 (2d Cir. 1980) (assessing statements made by company representatives to analysts and finding no duty to inform of negative information or that statements were materially misleading), *superseded by statute on other grounds as stated in Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 38–40 (2d Cir. 2012); *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) (assessing liability for misstatements by defendants that were later printed in analyst reports)).  To the extent Plaintiffs cite these cases to show that post-merger Virgin Galactic had "ultimate authority" over the content of the December 2019 press release (Mot. at 10), no one disputes that it did; the question is whether the hyperlink in that press release incorporated the *content* of the February statement—and Plaintiffs' authority is irrelevant for that proposition.

The one case Plaintiffs cite that actually involves a hyperlinked statement is an unpublished, out-of-circuit case in which the court expressly declined to reach the question of whether a hyperlink made an otherwise non-actionable statement actionable.  *See SEC v. Curshen*, 372 F. App'x 872, 882 (10th Cir. 2010) ("Because we affirm the district court's finding of liability [on other grounds], we need not reach whether hyperlinking to the Investor Report is actionable under these statutes.").  This is hardly the sort of overlooked, controlling precedent that would justify reconsideration, even if it had been put before the Court at the appropriate time.

Finally, Plaintiffs cite *SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340 (S.D.N.Y. 2011), for the proposition that "courts hold makers liable for the content of statements they incorporate by reference." Mot. at 11.  But the question here is whether the hyperlink qualifies as

an incorporation by reference at all. *Tecumseh* only underscores why it does not. There, the challenged statements made clear they were "in all respects subject to" the incorporated document, and the company either included the incorporated document as an attachment or indicated its availability on request to investors. *Id.* at 345 n.12. *Tecumseh* stands in stark contrast to the simple hyperlink at issue here.

### 2.    The Court Properly Dismissed The Insider Trading Claims Related To Richard Branson's August 10–12, 2021 Sales

Plaintiffs offer no valid basis to reconsider the Court's dismissal of their insider trading claims based on Branson's August 10–12, 2021 trades. Plaintiffs concede that the Court correctly read their complaint *not* to "advance [an] insider trading claim based on Branson's knowledge that the July 2021 flight had encountered problems." Mot. at 15; Order at 53. Plaintiffs nevertheless claim reconsideration is warranted because their admitted omission from the complaint was a "scrivener's error." Mot. at 15 (emphasis omitted) (citing Order at 53). This argument is baseless. The Court was not required to redraft the complaint (which Plaintiffs had already comprehensively amended twice) to cure its defects on the assumption they were unintentional. Plaintiffs cite no case where a court granted reconsideration based on the belated notion that an acknowledged pleading defect was a "scrivener's error." This argument comes nowhere close to the kind of new fact or intervening precedent needed to secure such extraordinary relief.

As the Court correctly held, the complaint simply does not state a Section 10(b) claim for insider trading based on Branson's alleged knowledge about the July 2021 flight. Unlike the other counts in Plaintiffs' SAC, the Section 10(b) insider trading count (Count II) does not incorporate by reference the allegations from the body of the complaint. *Compare* SAC ¶¶ 387–392, *with id.* ¶¶ 382, 393, 398. The paragraphs Plaintiffs claim the Court overlooked (*id.* ¶¶ 236–237), which are expressly not part of Count II, thus do not form the basis of Count II's separate list of

7

allegations. That list does not include Branson's supposed knowledge that the July 2021 flight strayed from approved airspace. *See id.* ¶ 387.[1] The Court is not obligated to reconsider its decision simply because Plaintiffs now seek, on a motion for reconsideration and under the guise of "liberal[]" construction, to introduce yet another legal theory into a lengthy complaint they have already twice amended and that has already been twice dismissed in substantial part. *See Weir v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 4311154, at *1 (E.D.N.Y. Sept. 22, 2021) ("A party may [] not assert new allegations or a new legal theory on a motion for reconsideration." (citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998))); *In re Teva Sec. Litig.*, No. 3:17-cv-558 (SRU), 2021 WL 1197805, at *6 (D. Conn. Mar. 30, 2021) (rejecting reconsideration because "even if the plaintiffs *could have* pleaded a scheme liability claim . . . they *did not do so*" (emphasis in original)). The motion for reconsideration should be denied.

### B. Plaintiffs Cannot Satisfy Section 1292(b)'s Demanding Standard For Certifying An Interlocutory Appeal

Plaintiffs seek certification for interlocutory appeal under Section 1292(b), but come nowhere close to satisfying the stringent criteria for securing such relief. "It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Section 1292(b) provides "a rare exception" to this "basic policy of postponing appellate review until after the entry of a final judgment"—one not applicable here. *Id.*; *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (citation omitted).

---

[1] To be sure, Count II vaguely suggests that there may be "other[]" unspecified bases of insider knowledge. SAC ¶ 387. But that vague allegation alone, without even an incorporation by reference of the preceding allegations in the SAC, is insufficient to put Defendants on notice that the July flight supposedly serves as the basis of their claim—especially in the context of the sprawling, 406-paragraph complaint.

