**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANE LAVIN, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>     v.<br><br>VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, and JON CAMPAGNA,<br><br>               Defendants. | Case No. 1:21-cv-03070-ARR-TAM |

**<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION, CERTIFICATION FOR INTERLOCUTORY APPEAL, AND/OR ENTRY OF FINAL JUDGMENT</u>**

## TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 1

II.  The Court Should Reconsider Two Discrete Aspects Of The Order .................................... 2

     A.   The Court Should Reconsider Its Dismissal Of Plaintiffs' Claims Based On The Statements Made In Virgin Galactic's December 2019 Press Release ..................... 2

          1.   Plaintiffs Did Not Have A Fair Opportunity To Address Defendants' Incorporation Arguments ............................................................................ 2

          2.   The SAC States A Claim With Respect To The Statements Repeated In The December 2019 Press Release ................................................................. 4

     B.   The Court Should Reconsider Its Dismissal Of The Insider Trading Claims For Branson's August 10-12, 2021 Sales.................................................................. 6

III. The Court Should Certify The Order For Interlocutory Appeal Under 28 U.S.C. §1292 ..... 7

     A.   Plaintiffs' Motion For Certification Presents A Controlling Question Of Law ......... 7

          1.   The Court's Order Presents A Pure Question Of Law ................................. 7

          2.   The Question Of Law Is Controlling ........................................................ 9

     B.   There Are Substantial Grounds For A Difference Of Opinion ...............................11

          1.   The Court's Order Presents A Novel And Complex Issue Concerning The Application Of *Frutarom* To SPAC Cases ............................................... 12

          2.   The Court's Reading Of *Frutarom* Is Inconsistent With *Blue Chip Stamps*, *Pfizer*, And *Vivendi* ........................................................................ 15

          3.   The Court's Reading Of *Frutarom* Creates A Conflict Both Within And Outside The Circuit Concerning Plaintiffs' Ability To Sue SPAC Acquisition Targets And Their Officers ....................................................................... 16

     C.   An Immediate Appeal Would Materially Advance The Litigation ......................... 18

     D.   Discretionary Factors Support An Immediate Appeal........................................... 21

IV.  If The Court Declines To Reconsider Dismissal Of The Specified Claims And Declines To Certify Its Order For Interlocutory Appeal, It Should Enter Immediate Judgment............. 22

V.   Conclusion............................................................................................................ 26

i

# TABLE OF AUTHORITIES

CASES

*Adrian v. Town of Yorktown*,
  210 F. App'x 131 (2d Cir. 2006) ................................................................................................22

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
  106 F.3d 11 (2d Cir. 1997) ...........................................................................................23, 24, 25

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
  2023 WL 4249356 (S.D.N.Y. June 29, 2023) ......................................................................20, 21

*Anderson Group, LLC v. City of Saratoga Springs*,
  2008 WL 2064969 (N.D.N.Y. May 13, 2008) ............................................................................15

*Baker v. Saint–Gobain Performance Plastics Corp.*,
  232 F. Supp. 3d 233 (N.D.N.Y. 2017) .................................................................................10, 19

*Bild v. Konig*,
  2011 WL 4007895 (E.D.N.Y. Sept. 8, 2011) ...............................................................................7

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ...........................................................................................................12, 15

*Crespo v. Carvajal*,
  2021 WL 4237002 (E.D.N.Y. Sept. 14, 2021) .....................................................................22, 24

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
  446 U.S. 1 (1980) ...............................................................................................................23, 24

*DeLeonardis v. Berg*,
  40 F. Supp. 2d 488 (E.D.N.Y. 1999) ...................................................................................24, 25

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
  2012 WL 2952929 (S.D.N.Y. July 18, 2012) ..............................................................................9

*E.E.O.C. v. Mach Min., LLC*,
  2013 WL 2177770 (S.D. Ill. May 20, 2013) .............................................................................10

*FAT Brands Inc. v. PPMT Cap. Advisors, Ltd.*,
  2021 WL 1392849 (S.D.N.Y. Apr. 13, 2021) .....................................................................22, 24

*Frazier v. Morgan Stanley & Co. LLC*,
  2020 WL 3791852 (S.D.N.Y. July 7, 2020) ..............................................................................21

*Holder v. A&L Home Care and Training Ctr., LLC*,
  552 F. Supp. 3d 731 (S.D. Ohio 2021) .....................................................................................19

*In re CarLotz, Inc. Sec. Litig.*,
   2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ........................................................................3

*In re Currency Conversion Fee Antitrust Litig.*,
   2005 WL 1871012 (S.D.N.Y. Aug. 9, 2005) ........................................................................19

*In re Danimer Sci., Inc. Sec. Litig.*,
   2023 WL 6385642 (E.D.N.Y. Sept. 30, 2023) ....................................................................17

*In re Garrett Motion Inc. Sec. Litig.*,
   2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) ..........................................................................3

*In re Gen. Motors LLC Ignition Switch Litig.*,
   427 F. Supp. 3d 374 (S.D.N.Y. 2019) ...........................................................................9, 19

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) ..........................................................................4

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
   251 F. Supp. 3d 596 (S.D.N.Y. 2017) ....................................................................................6

*In re NYSE Specialists Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007) ...........................................................................................13, 14

*In re Pfizer Inc. Sec. Litig.*,
   819 F.3d 642 (2d Cir. 2016) .............................................................................12, 15, 16

*In re Pfizer Inc. Sec. Litig.*,
   2008 WL 11389170 (S.D.N.Y. Sept. 4, 2008) ....................................................................20

*In re Teva Sec. Litig.*,
   2021 WL 1197805 (D. Conn. Mar. 30, 2021) ........................................................................7

*In re The Warnaco Grp., Inc. Sec. Litig. (II)*,
   388 F. Supp. 2d 307 (S.D.N.Y. 2005) ....................................................................................3

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022) ....................................................................................5

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016) .............................................................................12, 15, 16

*In re: Barnett*,
   2016 WL 3944482 (S.D.N.Y. July 18, 2016) ........................................................................8

*Islam v. Lyft, Inc.*,
   2021 WL 2651653 (S.D.N.Y. June 28, 2021) ............................................................11, 19, 21

*Jeffery v. City of New York*,
   2022 WL 204233 (E.D.N.Y. Jan. 24, 2022) ........................................................................24

*Jeffery v. City of New York*,
2022 WL 2704760 (E.D.N.Y. July 12, 2022) ...................................................................... 24

*Klinghoffer v. S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990) ..................................................................................................... 9

*Kowal v. IBM (In re IBM Corp. Sec. Litig.)*,
163 F.3d 102 (2d Cir. 1998) ................................................................................................... 2

*Maddox v. Bank of New York Mellon Trust Co.*,
2018 WL 3544943 (W.D.N.Y. July 24, 2018) ...................................................................... 17

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
54 F.4th 82 (2d Cir. 2022)..............................................................................................2, 13, 15

*Novick v. AXA Network, LLC*,
642 F.3d 304 (2d Cir. 2011) ................................................................................................. 22

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*,
369 F.3d 27 (2d Cir. 2004)..................................................................................................... 14

*Pollack v. Laidlaw Holdings, Inc.*,
1993 WL 254932 (S.D.N.Y. June 25, 1993) ........................................................................ 18

*Republic of Colombia v. Diageo N. Am. Inc.*,
619 F. Supp. 2d 7 (E.D.N.Y. 2007)....................................................................................... 12

*Ret. Bd. of Policemen's Annuity and Benefit Fund of City of Chicago v. Bank of New York Mellon*,
2013 WL 593766 (S.D.N.Y. Feb. 14, 2013) ................................................................... 12, 13

*Samtani v. Cherukuri*,
2013 WL 2181037 (E.D.N.Y. May 20, 2013)....................................................................... 23

*SEC v. Credit Bancorp, Ltd.*,
103 F. Supp. 2d 223 (S.D.N.Y. 2000) ................................................................................... 11

