UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARK KUSNIER and ROBERT SCHEELE, Individually and On Behalf of All Others Similarly Situated,

                *Plaintiffs*,

  -against-

VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, MICHAEL MOSES, RICHARD BRANSON, and CHAMATH PALIHAPITIYA,

                *Defendants*.

21-CV-3070 (ARR) (TAM)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

This is a putative class action against Virgin Galactic Holdings, Inc. ("Virgin Galactic") and individual defendants alleging violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 ("Exchange Act"). I have previously ruled on two motions to dismiss the action, both times granting defendants' motion in part and denying it in part. *See Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 360–67 (E.D.N.Y. 2022); Op. & Order 1–8, ECF No. 90 ("2023 Op."). Plaintiffs, individuals who purchased Virgin Galactic securities during the class period, move to amend their complaint for the third time to add Montgomery Brantley as a named plaintiff in the action. For the reasons below, plaintiffs' motion is granted.

## BACKGROUND

I assume familiarity with the facts underlying this case as detailed in my previous opinions and include here only the factual allegations and procedural background necessary to understand this opinion.

Defendant Virgin Galactic is a commercial space company founded in 2004 by defendant

Richard Branson. Second Amended Compl. ¶ 27, 28 ("SAC"), ECF No. 69.[1] The SAC details numerous mishaps in the development of Virgin Galactic's commercial space program. Of particular relevance here, during a test flight in February 2019, Virgin Galactic's spaceship suffered "critical damage" that was "so significant" that Virgin Galactic's head of safety remarked, "I don't know how we didn't lose the vehicle and kill three people." *Id*. ¶ 78. The damage was so extensive that the spaceship was immediately grounded. *Id*. ¶¶ 82, 84. The near disaster of this test flight eventually became public through a *Washington Post* article published on February 1, 2021. *Id*. ¶ 15. Prior to that revelation, however, Mr. Branson sold approximately $123 million in Virgin Galactic shares on October 25, 2019.[2] *Id*. ¶ 322–30.

On May 28, 2021, Plaintiff Shane Lavin initiated this action against Virgin Galactic and individual defendants, alleging various forms of securities fraud. Compl., ECF No. 1. Following appointment of lead plaintiffs and counsel, *see* Order, ECF No. 22, plaintiffs filed an amended complaint in December 2021, *see* First Amended Compl. ("FAC"), ECF No. 36. The FAC alleged, among other things, that Mr. Branson violated the Exchange Act when he traded Virgin Galactic shares while in possession of material, non-public information. *See id*. ¶¶ 595–610. I dismissed the FAC in part and granted plaintiffs leave to amend. *Kusnier*, 639 F. Supp. 3d at 390–91. Plaintiffs then filed a Second Amended Complaint, which included separate counts for insider trading

---

[1] I presume all facts alleged in the SAC to be true for the purposes of this opinion. *See Cook v. City of New York*, 243 F. Supp. 3d 332, 348 (E.D.N.Y. 2017).

[2] Mr. Branson sold these shares as part of a merger between Virgin Galactic and a Special Purpose Acquisition Company ("SPAC") known as Social Capital. *See id*. ¶¶ 48–51. Per the merger agreement, Virgin Galactic purchased $52.1 million in Virgin Galactic shares held by a company 80.7% owned by Mr. Branson, Vieco 10 Ltd., and its subsidiary Vieco USA, Inc. (collectively, "V10"); Social Capital Chairman Chamath Palihapitiya also purchased $100 million of V10's Virgin Galactic shares. *Id*. ¶¶ 29, 325, 327, 330. As the owner of 80.7% of V10, Mr. Branson received roughly $123 million of the total $152 million revenue from this transaction.

against Mr. Branson under § 20A and § 10(b) of the Exchange Act. *See* SAC ¶¶ 387–92, 398–406. I sustained plaintiffs' § 10(b) insider trading claim against Mr. Branson as to the October 2019 sales; however, I dismissed plaintiffs' corresponding § 20A claim because plaintiffs did not allege that they had traded Virgin Galactic shares contemporaneously with Mr. Branson's October 2019 sales, as required under the statute. *See* 2023 Op. 53, 61–62.

