August 30, 2024

**VIA ECF**

Honorable Taryn A. Merkl
United States District Court, Eastern District of New York
255 Cadman Plaza East
Brooklyn, New York 11201

    Re:   *Lavin, et al. v. Virgin Galactic Holdings, Inc., et al.,* No. 1:21-cv-03070-ARR-TAM

Dear Judge Merkl:

## I.    PLAINTIFFS' POSITION

This is a securities class action brought on behalf of investors in Virgin Galactic, Inc., a company that aims to fly tourists to space. During the Class Period, Virgin Galactic had not begun commercial operations. Claims in connection to two events are proceeding in discovery: (a) a July 2021 flight which took Richard Branson to space; and (b) Branson's earlier insider trading when Virgin Galactic went public. The Parties' dispute relates to Rule 34 requests concerning the latter claims. The Court should grant Plaintiffs' motion because the discovery at issue in this motion ("Requested Discovery") concerns one or more of the following categories: (1) alleged additional material non-public information ("MNPI") in Branson's possession when he made stock sales; (2) documents necessary to prove an element which Plaintiffs may have to prove, scienter; (3) documents concerning Virgin Galactic's insider trading policy, plainly relevant in a case involving insider trading; and (4) documents created shortly after the public release of some of the MNPI, capturing any discussions thereof.

### 1.    Additional MNPI (Document Requests 54 and 55, as to Eve, and 59)

The operative Complaint alleges that Defendant Richard Branson sold $152.1 million in Virgin Galactic stock on October 25, 2019, while in possession MNPI. *E.g.* ¶387. The sales were made when Virgin Galactic went public through a reverse merger ("Reverse Merger"). ¶¶322-30. Judge Ross held that the MNPI included, at a minimum, information concerning a February 2019 Virgin Galactic test flight. Order on Motion to Dismiss SAC, Dkt. No. 87 ("Order") at 53, 61. On that flight, a critical part of Virgin Galactic's vehicle, Unity, blew up, risking the lives of everyone aboard and grounding Virgin Galactic's program. *Id.*  Plaintiffs had previously alleged that Defendants had made false statements about the February 2019 flight. Judge Ross sustained these claims against Defendants' motion to dismiss the FAC, but dismissed the claims on technical grounds unrelated to the merits because they were not "about" the securities Plaintiffs purchased, citing *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022). Order, at 11-17.  The Complaint alleged new false statements made before the reverse merger about the status of Unity and Eve, Virgin Galactic's other vehicle. ¶¶287-88, 325. Judge Ross dismissed these statements, citing *Frutarom*, but did not address whether the information the statements concealed amounted to MNPI. Order, at 17, 53, 61. With no decision ***dismissing*** this MNPI, it remains in the case, and Plaintiffs may take discovery on the subject.

### 2.    Defendants' Statements to Investors (Requests 45-47, 50)

Plaintiffs seek documents concerning the statements which the Court dismissed for lack

of standing.  To prove their insider trading claims at trial, Plaintiffs may have to show that Branson knew or was reckless in not knowing that he had a duty to disclose the non-public information or abstain from trading. *Veleron Holding, B.V. v. Morgan Stanley*, 694 F. App'x 858, 862 (2d Cir. 2017). "In every insider trading case, at the moment of tipping or trading, just as in securities fraud cases across the board, the unlawful actor must know or be reckless in not knowing that the conduct was deceptive." *S.E.C. v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012). Evidence that Branson and other Virgin Galactic executives misled the public about a fact to prevent the Reverse Merger from derailing would tend to show they understood the fact was material and that Branson knew, or was reckless in not knowing, that he had a duty to refrain from trading.

