**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHANE LAVIN, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, JON CAMPAGNA,<br><br>       Defendants. | Case No.: 1:21-cv-03070-ARR-TAM |

**DEFENDANTS' OPPOSITION TO**
**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   RELEVANT FACTUAL BACKGROUND.........................................................3

      A.    The 2019 Claim.......................................................................................4

      B.    The 2021 Claims ....................................................................................6

      C.    Procedural History .................................................................................9

III.  LEGAL STANDARD.........................................................................................9

IV.   ARGUMENT ....................................................................................................10

      A.    Plaintiffs' Unprecedented Proposed Class Fails To Meet Rule 23(a)'s Commonality Requirement.....................................................10

      B.    Plaintiffs Fail To Produce Evidence In Support Of The 2019 Claim Period.........15

            1.    Plaintiffs Fail To Produce Evidence Showing The 2019 Claim Period Satisfies The Requirements Of Rule 23(a)....................................16

            2.    Plaintiffs Fail To Produce Evidence Showing The 2019 Claim Period Satisfies Rule 23(b)'s Predominance Requirement........................20

V.    CONCLUSION.................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................9, 20

*Arkansas Teachers Ret. System v. Goldman Sachs Grp., Inc.*,
  879 F.3d 474 (2d Cir. 2018), *vacated and remanded on other grounds*, 141 S.
  Ct. 1951 (2021) ...........................................................................................................14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)....................................................................................17, 18

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)......................................................................................................20

*Cammer v. Bloom*,
  71 F. Supp. 1264 (D.N.J. 1989) ..................................................................................22

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)........................................................................................................14

*Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*,
  862 F. Supp. 2d 322 (S.D.N.Y. 2012).........................................................................19

*George v. China Automotive Sys., Inc.*,
  2013 WL 3357170 (S.D.N.Y. July 3, 2013) ...............................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014).................................................................................................9, 21

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*,
  2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013)..............................................................22

*In re Allergan PLC Sec. Litig.*,
  2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020).............................................................9

*In re Initial Pub. Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006), *vacated and remanded on other grounds*.............................14, 17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018)..........................................................................18

*In re Petrobras Sec. Litig.*,
  862 F.3d at 250 ............................................................................................................22

ii

*In re Silver Lake Group, LLC Sec. Litig.*,
   108 F.4th 1178 (9th Cir. 2024) .................................................................................18

*In re Synchrony Fin. Sec. Litig.*,
   2023 WL 1503032 (D. Conn. Feb. 3, 2023) ...........................................................11

*In re Vale Sec. Litig.*,
   2019 WL 11032303 (S.D.N.Y. Sept. 27, 2019)..........................................13, 22, 24

*Korn v. Franchard Corp.*,
   456 F.2d 1206 (2d Cir. 1972)..................................................................................11

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ............................................................................24

*Kulig v. Midland Funding, LLC*,
   2014 WL 5017817 (S.D.N.Y. Sept. 26, 2014).........................................................3

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) .............................................................................17

*New Jersey Carpenters Health Fund v. Residential Cap.*,
   272 F.R.D. 160 (S.D.N.Y. 2011) .............................................................................19

*Ret. Sys. v. Morgan Stanley & Co., Inc.*,
   772 F.3d 111 (2d Cir. 2014).....................................................................................16

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005)...........................................................18

*U.S. Fid. and Guar. Co. v. Madison Fin. Corp.*,
   2002 WL 31731020 (S.D.N.Y. Dec. 4, 2002) .........................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).....................................................................................1, 9, 11, 14

*Weiner v. Tivity Health, Inc.*,
   334 F.R.D. 123 .........................................................................................................22

**RULES**

Fed. R. Civ. P. 23(a)(1).....................................................................................................15

Fed. R. Civ. P. 23(a)(2)................................................................................................10, 13

**REGULATIONS**

17 C.F.R. § 239.13 .............................................................................................................23

# OTHER AUTHORITIES

SEC Investor.gov, *available at* https://www.investor.gov/introduction-investing/investing-basics/glossary/cusip-number ......................................................................5

Defendants Virgin Galactic Holdings, Inc. ("Virgin Galactic" or the "Company"), Sir Richard Branson, and Chamath Palihapitiya (with Virgin Galactic, the "Defendants") submit this Opposition (the "Opposition") to Plaintiffs' Motion for Class Certification (the "Motion" or "Mot.").

## I.    INTRODUCTION

In their Motion, Plaintiffs attempt to manufacture a single "class" by bolting together a one-week period in 2019 (the "2019 Claim Period") and a seven-week period in 2021 (the "2021 Claim Period") separated by more than 20 months and that involve different claims, different facts, different proposed class representatives, different alleged damages, and different defendants (except for Branson).  Plaintiffs cite no authority supporting their Frankenstein-version of a proposed class, and the "evidence" they present (which includes virtually nothing for the 2019 Claim Period) does not remotely satisfy Rule 23.  The Supreme Court has emphasized that Rule 23's requirements are not mere pleading standards, but rigorous benchmarks that must be satisfied with concrete evidence.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  Plaintiffs' failure to meet those rigorous benchmarks dooms their Motion for Class Certification.

The hallmark of class litigation is that the members of the class possess claims that are so bound together by common issues that class-wide resolution (rather than individual litigation) is appropriate, as long as the requirements of Rule 23 are met.  Because the claims in the 2019 Claim Period are entirely distinct from the claims in the 2021 Claim Period, there is no commonality that can justify certifying the class that Plaintiffs have proposed.  Plaintiffs could have proposed subclasses (*e.g.*, one for the 2019 Claim Period and one for the 2021 Claim Period), but they chose not to, likely because they have no authority supporting certification of a subclass (or class) for a period as tiny as their eight-day 2019 Claim Period, and Plaintiffs' own proffered class certification expert concluded that the 2019 Claim Period was too short for meaningful analysis.  They instead

1

try to mask the Rule 23 flaws inherent in the 2019 Claim Period by folding it into a proposed class with the distant (in time and substance) 2021 Claim Period. In so doing, Plaintiffs have highlighted a commonality deficiency that is fatal to their Proposed Class and warrants denial of their Motion in its entirety.