A district court may certify an order for interlocutory appeal only if it determines that: (i) "such order involves a controlling question of law" (ii) "as to which there is substantial ground for difference of opinion," and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Plaintiffs have "the burden to establish all three section 1292(b) factors." *Storms v. United States*, No. 13-cv-811 (MKB), 2015 WL 7429999, at *10 (E.D.N.Y. Nov. 20, 2015). "[E]ven where the three statutory criteria are met," district courts "have independent and unreviewable authority to deny certification." *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 396 (E.D.N.Y. 2003) (citation omitted).

"Few presumptions are as integral to judicial efficiency in the federal courts as the one *against* granting interlocutory review." *Hermès Int'l v. Rothschild*, 590 F. Supp. 3d 647, 649 (S.D.N.Y. 2022) (emphasis added). The Second Circuit has thus "repeatedly cautioned" that "use of [Section 1292(b)'s] certification procedure should be strictly limited" and reserved for "exceptional circumstances." *Flor*, 79 F.3d at 284 (collecting cases); *see Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992) ("urg[ing] the district courts to exercise great care in making a § 1292(b) certification"). As a result, Section 1292(b) certifications are "strongly disfavored." *Albus Denizcilik Ltd. v. Progress Bulk Carriers Ltd.*, No. 15-cv-1256 (KAM), 2017 WL 10180556, at *2 (E.D.N.Y. Apr. 21, 2017) (citation omitted). Grants of Section 1292(b) motions are thus "extremely rare in this District, and acceptance of certification by the Second Circuit [is] even rarer." *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Tr., Inc.*, No. 08-cv-1418, 2011 WL 13305169, at *3 (E.D.N.Y. Feb. 24, 2011). In particular, decisions about "the sufficiency of pleadings are generally inappropriate for interlocutory review." *In re Bernard L. Madoff Inv. Sec. LLC*, No. 11-mc-12 (KMW), 2011 WL 3897970, at *7 (S.D.N.Y. Aug. 31, 2011).

Plaintiffs have not come close to satisfying these demanding standards.  They seek certification by advancing an "alternative reading of *Frutarom*" that would treat de-SPAC transactions (or at least this de-SPAC transaction) differently from other mergers because a SPAC target's pre-merger statements (or at least those challenged here) are most likely "about" the post-merger entity.  Mot. at 18–20.  This argument flunks each of Section 1292(b)'s requirements:  It does not present a "controlling question of law" or a "substantial ground for difference of opinion," and it would only delay litigation of Plaintiffs' remaining claims.  This is not one of the "rare" and "exceptional" cases that merits a departure from the federal policy against piecemeal appeals.  *Flor*, 79 F.3d at 284.

### 1.    The Court's Application of *Frutarom* To Plaintiffs' Allegations Does Not Involve a "Controlling Question Of Law"

Section 1292(b)'s first requirement is that the order involve a "controlling question of law." *Bild*, 2011 WL 4007895, at *1.  That requirement means the issue must be both a "pure" question of law and "controlling" in the context of this litigation*.  Id*.  Plaintiffs cannot show either.

*First*, Plaintiffs have failed to identify a "pure question of law." *Id*.  Rather, this case involves the application of "settled law to the facts or evidence of a particular case," which is "[t]he antithesis of a proper § 1292(b) appeal." *Id*.  Plaintiffs concede that "*Frutarom* is controlling authority," and challenge "the *application of* its 'about which' standing test" to "SPAC cases." Mot. at 15–16 (emphasis added).  Elsewhere, they go further into the evidence, arguing that the *specific facts* alleged in their complaint distinguish this case from both *Frutarom* and *CarLotz*. *See* Mot. at 19–20, 26–27 (addressing specific prospectus discussed in SAC); Dkt. No. 86 ("Pl. Sur-Reply") at 6–9 (arguing that those cases are "distinguishable on their facts").  Because Plaintiffs concede they seek interlocutory review of "the application of" *Frutarom* to this particular de-SPAC transaction and statements about it (Mot. at 3, 15, 26–27), they do not "raise a controlling

10

question of law." *See, e.g.*, *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19-cv-10067 (PAE), 2023 WL 4249356, at *18 (S.D.N.Y. June 29, 2023) (collecting cases holding that challenges to application of law to "unique set of facts" alleged in a complaint are especially "weak candidate[s] for [Section 1292(b)] certification"); *In re Goldman Sachs Grp. Sec. Litig.*, No. 10-cv-3461 (PAC), 2014 WL 5002090, at *2 (S.D.N.Y. Oct. 7, 2014) (similar); *see also Abortion Rts. Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982) (denying Section 1292(b) certification because "[t]he question concerning plaintiffs' standing . . . involve[d] whether the court's application of the decided and governing case law to the relevant facts is appropriate").

*Second*, even if the application of *Frutarom* to Plaintiffs' claims presented a pure legal question, that question would still not be "controlling." For a question to be controlling, Plaintiffs would have to show that (i) "reversal of the court's order would terminate the action," or (ii) "determination of the issue on appeal would materially affect the outcome of the litigation." *Bild*, 2011 WL 4007895, at *1 (citation omitted). Here, even if the Second Circuit resolved the certified question in Plaintiffs' favor, its decision would be unlikely to affect the outcome of the case (much less terminate it), because there are many *other* reasons why Plaintiffs' claims about these pre-merger statements fail. *See, e.g.*, Dkt. No. 73-2 at 1–9 (chart summarizing motion to dismiss grounds for dismissal for each alleged misstatement, including that statements pre-date the class period and lack of adequate allegations of scienter, loss causation, or misstatements); Order at 17 n.5 (declining to address other arguments for dismissal in light of *Frutarom* holding). "Reversal of the [dismissal] Order" on the *Frutarom* issue thus would merely "require the Court to determine" Defendants' other grounds for dismissal, which might lead to exactly the same result the Court already reached. *Ryan*, 275 F. Supp. 2d at 396.