*Siakpere v. Boucher*,
1986 WL 5657 (N.D. Ill. May 7, 1986) ................................................................................... 7

*Strong Coll. Students Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC*,
2015 WL 12602438 (D. Ariz. May 15, 2015)......................................................................... 7

*Strougo v. Scudder*,
1997 WL 473566 (S.D.N.Y. Aug. 18, 1997).......................................................................... 10

*Sussman v. I.C. Sys. Inc.*,
2013 WL 5863664 (S.D.N.Y. Oct. 30, 2013).......................................................................... 20

*TADCO Const. Grp. Corp. v. Dormitory Auth. of New York*,
2012 WL 3011735 (E.D.N.Y. July 23, 2012)....................................................................... 22

*Tantaros v. Fox News Network, LLC*,
  465 F. Supp. 3d 385 (S.D.N.Y. 2020) ......................................................................... 9

*Timperio v. Bronx-Lebanon Hosp. Ctr.*,
  2020 WL 9211177 (S.D.N.Y. Mar. 9, 2020) ..................................................... 25, 26

*Topps Co. v. Cadbury Stani, S.A.I.C.*,
  2006 WL 3247360 (S.D.N.Y. Nov. 7, 2006) ............................................................. 25

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
  521 F. Supp. 3d 265 (E.D.N.Y. 2021) ....................................................................... 12

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ...................................................................................... 4

*Weir v. United States Citzenship & Immigr. Servs.*,
  2021 WL 4311154 (E.D.N.Y. Sept. 22, 2021) ............................................................ 7

## STATUTES

28 U.S.C. §1292 ....................................................................................................................... 7

28 U.S.C. §1292(b) .................................................................................................................. 9

## REGULATIONS

17 C.F.R. § 230.425 .............................................................................................................. 16

## OTHER AUTHORITIES

16 Fed. Prac. & Proc. § 3930 (3d ed.) .................................................................................. 21

v

I.      **Introduction**

In a December 13, 2019 press release describing its "Remarkable Year," Virgin Galactic boasted of its February 2019 flight to space and hyperlinked to a February 2019 press release describing the flight at greater length. In doing so, Virgin Galactic repeated those statements within the Class Period. SAC ¶¶297-98. Defendants ignore this context. Instead, Defendants take the position that hyperlinks never repeat or endorse prior statements for purposes of liability under the securities laws. But it is well accepted that in incorporating past statements by reference—what the hyperlink did here—a defendant makes the statements in the incorporated document as though they were fully set forth again. The Court should grant reconsideration and find that the statement initially made in February 2019 was actionable as of December 2019, when Defendants repeated it.

Regarding certification for interlocutory appeal, the controlling legal question is whether the securities laws grant public investors in the SPAC context a remedy when they are misled by false and misleading statements *made to them* about the entity whose shares *they will own* after the SPAC merger closes. While Defendants wrongly call the question fact-based, it is a dispositive *legal* question that applies to all SPAC cases involving allegedly false statements made after a SPAC merger is announced but before it is completed, because that is how SPACs go public. The Second Circuit's answer—whether now or after resolution of the remainder of the case—will determine whether the Class Period here spans only two months or up to thirty-seven,[1] and will materially advance not just this case but at least seven other SPAC cases currently pending in district courts in the Second Circuit that raise exactly the same question. *See* ECF No. 94 ("Mot.") at 29 n.13.

---

[1] The SAC alleges a Class Period of July 10, 2019 through August 4, 2022. The Court's Order on Defendants' motion to dismiss the SAC sustained claims between the period July 11, 2021 through September 2, 2021. Plaintiffs and putative class members who made at least one purchase within that period are referred to as the "Remaining Plaintiffs." Plaintiffs and putative class members who do not have any claims within the remaining July 11, 2021 through September 2, 2021 period are referred to as the "Dismissed Plaintiffs," and this includes both Lead Plaintiffs, Mark Kusnier and Robert Scheele.

Finally, in arguing against entry of judgment under Rule 54(b), Defendants cite cases where the remaining and dismissed claims would raise the same issues on appeal.  Here, by contrast, the Court dismissed claims based on its interpretation of *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022), a legal issue that has no bearing upon Remaining Plaintiffs' claims. Entry of judgment thus does not implicate the federal policy against piecemeal appeals, because even if two panels eventually have to hear this case, the issues they would consider will not overlap.

## II.    The Court Should Reconsider Two Discrete Aspects Of The Order

### A.    The Court Should Reconsider Its Dismissal Of Plaintiffs' Claims Based On The Statements Made In Virgin Galactic's December 2019 Press Release

#### 1.    Plaintiffs Did Not Have A Fair Opportunity To Address Defendants' Incorporation Arguments

Defendants argue that Plaintiffs failed to identify any material facts or precedent that the Court "overlooked."  ECF No. 96 ("Opp.") at 2-3.  The Court, however, did overlook material facts concerning the context and presentation of the December 2019 press release and the manner in which it incorporated, endorsed, and reaffirmed statements first made in February 2019.  While those details were part of the record on the motion to dismiss, they did not receive significant attention in the briefing because Defendants' argument shifted considerably from their opening motion to dismiss to their reply brief.

In their motion to dismiss the SAC, Defendants argued that the December 2019 press release was not actionable for its link to the February 2019 press release because "Plaintiffs cannot rely upon a statement that predates their own alleged class period," citing a case holding that statements made before a class period are not actionable.  ECF No. 76 at 15 (citing *Kowal v. IBM (In re IBM Corp. Sec. Litig.)*, 163 F.3d 102, 107 (2d Cir. 1998)).  Defendants did not make arguments about whether a later statement is actionable when it repeats, endorses, or incorporates a prior misleading statement.

On reply, Defendants cited new cases to support their argument that "the hyperlink does not

transform a pre-Class Period statement into a Class Period statement." ECF No. 82 at 4 (citing *In re The Warnaco Grp., Inc. Sec. Litig. (II)*, 388 F. Supp. 2d 307, 315 n.2 (S.D.N.Y. 2005); *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, *16 (S.D.N.Y. Mar. 31, 2022)). While the Court had previously ***sustained*** Plaintiffs' claims relating to the December 2019 press release's linkage to the February 2019 press release,[2] relying on *Warnaco* and *Garrett* (but not *Kowal*), the Court changed course and dismissed these claims, holding "[a] mere reference to a document containing an allegedly false statement is insufficient to incorporate it into a different document." *Id.*

Plaintiffs did not have a meaningful opportunity to respond to Defendants' arguments based on *Warnaco* and *Garrett* because no oral argument was held. And while Plaintiffs were allowed to file a sur-reply on the "narrow issue" of statutory standing following *In re CarLotz, Inc. Sec. Litig.*, 2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023), the stipulation and order permitting Plaintiffs to file a sur-reply did not extend to the issue of whether the December 2019 press release repeated, incorporated, endorsed, or reaffirmed the February 2019 press release. ECF No. 83 at 1. Indeed, in their opposition to this motion, Defendants insist that the issue of whether the December 2019 press release is actionable is separate from the standing issue under *CarLotz* and *Frutarom*. Opp. 5. Defendants thus concede that these are two separate issues and that Plaintiffs were not afforded the opportunity to address the incorporation issue in their sur-reply.

The Court's dismissal of the claims relating to the December 2019 press release terminated the claims of a substantial segment of the putative class without adequate briefing.[3] Those

---

[2] Order at 28 (noting the allegation in SAC ¶298 "duplicates a statement I previously found materially misleading in context"). SAC ¶298 and FAC ¶526 allege the same false statements from the February 2019 press release, incorporated by reference into the December 2019 press release.