In February, defendants submitted a letter requesting a pre-motion conference regarding an anticipated motion for judgment on the pleadings. Defs.' Letter, ECF No. 108. Defendants argued that plaintiffs' § 10(b) insider trading claim against Mr. Branson should be dismissed as to the October 2019 sales because, as with the corresponding § 20A claim, plaintiffs did not allege purchases contemporaneous with those sales. *Id.* at 2 ("[A]n insider's 'duty of disclosure is owed only to those investors trading contemporaneously with the insider.'" (quoting *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 94–95 (2d Cir. 1981))). In their initial response to defendants' letter, plaintiffs indicated that "[w]hile the currently named [p]laintiffs lack standing to pursue the SAC's insider trading claim against Branson as to Branson's October 25, 2019 sale, [p]laintiffs are searching for an investor with standing to pursue this claim to add as a plaintiff to the case." Pls.' Letter 1, ECF No. 111. Roughly one month later, plaintiffs requested a pre-motion conference regarding an anticipated motion to add Mr. Brantley as a named plaintiff. Pls.' Letter, ECF No. 113. As indicated in plaintiffs' letter and accompanying documentation, Mr. Brantley purchased Virgin Galactic securities on October 25, 2019, contemporaneously with Mr. Branson's sales. *See id.* at 1; *id.*, Ex. A at 3 ("Certification"), ECF No. 113-1. Because Mr. Brantley's addition as a plaintiff would likely moot defendants' motion, I stayed briefing on that motion and directed the parties to brief plaintiffs' motion to amend, now before me. *See* Docket Order dated April 2, 2024; Docket Order dated April 11, 2024.

**LEGAL STANDARD**

At this stage of the litigation "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave [to amend] when justice so requires." *Id*. However, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). The party opposing a motion to amend bears the burden of establishing that such a reason exists. *Contrera v. Langer*, 314 F. Supp. 3d 562, 567 (S.D.N.Y. 2018).

**DISCUSSION**

Defendants object to Mr. Brantley's addition as a plaintiff on the grounds that (a) his § 10(b) and § 20A claims are futile, and (b) the amendment would unfairly prejudice defendants. *See* Defs.' Mem. of Law in Opp'n 6–10, 14 ("Opp'n"), ECF No. 118-2. As explained below, neither argument is convincing.[3]

### I. Futility

*Section 10(b) Claim*—Defendants principally argue that plaintiffs' proposed amendment should be denied as futile because Mr. Brantley's § 10(b) claim is time barred under the two-year statute of limitations for § 10(b) claims. Opp'n 6–10. Defendants argue that the statute of limitations on Mr. Brantley's claim ran as of October 25, 2021, two years from the date of the alleged insider trading; or, at the latest, as of February 1, 2023, two years from the publication of

---

[3] Defendants also argue that "[p]laintiffs' failure to include a draft amended complaint [alongside their motion] is a basis to deny their entire [m]otion." Opp'n 5. Here, however, a proposed amendment is not necessary because it is clear from plaintiffs' papers that they simply seek to add Mr. Brantley as a named plaintiff. *See Murray v. New York*, 604 F. Supp. 2d 581, 588 (W.D.N.Y. 2009) ("If the movant's papers adequately explain the basis for, and nature of, the proposed amendment . . . the failure to attach a proposed amended complaint to the motion is not necessarily fatal.").

the *Washington Post* article, when the "material nonpublic information in Branson's possession was publicly disclosed." Opp'n 6 (quotation omitted). Plaintiffs counter that Mr. Brantley's claim is not time barred because, under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *Id*. at 554; Pls.' Mot. to Amend 8–10 ("Mot."), ECF No. 118-1. According to plaintiffs, the earliest the statute of limitations on Mr. Brantley's claim could have begun was February 1, 2021, and the statute of limitations was tolled as of December 7, 2021, when plaintiffs first pleaded insider trading in the FAC. *See* Mot. 8. Defendants respond that *American Pipe* tolling does not apply "where, as here, the original named plaintiffs lacked standing to pursue the relevant claim." Opp'n 7.

First, I agree with plaintiffs that the earliest the statute of limitations could have begun was February 1, 2021. The statute of limitations for § 10(b) claims is two years from the date on which a "reasonably diligent plaintiff" would be able to plead "facts constituting a securities fraud violation . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc*., 637 F.3d 169, 175 (2d Cir. 2011); *Arco Cap. Corps. Ltd. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 545 (S.D.N.Y. 2013). Mr. Brantley could not have known that Mr. Branson was in possession of non-public information when he made the October 2019 trades until February 1, 2021, when the *Washington Post* article revealed the near disaster of the February 2019 test flight. *See* SAC ¶ 15. I likewise agree with plaintiffs that if *American Pipe* tolling applies, Mr. Brantley's § 10(b) claim was tolled as of December 7, 2021, when plaintiffs filed the FAC pleading insider trading against Mr. Branson.