### 3.    Documents Concerning Insider Trading Policies (Request 56)

Plaintiffs seek production of documents and communications concerning Virgin Galactic's insider trading policy. At the meet and confer, Defendants offered to produce the policy itself as well as any exemptions given to Branson. But Defendants refused to produce any other documents.  Plaintiffs allege insider trading claims for sales of $152.1 million. Because insider trading policies are at the core of the case, any number of such documents might prove relevant. For example: documents concerning the establishment of such policies may reveal that they were created to allow Branson (who owned more than 80% of Virgin Galactic pre-reverse merger) to sell shares; and other investors may not have received as favorable treatment as Branson; correspondence may show that Branson leaned on Virgin Galactic to grant an exemption. Moreover, requesting parties need not individually specify at a granular level how each kind of document would help them prove their case. It is enough if the requests themselves are "reasonably calculated" to lead to the discovery of admissible evidence. *St. Vidas Inc. v. United States Liab. Ins. Co.*, 2021 WL 4340950, at *4 (E.D.N.Y. Sept. 23, 2021).

### 4.    Documents Created Shortly After the Public Disclosure of MNPI (Request 57)

Information about the February 2019 flight in Branson's possession was revealed in a February 1, 2021, *Washington Post* article. ¶219. Plaintiffs seek production of documents concerning the public revelation of such information through February 28, 2021. Defendants refuse to produce documents created after January 31.  The *Post* article, a book review, quotes the author as stating that Virgin Galactic "tried to keep the [] problem quiet, worried that it might spook customers." ¶219. It thus challenges Virgin Galactic's disclosures, not just its safety record. There may well be discussions of the information revealed in the *Post* article in the narrow February 1-February 28 window. Or there may be evidence of an effort to influence reporting as occurred in another instance in this case when Branson sold $300 million of Virgin Galactic stock while in possession of MNPI. Thus, the February 28 cutoff is justified. Indeed, Defendants' position that they will not produce documents from February 1 is especially curious because that was the day a senior Virgin Galactic executive gave an interview for the *Post* article. *Id.* Defendants' arbitrary restriction would cut off any discussion of exactly what the executive should tell the *Post*, which is material to this case.

### 5.    Efforts to Meet and Confer

The Parties spoke on July 25, 2024. As to each of (point 1. above), the MNPI which Judge Ross had not directly addressed, (point 2.), documents concerning statements to investors, and (point 4.), documents created from February 1, 2021 through February 28, 2021, Plaintiffs

stated the foregoing arguments. Defendants stated that they understood Plaintiffs' arguments but disagreed and did not offer a compromise. The Parties agreed they reached an impasse. As to documents concerning insider trading policies, Defendants agreed to additionally produce any exemptions to the policy given to Branson but declined an additional production. Defendants stated that without proof that any of the examples Plaintiffs cited occurred, they had no obligation to produce documents. Plaintiffs disagreed. The Parties agreed they reached an impasse.

## II.   DEFENDANTS' POSITION

After two rounds of comprehensive motion to dismiss briefing, this Court dismissed the vast majority of Plaintiffs' claims, allowing claims to proceed on only two narrow issues.[1] Plaintiffs' letter relates to the second of those issues:  an alleged insider trading claim brought by a plaintiff who claims to have purchased a *single share* of Virgin Galactic stock on the same day that Branson sold his shares on October 25, 2019 while supposedly in possession of material nonpublic information ("MNPI").  In an August 8, 2023 Opinion and Order on Defendants' second motion to dismiss ("August 2023 Order"), the Court considered each of Plaintiffs' theories relating to Branson's alleged MNPI and dismissed all but one—*i.e.* that Branson sold stock allegedly while in possession of information that the Company's *Unity* spaceship suffered damage to its horizontal stabilizers during a February 2019 flight.  ECF No. 87 at 51-53, 59.  The Court rejected Plaintiffs' theories that Branson "traded while in possession of the information that '(a) the February 2019 flight had nearly ended in disaster; (b) Unity and Eve were not complete vehicles because many of their parts needed replacement…; (c) Unity and Eve were prototypes that cracked after every flight and took about a month to repair; and/or (d) Virgin Galactic did not have accurate engineering drawings of Unity and Eve.'"  *Id.* at 48, 51-53.