In the alternative, the Court should excise the defective 2019 Claim Period from Plaintiffs' Proposed Class.[1] Plaintiffs put forth **no** evidence showing that the 2019 Claim Period and claim satisfy the bulk of the applicable Rule 23 requirements. Plaintiffs' evidentiary failure as to any one of those requirements alone is sufficient to remove the 2019 Claim Period from any class that is certified in this case; that Plaintiff has not even attempted to satisfy multiple Rule 23 requirements for the 2019 Claim Period is devastating. And while Plaintiffs try to present specific evidence regarding adequacy and typicality for purposes of the 2019 Claim Period and claim, they fail to meet those criteria as well. Plaintiffs' sole proposed class representative for the 2019 Claim Period—Montgomery Brantley—did **not** purchase Virgin Galactic stock in the 2019 Claim Period (contrary to Plaintiffs' representations to the Court, *see* Dkts. 118-1, 113-1, and 127). Instead, Brantley ▮▮▮▮▮▮▮▮▮▮▮▮ Social Capital Hedosophia ("SCH"), the de-SPAC entity that later merged with Virgin Galactic, and his purchase occurred before Virgin Galactic common stock even began trading. To pursue his insider trading claim, Brantley must have traded in the *same securities* that he alleges Branson improperly sold. Brantley did not, and he thus cannot establish standing to pursue his own insider trading claim against Branson, let alone represent a class of others who purport to have such a claim. Nor can any of the other proposed class representatives, because none of them alleges any purchases of Virgin Galactic common stock in the 2019 Claim Period.

---

[1] Terms not defined herein have the same meaning as in the Motion.

Accordingly, the Court should deny the Motion in its entirety, or at a minimum, remove the 2019 Claim Period from any class that is certified in this case.

## II.    RELEVANT FACTUAL BACKGROUND

This case involves two distinct sets of claims: (1) an insider trading claim against Branson related to stock sales he made in October 2019, and separately, (2) a misrepresentation claim against Virgin Galactic and Branson, an insider trading claim against Branson, and a control-person liability claim against Palihapitiya, all related to a purported airspace deviation that occurred on a July 11, 2021 spaceflight.  On October 12, 2024, Plaintiffs moved to certify this action as a class action on behalf of a class encompassing both sets of distinct claims (the "Proposed Class")—*i.e.*, "a class of persons and entities who purchased shares of Virgin Galactic common stock during the periods from: (i) October 25, 2019 through November 1, 2019, inclusive; and/or (ii) July 12, 2021 through September 2, 2021, inclusive," excluding Defendants and various related parties.  Mot. at 2.  Plaintiffs also sought to appoint Jennifer Ortiz, Richard O'Keefe-Jones, Hesham Ibrahim, and Montgomery Brantley as class representatives with Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A., as Co-Lead Class Counsel.  *Id*. at 1.  Brantley only ██████████████████████████████████████████████—and Ortiz, O'Keefe-Jones, and Ibrahim █████████████████████████████ Ex.[2] 2 (Brantley's Oct. 2019 statements

---

[2] All references to "Ex." are to the Declaration of Kevin M. McDonough filed herewith.  In deciding class certification, the Court may consider "parties' evidentiary submissions and matters of which judicial notice may appropriately be taken," including public disclosure documents filed with the Securities and Exchange Commission ('SEC'), and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit. *Kulig v. Midland Funding, LLC*, 2014 WL 5017817, at *1 (S.D.N.Y. Sept. 26, 2014).  Additionally, the Court may judicially notice any fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. ("FRE") 201(b).  Here, the Court may take judicial notice of Exhibits 1-20 attached to the McDonough Declaration.

3

(unredacted)); TAC ¶ 402.  Notwithstanding the key factual distinctions between Brantley on the one hand and Ortiz, O'Keefe-Jones, and Ibrahim on the other hand, Plaintiffs propose that all four serve as class representatives for the entire Proposed Class.

### A.    The 2019 Claim

The 2019 Claim Period relates to Plaintiffs' alleged insider trading claim under Section 10(b) against Branson.  Specifically, Plaintiffs allege that Branson sold shares of Virgin Galactic common stock in late October 2019, while purportedly in possession of material nonpublic information ("MNPI").  *See* TAC ¶ 400.  The MNPI that Plaintiffs allege Branson possessed at the time of his trades was that Unity, one of Virgin Galactic's two spacecrafts, had suffered damage to its horizontal stabilizers during a February 2019 test spaceflight.  TAC ¶ 8.  Plaintiffs allege that the "truth" of the damage to Unity's horizontal stabilizers emerged on February 1, 2021, via an article by *The Washington Post* titled, "Virgin Galactic ordered safety probe after wing of spacecraft was damaged during 2019 flight, book says."  *Id.* ¶¶ 15, 219-21.  On the date *The Washington Post* article was published, Virgin Galactic shares opened at $47.17 (well above its ~$10 per share price in October 2019) and closed at ***$53.79***, undermining Plaintiffs' argument that Branson allegedly traded on an inflated stock price or that anyone who traded contemporaneously with him in October 2019 suffered any harm as a result of such trades.[3]  Dkt. 73-3 (Virgin Galactic Stock Price History and Challenged Sales).

Plaintiffs identified Brantley as their only proposed class representative who allegedly possesses the claim that Plaintiffs advance for the 2019 Claim Period.  On April 1, 2024, as part of Plaintiffs' motion to amend the complaint to add Brantley as a plaintiff, Brantley filed with the

---

[3] The stock prices referenced in this brief represent Virgin Galactic Holdings, Inc.'s historic stock prices prior to the 1-for-20 reverse stock split that Virgin Galactic effected on June 14, 2024.  Ex. 20 (June 12, 2024 Virgin Galactic Form 8-K).

Court a Private Securities Litigation Reform Act certification in which he represented that he had "purchased" three shares of Virgin Galactic stock on October 25, 2019. Dkt. 113-1 (Tabak Report) at 3. Subsequently, on August 20, 2024, Plaintiffs filed a Third Amended Complaint (the "TAC"), Dkt. 128, in which they alleged that Brantley "purchased Virgin Galactic common stock during the Class Period and was damaged thereby." *Id*. ¶ 26; *see also id.* ¶ 402 (representing that Brantley purchased *one* share (as opposed to *three*) of Virgin Galactic stock on October 25, 2019).