11

Courts routinely find cases not to present a "controlling" question in these circumstances. *See, e.g.*, *id.*; *Koehler*, 101 F.3d at 866 (certification improper because "either way we rule, a remand will be required"); *Chamarac Props. Inc. v. Pike*, No. 86-cv-7919 (KMW), 1994 WL 410902, at *2 (S.D.N.Y. Aug. 3, 1994) (denying certification because "were the Court of Appeals to reverse the [] Order, the court would still have to consider the alternative grounds for dismissal that it did not previously reach, and after that, proceed to trial"); *Strougo v. Scudder*, No. 96-cv-2136 (RWS), 1997 WL 473566, at *7 (S.D.N.Y. Aug. 18, 1997) (similar); *see also In re 127 John St. Assocs.*, No. 93-B-46171 (CB), 2005 WL 911488, at *7 (S.D.N.Y. Apr. 18, 2005) ("[A]n interlocutory appeal is not warranted because there are potentially other grounds for affirming the Order," making the issue "not controlling").  The same result should follow here, and Plaintiffs' request for certification therefore fails at the first hurdle.[2]

### 2.    There Is No "Substantial Ground For Difference Of Opinion" On *Frutarom*'s Application Here

Plaintiffs' request fails the second requirement for interlocutory review because it does not present any "substantial ground for difference of opinion." *Flor*, 79 F.3d at 284.  A substantial ground for difference of opinion exists where (i) "there is conflicting authority on the issue," or (ii) "the issue is particularly difficult and of first impression for the Second Circuit." *Cap. Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013).  "[T]he mere presence of a

---

[2] Some cases have suggested that a question of law may be "controlling" when it "has precedential value for a large number of cases." *See, e.g.*, *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) (acknowledging this case law, but holding that "[p]recedential value, while certainly something that should be considered, is not in this Court's view per se sufficient to meet the 'controlling issue of law' standard").  Plaintiffs have not advanced this argument, instead discussing other pending cases as part of the Court's "discretionary" analysis. *See* Mot. at 29–30.  Even if they had done so, however, the argument would fail: *Credit Bancorp* is correct that precedential value alone cannot make a question "controlling."  And given Plaintiffs' fact-bound arguments, it is far from clear that any holding the Second Circuit reaches would have broad applicability to other pending cases with their own sets of unique facts.

disputed issue that is a question of first impression, standing alone, is insufficient." *Flor*, 79 F.3d at 284. Instead, there must be "genuine doubt as to whether the district court applied the correct legal standard." *Bild*, 2011 WL 4007895, at \*2. Section 1292(b) "is not intended to be a vehicle to provide early review of difficult rulings in hard cases." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 174 F. Supp. 2d 4, 8 (S.D.N.Y. 2001) (citation omitted).

**There Is No Conflict.** There is no conflict on the *Frutarom* question Plaintiffs have posed. To the contrary, the only other case to apply *Frutarom* in the SPAC context held just like the Court did here: "*Frutarom* forecloses Plaintiffs' challenge to any statement made by [a] Pre-Merger [SPAC target] about [the] Pre-Merger [SPAC target]." *In re CarLotz, Inc. Sec. Litig.*, No. 21-cv-5906 (RA), 2023 WL 2744064, at \*4 (S.D.N.Y. Mar. 31, 2023); *see id.* at \*5 (court "bound by [*Frutarom*'s] holding" on this issue). This lack of conflict seriously undermines the case for certification. *See, e.g.*, *Storms*, 2015 WL 7429999, at \*11 (denying certification because "Plaintiffs point to no case law reaching [their] conclusions," while other "courts have reached the opposite conclusion"); *In re Buspirone Pat. Litig.*, 210 F.R.D. 43, 50 (S.D.N.Y. 2002) (similar); *MTBE*, 174 F. Supp. 2d at 8–9 (similar).

In passing, Plaintiffs cite a string of out-of-circuit cases in which they claim courts "found" that SPAC investors "have standing to sue for statements made by the pre-merger entity." Mot. at 24 & n.10 (collecting cases). But *not one* of Plaintiffs' cases even purports to address the purchaser-seller rule on which this Court relied, much less "found" standing. *See id.* And, in any event, out-of-circuit decisions are irrelevant to this analysis. *See Colon ex rel. Molina v. BIC USA, Inc.*, No. 00-cv-3666 (SAS), 2001 WL 88230, at \*2 (S.D.N.Y. Feb. 1, 2001) (collecting cases holding that "[d]isagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion").