[3] In previously sustaining the falsity of the December 13, 2019 incorporation of the February 2019 press release, the Court also held loss causation was alleged for those statements in connection with the "delay of Branson's spaceflight announced on August 4, 2020 and the revelations in the February 1, 2021 Washington Post article." ECF No. 58 at 38. The Court's change of course on this issue alone thus eliminated investors' claims for 13 months (more than one-third) of the alleged 37 month Class Period.

circumstances warrant reconsideration. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 3443623, at \*3 (S.D.N.Y. Aug. 9, 2017) ("At bottom, the magnitude of this litigation, the number and complexity of the issues to be analyzed, and the parties' inadequate briefing of the issue addressed here persuade the Court that it is more important to get the issue right than it is to reject Plaintiffs' motion for reconsideration as a mere 'second bite' at the proverbial apple."). In any event, regardless of whether the Court "overlooked" any facts, it has plenary discretion to reconsider its own decisions before final judgment. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.").

### 2. The SAC States A Claim With Respect To The Statements Repeated In The December 2019 Press Release

Defendants argue the Court should deny reconsideration of its dismissal of the statements incorporated and repeated in the December 2019 press release because the Court previously held that the statement "*we* did it again" in the December 2019 press release was not independently actionable. Opp. 4-5 (emphasis in original). Defendants miss the point. Defendants stated in the first person that "we did it again" and explained what "it" referred to—the February 2019 flight— by hyperlinking to Virgin Galactic's February 2019 press release which contained statements the Court previously found actionable. ¶¶297-99; ECF No. 58 at 19 (FAC ¶526 actionable).

When speakers hyperlink to their own past statements for further detail, like Defendants did here, they use twenty-first century technology in the same way authors employ explanatory footnotes: providing more information without breaking up the flow of the text. Liability does not hinge on whether the speaker provided the information within the text of the press release itself or via a hyperlink, just as a defendant does not escape liability by leaving statements outside the text and incorporating it by reference. *See* Mot. 11 (citing incorporation by reference cases).

4

Indeed, incorporation by reference in the securities laws is nothing new.  For example, in *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 215-16 (S.D.N.Y. 2022), the court held that cautionary language was incorporated by reference into subsequent statements to foreclose Defendants' liability for forward-looking statements under the PSLRA safe harbor. *Id.* (collecting cases).  If securities fraud defendants can incorporate cautionary language by reference to escape liability, they must also face liability for incorporating misleading statements by reference.

That the incorporation by reference here was by hyperlink, and that incorporation by reference via a hyperlink has not been directly decided in the Second Circuit (Opp. 5-6), does not exculpate Defendants.  When corporate defendants benefit from cautionary statements set out in earlier SEC filings, they do not need to use the magic words "incorporate by reference."  In *Turquoise Hill*, for example, the defendants generally referred investors to "the companies' most recent SEC filings."  625 F. Supp. 3d at 213-15-16.  Just like a reference to recent SEC filings, or an explanatory footnote, a hyperlink directs readers to *read this link for further information*.

Moreover, Defendants concede, as they must, that the decision to direct investors in December 2019 to read the February 2019 press release was entirely within their authority.  Opp. 6.  Under Defendants' argument, they could be held liable for referring investors to read misleading content in an earlier press release, but they are exculpated because they made it exceptionally easy to do so by providing a hyperlink.  That conclusion is absurd.

Finally, Defendants argue that the Court properly dismissed the December 2019 press release because "it did not incorporate by reference the February statement."  Opp. 5.  But the December 2019 press release linked to the earlier statement in a way that that made it clear Defendants were adopting the statement as their own.  In boasting of its remarkable year, post-Merger Virgin Galactic claimed the successful February 2019 flight as its own accomplishment ("we did it again") and

5

through the hyperlink it repeated the prior misleading description of that flight it had initially made as pre-Merger Virgin Galactic.  And it did so to influence the investment decisions of prospective post-Merger investors.  Under these circumstances, a reasonable trier of fact could conclude that the December 2019 press release was materially misleading.  *See, e.g.*, *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 609 (S.D.N.Y. 2017) (whether a statement is materially misleading "is generally a question reserved for the trier of fact" and courts should not dismiss on such grounds "unless the Court, drawing all reasonable inferences in favor of the plaintiff, determines that reasonable minds could not differ on the question of whether the statements alleged in the complaint were misleading in light of the circumstances under which they were made").

**B.      The Court Should Reconsider Its Dismissal Of The Insider Trading Claims For Branson's August 10-12, 2021 Sales**

It is undisputed that Plaintiffs' factual allegations support a Section 10(b) insider trading claim for Branson's August 10-12, 2021 sales and that Plaintiffs would have easily alleged one by adding reference to the July 2021 flight (the circumstances of which were detailed elsewhere in the Complaint) to the non-exclusive recitation of facts alleged in Count II at ¶387.  Defendants nonetheless argue that Count II contains a fatal defect because it does not include a boilerplate provision stating that all previous allegations are incorporated by reference.  Opp. 7.  It is undisputed that Defendants have not been prejudiced by the failure to include certain specific allegations in this boilerplate clause.  Indeed, the Court's *sua sponte* dismissal order appears to have been the first time Defendants realized that there was any (inadvertent) difference between the Section 20A and Section 10(b) insider trading counts: in all their previous briefing, they referred to the two counts jointly.

The Court's dismissal of Count II as to Branson's August 10-12, 2021 sales serves no purpose and elevates form over substance.  Because the Court has held that Plaintiffs sufficiently alleged the facts that support the elements of this claim (Order at 51), the Court should reconsider its

6

order and allow the Section 10(b) insider trading count to proceed. *See Siakpere v. Boucher*, 1986 WL 5657, at *6 (N.D. Ill. May 7, 1986) (declining to dismiss complaint for easily cured technical defect when doing so would only delay litigation); *Strong Coll. Students Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC*, 2015 WL 12602438, at *7 (D. Ariz. May 15, 2015) (overlooking technical pleading defect because defendants' own reading of the complaint overlooked it too).[4]

**III.    The Court Should Certify The Order For Interlocutory Appeal Under 28 U.S.C. §1292**

### A.    Plaintiffs' Motion For Certification Presents A Controlling Question Of Law

#### 1.    The Court's Order Presents A Pure Question Of Law

Defendants erroneously argue that the question presented is not a "'pure question of law'" and instead "involves the application of 'settled law to the facts or evidence of a particular case.'" Opp. 10 (quoting *Bild v. Konig*, 2011 WL 4007895, at *1 (E.D.N.Y. Sept. 8, 2011)).  But the question is whether "SPAC investors who did not purchase the pre-merger private company's securities have standing to sue based on statements addressed to those plaintiffs."  Mot. 16.  This is a pure legal question, dispositive as to standing, and arises in in all securities cases where plaintiffs sue for misleading public statements made before a de-SPAC merger closes.

As explained in Plaintiffs' motion, the features that distinguish this case from *Frutarom* are inherent in all SPAC cases, where the acquisition target is always a non-public company with no public shareholders of its own.  Mot. 18-20.  When the private company in a SPAC merger or its officers make public statements prior to a de-SPAC merger closing, those statements are directed to (and only to): (1) current and prospective public shareholders of the SPAC and (2) prospective future purchasers of the combined entity.  The only investment decisions such statements seek to influence

---

[4] All of Defendants' cases involved a new legal theory from which defendants could claim surprise. *See Weir v. United States Citzenship & Immigr. Servs.*, 2021 WL 4311154, at *2 (E.D.N.Y. Sept. 22, 2021); *In re Teva Sec. Litig.*, 2021 WL 1197805, at *6 (D. Conn. Mar. 30, 2021).  Here, the only thing that surprised Defendants is that the Section 10(b) insider trading count did not mirror the Section 20A count.

are for public SPAC shareholders to purchase and hold their shares (and thereby "purchase" shares of the new combined entity) and for prospective purchasers to buy shares of the new company once available. Pre-merger statements about the private target in the SPAC context, therefore, "relate to" and/or are "about" the securities of pre-merger public SPACs and post-merger combined entities.

This case thus presents a broadly applicable legal question: whether *Frutarom*'s holding extends to SPACs. This "legal question [is] stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *In re: Barnett*, 2016 WL 3944482, at *2 (S.D.N.Y. July 18, 2016) (internal quotation marks omitted).