The central question is therefore whether *American Pipe* tolling applies to Mr. Brantley's § 10(b) claim here, where both parties agree that the existing plaintiffs cannot maintain a § 10(b)

5

claim because they did not trade contemporaneously with Mr. Branson's October 2019 sales. District courts in the Second Circuit are divided on the general question of whether *American Pipe* tolling applies where the original plaintiff in a class action lacks standing. *Compare, e.g.*, *Pac. Life Ins. Co. v. US Bank Nat'l Ass'n*, 636 F. Supp. 3d 366, 404 (S.D.N.Y. 2022) (concluding that *American Pipe* tolling applies); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 372 (S.D.N.Y. 2011) (same); *Monroe Cnty. Employees' Ret. Sys. v. YPF Sociedad Anonima*, 980 F. Supp. 2d 487, 489 (S.D.N.Y. 2013) (same), *with, e.g.*, *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 409 F. Supp. 3d 261, 271–72 (S.D.N.Y. 2019), *abrogated on other grounds*, 2021 WL 4997939 (2d Cir. Sept. 21, 2021) (concluding that *American Pipe* tolling does not apply); *In re Direxion Shares ETF Tr.*, 279 F.R.D. 221, 237 (S.D.N.Y. 2012) (same).

Those courts that have declined to apply *American Pipe* tolling have reasoned that where the original plaintiff lacks standing, there is "no class action over which a court has jurisdiction," and therefore "no claims that can be tolled." *Sonterra*, 409 F. Supp. 3d at 271–72; *see also In re Puda Coal Sec. Inc. Litig.*, No. 11-CV-2598, 2013 WL 5493007, at *15 (S.D.N.Y. Oct. 1, 2013) (declining to apply *American Pipe* tolling because "[i]n the absence of subject matter jurisdiction, this Court has no justiciable controversy to consider, and would need to dismiss the case"); *In re Direxion Shares ETF Tr.*, 279 F.R.D. 221, 237 (S.D.N.Y. 2012) ("[U]nder Article III, where a plaintiff does not have standing to bring a claim, there is no case or controversy over which a federal court may exercise jurisdiction."); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08-CV-5653, 2010 WL 6508190, at *2 (S.D.N.Y. Dec. 15, 2010) ("In short, where a [p]laintiff lacks standing—there is no case . . . [a]nd if there is no case, there can be no tolling." (citation omitted)).

Yet as plaintiffs argue—and defendants do not dispute—the contemporaneous trading

6

requirement at issue here determines whether a plaintiff has a *cause of action*[4] under § 10(b), not whether the plaintiff has constitutional *standing*. Mot. 9–10; Opp'n 9; *see also Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1001 & n. 3 (9th Cir. 2002) (noting that the "contemporaneous trading requirement for Section 10(b)" is not a "constitutional" standing limitation, "grounded in Article III of the Constitution, but simply delineate[s] the scope of the implied cause of action" under the statute). In other words, the issue here is not that the existing plaintiffs in this action lack constitutional standing, but rather that they lack a cause of action to bring a § 10(b) claim as to Mr. Branson's October 2019 sales. As the Supreme Court emphasized in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." *Id*. at 128 n.4 (emphasis omitted). Accordingly, the reasoning in the above cases that declined to apply *American Pipe* tolling—that where a plaintiff lacks standing, there is no case over which the court has jurisdiction and therefore no tolling—does not apply here.

      Nonetheless, defendants suggest that the distinction between constitutional standing and cause of action "makes no difference" because "[c]ourts are clear that lack of [a cause of action] constitutes sufficient grounds to reject application of *American Pipe* tolling." Opp'n 9. However, the case law defendants offer in support of this argument appears to conflate constitutional standing with cause of action, treating the latter as jurisdictional. *See Puda Coal*, 2013 WL

---

[4] The term "statutory standing" appears in both parties' papers and some cases cited therein. The Supreme Court has clarified that "statutory standing" is "simply a question of whether the particular plaintiff 'has a cause of action under the statute,'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)), and the Second Circuit has cautioned that the term should be avoided to prevent confusion. *Id*. I therefore use the term "cause of action," rather than "statutory standing," in this opinion.