Defendants have already agreed to search the records of 12 custodians and produce documents responsive to eight Requests for Production (each a "Request") relating to the single, narrow insider trading theory that remains in the case.  Plaintiffs' additional Requests that are the subject of this dispute are irrelevant and disproportionate to the needs of the case because they relate to theories that the Court rejected in the August 2023 Order or otherwise lack any meaningful connection to the parties' claims and defenses.  Accordingly, Plaintiffs' attempt to enforce those irrelevant and disproportionate discovery requests should be rejected.

### A.   Documents Related to Dismissed Claims and Theories (Request Nos. 45-47, 50, 54-55 (as to Eve), and 59) Are Irrelevant and Disproportionate

Under Rule 26, Plaintiffs are entitled to discovery that is "relevant to an actual claim or defense," so long as it is also proportional to the needs of the case. *Walsh v. Top Notch Home Designs Corp.*, 2022 WL 3300190, at *7 (E.D.N.Y. Aug. 11, 2022); FED. R. CIV. PROC. 26(b)(1). Plaintiffs bear the burden of showing that the information sought is relevant, *Walsh*, 2022 WL 33001901, at *3, while keeping in mind proportionality requirements.  "While the federal discovery rules are liberal, they are not boundless," and the "court [must] limit the frequency or

---

[1] For the first issue, which relates to Defendant Richard Branson's ("Branson") statement that a July 2021 space flight was "flawless," Defendants have already produced ~4,400 documents from eight custodians and have agreed to search for and produce more documents from a total of 12 agreed-upon custodians.

extent of discovery if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *U.S. Bank, N.A. v. Charitable Donor Advised Fund, L.P.*, 2024 WL 3893533, at *1 (S.D.N.Y. Feb. 1, 2024). Plaintiffs' request should be denied because Plaintiffs have not met their relevance burden and the discovery they seek is not proportional to the needs of the case— particularly considering that the requests Plaintiffs seek to enforce relate to theories of insider trading that this Court rejected. *Id.*, at *6-7.

The only insider trading theory remaining in this case is whether Branson traded on information that *Unity's* horizontal stabilizers were damaged. The Requests at issue do not seek information about the horizontal stabilizers, but rather information related to statements made prior to Virgin Galactic becoming a public company that do not mention or correlate in any manner to the condition of *Unity*'s stabilizers after the February 2019 flight (Request Nos. 45-47); documents related to "policies and procedures for preparing, reviewing, editing, approving, modifying, and distributing the Company's press releases, SEC filings" (Request No. 50); documents related to repairs or operational status of the Company's ship, *Eve* (not *Unity*)[2] (Request Nos. 54 and 55); and materials generally concerning "plans for Branson to fly aboard *Unity*" (Request No. 59). None of those requests has anything to do with damage to *Unity*'s horizontal stabilizers, and indeed, they seek information specifically related to theories the Court rejected in the August 2023 Order. *See* ECF No. 87 at 17, 51-53, 59.

Furthermore, after three years of attempting to find a plaintiff with standing to pursue an insider trading claim regarding Branson's October 25, 2019 trades, Plaintiffs put forth Montgomery Brantley, who originally declared under penalty of perjury that he purchased only three shares of Virgin Galactic stock on October 25, 2019. *See* ECF No. 113-1. Now, just a few months later, Brantley claims to have only purchased *one* share of Virgin Galactic stock. ECF No. 128 at ¶ 402. Demanding that Virgin Galactic collect, review and produce documents from 12 custodians across 14 months to investigate a claim brought by a stockholder who allegedly bought one share of Virgin Galactic stock is the definition of disproportionate. *See Walsh*, 2022 WL 3300190, at *7; *White v. Cnty of Suffolk*, 2022 WL 1154839, at *2 (E.D.N.Y. Apr. 19, 2022) ("Proportionality goes 'hand-in-hand' with relevance . . . the more relevant the information sought is, the less likely a Court would find the subject discovery disproportionate.").