On November 25, 2024, Defendants took Brantley's deposition, during which they learned for the first time that Brantley ███████████████████████████████████ ██████████████ (and, indeed, Virgin Galactic common stock did not begin trading on the public markets until October 28, 2019). Ex. 3 (Brantley Dep. Tr.) at 82:9-83:21, 85:23-87:9; *see also* TAC ¶ 402; Dkt. 113-1. Instead, Brantley ██████████████████████████████ Ex. 2 (Brantley's Oct. 2019 statements (unredacted)) at PLTF_VG_82283-84███████████████ ████████████████████████████████████████████████.[4] On October 25, 2019, after the shareholders of SCH voted and approved the merger of SCH with Virgin Galactic, Ex. 4 (Oct. 23, 2019 SCH 8-K) at 1, ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████[5]

---

[4] In addition to failing to explain to the Court that Brantley ████████████ when they moved to amend and then did amend their complaint, ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

[5] "CUSIP numbers consist of nine characters (including letters and numbers) that uniquely identify a company or issuer and the type of financial instrument." *See* SEC Investor.gov, *available at* https://www.investor.gov/introduction-investing/investing-basics/glossary/cusip-number.

*Compare* Ex. 2 (Brantley's Oct. 2019 statements (unredacted)), *with* Ex. 5 (Brantley's Oct. 2019 statements (redacted)); TAC ¶¶ 48-51; Ex. 19 (Oct. 28, 2019 Virgin Galactic 8-K) (explaining that SCH shares were converted into SPCE shares in connection with consummation of the de-SPAC on October 25, 2019).  On October 28, 2019, Virgin Galactic common stock began publicly trading on the New York Stock Exchange ("NYSE").  Ex. 4 (Oct. 23, 2019 SCH 8-K).

In connection with the merger, both SCH and pre-merger Virgin Galactic issued numerous public filings with the Securities and Exchange Commission (the "SEC") detailing the merger transaction.  In the lead up to the merger date and SCH's vote on whether to approve the merger (or not), it was publicly disclosed that Branson and his affiliated entities would collectively receive 130,000,000 shares of Virgin Galactic as part of the de-SPAC transaction.  Ex. 16 (August 7, 2019 SCH S-4) at x, xi.  It was also disclosed that Branson and his affiliated entities had the right to sell ten million of those shares to Palihapitiya at closing, and the right to sell additional shares back to the Company, with the number of shares contingent on the level of SPAC shareholder redemptions.  *Id*. at xi.  A separate company affiliated with Branson, Vieco US, announced publicly that it would sell 15,209,562 shares of Virgin Galactic as part of the transaction.  Ex. 6 (July 9, 2019 SCH Form 8-K); Ex. No. 99.1 (Joint Press Release).  Ten million of those shares were sold directly to Palihapitiya, while the remaining 5,209,562 shares were purchased by Virgin Galactic Holdings, Inc.  Ex. 7 (October 29, 2019 Vieco USA, Inc. Form 4); Ex. 8 (October 29, 2019 Palihapitiya Form 4).  The Vieco US shares were sold for $10 per share.  Ex. 7 (October 29, 2019 Vieco USA, Inc. Form 4).  Plaintiffs do not allege that Branson, or any entities affiliated with him, transacted in shares of SCH in connection with the merger (or otherwise).

**B.    The 2021 Claims**

Plaintiffs' claims in the 2021 Claim Period consist of a misrepresentation claim against Virgin Galactic and Branson, an insider trading claim against Branson, and a control-person

6

liability claim against Palihapitiya, all related to a purported airspace deviation that occurred on a July 11, 2021 spaceflight.  On July 11, 2021, more than two years after the February 2019 Flight, Virgin Galactic completed a flight designated as "Unity 22," which was the first fully-crewed spaceflight aboard Unity, with Branson among the passengers.  TAC ¶ 229.  During the Unity 22 flight, Virgin Galactic's spaceflight successfully launched, reached space, and safely returned to Earth, with all test objectives completed.  Later that same day, during one of multiple interviews, an understandably exuberant Branson—not all "Defendants" as Plaintiffs wrongly assert—described as "flawless" his voyage to space and safe return to Earth as a passenger on the Unity 22 flight.  *Id.* ¶ 231.

One month after the Unity 22 flight, on August 11, 2021, the FAA formally notified Virgin Galactic that it had determined that a brief airspace deviation that had occurred during the flight qualified as a "launch incident," and authorized Virgin Galactic to conduct its own investigation into the incident.  *Id.* ¶ 250.  On August 10-12, 2021, Branson sold 10.4 million shares of Virgin Galactic stock during an open trading window, which sales were publicly reported shortly thereafter in accordance with U.S. securities laws.  *Id.* ¶ 235.  On September 1, 2021, *The New Yorker* published an article which allegedly disclosed to the public the previously "unknown" "launch incident."  TAC ¶¶ 240-43.  Notably, Virgin Galactic's stock price did not materially decline on the date *The New Yorker* article was published.  Dkt. 73-3 (Virgin Galactic Stock Price History and Challenged Sales); *see also* TAC ¶ 253 (alleging that the price declined September 2-3, 2021).

The proposed class representatives who allege purchases of Virgin Galactic common stock during the 2021 Claim Period—Ortiz, Ibrahim, and O'Keefe-Jones—confirmed during their depositions that they do not have an adequate understanding of the claims in this case.  For

7

example, when shown the video of Branson's interview following the Unity 22 flight, Ortiz ███

████████████████████████████████████████████████████████████████████████████

Ex. 9 (Ortiz Dep. Tr.) Tr. 89:7-91:10.  O'Keefe-Jones could not ████████████████████

███████████████████████████████████████████████████████████ Ex. 10

(O'Keefe-Jones Dep. Tr.) Tr. 82:22-24███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████   And Ibrahim, █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████ Ex. 11 (Ibrahim Dep. Tr.) Tr. 84:21-86:8████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████

Moreover, unphased by their own allegations of fraud and supposed insider trading, Ortiz

and  Ibrahim ███████████████████████████████████████████████████████████

████████████████████████████████████ Ortiz purchased███████████████████████

████████████████████████████ Ex. 12 (Ortiz's November 19, 2021 statements)

███████████████████████████████████ Ex. 13 (Ortiz's November 26, 2021

statements)███████████████████████████████and Ibrahim continued███████████

███████████████████████████████ Ex. 18 (Ibrahim's statements)███████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 14 at 10 (Ibrahim

text messages)█████████████████████████████████████████████████████████████

8

████████████████████████████████████████ Both Ibrahim and Ortiz still ████████

████████████ Ex. 11 (Ibrahim Dep. Tr.) at 49:20-21; Ex. 9 (Ortiz Dep. Tr.) at 25:9-16.