13

***There Is No Other Substantial Ground For Difference Of Opinion.*** Without a conflict, Plaintiffs attempt to parse the language of *Frutarom* itself. But far from showing that the Court's holding on the *Frutarom* issue satisfies Section 1292(b)'s demanding standard, this effort only underscores that they simply disagree with this Court's decision, and would like "early review" of the Court's application of *Frutarom*. *MTBE*, 174 F. Supp. 2d at 8. That is not a permissible basis for interlocutory review. *See id.*

*Frutarom* holds that "purchasers of a security of an acquiring company do not have standing under Section 10(b) to sue . . . for alleged misstatements the target company made about itself prior to the merger between the two companies." 54 F.4th at 88. That holding describes this case almost exactly: Before October 2019, pre-merger Virgin Galactic made several "alleged misstatements . . . about itself," for which Plaintiffs would like to hold post-merger Virgin Galactic liable. But as both this Court and *CarLotz* held in the SPAC context, *Frutarom* precludes shareholders of the acquiring entity from suing it over alleged misstatements by the pre-merger target about its own operations and securities.[3] *See CarLotz*, 2023 WL 2744064, at *4–5; Order at 14–17. Plaintiffs try to draw some factual distinctions between SPAC cases (and this SPAC case in particular) and *Frutarom*—while ignoring *CarLotz* almost entirely. *See* Mot. at 18–20. Those arguments are meritless, and only serve to highlight that this motion involves, at most, a fact-bound dispute about the particular allegations here.

---

[3] Plaintiffs suggest that the *only* securities that existed here were *post-merger* Virgin Galactic's, and that pre-merger Virgin Galactic's statements must have therefore been "about" those securities. *See, e.g.*, Mot. at 20. That argument is wrong. Of course, pre-merger Virgin Galactic, as a privately held entity, did not have *publicly traded* securities; but, as Plaintiffs elsewhere acknowledge, pre-merger Virgin Galactic did have its own *private* securities, which Social Capital bought. *See* Mot. at 27 (describing "Pre-Merger Virgin Galactic's securities"). Pre-merger Virgin Galactic's statements, even assuming they aimed at "convinc[ing] Social Capital's shareholders to approve the merger with Pre-Merger Virgin Galactic," Order at 14, thus related to *pre-merger Virgin Galactic's securities*, not the securities of any other entity.

14

Plaintiffs primarily argue that the pre-merger challenged statements targeted the SPAC Social Capital and the post-merger entity's shareholders, rather than pre-merger Virgin Galactic's shareholders. *See id.* at 18–19. But, as this Court explained, the same was true in *Frutarom*. *See* Order at 16. In *Frutarom*, the pre-merger target's statements were directed, in part, at the acquiror and its shareholders. 54 F.4th at 87 (describing joint press releases, SEC filings, presentations, and investment bank reports about the acquisition); *see also* Pl. Sur-Reply at 3–4, *CarLotz*, Dkt. No. 80 (discussing pre-merger entity's statements "touting the business combination"). Indeed, as this Court noted, in *Frutarom* the target company's challenged statements were actually "incorporated into statements of the *acquiring* company." Order at 16 (emphasis added). That incorporation did not change the fact that the pre-merger statements remained *about* the pre-merger target and its securities, not the post-merger entity. *Frutarom*, 54 F.4th at 87 (rejecting "shifting and highly fact-oriented inquiry" into potential audience for statements (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 755 (1975))); *CarLotz*, 2023 WL 2744064, at *4. In short, the question Plaintiffs have teed up is not "of first impression in the Second Circuit." As both this Court and *CarLotz* recognized, the Circuit has, in substance, already answered it.

Plaintiffs also reprise the argument, which this Court already rejected, that a minor edit the Second Circuit made to the original *Frutarom* opinion shows Plaintiffs must be right. *See* Mot. at 20–23 (describing revision from "*a security of the issuer* about which the misstatement was made" to "*the security about which* a misstatement was made"); *see* Order at 15–16 (rejecting this argument). But, as the Court explained, "Plaintiffs' arguments overstate the conclusion to be drawn from the amendment." Order at 15. In reality, the amendment simply clarified that Section 10(b) liability can extend beyond *issuers* themselves. *See id.* at 14–15 (discussing *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 102 (2d Cir. 2007)). It did not relax the requirement that to be

15

actionable, alleged misstatements must be *about* the entity in which the plaintiff traded shares. Here, Plaintiffs only ever traded in shares of post-merger Virgin Galactic. So they cannot sue for alleged misstatements *by* pre-merger Virgin Galactic *about* pre-merger Virgin Galactic.

Plaintiffs briefly assert a handful of other arguments, but none holds up on any inspection.

*First*, Plaintiffs suggest a conflict between this Court's decision and two prior Second Circuit cases. *See* Mot. at 25–26 (citing *Pfizer*, 819 F.3d at 657; and *In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016)). But neither *Pfizer* nor *Vivendi* addressed this issue at all. Instead, Plaintiffs argue that, if this Court's reading of *Frutarom* were applied to the *facts* in those cases, those decisions might have come out differently. Mot. at 25–26. But no party raised such arguments in those cases (only one of which even involved a merger, and both of which involved very different facts), and thus nothing in the Order conflicts with those decisions.