Defendants' attempts to muddy the waters all fail. Defendants contend that Plaintiffs' argument against the application of *Frutarom* is based on "*specific facts* alleged in their complaint [that] distinguish this case from both *Frutarom* and *CarLotz*." Opp. 10 (emphasis in original). Plaintiffs' argument, however, is not based on any factual distinction between this case and other SPAC cases, but on distinctions between *Frutarom* and **all** SPAC cases. The portion of Plaintiffs' Sur-Reply Defendants cite argued that this case differs from *Frutarom* because Frutarom's statements were directed to its own public shareholders, whereas pre-Merger Virgin Galactic's statements were directed only to Social Capital's shareholders and prospective buyers of post-Merger Virgin Galactic's securities. *See* ECF No. 86 at 6-8. That argument does not distinguish this case from other SPAC cases; it only shows why *Frutarom* categorically should not apply to **any** SPAC cases. And regarding *CarLotz*, Plaintiffs' argument was that *CarLotz* got it **wrong**, not that its facts were inapposite. *Id.* at 8-9.[5]

---

[5] Defendants also try to manufacture factual complexity by pointing to references in Plaintiffs' motion to specific statements in Social Capital's prospectus and certain specific documents in *Frutarom*. *See* Opp. 10 (citing Mot. 19-20, 26-27). But all SPACs would have similar documents, they just show the differences between a SPAC transaction and a non-SPAC transaction. The legal question is still general.

### 2.      The Question Of Law Is Controlling

A question is controlling if (1) "reversal of the district court's order would terminate the action," *or* (2) "reversal of the district court's order could significantly affect the conduct of the action," *or* (3) "the certified issue has precedential value for a large number of cases." *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (cleaned up).  Defendants dispute whether this case falls into the first two categories and deny that the third category exists at all.  Opp. 11-12 & n.2.  Each of these arguments fails.

Under the first prong, "the resolution of an issue need not necessarily terminate an action in order to be controlling." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (cleaned up).  Rather, "[t]he potential to terminate a proceeding completely is *sufficient* to find a question controlling, but it is not *necessary*." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 2012 WL 2952929, at *5 (S.D.N.Y. July 18, 2012) (emphasis in original).  To hold otherwise would restrict the use of § 1292(b) to defendants, which is not the way the statute operates.

Regarding the second prong, reversal of the Order would reinstate the claims of the majority of the putative class whose claims are otherwise terminated.  Defendants' argument that the Court might dismiss some or all of the reinstated claims on alternative grounds (Opp. 11) does not compel a different conclusion.  There is always a risk that some or all of a plaintiff's claims might be dismissed on other grounds, either at the pleadings stage or at summary judgment, but that does not mean that a threshold ruling that terminates the claims of the vast majority of a putative class is not "controlling."  Further, Defendants ignore that the Court previously **upheld** some of the claims that they argue will fall to alternative arguments; Defendants' suggestion that their alternative arguments might result in wholesale dismissal of the reinstated claims is little more than wishful thinking.

Multiple courts have found a controlling question under § 1292(b) when the determination of that question would significantly affect the size of a class or the scope of its claims.  *See, e.g.*, *In*

9

*re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019) (court had "no difficulty" finding that summary judgment order, which "foreclosed Plaintiffs' ability to prove diminution-in-value damages as a matter of law" in three states, involved controlling questions of law); *Baker v. Saint–Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 256 (N.D.N.Y. 2017) ("In this case, where the question of which claims are viable under New York law could significantly impact the classes to be certified, the scope and focus of discovery, any subsequent motion for summary judgment, and the issues to be presented at trial, an early resolution of the applicable law could significantly improve the efficiency of this litigation and reduce its cost for both Defendants and the putative classes."); *E.E.O.C. v. Mach Min., LLC*, 2013 WL 2177770, at *6 (S.D. Ill. May 20, 2013) (finding that the "questions raised are controlling" because they "could dramatically impact the size of the class").  Class actions are large and complex, and the possibility that portions of the claims might subsequently be dismissed on other grounds does not undercut the utility of interlocutory review for key threshold decisions that fundamentally determine the overall size and scope of the case.  Notably, none of the cases Defendants cite in support of "other grounds for dismissal" argument involved a decision to dismiss a portion of the claims in a class action.[6]

Third, admitting that multiple courts have held that "a question of law may be controlling when it has precedential value for a large number of cases," Defendants suggest that the precedential value of a Second Circuit decision in this case would be limited because Plaintiffs' arguments are supposedly highly "fact-bound."  Opp. 12 n.2 (internal quotation marks omitted).  The argument fails because, again, the Second Circuit's resolution would apply to all SPAC cases.  Guidance from

---

[6] In *Strougo v. Scudder*, 1997 WL 473566 (S.D.N.Y. Aug. 18, 1997), the court dismissed all class claims but denied dismissal with respect to the remaining derivative claims.  The defendants moved for certification of an interlocutory appeal as to the non-dismissal of the derivative claims, but there was no issue about the size of a potential class.  The other cases Defendants cite in support of their "other grounds for dismissal" argument were not class actions.  *See* Opp. 11-12.

the Second Circuit would resolve this threshold standing issue for at least seven district court judges

with SPAC cases currently pending, not to mention any who may have SPAC cases in the future.

Finally, Defendants' reliance on *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223 (S.D.N.Y.

2000), Opp. 12 n.2, is misplaced.  While *Credit Bancorp* held that that precedential value was not,

in its view, "***per se*** sufficient to meet the 'controlling issue of law' standard," it acknowledged that

precedential value is "certainly something that should be considered."  103 F. Supp. 2d at 227

(emphasis added).  The Court can and should "consider the system-wide costs and benefits of

allowing the appeal, including the impact that an appeal will have on other cases."  *Islam v. Lyft,*

*Inc.*, 2021 WL 2651653, at *4 (S.D.N.Y. June 28, 2021) (cleaned up) (question was controlling and

certification was appropriate because "if the Circuit decides to hear this appeal, it would provide

valuable guidance to a great number of litigants and lower court judges").[7]

### B.       There Are Substantial Grounds For A Difference Of Opinion

Defendants acknowledge that a substantial ground for difference of opinion exists if

(1) "there is conflicting authority on the issue," or (2) "the issue is particularly difficult and of first

impression for the Second Circuit."  Opp. 12.  Defendants incorrectly insist, however, that these two

situations are the only ways to show a substantial ground for difference of opinion and that the two

prongs of this test should be narrowly construed.  In reality, a court can find substantial ground for

disagreement whenever it finds an issue to be particularly difficult and thorny and "[i]t is the duty of

the district judge to analyze the strength of the arguments in opposition to the challenged ruling when

deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute."

---

[7] Defendants contend that Plaintiffs did not argue in their opening brief that precedential value should impact the analysis of whether a question is controlling.  Opp. 12 n.2.  Plaintiffs' brief, however, made clear that precedential value is a factor that can be considered as part of the Court's overall exercise of its discretion.  Mot. 29-30.  Through the entire certification analysis, courts weigh the costs and benefits of an interlocutory appeal to the specific case and others.

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 277 (E.D.N.Y. 2021).[8]  As always in the Section 1292(b) analysis, the Court has broad discretion.

Here, there are three principal grounds for difference of opinion: (1) this case presents a novel and complex issue concerning the application of *Frutarom* to SPAC cases; (2) the Court's reading of *Frutarom* conflicts with the Supreme Court's decision in *Blue Chip Stamps*[9] and is inconsistent with Second Circuit decisions in *Pfizer*[10] and *Vivendi*;[11] and (3) the Court's reading of *Frutarom* creates a conflict among courts both within and outside the Second Circuit concerning a plaintiff's ability to sue under Section 10(b) for misleading statements made in the run-up to a de-SPAC merger.