7

5493007, at *15 (concluding that because plaintiff lacked a cause of action, "there has been a lack of jurisdiction . . . since the outset of this lawsuit").[5] And again, after *Puda Coal* was decided, the Supreme Court clarified in *Lexmark* that "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction," 572 U.S. at 128 n.4. The reasoning in *Puda Coal* is therefore no longer good law after *Lexmark*.

Finally, defendants argue that *American Pipe* tolling should not apply here because the deficiency in plaintiffs' § 10(b) claim was "plainly apparent" and thus "Mr. Brantley could not reasonably rely on [p]laintiffs' filings to preserve his claim." Opp'n 8–9. First, the case defendants cite for the proposition that *American Pipe* tolling should apply only where a plaintiff's reliance on a class action was "reasonable" specifically refers to cases in which the original plaintiff lacked standing. *See Monroe Cnty.*, 980 F. Supp. 2d at 490 ("[T]he better policy is to allow tolling where the original plaintiff lacked standing, unless the procedural defect was so clear that no reasonable plaintiff could have relied on the class representative under the circumstances."). And again, plaintiffs' standing is not at issue here. Moreover, it is worth noting that defendants did not specifically argue that plaintiffs' § 10(b) claim should be dismissed for lack of contemporaneous trades until their recent motion for judgment on the pleadings. *See, e.g.*, Defs.' Mem. of Law in Supp. Mot. to Dismiss 36 & n.15, ECF No. 76 (raising the contemporaneous trading issue as to plaintiffs' § 20A claim only); Defs.' Reply in Supp. Mot. to Dismiss 31, ECF No. 82 (same). It is thus difficult to conclude that this defect was so "apparent" that Mr. Brantley should have been

---

[5] Defendants also cite *N.J. Carpenters*, but there, the court determined that the original plaintiffs lacked *constitutional standing* to bring the claims that the proposed intervenor sought to assert using *American Pipe* tolling. *See* 2010 WL 6508190, at *1 (referring to prior dismissal dated March 29, 2010); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 08-CV-5653, Order dated March 29, 2010, at 5–6, ECF No. 84 (dismissing the relevant claims because plaintiffs lacked constitutional standing).

aware that plaintiffs had not adequately pleaded a § 10(b) claim. I therefore reject defendants' argument that Mr. Brantley's reliance on the proposed class action was unreasonable.

For the reasons above, I conclude that *American Pipe* tolling applies to Mr. Brantley's § 10(b) claim and his claim is therefore timely. I now turn to defendants' alternative argument, that "even if *American Pipe* tolling were to apply to Mr. Brantley's Section 10(b) claim, tolling would be limited to his individual claim against Branson." Opp'n 9. Defendants rely primarily on *Dennis v. JPMorgan Chase & Co.*, 439 F. Supp. 3d 256 (S.D.N.Y. 2020), which held that under the Supreme Court's decision in *China Agritech v. Michael H. Resh*, 584 U.S. 73 (2018), *American Pipe* tolling applied only to the putative class members' individual claims and did not apply to their class action claims. *See Dennis*, 439 F. Supp. 3d at 265. However, after *Dennis* was decided, the Second Circuit concluded in *Fund Liquidation Holdings LLC v. Bank of America Corp.* that "[n]othing in *China Agritech* purports to say that equitable tolling does not apply to new class representatives joined within the same class action." 991 F.3d 370, 393 (2d Cir. 2021). As the circuit court emphasized, "[p]rohibiting [*American Pipe*'s] use within the original class action to add new class representatives . . . would arbitrarily—even randomly—undermine [the] goals of efficiency and economy" that underly *American Pipe* tolling. *Id*. (quoting *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 615 (7th Cir. 2020)).[6] Accordingly, I conclude that Mr. Brantley may assert his § 10(b) claim as a class representative.

*Section 20A Claim*—Plaintiffs also argue that Mr. Brantley's § 20A insider trading claim

---

[6] Defendants cite one case that was decided after the *Fund Liquidation* decision, *In re VEON Ltd. Securities Litigation*, No. 15-CV-8672, 2022 WL 1284547 (S.D.N.Y. Apr. 29, 2022). But even the *In re VEON* court later acknowledged, on a motion for reconsideration, that under the Second Circuit's case law, "*American Pipe* and *China Agritech* do not prohibit equitable tolling to allow a new lead plaintiff or class representative to join an existing putative class action." *In re VEON Ltd. Sec. Litig.*, No. 15-CV-8672, 2023 WL 2118079, at *2 (S.D.N.Y. Feb. 17, 2023).