Plaintiffs try to justify their irrelevant and disproportionate Requests by arguing that "Judge Ross held that the MNPI included, at a minimum, information concerning a February 2019 Virgin Galactic test flight." But that misstates and inappropriately expands Judge Ross's holding, which was that the only alleged MNPI at issue relates to "information about the February 2019 flight ***and Unity's horizontal stabilizers***." ECF No. 87 at 59 (emphasis added). And Plaintiffs do not cite a single case supporting their position that they may take discovery regarding alleged MNPI that the Court has already rejected as a basis for their insider trading claims. Indeed, the only authority Plaintiffs could muster states general principles and explains the requirement that plaintiffs must establish a defendant's liability based on MNPI that was known at the time of trading. The Court's August 2023 Order identifies the only alleged MNPI at issue for the insider trading claim against Branson. Defendants have agreed to produce

---

[2] Defendants have agreed to produce relevant, responsive materials for *Unity* for Request Nos. 54-55.

documents relating to that alleged MNPI.  Nothing more is required.  *See U.S. Bank*, 2024 U.S. Dist. LEXIS 18335, at \*4 (denying motion to compel discovery related to dismissed claims).

### B. Documents Concerning Insider Trading Policies (Request No. 56)

In response to Request No. 56, Defendants agreed to produce insider trading policies in effect during the relevant time periods and documents sufficient to show any policy exemptions granted to Branson.  Relying on outdated law,[3] Plaintiffs demand that Defendants also produce all other documents and correspondence related to the establishment and execution of the relevant policies, including documents showing whether *other* insiders—whose trades are not at issue—received exemptions and whether Branson received any "favorable treatment" or "leaned on" the Company for an exemption.  These documents are not relevant to any of Plaintiffs' remaining claims.  For starters, there are no allegations in the Complaint—despite Plaintiffs' reliance on 10 former employees—that Branson's October 2019 trades were made pursuant to a special exemption or that he otherwise received favorable treatment under the Company's insider trading policy.  As alleged in the Complaint, Branson sold his shares as part of the reverse merger transaction through which the Company went public, a transaction whose terms were publicly announced and approved by the Company's shareholders.  ECF No. 128 at ¶ 51. Plaintiffs have not explained the relevance of the Company's insider trading policies or policy exemption documents to this claim, let alone the relevance of the additional documents that they seek in this motion.  Nevertheless, in the spirit of cooperation, Defendants have already agreed to produce its relevant insider trading policies and policy exemption documents applicable to Branson.  But the remainder of Plaintiffs' discovery demands amount to a fishing expedition based on nothing more than Plaintiffs' speculation that there *might* be correspondence related to the insider trading policies and that such documents "*may*" be relevant and "*might*" support Plaintiffs' remaining claims.  Allowing this discovery would be both "disproportional and a burden on Defendant[s] to produce discovery on vague requests in what seem[s] like a 'gamesmanship looking for a gotcha.'"  *Walsh*, 2022 WL 3300190, at \*7.  Accordingly, Plaintiffs' request for additional discovery related to Request No. 56 should be denied.

### C. Efforts to Meet and Confer

Defendants agree that the parties are at an impasse regarding Plaintiffs' requests, but dispute Plaintiffs' characterization of the July 25, 2024 meet and confer.  In that meeting, Defendants repeatedly asked Plaintiffs to explain the relevance and proportionality of the requests at issue, in light of Judge Ross's August 2023 Order and the very narrow scope of remaining issues outstanding in the case.  Plaintiffs were unable to articulate their position then and remain unable to do so now.  On August 14, Plaintiffs informed Defendants for the first time that they were planning to file a motion to compel.

---

[3] *See Hedgeye Risk Mgmt., LLC v. Dale*, 2023 WL 435076, at \*3 (S.D.N.Y. Jul. 5, 2023) ("In 2015, however, Rule 26(b)(1) was amended to, inter alia, delete reference to discovery requests 'reasonably calculated to lead to the discovery of admissible evidence' and clarify that the scope of permissible discovery is grounded not only in relevance but also proportionality.").

Respectfully submitted,

*s/ Jonathan Horne*
Jonathan Horne
Co-Lead Counsel for Plaintiffs