## C.    Procedural History

On May 28, 2021, Plaintiffs filed this action.  On November 7, 2022, the Court granted in substantial part and denied in part Defendants' motion to dismiss, and granted Plaintiffs leave to amend their complaint.  Dkt. 58.  Plaintiffs subsequently filed a Second Amended Complaint, Dkt. 68, and the Court again granted in substantial part Defendants' motion to dismiss, this time dismissing all claims against two defendants and leaving only narrow claims against the remaining three.  Following additional motion practice, including Plaintiffs' motion to add a named plaintiff with supposed standing to assert the 2019 insider trading claims, Plaintiffs filed their Third Amended Complaint on August 21, 2024, which is the operative complaint.  Dkt. 128.  Discovery is ongoing, with the Parties actively engaging in document productions, and depositions are scheduled for early 2025.   As relevant here, on October 12, 2024, Plaintiffs filed their motion to certify this action as a class action.

## III.    LEGAL STANDARD

Class certification requires that Plaintiffs meet two distinct tests: first, they must demonstrate that the Proposed Class satisfies *all* elements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy; second, they must satisfy the requirements of one of the three subsections of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997) (citing Rule 23).  Here, because Plaintiffs seek certification under Rule 23(b)(3), they must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *In re Allergan PLC Sec. Litig.*, 2020 WL 5796763, at *5 (S.D.N.Y. Sept. 29, 2020).

The Supreme Court has emphasized that Rule 23 "does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. Accordingly, Plaintiffs "must actually *prove*—not simply plead—that [their] proposed class satisfies each requirement of [Rule 23]." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) ("*Halliburton II*"); *see also Wal-Mart*, 564 U.S. at 350-51 (requiring courts to conduct a "rigorous analysis" to determine whether each element has been established by a preponderance of the evidence). Plaintiffs have not done so.

## IV.    ARGUMENT

Plaintiffs' entire Proposed Class is fatally flawed because it improperly seeks to bind together two distinct claims and time periods that are separated by more than 20 months and involve completely unrelated alleged facts (among multiple other distinctions). Plaintiffs cite *zero* precedent supporting certification of a class made up of completely unrelated claims and periods, and the myriad differences between the two spare parts they try to connect demonstrate that the Proposed Class does not satisfy Rule 23(a)'s commonality requirement. Moreover, Plaintiffs have utterly failed to demonstrate that the 2019 Claim Period satisfies the requirements of Rule 23, including numerosity, typicality, adequacy of representation, and predominance. Plaintiffs cannot hide—let alone cure—the flaws of the 2019 Claim Period by placing it under the cover of a broader Proposed Class, and those flaws render invalid the entire Proposed Class. In any event, Plaintiffs' complete failure even to attempt to satisfy Rule 23 as to the 2019 Claim Period requires that it be removed from any class that is certified in this case.

### A.    Plaintiffs' Unprecedented Proposed Class Fails To Meet Rule 23(a)'s Commonality Requirement

Plaintiffs bear the burden of demonstrating that their Proposed Class satisfies the requirements for class certification, yet they tellingly do not cite a single case standing for the proposition that a proposed class comprised of two completely unrelated periods, alleged fact

10

patterns, and different legal issues is appropriate for class certification.  The problems inherent in the approach Plaintiffs pursue are best illustrated by Rule 23(a)'s commonality requirement, *i.e.*, that there are questions of law and fact common to the class, Fed. R. Civ. P. 23(a)(2), which the Proposed Class fails.[6]

Commonality requires more than a simple claim that members of a proposed class suffered injury from the same act (which Plaintiffs here do not and cannot show, anyway); it requires that the class claims "depend upon a common contention" and "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 349-50.  "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id.* (quotations omitted).  Here, Plaintiffs' Proposed Class seeks to combine entirely distinct claims and periods that are filled with "[d]issimilarities," as the following chart demonstrates:

---

[6] Plaintiffs' reliance on both *Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972) and *In re Synchrony Fin. Sec. Litig.*, 2023 WL 1503032 (D. Conn. Feb. 3, 2023), is misplaced.  Both *Korn* and *Synchrony*, alleged a single unified scheme of fraudulent misrepresentations over a continuous time frame.  Here, by contrast, the 2019 and 2021 Claim Periods involve entirely distinct claims, factual predicates, and even different legal theories that require separate analyses, defeating any argument for commonality.

11

|  | **2019 Claim Period** | **2021 Claim Period** |
|---|---|---|
| **Proposed Class Period** | October 25 - November 1, 2019 | July 12 - September 2, 2021 |
| **Proposed Class Representatives** | Montgomery Brantley | Jennifer Ortiz, Richard O'Keefe-Jones, and Hesham Ibrahim |
| **Theory Of Fraud** | Branson allegedly traded on MNPI of damage to Unity's horizontal stabilizers during February 2019 flight | Company and Branson allegedly made misstatement related to success of July 2021 flight and Branson allegedly traded on MNPI of airspace deviation during same |
| **Legal Claims** | Insider trading under § 10(b) of the Exchange Act | Misstatement under § 10(b) of the Exchange Act; insider trading under § 20A of the Exchange Act; control-person liability under § 20(a) of the Exchange Act |
| **Date On Which Truth Allegedly Emerged** | February 1, 2021 | September 2, 2021 |
| **Defendants** | Branson | Branson, Virgin Galactic, Palihapitiya |

As the above chart reflects, the eight-day 2019 Claim Period involves alleged insider trading claims under Section 10(b) by those who traded in Virgin Galactic stock contemporaneously with Branson and turns on information that Branson purportedly possessed regarding a February 2019 flight. *See* TAC ¶¶ 78, 83. The key questions and issues for the 2019 Claim Period include whether and to what extent Unity's horizontal stabilizers were damaged during the February 2019 flight, what knowledge (if any) Branson had about that subject when entities affiliated with him sold shares to Palihapitiya and Virgin Galactic in October 2019, and whether the alleged nonpublic information was material (among other questions and issues specific to 2019). *Id*. The 2019 Claim Period, as Plaintiffs define it, ends *20 months* before the proposed 2021 Claim Period begins. Mot. at 2. Even taking into account the public disclosure that Plaintiffs say revealed the February 2019 flight damage—*The Washington Post* February 2021 article whose publication coincided with an *increase* in the price of Virgin Galactic common stock—the last event with any relevance to the 2019 Claim Period occurred a full *five months* before the 2021

12

Claim Period begins.  TAC ¶¶ 219-221.