*Second*, Plaintiffs cite *Blue Chip Stamps*, 421 U.S. at 730, the Supreme Court decision confirming the purchaser-seller rule for Section 10(b) claims. Mot. at 26–27. That case *limits* standing under Section 10(b) to the "class of plaintiffs . . . who have at least dealt in the security to which [a] prospectus, representation, or omission relates." *Blue Chip Stamps*, 421 U.S. at 747. Turning this restriction on its head, Plaintiffs cite the term "prospectus" to suggest that *Blue Chip Stamps* guarantees plaintiffs a claim against *any* representation in a prospectus, so long as the prospectus, in some broad sense, relates to a security they bought or sold. *See* Mot. at 26–27. On that basis, Plaintiffs contend this Court's decision "[a]rguably [c]onflicts" with *Blue Chip Stamps* because Plaintiffs' claims arise, in part, from statements in a document labeled a "prospectus." Mot. at 26 & n.12.

The Court should reject Plaintiffs' effort to manufacture a conflict. While a plaintiff must have "*at least* dealt in the security to which [a] prospectus . . . relates," *Blue Chip Stamps*, 421

16

U.S. at 747 (emphasis added), the purchaser-seller rule also requires that the challenged misrepresentation be *about* that security. *See Frutarom*, 54 F.4th at 88. So too here. As this Court explained, the question is whether the challenged statements by pre-merger Virgin Galactic (including the statements in the prospectus) were, in fact, *about* pre-merger Virgin Galactic's securities, or rather *about* post-merger Virgin Galactic's securities. The Court held the former (Order at 14–17), presenting no conflict with Supreme Court case law—and certainly not the kind of question appropriate for interlocutory review under Section 1292(b).

*Finally*, Plaintiffs make an appeal to policy. *See* Mot. at 23–25 (arguing that Plaintiffs are the "very core of § 10(b)'s concerns because they were the *targets* of Defendants' deceptive device"). But, as *CarLotz* recognized, the Second Circuit confronted (and rejected) similar concerns when it decided *Frutarom* and denied rehearing en banc. 2023 WL 2744064, at *5 & n.3.[4] Plaintiffs' similar disagreement with this Court's decision is not a "substantial ground for difference of opinion" warranting the extraordinary measure of interlocutory review.

---

[4] Plaintiffs invoke hypotheticals about the implications of "ordinary corporate housekeeping" that are far beyond the scope of this case or any interlocutory appeal. *See* Mot. at 24–25. Hypothetical issues that the Court did not address, and the Second Circuit could not decide, cannot justify an interlocutory appeal under Section 1292(b). *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-md-2058 (PKC), 2010 WL 4237304, at *2 (S.D.N.Y. Oct. 8, 2010) ("[Defendants] also raise certain hypothetical scenarios that are not present in this case, and seek further guidance as to a 'ready limiting principle.' . . . But section 1292(b) is not a vehicle to solicit advisory opinions, and a court is to decide only the case and controversy before it."); *In re Invs. Funding Corp. of New York Sec. Litig.*, 36 B.R. 1019, 1022 (S.D.N.Y. 1983) ("Section 1292(b) is not designed to afford the Court of Appeals an opportunity to render an advisory opinion on a hypothetical legal problem, but to allow it to consider a precise, complex legal question against the concrete factual background facing the district court.").

17

### 3. An Immediate Appeal Would Complicate And Draw Out, Not "Materially Advance," This Litigation

Plaintiffs fail to establish that certification would "materially advance" this case. Generally, "in regard to the third prong under § 1292(b), '[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial.'" *Bild*, 2011 WL 4007895, at *3 (citation omitted). "Courts place particular emphasis on the importance of this last factor," which is "strictly construed to preclude appeals that have no clear potential to materially advance the litigation's termination." *Id.* (citation omitted). Here, immediate appeal holds no hope of advancing the "termination" of this case and, in fact, would simply drag proceedings out further.

That fact is true whether or not discovery were stayed pending Plaintiffs' interlocutory appeal. If discovery *were* stayed, that pause would be the opposite of material advancement. Instead, the dismissed Lead Plaintiffs would freeze the claims of the three named Plaintiffs with remaining, live claims (and the class they represent), while those dismissed Plaintiffs pursue a lengthy appeal of claims the Court has held foreclosed. Accordingly, an interlocutory appeal and stay would slow proceedings down dramatically. *See Altimeo*, 2023 WL 4249356, at *19 (since "it does not make good sense to commence discovery as to [some] plaintiffs while the [dismissed] shareholders' appeal pends," certification would only "slow the instant litigation, and introduce uncertainty as to its progress."). Because "an interlocutory appeal would materially delay the forward progress of the [remaining] claims," the "efficiencies [would] not favor the certification of an interlocutory appeal." *Id.* (collecting cases); *see also Sussman v. I.C. Sys. Inc.*, No. 12-cv-181 (ER), 2013 WL 5863664, at *3 (S.D.N.Y. Oct. 30, 2013) (similar).