### 1.    The Court's Order Presents A Novel And Complex Issue Concerning The Application Of *Frutarom* To SPAC Cases

This case presents a novel and complex issue concerning the application of *Frutarom* to SPAC cases.  While this Court is not the first court in this Circuit to address the issue, it is the second, and the issue is therefore still novel and appropriate for interlocutory review.  *See, e.g.*, *Ret. Bd. of Policemen's Annuity and Benefit Fund of City of Chicago v. Bank of New York Mellon*, 2013 WL 593766, at *5 (S.D.N.Y. Feb. 14, 2013) ("novel and complex" question warranted interlocutory review, notwithstanding fact that both the court certifying the question and "[a]nother court in this District" had reached the same conclusion); *Diageo*, 619 F. Supp. 2d at 11 (substantial grounds for disagreement where there were "so few decisions" on relevant doctrine).[12]

---

[8] Defendants argue that Section 1292(b) "is not intended to be a vehicle to provide early review of difficult rulings in hard cases."  Opp. 13.  While the presence of a difficult question is not itself sufficient to warrant an interlocutory appeal (the movant must also establish a controlling question and material advancement), a court's conclusion that a question presents a close call can establish substantial grounds for disagreement. *See Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (substantial grounds for disagreement where order presented "close and difficult questions about which courts could disagree").

[9] *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).

[10] *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642 (2d Cir. 2016).

[11] *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016).

[12] Defendants state that "the question Plaintiffs have teed up is not of ***first impression*** in the Second Circuit" because both this Court and *CarLotz* have concluded that *Frutarom* applies to SPACs.  Opp. 15 (emphasis

The grounds for a difference of opinion are apparent on *Frutarom*'s face. While Defendants claim that *Frutarom*'s articulation of its holding "describes this case almost exactly," *Frutarom*'s holding must be read in context. They point to *Frutarom*'s statement that "'purchasers of a security of an acquiring company do not have standing under Section 10(b) to sue . . . for alleged misstatements the target company made about itself prior to the merger between the two companies.'" Opp. 14 (quoting *Frutarom*, 54 F.4th at 88). That sentence, read in isolation, could be interpreted as adopting an "about the company" test for statutory standing. But just one paragraph later, *Frutarom* makes the clear that the operative test is whether the misstatement relates to the ***security*** that a plaintiff traded, not the ***company*** that made the statement: "Plaintiffs may be able to sue entities other than the issuer of a security if those entities made material misstatements ***about the security***, as long as the plaintiffs purchased or sold ***the securities*** about which the misstatements were made." *Frutarom*, 54 F. 4th at 88 (emphasis on revised language).[13] The emphasized language had been revised to avoid a conflict with the Second Circuit's holding in *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007). *See* Mot. 20-21.

Under the initial articulation of the "about which" standing test in the withdrawn *Frutarom* opinion, the focus was on whether the alleged misstatement relates to ***the issuer or the company making the statement***, whereas the amended version of the test focuses on whether the misstatement relates to ***the security that plaintiffs traded***. Mot. 20-22. This distinction is not immaterial. Under

---

added) (internal quotation marks omitted). The standard for substantial grounds for difference of opinion, however, does not literally require a question of ***first*** impression if the issue is novel and complex. *See Bank of New York Mellon*, 2013 WL 593766, at *5. In any case, the question here is an important one of first impression for the Second Circuit.

[13] Prior to the amendment of the *Frutarom* opinion, that sentence read, "Plaintiffs may be able to sue entities other than the issuer of a security if those entities made material misstatements ***about the issuer***, as long as the plaintiffs purchased or sold ***the securities of the issuer*** about which the misstatements were made." *See Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, No. 21-1076, ECF No. 121-1 (2d Cir. Sep. 30, 2022) (emphasis on language that was subsequently amended).

the withdrawn version of *Frutarom*, a SPAC investor who purchases SPAC shares after the announcement of a planned merger likely could not sue for statements made *about the merger target*, even though that SPAC investor is likely purchasing the SPAC shares *because of* the planned merger. Likewise, an investor who purchases post-merger securities of a combined entity would likely lack standing to sue for statements made pre-merger about the acquisition target. But under the amended version, both sets of plaintiffs have standing to sue, so long as the alleged misstatement related to the securities that plaintiff purchased.

The amended language is important. *Frutarom* lacked the authority to overrule a prior panel's decision without a vote by the full court, and the panel avoided *en banc* review by amending its order. The amended order thus aligned with *NYSE Specialists*'s holding that "the district court incorrectly read *Nortel Networks* to mean that an action under Rule 10b–5 for false statements about a security purchased by the plaintiff lies only against the issuer of the security, or that only statements ***about a security issuer*** are actionable." 503 F.3d at 103 (citing *Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004) (emphasis added)). Indeed, the Second Circuit in *NYSE Specialists* permitted claims to go forward against the NYSE—itself a public company with its own investors—by investors in companies *listed on* the exchange; even though the statements made by the exchange were about its own operations, the statements nonetheless *related to* the securities of the companies traded on the exchange. Both the amended order in *Frutarom* and the holding in *NYSE Specialists* make clear that the "about which" test for standing applies to *the securities, **not** to the company* about which statements are made.

Indeed, the motion for *en banc* review in *Frutarom* included an amicus brief by law professors explicitly warning about possible unintended consequences of an "about the company" rule, including the possible application to SPAC cases. *See* Pl. Sur-Reply, ECF No. 86 at 5. Under

14

these circumstances, it is unreasonable to simply dismiss the amendment as inconsequential and to assume that *Frutarom* bars standing in SPAC cases, notwithstanding the features of those transactions that so fundamentally distinguish them from the circumstances in *Frutarom*.

### 2. The Court's Reading Of *Frutarom* Is Inconsistent With *Blue Chip Stamps*, *Pfizer*, And *Vivendi*

Substantial grounds for a difference of opinion also exist in this case because the Order conflicts with the purchaser-seller rule as articulated in *Blue Chip Stamps* and because other Second Circuit authority, including *Pfizer*, 819 F.3d 642, and *Vivendi*, 838 F.3d 223, raise "substantial reason[s] to doubt the correctness of the [Court's] ruling." *Anderson Group, LLC v. City of Saratoga Springs*, 2008 WL 2064969, at *1 (N.D.N.Y. May 13, 2008).

Defendants argue that the language of *Blue Chip Stamps* limiting standing to plaintiffs who "dealt in the security to which the prospectus, representation, or omission relates" is irrelevant because it is stated as a *necessary*, but not a sufficient, condition. Opp. 16-17. But the *Blue Chip Stamps* purchaser-seller rule is the rule that *Frutarom* purported to interpret in the context of a merger of two public companies. *Frutarom*, 54 F.4th at 85, 88 (quoting *Blue Chip Stamps*, 421 U.S. at 747).

Even under *Frutarom*, a careful reading of the purchaser-seller rule from *Blue Chip Stamps* shows the Dismissed Plaintiffs had standing to sue for the challenged pre-Merger statements. Indeed, pre-Merger investors who purchased Social Capital securities and post-Merger investors who purchased Virgin Galactic securities—all of whom purchased in reliance on Defendants' misleading pre-Merger statements—were "themselves purchasers . . . of **the stock in question**." *Frutarom*, 54 F.4th at 85 (quoting *Blue Chip Stamps*, 421 U.S. at 742) (emphasis added).

Contrary to Defendants' flippant shrug at the Dismissed Plaintiffs' connection to the challenged prospectuses, the prospectuses did not merely relate to Social Capital and post-Merger Virgin Galactic "in some broad sense." Opp. 16. The subject transaction of the prospectuses was at

15

the core of the Dismissed Plaintiffs' investment decisions, and the business operations described therein were the *only* relevant operations that existed and described the very company in which prospective investors would be investing.  *See* Mot. 26 & n.12.  These prospectuses, ***on their face***, related to Social Capital securities and post-Merger Virgin Galactic securities.[14]  Again, this would be the case with all SPAC mergers.  Reading the purchaser-seller rule to prohibit investors from bringing claims based on misleading statements in the prospectuses of securities they purchased, just because the prospectuses were issued before post-Merger Virgin Galactic [or other post-merger entity] began publicly trading, is what really turns *Blue Chip Stamps* "on its head."  Opp. 16.