9

is not futile and is timely under 15 U.S.C. § 78t-1(b)(4), which states that "[n]o action may be brought under [§ 20A] more than 5 years after the date of the last transaction that is the subject of the violation." *Id.*; *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 370 n.3 (2d Cir. 2014) (stating that the five-year statute of limitations period in 15 U.S.C. § 78t-1(b)(4) applies to insider trading claims under § 20A). Per this requirement, Mr. Brantley has until October 2024, five years from the date of the alleged insider trading, to assert his § 20A claim against Mr. Branson.

Defendants object, first, that "it appears to be an open question in this Circuit as to whether the five-year period to which [p]laintiffs cite is a statute of limitations or statute of repose" and "[t]he U.S. Supreme Court has held that *American Pipe* tolling does not apply to statutes of repose." Opp'n 10 & n.2. This argument is irrelevant: Regardless of whether the five-year period is a statute of limitations or repose, Mr. Brantley's § 20A claim falls within that period, and he therefore need not rely on *American Pipe* tolling. Next, defendants argue that Mr. Brantley's claim is futile because "to state a claim under § 20A, a plaintiff must plead a predicate violation of the [Exchange Act] . . . [and] [a]s here, where the Section 10(b) insider trading claim is not viable, neither is the related Section 20A claim." *Id.* at 10. I have already determined that Mr. Brantley's § 10(b) claim is not time barred, and, in my previous opinion, I held that plaintiffs adequately alleged the remaining elements of their insider trading claim as to Mr. Branson's October 2019 sales. *See* 2023 Op. 49–51, 53, 62. As such, Mr. Brantley's § 10(b) claim is viable, and defendants' argument is therefore moot. I conclude, accordingly, that Mr. Brantley's § 20A claim is not futile.

## II. Undue Prejudice

Defendants next argue that plaintiffs' proposed amendment should be denied because it "evinces bad faith and undue delay that would unfairly prejudice [d]efendants." Opp'n 14. They argue first that adding Mr. Brantley "would require the [c]ourt to adjudicate an entirely separate

legal claim and set of facts that arose over two years earlier than the remaining claims in the operative complaint." *Id*. However, "complaints of the time, effort and money expended in litigating the matter, without more," do not "constitute prejudice sufficient to warrant denial of leave to amend." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).

Defendants also point to the fact that I have previously dismissed plaintiffs' § 20A claim for failure to allege contemporaneous trades, arguing that leave to amend should be denied where the court has "already ruled on a dispositive motion." Opp'n 14 (quotation omitted). Defendants do not, however, cite any authority that suggests leave to amend is categorically improper where the court has previously dismissed a claim. Moreover, in those cases where courts have denied leave to amend after prior dismissals, additional factors typically weigh in favor of denial. *See, e.g.*, *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y.), *aff'd sub nom*. *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) (denying leave to amend because plaintiffs failed to cure pleading deficiencies after prior dismissal *and* failed "to show how any amended complaint *could* cure the deficiencies" (emphasis added)); *United States ex rel. Gallian v. AmerisourceBergen Corp.*, No. 16-CV-2458, 2022 WL 20611664, at *7 (E.D.N.Y. Dec. 22, 2022) (denying leave to amend following dismissal and concluding that plaintiff's pleading errors were "tactical decisions" made in bad faith). Here, plaintiffs have proposed an amendment that would cure the pleading defects at issue. And although plaintiffs' delay in identifying an additional plaintiff who traded contemporaneously with Mr. Branson is perplexing, defendants have not shown that it rises to the level of "bad faith." *See Contrera*, 314 F. Supp. 3d at 567. Accordingly, I conclude that defendants have not established that they would be prejudiced by plaintiffs' proposed amendment.

## CONCLUSION

For the reasons above, I grant plaintiffs' motion to amend pursuant to Federal Rule of Civil Procedure 15. I therefore do not reach plaintiffs' alternative arguments that amendment is proper pursuant to Rule 20, Rule 24, or the Private Securities Litigation Reform Act. *See* Mot. 10–12.

SO ORDERED.

                                                                  /s/
                                              Allyne R. Ross
                                              United States District Judge

Dated:       July 2, 2024
                Brooklyn, New York