The 2021 Claim Period relates to entirely different claims and facts, adding two defendants who are not implicated in the 2019 Claim Period.  It includes three separate claims all related to a flight that took place on July 11, 2021, none of which have anything whatsoever to do with the 2019 Claim Period.  The key questions for the entirely distinct 2021 Claim Period and claims include whether statements made by Branson regarding the July 2021 Unity 22 flight were misleading, whether those statements caused artificial inflation in the price for Virgin Galactic's common stock, whether Branson held any MNPI regarding the Unity 22 flight when he sold shares in August 2021, whether Virgin Galactic is responsible for statements made by Branson (who was not an officer or director of the Company when he made the statement at issue), whether Palihapitiya qualifies as a control person and whether and how he actually participated in Virgin Galactic's alleged violation of Section 10(b).  The entirety of the 2021 Claim Period spans only from July 11, 2021 (the date of Branson's spaceflight) to September 2, 2021 (when Plaintiffs say the FAA announced that it was grounding Unity and Virgin Galactic's stock price declined).

Skipping past these obvious distinctions, Plaintiffs attempt to establish commonality by pointing to three generic "common" questions: "(1) whether Defendants' acts constituted violations of the federal securities laws; (2) whether Defendants' statements made to the investing public misrepresented material facts concerning the Company's business, operations, and financial condition; and (3) whether the price of the Company's common stock price was artificially inflated."  Mot. at 9.  These three superficial and generalized questions apply to virtually *every* securities class action and are insufficient to meet the commonality requirement of Rule 23(a)(2).

*In re Vale S.A. Securities Litigation* is instructive in this regard.  There, plaintiffs seeking class certification in a Section 10(b) case with two distinct time periods presented the court with

questions that are nearly identical to those that Plaintiffs say are "common" here: "[w]hether Defendants omitted material facts necessary to make their statements not misleading," "[w]hether Defendants' statements were made with the requisite scienter," "[w]hether the members of the Class sustained damages when the artificial inflation in Vale ADRs was eliminated," and "[w]hether Defendants violated the federal securities laws."   2019 WL 11032303, at *4-5 (S.D.N.Y. Sept. 27, 2019).   The court held that such generalized questions were "insufficient" to demonstrate commonality because otherwise "no competently crafted class complaint alleging violations of Rule 10b-5 could ever fail to meet it."   *Id.* at *5.   And in *Wal-Mart*, the Supreme Court found that the plaintiffs failed to establish commonality where they relied on similarly superficial questions in the context of an employment discrimination claim—*e.g.*, whether "managers have discretion over pay" and "[i]s that an unlawful employment practice."   *See Wal-Mart*, 564 U.S. at 349-50.

In order to bridge the "wide gap" between Brantley's claim that he was injured based on Branson's alleged insider trading in 2019 and the claims that the other proposed representatives were injured based on unrelated conduct that occurred 20 months later in July 2021, Plaintiffs must allege a "common contention" where "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the [2019 and 2021] claims in one stroke."   *Id.* at 350 (emphasis added).   Plaintiffs' failure to identify any such contention here is fatal to their attempt to demonstrate commonality and thus fatal to their Motion.[7]   *See id.* (denying class certification

---

[7] Plaintiffs also fail to satisfy the commonality requirement for the separate and independent reason that they do not (and cannot) demonstrate that damages are calculable on a class-wide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).   To satisfy *Comcast*, Plaintiffs must demonstrate a consistent and reliable methodology for calculating damages that aligns with their liability theory.   In his report, Plaintiffs' proffered class certification expert, Dr. Tabak, opined that a "common methodology" for analyzing the level of inflation in Virgin Galactic's common stock

14

where plaintiffs failed to establish commonality); *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006), *vacated and remanded on other grounds*, (denying class certification where plaintiffs failed to establish a common question capable of class-wide resolution); *Arkansas Teachers Ret. System v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 482 (2d Cir. 2018), *vacated and remanded on other grounds*, 141 S. Ct. 1951 (2021) (denying class certification where plaintiffs failed to show a connection between alleged misstatements and stock price movements sufficient for common questions to predominate); *see also In re Vale*, 2019 WL 11032303, at \*4-5 (denying that Plaintiffs' commonality questions were adequate and finding that "a typical securities fraud case involves the aggregation of claims that investors were defrauded by the same misstatement, or misstatements that were part of the same course of conduct").[8]

### B.  Plaintiffs Fail To Produce Evidence In Support Of The 2019 Claim Period

In addition to failing to prove commonality, Plaintiffs make no attempt to prove that the 2019 Claim Period meets Rule 23's requirements on a stand-alone basis.[9]  Instead, Plaintiffs rely exclusively on evidence drawn from the 2021 Claim Period and other irrelevant time periods to argue that the 2019 Claim Period satisfies Rule 23's numerosity, commonality, predominance, and

---

"can be performed on a Class-wide basis," *id.* ¶ 65, but he did not offer any evidence to support this conclusion ████████████████████████████████████████████████████████ *See* Ex. 1 (Tabak Dep. Tr.) at 144:11-145:7.  And by conceding these points, Dr. Tabak undermines his own assertion that Plaintiffs' damages can be calculated on a uniform, class-wide basis.

[8] Plaintiffs' failure to establish commonality, in turn, undermines predominance.  Indeed, common questions do not predominate over individual inquiries, as demonstrated by the key distinctions between the 2019 Claim Period and claim on the one hand, and the 2021 Claim Period and claims on the other hand.