Nor would parallel proceedings advance the litigation. Even if the proceedings in this Court and on appeal proceeded together, and even if the Second Circuit both accepted the appeal

and reversed on the *Frutarom* issue, at best this Court might receive a remand from the Second Circuit on the eve of trial on the remaining claims. That outcome would place the revived claims exactly where they were before dismissal: subject to a plethora of alternative grounds for dismissal, which the Court would have to resolve before even starting discovery. As courts observe, nothing about that drawn-out process would "materially advance" this litigation. *See, e.g.*, *Acumen re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, No. 09-cv-1796 (GBD), 2016 WL 950955, at *3 (S.D.N.Y. Mar. 7, 2016) (certification inappropriate where, even with reversal "the district court must then proceed to resolve the merits of the parties' claims by trial"); *In re Pfizer Inc. Sec. Litig.*, No. 04-cv-9866 (LTS), 2008 WL 11389170, at *2 (S.D.N.Y. Sept. 4, 2008) (similar).

Plaintiffs offer no serious contrary argument. They claim that, if this Court's decision were reversed after final judgment, the parties would need to "start discovery from scratch." Mot. at 27–28. But such is true in *every* case in which plaintiffs seek Section 1292(b) certification, and thus cannot provide the "rare" and "exceptional" circumstances the statute requires. *Flor*, 79 F.3d at 284; *see, e.g.*, *Frazier v. Morgan Stanley & Co. LLC*, No. 16-cv-804 (RJS), 2020 WL 3791852, at *2 (S.D.N.Y. July 7, 2020) (Sullivan, J.) (rejecting similar argument as relying on "a highly contingent risk that inheres in many if not most cases involving requests for interlocutory review"); *In re 650 Fifth Ave.*, No. 08-cv-10934 (RJH), 2012 WL 363118, at *7 (S.D.N.Y. Feb. 2, 2012) (similar).[5]

---

[5] Plaintiffs cite two cases, one which depended on the "particularly substantial" efficiencies that came "in the context of an MDL," and explained that, if the case were not an MDL, the court "would not have found the need for immediate appeal as pressing." *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 393 (S.D.N.Y. 2019). The other, a case from 1993, did echo Plaintiffs' concern about "repetition of discovery." *Pollack v. Laidlaw Holdings, Inc.*, No. 90-cv-5799 (PKL), 1993 WL 254932, at *4 (S.D.N.Y. June 25, 1993). This decision diverges from both the many decisions cited above, and the Second Circuit's repeated admonition to reserve Section 1292(b) appeals for "exceptional" cases. This Court should not follow its lead. And, in

### 4.      The Court Should Deny Certification In Its Discretion

Finally, even where a plaintiff *does* satisfy the three statutory criteria of Section 1292(b), the Court may deny certification in its discretion if the case does not present "exceptional circumstances" justifying immediate appeal.  *See, e.g.*, *Ryan*, 275 F. Supp. 2d at 396.  Plaintiffs, despite bearing the burden on this question, have not even tried to show that this case is "exceptional."  *See In re St. Clair*, No. 13-mc-1057 (SJF), 2014 WL 279850, at *3 (E.D.N.Y. Jan. 21, 2014).  Indeed, this case is anything but.  The Court applied established Circuit precedent to the unique facts pled in Plaintiffs' SAC, in accordance with the only other court to have addressed the issue.  *See CarLotz*, 2023 WL 2744064, at *4–5.  There is no reason why Plaintiffs should be permitted to circumvent the ordinary process for appellate review.

### C.      There Are No Grounds For Entering Rule 54(b) Partial Final Judgment

Finally, Plaintiffs seek entry of partial final judgment, under Rule 54(b), but fail to satisfy that rule's demanding standard.  Rule 54(b) allows a district court to enter partial final judgment when it "determines that such an appeal is needed to avoid harshness or injustice."  *O'Bert*, 331 F.3d at 40.  As with Section 1292(b), respect for the "historic federal policy against piecemeal appeals" requires that this power "be exercised sparingly."  *Id.* at 41 (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)); *see Curtiss-Wright*, 446 U.S. at 10 (Rule 54(b) requests should not be "granted routinely.").

Rule 54(b) requires three criteria to be satisfied: "(i) there are multiple claims or parties, (ii) at least one claim or the rights and liabilities of at least one party has been finally determined, and (iii) the court makes an express determination that there is no just reason for delay."  *Linde v.*

---

any event, certification would still be inappropriate for the independent reasons that this case presents no controlling question of law, on which there is substantial ground for difference of opinion.

20

*Arab Bank, PLC*, 882 F.3d 314, 322–23 (2d Cir. 2018) (alterations omitted).  Because the first two criteria are often satisfied, "the key factor is whether there is no just reason for delay."  *Jeffrey v. City of New York*, No. 20-cv-2843 (NGG), 2022 WL 2704760, at \*2 (E.D.N.Y. July 12, 2022). This factor requires Plaintiffs to show both that: (i) the dismissed and remaining claims "are sufficiently separable to avoid judicial inefficiency," and (ii) "the equities favor entry of" partial final judgment.  *Id.* at \*3.  Accordingly, even when dismissed claims "are in some sense separable from the remaining unresolved claims," courts should grant Rule 54(b) relief "only in the infrequent harsh case."  *O'Bert*, 331 F.3d at 41 (citation omitted).  Plaintiffs do not come close to meeting this exacting standard.