Moreover, that *Vivendi*, 838 F.3d 223, and *Pfizer*, 819 F.3d 642, did not explicitly decide the SPAC standing issue does not mean there is no substantial ground for a difference of opinion.  Opp. 16-17.  In both *Vivendi* and *Pfizer*, the classes included investors who, under the Court's reading of *Frutarom*, would not have standing.  Mot. 25-26.  Both cases were decided after *Blue Chip Stamps* (and the subsequent application of the *Blue Chip Stamps* purchaser-seller rule by the Second Circuit in *Nortel Networks*).  Yet none of the well-counseled parties in those cases, and none of the judges who decided the cases, raised the standing issue—presumably because they believed the plaintiffs' standing was obvious.  These cases, and the conflict with the language of *Blue Chip Stamps*, raise substantial doubt as to whether the Court's reading of *Frutarom* in the Order is correct.

> **3.     The Court's Reading Of *Frutarom* Creates A Conflict Both Within And Outside The Circuit Concerning Plaintiffs' Ability To Sue SPAC Acquisition Targets And Their Officers**

Multiple district courts, both outside and within the Second Circuit, have sustained claims

---

[14] SEC Rule 425 requires that prospectuses for mergers and business combinations "must identify the filer, [and] the company that is the ***subject of the offering***."  17 C.F.R. § 230.425 (emphasis added).  Here, the filer was Social Capital and the subject of the securities offering was Virgin Galactic.  *See* ECF No. 79-4 (7/9/2019 prospectus cover page identifying "Subject Company: Virgin Galactic"); ECF No. 79-8 (9/5/2019 prospectus cover page identifying "Subject Company: Virgin Galactic").  The securities sold pursuant to those prospectuses, by definition, "relate to" pre-Merger Social Capital and post-Merger Virgin Galactic.

16

by plaintiffs who purchased post-merger shares following a de-SPAC transaction alleging that they were defrauded by pre-merger statements by the target or its officers. *See* Op. Br. at 24 n.11 & n.12. Since Plaintiffs filed their opening brief, another court in this Circuit found that SPAC investors had sufficiently alleged that the target's pre-merger statements were false and misleading, and would have been actionable had the plaintiffs sufficiently alleged they were made with scienter. *See In re Danimer Sci., Inc. Sec. Litig.*, 2023 WL 6385642, at \*4-5 (E.D.N.Y. Sept. 30, 2023).

Defendants argue that these cases do not create a conflict with this Court's decision or *CarLotz* because they did not directly consider the issue of statutory standing or *Frutarom*. But these cases show that by default, a significant number of courts (and the parties to such actions) understand that plaintiffs may pursue Section 10(b) claims against SPAC targets for their statements directed to SPAC investors prior to a merger. Even if there is no direct conflict between this Court's decision and *CarLotz*, on the one hand, and this other body of case law, on the other, these divergent lines of precedent are in tension with each other and provide additional basis for questioning the correctness of the Court's application of *Frutarom*. This is particularly true in light of the fact that *Frutarom* was not a SPAC case and applying it in the SPAC context is a novel extension of the case to transactions involving very different features. Because pre-merger statements made by SPAC targets and their officers necessarily relate to securities other than their own, SPAC cases are differently situated with respect to *Frutarom*'s "about the security" test, and there is substantial reason to doubt that *Frutarom* was intended to change the rules or settled expectations in this important and growing subset of securities cases.[15]

---

[15] Out-of-circuit cases are not "irrelevant." Opp. 13. Rather, courts "*may* look to out-of-circuit precedent when deciding whether to certify an order for interlocutory review." *Maddox v. Bank of New York Mellon Trust Co.*, 2018 WL 3544943, at \*3 n.2 (W.D.N.Y. July 24, 2018) (emphasis in original) ("based on the Court's research, the proposition for which [the respondents'] cases are cited—that a § 1292(b) certification can only be based on in-circuit disagreement—cannot be traced to any Second Circuit case law").

17

There are at least seven cases pending before seven district court judges in this Circuit in which the question of *Frutarom*'s application to SPAC cases is an issue. Mot. 29 n.13 (listing cases in this Circuit with *Frutarom* arguments pending in SPAC context). The transcripts in *Carper v. TMC The Metals Company, Inc.*, 1: 21-cv-05991 (E.D.N.Y. 2022) suggest that Judge Komittee, at least, is skeptical of *CarLotz* and applying *Frutarom* to bar claims for pre-merger statements. *See* Op. Br., Ex. A at 10-15. Rather than have all of these judges decide the issue on their own, it would conserve judicial resources to have the Second Circuit promptly decide this complex and novel question on which reasonable minds can disagree.

### C.      An Immediate Appeal Would Materially Advance The Litigation

Defendants argue that an interlocutory appeal will not materially advance the case because it "holds no hope of advancing the 'termination' of this case and, in fact, would simply drag proceedings out further." Opp. 18. An interlocutory appeal, however, would avoid the risk of relitigating this case from scratch, including restarting discovery, re-deposing witnesses, re-deciding class certification and summary judgment, and potentially conducting a new trial. Mot. 27-29. This case *literally involves rocket science*; the risk of complicated duplicative work is not theoretical.

Though it was not a class action, *Pollack v. Laidlaw Holdings, Inc.*, 1993 WL 254932 (S.D.N.Y. June 25, 1993) was decided on similar grounds. The court held that the material advancement prong was satisfied because "[t]his proceeding remains in its initial stages" and "much repetition of discovery and a retrial may be avoided by permitting interlocutory review of the Court's decision to obtain a final decision as to whether the securities claims in the complaint are viable." *Id.* at *4. Defendants concede that this decision directly supports Plaintiffs' position but argue that it is an outlier that the Court should not follow. Opp. 19 n.2.

*Pollack* is no outlier. Courts in this Circuit regularly hold that avoiding the risk of repeated

18

proceedings satisfies the material advancement prong. *See, e.g.*, *General Motors*, 427 F. Supp. 3d at 393 (material advancement prong satisfied because, *inter alia*, "reversal after trial might well require a new trial");[16] *In re Currency Conversion Fee Antitrust Litig.*, 2005 WL 1871012, at *5 (S.D.N.Y. Aug. 9, 2005) ("An interlocutory appeal to obtain appellate guidance on the threshold issue of class composition would materially advance the ultimate resolution of this litigation, particularly if the Court's interpretation of the law is incorrect."); *Baker*, 232 F. Supp. 3d at 256 (material advancement prong satisfied because "an early resolution of the applicable law could significantly improve the efficiency of this litigation and reduce its cost for both Defendants and the putative classes" by clarifying "the scope and focus of discovery" and "the issues to be presented at trial").[17]

In assessing the material advancement prong, courts consider not only the respective efficiencies in this case, but also the system-wide efficiencies of certifying an interlocutory appeal. *See Islam*, 2021 WL 2651653, at *5. In *Islam*, the court granted plaintiffs' motion for certification of an interlocutory appeal of the court's order granting defendant's motion to compel arbitration. *Id.* at *1. While the court was "mindful . . . that an interlocutory appeal could also work to prolong the litigation," it found that the resolution of the question "would certainly . . . conserve judicial resources in the longer term by resolving important and oft-arising legal questions." *Id.* at *5.

---

[16] *General Motors* also raised concerns with settlement dynamics. In that case, a class action within an MDL, the court held that "the practical reality is that a broad swath of Plaintiffs' claims are likely to be resolved by settlement, and the value of that settlement will be heavily influenced by the Court's Opinion and Order." 427 F. Supp. 3d at 394. Because the issue to be certified was a close call and the court's ruling had such a "dramatic" effect, the court found that interlocutory appeal was appropriate. *Id.* Defendants argue that *General Motors* is inapposite because it was based on the unique circumstances of an MDL, though without explaining why that matters. Opp. 19 n.5. Like MDLs, securities class actions also are almost always disposed of by way of dismissal or settlement. Mot. at 28-29. The same considerations supporting interlocutory certification in *General Motors* are present here.