[9] Plaintiffs do not cite a single case certifying a class in a securities class action for a period as tiny as their 2019 Claim Period, which as a practical matter is even shorter than eight days because the period includes only five days of trading in Virgin Galactic common stock.

superiority requirements.  Plaintiffs cannot use evidence from wholly distinct and irrelevant time periods to prove that the claim in the 2019 Claim Period is appropriate for litigation on a class-wide basis.  And the little evidence Plaintiffs present on typicality and adequacy—from Brantley—demonstrates that they do not meet those requirements.  Plaintiffs' failure to satisfy Rule 23 as to the 2019 Claim Period renders invalid the entire Proposed Class and, at a minimum, requires removal of the 2019 Claim Period from any class certified in this case.

### 1. Plaintiffs Fail To Produce Evidence Showing The 2019 Claim Period Satisfies The Requirements Of Rule 23(a)

Rule 23(a) requires that Plaintiffs demonstrate numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a)(1).  Plaintiffs make no attempt whatsoever to satisfy the first and second of those four requirements as to the 2019 Claim Period, and their reliance on a proposed class representative who did not purchase Virgin Galactic common stock in October 2019 defeats Plaintiffs' attempt to satisfy the third and fourth.

*Numerosity*.  The Motion say *nothing* about numerosity with respect to the tiny 2019 Claim Period, and Plaintiffs provide *none* of the information necessary to assess numerosity for that period.  *See generally* Mot.; *see Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111 (2d Cir. 2014) (denying class certification where numerosity was not satisfied despite a large number of potential class members).  While Plaintiffs submitted trading data and float evidence for the *2021* Claim Period, they provided no such information for the *2019* Claim Period.  Mot. at 8 (providing weekly trade volume, market capitalization, and float only for the period of July 12, 2021 to September 2, 2021).  And Plaintiffs' class certification expert, Dr. Tabak, confirmed in his deposition that ███████████████████████████████████ ████████████████████████████████ *See* Ex. 1 (Tabak Dep. Tr.) at 90:12-18 ████████████████

████████████████████████████████████████████████████████████

16

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████  Having provided no relevant evidence, Plaintiffs fail to prove numerosity for the stand-alone 2019 Claim Period. *See U.S. Fid. and Guar. Co. v. Madison Fin. Corp.*, 2002 WL 31731020, at \*6 (S.D.N.Y. Dec. 4, 2002) (denying class certification where plaintiffs failed to provide any evidence or estimate of the number of potential class members, rendering it impossible to assess numerosity).

***Commonality***.  The Motion likewise says *nothing* about commonality concerning the 2019 Claim Period, and the only 2019-specific evidence Plaintiffs provide undermines commonality. The logical conclusion to be drawn, now that the truth about Brantley's actual 2019 transaction has come to light, is that Plaintiffs seek to include in the 2019 Claim Period class those who purchased Virgin Galactic common stock on the open market once it began trading on October 28, 2019, and individuals like Brantley ████████████████ before Virgin Galactic common stock even was available for purchase.  As discussed elsewhere in this Opposition, there are a host of reasons why Brantley and others like him do not have insider trading claims against Branson based on trades in 2019 by entities related to him.  *See supra* Sections II.A, IV.A; *infra.*  However, a proposed class that includes SCH purchasers and Virgin Galactic purchasers introduces fundamental distinctions and questions that go to the very heart of the insider trading claim and reveal a lack of commonality across the group of investors who would make up that class for the 2019 Claim Period and claim.  *See, e.g.*, *In re IPO Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) (denying class certification where plaintiffs failed to establish a common question capable of class-wide resolution due to significant differences among class members' claims).

17

***Typicality and Adequacy***. Plaintiffs also fail to satisfy the typicality and adequacy requirements of Rule 23(a) with respect to the 2019 Claim Period. The typicality requirement of Rule 23(a)(3) requires that the claims of the proposed class representatives and absent class members arise from the same course of events and are premised on the same legal theories. *See Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008). Similarly, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," which entails a determination as to whether a plaintiff's interests are compatible with the interests of other members of the class. *Id.* at 176. In assessing typicality and adequacy, courts deem class certification "inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000); *Lapin*, 254 F.R.D. at 179 (S.D.N.Y. 2008) (same). Standing is one such "unique" defense. *Baffa*, 222 F.3d at 59.

Here, Brantley lacks standing for the 2019 claim because he never actually purchased shares of Virgin Galactic common stock in October 2019 (despite representing to the Court that he had done so), let alone contemporaneously with Branson trades in that security. *See* Dkts. 118-1, 113-1, and 127. Rather, Brantley ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3 (Brantley Dep. Tr.) at 82:18-83:21, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, Ex. 19 (Oct. 28, 2019 Virgin Galactic 8-K). It is well settled that for a plaintiff to have standing to pursue an insider trading claim, he must have traded in the *same* securities as the insider. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 2148919, at *4 (S.D.N.Y. Sept. 6, 2005) ("A named plaintiff in a class action that purchased securities from one issuer does not have standing to bring claims on behalf of purchasers of securities from *a different issuer*." (emphasis in original)); *see also In re Silver Lake Group*,

*LLC Sec. Litig.*, 108 F.4th 1178, 1189-90 (9th Cir. 2024) (contemporaneous trades "in securities of the same class" are required for standing (internal quotations omitted)).[10] Brantley's failure to do so means that he cannot proceed with a claim against Branson; at a minimum he faces a unique defense and thus cannot be appointed as a class representative for the 2019 Claim Period. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 589 (S.D.N.Y. 2018) (a proposed representative who lacks standing is not part of the putative class and fails to meet the typicality requirement under Rule 23). Brantley is also very differently situated from those who purchased Virgin Galactic common stock during the 2019 Claim Period and sold it at a loss in 2019, because Brantley ███████████████████████████████████████ ████ when Virgin Galactic was trading at nearly five times its October 2019 price. Dkt. 73-3 (Virgin Galactic Stock Price History and Challenged Sales); *see* Ex. 3 (Brantley Dep. Tr.) at 187:9-18.[11]

Further, because the three other proposed class representatives—O'Keefe-Jones, Ibrahim, and Ortiz—do not allege any purchases of Virgin Galactic common stock during the 2019 Claim

---

[10] Notably, Palihapitiya and Ian Osborne were the majority shareholders of SCH and their vote in favor of the merger were sufficient to consummate it. Ex. 16 (August 7, 2019 SCH S-4). And Plaintiffs do not present any evidence demonstrating that Brantley's purchase of SCH shares occurred *after* the merger was consummated.