### 1.    The Substantial Overlap Between Plaintiffs' Dismissed And Surviving Claims Disfavors Rule 54(b) Relief

"[S]ound judicial administration must involve a proper regard for the duties of both the district court and the appellate court."  *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1095 (2d Cir. 1992).  "That is, courts should 'avoid the possibility that the ultimate dispositions of the claims remaining in the district court could either moot [a] decision on the appealed claim[s] or require [the appellate court] to decide issues twice.'"  *Jeffrey*, 2022 WL 2704760, at \*2 (quoting *Ginett*, 962 F.2d at 1095).  "[I]t does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case in successive appeals from successive decisions on interrelated issues."  *Novick*, 642 F.3d at 310 (citation omitted).  In other words, courts should "avoid redundant review of multiple appeals based on the same underlying facts and similar issues of law."  *Jeffrey*, 2022 WL 2704760, at \*2 (citation omitted).

Here, an immediate appeal would lead to exactly that problem.  For example, Plaintiffs' sole remaining Section 10(b) material-misstatement claim relates to Richard Branson's alleged

21

July 11, 2021 misstatement about his test flight that day. *See* Order at 61 (citing SAC ¶¶ 231, 314). But the Court has dismissed similar claims challenging several related statements about that very flight. *See, e.g.*, Order at 37–41 (dismissing alleged misstatements by Colgalzier for lack of scienter, some of which were in the same interview in which Branson made alleged misstatements). The Court also dismissed Plaintiffs' insider trading claim based on Branson's August 10–12, 2021 trades, *see id.* at 53, a claim that Plaintiffs seem intent to argue, on appeal, should have survived based on his knowledge that the July 11, 2021 test flight had encountered problems. *See* Mot. at 13–15 (seeking reconsideration of this issue). Plaintiffs' appeal and remaining claims would therefore necessarily involve "interrelated issues" about this flight, making Rule 54(b) relief inappropriate. *Novick*, 642 F.3d at 311; *see, e.g.*, *e.g.*, *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 769 F.3d 135, 143 (2d Cir. 2014) (rejecting Rule 54(b) appeal where theories were "not likely to be proved by different witnesses and exhibits," and so appeal risked "redundant review of multiple appeals based on the same underlying facts and similar issues of law"); *Crespo v. Carvajal*, No. 17-cv-6329 (MKB), 2021 WL 4237002, at *4 (E.D.N.Y. Sept. 14, 2021) (declining to enter Rule 54(b) judgment even though plaintiffs sought "two different forms of relief and raise[d] distinct legal questions as to each set of claims," because "both types of claims are closely related and arise out of largely overlapping factual allegations").

Plaintiffs do not grapple at all with these facts. Instead, in a footnote, they suggest that this case meets Rule 54(b)'s first requirement because their appeal regarding "the application of *Frutarom* applies only to the dismissed statements and not to the remaining statements." Mot. at 32 n.14. But this argument misapprehends the nature of Rule 54(b) partial judgment: Entering partial final judgment here would not just permit an appeal of one specific issue. As Plaintiffs elsewhere recognize, such a partial final judgment would authorize an appeal of *all* Plaintiffs'

22

dismissed claims, or at least those held by the plaintiffs whose claims were dismissed in full.  *See* Mot. at 30.  So, while *Frutarom* provided the basis for dismissing a subset of Plaintiffs' claims based on statements from before October 25, 2019, *see* Order at 17, 30–31, Plaintiffs' motion goes much further by seeking Rule 54(b) partial final judgment on nearly *all* their dismissed claims, *see* Mot. at 30.  As a result, Plaintiffs have failed to carry their burden of showing that their claims are "sufficiently separable to avoid judicial inefficiency."  *Jeffrey*, 2022 WL 2704760, at *3.[6]

### 2.    This Is Not The "Infrequent Harsh Case" Justifying Rule 54(b) Relief

Finally, even if Plaintiffs' dismissed claims were separable from their remaining claims, there is yet another reason for denying Plaintiffs' Rule 54(b) request:  They have not shown that this is the "infrequent harsh case," where immediate appeal may "alleviate[]" "some danger of hardship or injustice."  *O'Bert*, 331 F.3d at 41 (citation omitted).  Instead, Plaintiffs suggest three reasons why the equities support entry of partial final judgment now:  *First*, without such relief, they will have to wait longer for appellate review.  *See* Mot. at 32.  *Second*, if the Second Circuit later agrees with them after final judgment, then "the parties will have to relitigate this case from scratch" after reversal.  *Id.* at 33.  *Last*, the dismissed claims are "larger" than the remaining claims.  *Id.* at 32–33.  But these run-of-the-mill concerns, most of which inhere in essentially every bid for Rule 54(b) relief, are not grounds for entry of partial final judgment.

*First*, delay.  Of course, "[d]elay resulting from the wait until after final judgment has been entered is inherent in every denial of Rule 54(b) certification."  *Jeffrey*, 2022 WL 2704760, at *4.  Thus, the mere fact that the dismissed plaintiffs will have to await a final judgment cannot make

---

[6] This case is thus nothing like *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997), where the sole issue on appeal was "the validity of [an] assignment" of contractual rights, which was "entirely unrelated to the merits" of, and "present[ed] virtually no overlapping issues" with, the claims still pending in district court.  There is no similarly discrete, threshold legal issue that can be neatly severed from the remaining claims here.