[17] Courts outside the Second Circuit also have held that interlocutory appeal is appropriate if early review can avoid the risk of re-litigation of core issues affecting the size of a class. *E.g.*, *Holder v. A&L Home Care and Training Ctr., LLC*, 552 F. Supp. 3d 731, 747 (S.D. Ohio 2021) ("The size of the class and the investments of time and money have a direct bearing on settlement pressure, damages, and how the parties and the Court manage the litigation. ***So an immediate appeal may move this litigation along***.") (emphasis added).

19

Courts may certify an order Section 1292(b) if resolution of a controlling question of law will materially assist in the resolution of a proceeding. Section 1292(b) appeals will ***always*** delay proceedings somewhat while the appellate court reaches its decision. Likewise, if filed by plaintiffs, Section 1292(b) appeals will almost always—if successful—result in more discovery or proceedings before final judgment. That the Section 1292(b) appeal results in these additional proceedings is not dispositive; Section 1292(b) nowhere says that it is available exclusively to defendants.

This case is exceptional for two reasons. First, the claims the Court dismissed are ***much*** larger than those it allowed to proceed. Second, seven other district courts are facing the exact question the Court resolved, and because it is a pure question of law, none may resolve it authoritatively. With these specific conditions, an appeal may materially advance proceedings.

Defendants cite cases in which the specific facts suggested an appeal would not materially advance proceedings. But it is hardly surprising that the facts will sometimes support a determination that an appeal would materially advance proceedings, and sometimes not.

In one case Defendants cite, the court denied a defendants Section 1292(b) appeal of the denial of its motion to dismiss because the case would still proceed on closely related claims and dismissal of the challenged claims on appeal "would not significantly reduce the issues remaining in the case." *Sussman v. I.C. Sys. Inc.*, 2013 WL 5863664, at *3 (S.D.N.Y. Oct. 30, 2013); *see also In re Pfizer Inc. Sec. Litig.*, 2008 WL 11389170, at *2 (S.D.N.Y. Sept. 4, 2008) (denying defendants' § 1292(b) motion, because a successful appeal on either issue would not "substantially reduce the overall scope of litigation and discovery").

In others, the appeals would not materially advance proceedings because the plaintiffs raised fact-intensive questions, or the courts were quite confident that there were no grounds to dispute their conclusion, or both. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 2023 WL 4249356

(S.D.N.Y. June 29, 2023); *Frazier v. Morgan Stanley & Co. LLC*, 2020 WL 3791852, at *2 (S.D.N.Y. July 7, 2020).  In *Altimeo*, the plaintiffs did not present a question of law and the court based its finding that an appeal would not materially advance proceedings on "the likelihood of affirmance." 2023 WL 4249356, at *19.  In *Frazier*, the court found that the plaintiffs' attempt to distinguish controlling authority was extremely unpersuasive and "certainly" not enough to find substantial grounds for a difference of opinion.  2020 WL 3791852, at *2.  It thus looked skeptically upon the various contingencies the plaintiffs deployed to show material advancement.  *Id.*  Delaying discovery while a plaintiff pursues a hopeless fact-bound appeal that will not have precedential value does not materially advance litigation, it slows it down.  But here, resolution of a legal question will determine whether the Class Period lasts two or thirty-seven months, whether *Frutarom* applies to SPACs is a genuinely difficult question, and the Second Circuit's resolution of the question will immediately benefit seven district judges. *See* 16 Charles Alan Wright & Arthur R. Miller, 16 Fed. Prac. & Proc. § 3930 (3d ed.) (noting that courts should, and do, view "the three factors . . . together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal").

## D.     Discretionary Factors Support An Immediate Appeal

As detailed in Plaintiffs' opening brief, whether SPAC plaintiffs who purchased post-merger securities have statutory standing to pursue claims based on pre-merger statements made by the target entity or its officers is pending before seven district court judges in the Second Circuit.  Mot. 29-30.  Certifying an appeal would assist these judges and "conserve judicial resources in the longer term."  *Islam*, 2021 WL 2651653, at *5.  This factor is not merely a free-floating discretionary consideration that the Court may consider as part of its overall analysis, but a discrete factor that the Court may consider in determining whether the controlling question and material advancement prongs are satisfied in the first instance.

21

**IV.**   **If The Court Declines To Reconsider Dismissal Of The Specified Claims And Declines To Certify Its Order For Interlocutory Appeal, It Should Enter Immediate Judgment**

As set out at length in Plaintiffs' opening brief, Defendants' misleading statements fall into two distinct categories. The first, which the Court allowed to proceed in part, are about Defendant Branson's flight to space, with a short class period of July 11, 2021 through September 2, 2021. The second, which the Court dismissed based on *Frutarom*, are about Virgin Galactic's progress towards commercialization and its post-Merger business plans, made largely before October 2019.

Defendants effectively concede that the two claims have nothing in common. The only overlap between the categories that they suggest is the Court's dismissal of a statement made by Colglazier during the period of July 11, 2021 through September 2, 2021.  Opp. 21-22.  But the plaintiffs seeking entry of judgment under Rule 54(b) ("Dismissed Plaintiffs") would not be able to raise that statement on appeal.  They are Dismissed precisely because they have no claims based on statements made during the remaining class period.

Defendants' cases decline to enter judgment under Rule 54(b) because in those cases, unlike this case and the cases Plaintiffs cite, the dismissed claims and those the courts upheld were separable but based on the same or closely related facts.[18]  The ordinary rule against piecemeal appeals exists

---

[18] In *Novick v. AXA Network, LLC*, 642 F.3d 304, 313-14 (2d Cir. 2011), the Second Circuit refused an appeal precisely because it found that the claims subject to a Rule 54(b) appeal and the remaining claims were intertwined. *Adrian v. Town of Yorktown*, 210 F. App'x 131, 133 (2d Cir. 2006) ("In ordering that partial final summary judgment be entered pursuant to Rule 54(b), the court below reasoned only that because the 'claims that remain for trial . . . are based on the same set of facts as those that have been dismissed . . . the Court finds no just reason to delay an appeal.'"); *Crespo v. Carvajal*, 2021 WL 4237002, at *4 (E.D.N.Y. Sept. 14, 2021) ("[B]oth types of claims [dismissed and upheld] are closely related and arise out of largely overlapping factual allegations."); *FAT Brands Inc. v. PPMT Cap. Advisors, Ltd.*, 2021 WL 1392849, at *2 (S.D.N.Y. Apr. 13, 2021) (because plaintiff proceeded on theory of vicarious liability, "[i]f [agent, whose motion to dismiss was denied] is ultimately found not to have committed tortious conduct, these claims against [principal, whose motion to dismiss was granted], which FAT Brands would seek to revive on appeal, 'will become moot'"); *TADCO Const. Grp. Corp. v. Dormitory Auth. of New York*, 2012 WL 3011735, at *3 (E.D.N.Y. July 23, 2012) (movant "asserts that Rule 54(b) certification is appropriate because the two sets of claims in this case . . . involve nearly identical evidence based on similar sets of events and circumstances") (cleaned up).

to prevent two or more appellate panels from having to hear overlapping issues.  *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (district court properly considered the absence of overlapping claims in entering judgment under Rule 54(b)).   But the possibility of multiple appeals is not a problem if they "present virtually no overlapping issues to the reviewing panels." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997); *accord Samtani v. Cherukuri*, 2013 WL 2181037, at *4 (E.D.N.Y. May 20, 2013) (under *Advanced Magnetics*, "where appeals from a given case, even if piecemeal, will not involve duplicative or overlapping issues, 'the risk of duplicative trials can be a relevant consideration in determining the judicial efficiency to be served by a Rule 54(b) certification.'").  Because the legal basis for the Court's dismissal of the Dismissed Plaintiffs is *Frutarom*, which does not apply at all to the Remaining Plaintiffs' claims, two panels that hypothetically would have to hear this case would be dealing with different issues.[19]