[11] Brantley's flaws and the sorted history of the 2019 claim also raises serious doubts that the 2019 Claim Period satisfies the superiority requirement of Rule 23(b)(3). It took Plaintiffs three years to identify a plaintiff (Brantley) who they claimed had standing to pursue the 2019 insider trading claim, and yet it turns out Brantley did not actually purchase the securities upon which the 2019 claim is based. Nothing about that history (and Plaintiffs' complete failure to produce evidence of numerosity) suggests that class-wide litigation of the 2019 claim is the superior approach. Moreover, lumping together the entirely distinct 2019 Claim Period and 2021 Claim Period is far from the superior method of litigating the separate claims asserted in those periods, and Plaintiffs do not demonstrate otherwise. *See New Jersey Carpenters Health Fund v. Residential Cap., LLC*, 272 F.R.D. 160, 171 (S.D.N.Y. 2011), *aff'd sub nom. New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809 (2d Cir. 2012) (superiority not met where "the putative class members are not 'sufficiently cohesive to warrant adjudication by representation'" (citing *Amchem*, 521 U.S. at 623)).

19

Period, there is not a single class representative who can represent the class as to that period and the claim asserted therein.[12]  Accordingly, Plaintiffs' failure to establish typicality and adequacy supply independent bases for the Court to reject Plaintiffs' attempts to include the 2019 Claim Period in the Proposed Class.  *See Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 332 (S.D.N.Y. 2012) ("For each claim asserted in a class action, there must be at least one class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim.").

In short, there are numerous reasons why Plaintiffs cannot satisfy adequacy or typicality with respect to the 2019 Claim period and claim, and the entire fact pattern relevant to the 2019 Claim Period demonstrates that individual issues abound.

### 2.    Plaintiffs Fail To Produce Evidence Showing The 2019 Claim Period Satisfies Rule 23(b)'s Predominance Requirement

In addition to failing to meet any of Rule 23(a)'s requirements for the 2019 Claim Period, Plaintiffs' evidence is insufficient to satisfy the predominance requirement of Rule 23(b)(3). Plaintiffs rely solely on their class certification expert, Dr. Tabak, for evidence of predominance, but he admits that he failed to provide any analysis regarding market efficiency for the 2019 Claim

---

[12] Ibrahim and Ortiz also suffer from credibility issues that undermine their roles as class representatives for any period. ███████████████████████████████████ ███████████████████████████████ x. 12 (Ortiz's November 19, 2021 statement); Ex. 13 (Ortiz's November 26, 2021 statement); Ex. 17 (Ortiz's January 26, 2021 statement). ████████████████████████████████████████ Ex. 18 (Ibrahim's statements). ████ ██████████████████████████████████████ ███████ x. 11 (Ibrahim Dep. Tr.) at 49:20-21; Ex. 9 (Ortiz Dep. Tr.) at 25:9-16.  Evidence that a putative class representative continued to purchase the securities in question *after* alleged corrective information was disclosed to the public "can both defeat typicality and adequacy as well as rebut the presumption that plaintiff relied on the alleged misrepresentations or the integrity of the market in making his or her purchases." *See George v. China Automotive Sys.*, Inc., 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013) (collecting cases).

Period.  Ex. 1 (Tabak Dep. Tr.) at 90:12-18 ██████████████████

████████████████████████████████████████████████████

███████████████████████████████████ *id*. at 90:20-24██████████

████████████████████████████████████████████████████

████████████████████████████

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  Plaintiffs invoke the fraud-on-the-market presumption established under *Basic Inc. v. Levinson*, 485 U.S. 224, 245-247 (1988) as their basis for arguing predominance.  However, a critical deficiency in Plaintiffs' Motion is their failure even to attempt to demonstrate market efficiency for the 2019 Claim Period—a prerequisite for application of the *Basic* presumption.  *Id.* (stating that the fraud-on-the-market presumption requires that the stock traded in an efficient market).

In his report and at his deposition, Plaintiffs' expert, Dr. Tabak, admitted that he did not analyze market efficiency for Virgin Galactic's common stock for the 2019 Claim Period on a standalone basis.  Dkt. 133-1 (Tabak Report) at ¶ 2 ("I do not examine the *few days* covered by the Class Period in 2019 by themselves") (emphasis added); Ex. 1 (Tabak Dep. Tr.) at 91:6-13██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Instead, in an attempt to paper over his inability to opine that the market for Virgin Galactic common stock was efficient during the eight-day 2019 Claim Period, Dr. Tabak affixed the 2019 Claim Period to the 2021 Claim Period, using

21

as "glue" a period of more than 20 months between the two—November 2, 2019 to July 11, 2021—that is not (nor could be) part of the Proposed Class.  Mot. at 2.  Indeed, Dr. Tabak's "glue" consists of a period of time that is sixteen months *longer* than the 2019 and 2021 Claim Periods combined, which he concedes is an unprecedented approach:  Dr. Tabak admits that ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Ex. 1 (Tabak Dep. Tr.) at 87:11-89:15.