23

this the "infrequent harsh case" justifying Rule 54(b) relief.  *See, e.g.*, *id.* (denying Rule 54(b) motion on this basis); *Crespo*, 2021 WL 4237002, at *6 (same in case involving plaintiffs' "advanced age, illness," and risk of "protracted . . . litigation"); *Timperio v. Bronx-Lebanon Hosp. Ctr.*, No. 18-cv-1804 (PGG), 2020 WL 9211177, at *3 (S.D.N.Y. Mar. 9, 2020) (same given lack of "any unusual hardship or injustice").  Here too, Plaintiffs identify no "hardship or injustice" resulting from delay that could be "alleviated by immediate appeal."  *Cf. Crespo*, 2021 WL 4237002, at *6 (providing, as example of such injustice, cases in which "the judgment debtor is insolvent or may become insolvent before the conclusion of judicial proceedings").

*Second*, efficiency.  "[T]he Second Circuit has explicitly rejected[,] as a basis for 54(b) certification, a desire to avoid a second trial . . . particularly in cases where the dismissed and surviving claims are"—as here—"closely interrelated."  *Id.* at *5 (quoting *Adrian v. Town of Yorktown*, 210 F. App'x 131, 133 (2d Cir. 2006)).  Thus, "[c]ourts in the Second Circuit regularly conclude that the possibility that reversal will result in additional, and potentially duplicative, discovery and trial costs does not justify an entry of partial final judgment pursuant to Rule 54(b)." *Jeffrey*, 2022 WL 2704760, at *4; *see, e.g.*, *FAT Brands, Inc. v. PPMT Cap. Advisors, Ltd.*, No. 19-cv-10497 (JMF), 2021 WL 1392849, at *3 (S.D.N.Y. Apr. 13, 2021) ("[T]he possibility that unnecessary discovery and trial costs would result" after reversal "hardly rises to the level of hardship that warrants immediate appeal." (alterations omitted)); *TADCO Constr. Grp. Corp. v. Dormitory Auth. of N.Y.*, No. 08-cv-73 (KAM), 2012 WL 3011735, at *6 (E.D.N.Y. July 23, 2012) (same in case threatening "tremendous additional legal fees for a potential second trial").

*Third*, the size of the claims.  Plaintiffs briefly suggest that this case may be different from those discussed above because their dismissed claims are "larger" than those that remain.  Mot. at 32–33.  But such a rule perversely benefits plaintiffs who bring predominantly meritless claims

24

seeking disproportionately large sums.  Courts thus have rightly rejected similar arguments.  Take *Jeffrey*:  There, the plaintiffs "contend[ed] that the equitable interests favor Rule 54(b) certification because 'millions of putative class members will have to wait for the resolution' of the remaining claims which belong to 'only a few hundred members,'" *and* that delay could lead to "fading memories."  2022 WL 2704760, at *4.  As here, the plaintiffs also argued "that there would be unnecessary waste and inefficient use of resources due to the duplication of discovery and trial" in the event of Rule 54(b) denial and eventual appellate reversal.  *Id.*  The court still found no "unusual hardship or injustice," and that "the equitable interests do not favor Rule 54(b) certification."  *Id.* at *5.  In short, regardless of whether "[t]he dismissed claims are so much larger than the remaining claims," Mot. at 32–33, Plaintiffs have not shown that this is the "infrequent harsh case" in which Rule 54(b) relief is appropriate.[7]

## III.  CONCLUSION

For the reasons above, Plaintiffs' motion should be denied in its entirety.

---

[7] Plaintiffs' cases are not to the contrary.  In one, the court did recognize that its dismissal of certain claims meant that trial on the remaining claims would be much shorter and simpler than it would be in the event of reversal (though it said nothing about whether any claims were "larger" than others).  *See Topps Co., Inc. v. Cadbury Stani, S.A.I.C.*, No. 99-cv-9437 (CSH), 2006 WL 3247360, at *3 (S.D.N.Y. Nov. 7, 2006).  But in reaching its ultimate conclusion that Rule 54(b) relief was warranted, the court expressly relied, as part of it equitable analysis, on the fact that the case involved "a consensus reflected by the support of both parties for a Rule 54(b) certification." *Id.* at *4.  Of course, no such consensus is present here.  Plaintiffs' other case simply concluded that reversal would "affect the proper scope of pretrial discovery" and that "a single trial of all claims is preferable" to a second trial after (hypothetical) appellate reversal.  *See DeLeonardis v. Berg*, 40 F. Supp. 2d 488, 491 (E.D.N.Y. 1999).  Besides having nothing to do with the comparative size or value of any claims, this decision adopts reasoning that most of the courts in this Circuit have routinely rejected.  *See*, *e.g.*, *Adrian*, 210 F. App'x at 133 (collecting cases); *Jeffrey*, 2022 WL 2704760, at *4 (same).

Dated:   September 19, 2023

Respectfully submitted,

*/s/ Kevin McDonough*

LATHAM & WATKINS LLP

Kevin McDonough
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1246
Facsimile: (212) 751-4864
Email: kevin.mcdonough@lw.com

Michele D. Johnson (*pro hac vice*)
Kristin N. Murphy (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: michele.johnson@lw.com
kristin.murphy@lw.com

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
Email: colleen.smith@lw.com

*Attorneys for Defendants*

26