That there are no overlapping issues between the claims the Court dismissed and those it allowed to proceed also means the equities favor an immediate appeal.  If the right to an immediate appeal is denied, the Dismissed Plaintiffs must wait until after a trial on the remaining claims to pursue their own appeal.  If the Second Circuit then, years down the line, reverses the Court's ruling on *Frutarom*, the Court will have to begin discovery anew and hold a second trial.  While the Dismissed Plaintiffs' claims are based on facts and events (*i.e.*, the February 2019 flight and the condition of the vehicles at the time of the merger) that are temporally different from the facts underlying the Remaining Plaintiffs' claims (*i.e.*, the July 2021 flight), it is still substantially more

---

[19] The immediate panel will only consider whether the Complaint states a claim as to the Dismissed Plaintiffs.  Without an immediate appeal, the panel that would hear the case after final judgment would also have to decide whether the Complaint states a claim as to those plaintiffs.  If the Second Circuit reverses on that question, that portion of the case will return to this Court, and it will again have to be litigated, potentially leading to another appeal before another panel.  The only thing an immediate appeal does is shift the decision on the motion to dismiss from the hypothetical panel that would hear the case after a final judgment to a panel which will hear that, and only that, question.  Thus, there will be no overlap between the Rule 54(b) panel and any panel that might hear a subsequent appeal after final judgment.

efficient to litigate this case once, as it is more efficient to take depositions of the key players once, and to do substantial motion practice like class certification and summary judgment once.

Defendants assert that courts do not take the risk that a case will have to be tried twice into account, but again, courts do if the issues the first and subsequent panels will hear have few or no common legal or factual predicates. *Compare DeLeonardis v. Berg*, 40 F. Supp. 2d 488, 491 (E.D.N.Y. 1999) (finding claims were not intertwined because court dismissed on unrelated issue and then considering costs of holding two trials to find inequity) *with Carvajal*, 2021 WL 4237002, at *5 (E.D.N.Y. Sept. 14, 2021) (efficiencies of avoiding a second trial is not prejudice "particularly in cases where the dismissed and surviving claims are closely interrelated") *and FAT Brands*, 2021 WL 1392849, at *3 (same). And this is so for the same reason: the federal policy against piecemeal appeals exists to prevent multiple panels from becoming embroiled in the same issues. This concern is not present here.

In any case, there is more inequity here than potentially simply having to hold two trials, years apart and years delayed. In the only case Defendants cite, all of the named plaintiffs retained at least some claims.[20] But the Dismissed Plaintiffs here currently have no surviving claims. They must stand on the sidelines for years while other plaintiffs pursue the claims on behalf of a class consisting of two months of a 37-month alleged Class Period. Moreover, but for the Court's interpretation of *Frutarom*, these Plaintiffs would have stated a claim—and, in fact, did state a claim.

---

[20] *Jeffery v. City of New York*, 2022 WL 2704760, at *4 (E.D.N.Y. July 12, 2022) (plaintiffs sought judgment on their claims that curfew was unconstitutional, but their selective enforcement claims survived defendants' motion to dismiss, *see Jeffery v. City of New York*, 2022 WL 204233, at *8 (E.D.N.Y. Jan. 24, 2022)). The portion of *Jeffery* that states "the dismissed claims are likely separable because they would not require the appellate court to consider the same fact or decide the same issue twice" cannot be read to suggest that there would be no overlap between the immediate and subsequent appeals. *Id.* at *2-*3. For claims to be "separable" just means that they involve "more than one claim," which is a prerequisite to apply Rule 54(b). *Advanced Magnetics*, 106 F.3d at 21. Claims could be separable even if the factual and legal bases the courts would consider on appeal overlapped considerably. *Curtiss-Wright*, 446 U.S. 1 at 8 (even after finding that claims are separable, courts should consider overlap between issues on appeal).

Mot. 33; ECF No. 58 at 55. Thus, like in *Advanced Magnetics*, 106 F.3d at 17, the Second Circuit's resolution of a pure legal question will determine whether Dismissed Plaintiffs' claims can proceed.

While Defendants deny that the Second Circuit's interpretation of *Frutarom* will be dispositive, what they actually argue is that they raised other arguments for dismissal. The Court rejected these arguments when it denied in part their motion to dismiss the FAC. The mere assertion of other arguments to support dismissal cannot be sufficient to deny a Rule 54(b) appeal because respondent will always formulate multiple reasons for dismissal. For example, in *Advanced Magnetics*, the respondent had filed a motion for summary judgment on the merits. *Id.* at 13-14. Thus, courts permit a Rule 54(b) judgment if the issues are separate based on rulings they made, not the arguments the respondents advanced. *DeLeonardis*, 40 F. Supp. 2d at 491 (even though respondent argued that claims were intertwined, that court decided earlier motion based on single discrete issue justified entry of judgment under Rule 54(b)).

Moreover, while Defendants maintain that the relative size of the dismissed and upheld claims is irrelevant, they only cite one case, *Jeffery*, where no plaintiff was asked to stand aside. Defendants also fail to distinguish *Topps Co. v. Cadbury Stani, S.A.I.C.*, 2006 WL 3247360, at *1 (S.D.N.Y. Nov. 7, 2006). They claim the court ultimately allowed a Rule 54(b) appeal in *Topps* because all parties sought one, but *Topps* merely found that the consent meant neither side was prejudiced, 2006 WL 3247360, at *4, and here, Defendants do not articulate any prejudice. Moreover, because the main considerations for Rule 54(b) appeals are the courts' institutional interests, the parties' consent bears little weight in any case, as one case Defendants cite holds. *Timperio v. Bronx-Lebanon Hosp. Ctr.*, 2020 WL 9211177, at *3 (S.D.N.Y. Mar. 9, 2020).

Defendants also argue that considering the size of the dismissed claims matter would encourage large, meritless claims. That makes no sense. A prompt appeal of meritless claims

25

benefits defendants, not plaintiffs, because it brings finality more quickly. *Id.* at *3 ("A defendant's desire for finality, while understandable, does not justify granting a Rule 54(b) motion."). Plaintiffs who bring meritless claims for bad purposes do not benefit from prompt dismissals.

Finally, Defendants ignore that an immediate appeal would benefit the judicial system. This Court is not the only one faced with the threshold issue of whether *Frutarom* bars plaintiffs who purchased publicly-traded SPAC securities from suing over pre-merger statements. Seven other courts within the Second Circuit have or will have to consider the same issue. The Second Circuit eventually will have to answer that question authoritatively. Both courts and litigants will benefit from an earlier decision. It will save judicial resources and the parties' money and save the judicial system from what could be years of delay in at least seven different cases, if the Second Circuit decides the issue ***now***.

## V.    Conclusion

The Court should reconsider its dismissal of the December 2019 press release's incorporation of the false and misleading February 2019 statements, as well as its dismissal of Count II insider trading as to Branson's August 2021 insider stock sales. The Court also should certify the Order for interlocutory appeal to resolve the *Frutarom* standing issue. When, as here, a court has substantial reasons to doubt the applicability of a particular Second Circuit decision, and that determination has a sweeping effect on the viability of the claims for a vast majority of a class, those circumstances warrant certification of an interlocutory appeal. If it declines to do so, it should enter final judgment against the Dismissed Plaintiffs—who have no remaining claims and no overlapping issues with the Remaining Plaintiffs' claims—so that they may pursue an immediate appeal.

26

Dated: October 10, 2023

Respectfully submitted,

GLANCY PRONGAY & MURRAY LLP

By: *s/ Kara M. Wolke*
Kara M. Wolke
Ex Kano S. Sams II
Natalie S. Pang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
phone: (310) 201-9150
fax: (310) 432-1495
Email: kwolke@glancylaw.com
           esams@glancylaw.com
           npang@glancylaw.com

THE ROSEN LAW FIRM, P.A.
Jonathan Horne, Esq. (JH 7258)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jhorne@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiffs*

## **PROOF OF SERVICE**

I hereby certify that on this 10th day of October, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Kara M. Wolke*
Kara M. Wolke