Whether analyzed under the *Cammer* or *Krogman* factors, discussed *infra*, Plaintiffs have not submitted any evidence to establish that Virgin Galactic's common stock traded in an efficient market during the 2019 Claim Period.  Without such proof, reliance must be proven individually, rendering class certification under Rule 23(b)(3) impossible.  *Halliburton II*, 573 U.S. at 268-69 (holding that absent the Basic presumption, proving reliance on an individual basis often precludes class certification under Rule 23(b)(3)).[13]

The *Cammer* Factors.  Plaintiffs fail to prove market efficiency for Virgin Galactic stock through the factors set forth in *Cammer v. Bloom*, 71 F. Supp. 1264 (D.N.J. 1989), which include: "(1) a large weekly trading volume; (2) the existence of a significant number of analyst reports; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 registration statement; and (5) a history of immediate movement of the

---

[13] Plaintiffs' cited legal authority fails to save their argument.  None of the cases they cite supports their improper inclusion of nearly two years of irrelevant data to bolster their class certification arguments.  To the contrary, the courts in those cases warned against exactly what Plaintiffs attempt to do here.  *See In re Petrobras Sec. Litig.*, 862 F.3d at 250 (explaining that courts should rely on direct and indirect evidence, not expanded time periods, to address "small sample sizes [that] may limit statistical power"); *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123 (out of circuit authority permitting expansion of the analysis period for autocorrelation *only* when an opposing expert fails to demonstrate inefficiency in analyzing a narrower class period).

stock price caused by unexpected corporate events or financial releases." *In re Vale*, 2019 WL 11032303, at \*10. Although Courts consider the *Cammer* factors as indicators of market efficiency, it remains Plaintiffs' burden to present adequate proof of an efficient market. *See IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at \*21 (S.D.N.Y. Oct. 29, 2013).

As to the *first Cammer* factor, Dr. Tabak did not perform any separate analysis of the trading volume for the 2019 Claim Period. *See* Dkt. 133-1 (Tabak Report) at ¶¶ 18-19. That deficiency is critical because courts have underscored the importance of high turnover in stock ownership in establishing market efficiency. *See Cammer*, 711 F. Supp. at 1286.[14] Regarding the *second Cammer* factor, Plaintiffs and Dr. Tabak offer no evidence showing analyst coverage[15] for the standalone 2019 Claim Period, and in his deposition Dr. Tabak stated that ███████████ ███████████████████████████████████████████████████████████████████ ██████████████████████ Ex. 1 (Tabak Dep. Tr.) at 92:1-25; *see* Dkt. 133-1 (Tabak Report) at ¶¶ 20-23. And as for the *third Cammer* factor, Plaintiffs and Dr. Tabak similarly do not offer any evidence that there were market makers for Virgin Galactic common stock during the 2019 Claim Period, and Dr. Tabak admitted that ██████████████ ███████████████████████████████████████████████████████████████████ █████████████ Ex. 1 (Tabak Dep. Tr.) at 96:14-97:8; *see* Dkt. 133-1 (Tabak Report) at ¶¶ 24-30.

Turning to the *fourth Cammer* factor, Plaintiffs and Dr. Tabak assert that Virgin Galactic

---

[14] Moreover, in 2021, Virgin Galactic experienced a surge in trading activity due to high-profile events like the Unity 22 flight, Ex. 15 (Virgin Galactic trading data) (indicating that trading volume more than doubled the day after Unity 22 (July 11, 2021)), creating conditions that do not correlate with 2019 when the stock had just begun publicly trading.

[15] As part of this admission, Dr. Tabak further recognized that ████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████

was able to file a Form S-3.  Dkt. 133-1 (Tabak Report) at ¶¶ 31-32.  They are wrong.  Under federal rules governing the filing of Forms S-3, Virgin Galactic was not eligible to file one until late 2020, over a year *after* the 2019 Claim Period ends.[16]  *See* 17 C.F.R. § 239.13 (requiring that the registrant "has been subject to the requirements of section 12 and 15(d) of the Exchange Act and has filed all the material required to be filed pursuant to sections 13, 14 or 15(d) for a period of *at least twelve calendar months* immediately preceding the filing of the registration statement on this Form").  When confronted with this fact during his deposition, Dr. Tabak admitted that ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Ex. 1 (Tabak Dep. Tr.) at 57:15-59:6, 116:11-121:20; Dkt. 133-1 (Tabak Report) at ¶ 32.

As to the *fifth* (and last) *Cammer* factor, Plaintiffs and Dr. Tabak fail to provide any evidence that Virgin Galactic's stock price responded to unexpected corporate events or financial releases during the 2019 Claim Period.  Ex. 1 (Tabak Dep. Tr.) at 122:12-123:21; Dkt. 133-1 (Tabak Report) at ¶¶ 33-46.  Nor could it, because no such events occurred during the fraction of time (October 28, 2019 – November 1, 2019) that Virgin Galactic common stock was publicly traded in the 2019 Claim Period.

The *Krogman* Factors.  Plaintiffs' evidence of market efficiency is equally deficient under the factors outlined in *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001), and for similar reasons.  Courts use the *Krogman* factors to assess market efficiency based on (1) market capitalization, (2) bid-ask spread, and (3) public float.  *In re Vale*, 2019 WL 11032303, at *10.  As

---

[16] Indeed, Virgin Galactic was required to withdraw the Form S-3 that it filed on November 18, 2019.

discussed above, Plaintiffs and Dr. Tabak did not separately analyze the 2019 Claim Period, and because of that, they did not provide any evidence of the market capitalization, bid-ask spread, and public float for the 2019 Claim Period on a standalone basis. *See* Ex. 1 (Tabak Dep. Tr.) at 125:15-126:3 ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Plaintiffs therefore do not provide any evidence that Virgin Galactic common stock traded in an efficient market during the 2019 Claim Period under either the *Cammer* or *Krogman* factors (and they and their proffered expert tellingly did not even try to provide such evidence). Accordingly, Plaintiffs cannot invoke the *Basic* presumption of reliance with respect to the 2019 Claim Period, and they fail the predominance requirement of Rule 23(b)(3).

## V.    CONCLUSION

For the reasons set forth herein, and in the accompanying declarations and exhibits, Defendants respectfully request that the Court deny Plaintiffs' Motion for Class Certification in its entirety or in the alternative remove the 2019 Claim Period from any class certified in the case.

Dated: December 20, 2024

**LATHAM & WATKINS LLP**

*/s/* Kevin M. McDonough
Kristin N. Murphy (*pro hac vice*)
Michele D. Johnson (*pro hac vice*)
Ryan A. Walsh (*pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email:  kristin.murphy@lw.com
          michele.johnson@lw.com
          ryan.walsh@lw.com

Kevin M. McDonough
Corey A. Calabrese
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Facsimile: (212) 751-4864
Email: kevin.mcdonough@lw.com
          corey.calabrese@lw.com

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
Email: colleen.smith@lw.com

*Attorneys for Defendants Virgin Galactic Holdings, Inc., Sir Richard Branson, and Chamath Palihapitiya*

26