# EXHIBIT 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK


_____

SHANE LAVIN, Individually and on

Behalf of All Others Similarly Situated,

                        Plaintiff,

          -against-

VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A.

COLGLAZIER, GEORGE WHITESIDES, DOUG

AHRENS, and JON CAMPAGNA,

                        Defendants.

Case No. 1:21-cv-03070-ARR-TAM

_____


                        November 20, 2024

                        9:41 a.m.




        DEPOSITION of DAVID I. TABAK,

taken by Defendants, pursuant to

Notice, held at the offices of LATHAM &

WATKINS LLP, 1271 Avenue of the

Americas, New York, New York before

Wayne Hock, a Notary Public of the

State of New York.




                                Page 1

A P P E A R A N C E S:

GLANCY PRONGAY & MURRAY LLP
Attorneys for Plaintiffs
         1925 Century Park East
         Los Angeles, California 90067
BY:      KARA M. WOLKE, ESQ.
         kwolke@glancylaw.com

         -and-

THE ROSEN LAW FIRM, P.A.
         275 Madison Avenue
         New York, New York 10016

BY:      JONATHAN HORNE, ESQ.
         jhorne@rosenlegal.com
LATHAM & WATKINS LLP
Attorneys for Defendants
         10250 Constellation Boulevard
         Century City, California 90067

BY:      KEVIN M. MCDONOUGH, ESQ.
         kevin.mcdonough@lw.com
         LAUREN M. MCBREARTY, ESQ.
         lauren.mcbrearty@lw.com

ALSO PRESENT:

         ALEXA PASTOR, Videographer
                 *     *     *

Page 2

they thought there was something I    10:35:05
should look at, I looked at it.  If    10:35:08
I thought there was something I    10:35:08
should look at, I asked for it and    10:35:08
looked at it.    10:35:10

And the other materials are    10:35:10
all material that I thought was    10:35:16
relevant or cited for some purpose.    10:35:17

Q.    Okay.    10:35:19

If you look at the page where    10:35:23
at the bottom you list other materials,    10:35:25
do you see that?    10:35:27

A.    Page three of sixteen, yes.    10:35:28

Q.    Did you select the items    10:35:29
within the category of other materials    10:35:33
to consider in expressing your opinions    10:35:36
in this case?    10:35:39

MS. WOLKE: I object to form.    10:35:40

THE WITNESS:  Let me see.    10:35:40

So the first one, I think    10:35:42
that comes from market efficiency.    10:35:44
I can't remember.    10:35:47

The second one deals with how    10:35:48
a security can be listed on one    10:35:49
exchange but trade on another one,    10:35:52

Page 56

and I brought that one in.    10:35:54

The third, the New Palgrave    10:35:57
Dictionary kind of deals with    10:36:02
efficient markets, so that was my    10:36:03
selection from some prior case.    10:36:04

The fourth, NYSE Regulation    10:36:04
SHO, deals with short interest, so    10:36:08
again that would be in market    10:36:10
efficiency and I presume we've    10:36:12
cited it in prior cases.    10:36:13

And finally, the PSLRA go    10:36:14
into the Comcast section, so I uses    10:36:17
that and cited it in many prior    10:36:20
cases.    10:36:22

Q.    The second item listed under    10:36:22
other materials, do you understand that    10:36:24
to be a reference to the Code of    10:36:26
Federal Regulations?    10:36:31

A.    Yes.    10:36:31

Q.    Did you review any other    10:36:31
portion of the Code of Federal    10:36:33
Regulations in forming the opinions you    10:36:35
express in your report?    10:36:37

MS. WOLKE: I object to form.    10:36:38

THE WITNESS:  No, other than    10:36:39

Page 57

I might have seen material right

before or right after that.  So

this is only what I focused on or

reviewed.

Q.    You mean you may have seen portions of the Code of Federal Regulations that come before or right after the code section you've cited?

A.    I looked at it online.  In order to get to that particular place, I had to skim through or scroll, but I wasn't reading other material.

Q.    Is it correct to say, as you sit here today, you did not consider in forming your opinions in this case any portion of the Code of Federal Regulations other than the one you've listed in Exhibit 2 to your report?

MS. WOLKE: I object to form.

THE WITNESS:  Certainly not explicitly.

Q.    Is it fair to say that if you had considered, in forming the opinions you express in the report, other portions of the Code of Federal

Page 58

Regulations, you would have listed those other portions in your materials considered list?

MS. WOLKE: I object to form.

THE WITNESS: That is correct.

Q. Did you personally review all of the materials you list in your materials considered list?

A. It depends what you're talking about here.

I would say, going back, the academic literature I've reviewed before, not re-review it.

The case law again was from the market efficiency section, so I did not review that again.

The data, I did not, for example, look at every single line of pricing data and so forth. I looked at things that were relevant but not all the underlying data.

I read the two news articles specifically listed on page three and I looked at the list of other news

Page 59

stories but did not review them.    10:38:28

The pleadings, there may be    10:38:30
sections there like jurisdiction and    10:38:35
venue in the complaint that I skipped    10:38:38
by but I read everything that I thought    10:38:41
was relevant.    10:38:44

And the other materials,    10:38:44
again I read at least the relevant    10:38:46
sections or sometimes knew of them,    10:38:49
like the PSLRA.    10:38:51

Q.    Can you clarify for me what    10:38:53
you mean by you looked at a list of    10:38:55
other news stories but did not review    10:38:59
the individual news stories themselves?    10:39:01

A.    Sure.    10:39:04

The last item in news article    10:39:06
says, "see pages five-sixteen" or five    10:39:08
through sixteen -- "for a list of news    10:39:11
stories obtained from Factiva Dow Jones    10:39:13
used in Exhibit 8A-a".    10:39:16

I looked briefly at the list    10:39:18
but I did not review every single news    10:39:20
story in that twelve pages or so.    10:39:23

Q.    Did you review any of the    10:39:27
news stories on that twelve pages of    10:39:28

Page 60

listed on your CV?                                    11:24:31

A.    No.                                             11:24:32

Q.    Does your CV have a complete                    11:24:34
list of all of your prior publications?              11:24:37

        MS. WOLKE: I object to form.                  11:24:39

        THE WITNESS:  I believe so.                   11:24:40

Q.    As far as you know, your list                   11:24:45
of prior publications is complete in                 11:24:47
your CV?                                             11:24:49

A.    That is my belief.                              11:24:50

Q.    For purposes of your analysis                   11:25:12
of market efficiency, you examined both              11:25:14
the period of July 12, 2021 through                  11:25:18
September 1, 2021 and the period of                  11:25:21
October 25, 2019 through September 1,                11:25:25
2021; is that correct?                               11:25:28

A.    Yes.                                            11:25:31

Q.    Do you understand that the                      11:25:33
proposed class period the plaintiffs                 11:25:35
have put forward in this case does not               11:25:38
include the period from November 2,                  11:25:40
2019 to July 11, 2021?                               11:25:42

A.    That is my understanding,                       11:25:46
yes.                                                 11:25:49

Q.    You nonetheless included that                   11:25:49

Page 87

period of time, November 2, 2019 to    11:25:51

July 11, 2021, in your analysis period    11:25:55

for purposes of examining market    11:26:00

efficiency; right?    11:26:02

    A.    Just to be clear, in one set    11:26:04

of analyses, yes.    11:26:06

    Q.    Correct.    11:26:08

        You have -- you have an    11:26:09

analysis period that goes from    11:26:10

October 25, 2019 through September 1,    11:26:12

2021 and an analysis period that covers    11:26:15

July 11, 2021 through September 1,    11:26:21

2021; is that correct?    11:26:25

    A.    That is correct.    11:26:25

    Q.    And in the longer of those    11:26:26

two analysis periods, you include the    11:26:33

time from November 2, 2019 to July 11,    11:26:35

2021; correct?    11:26:38

    A.    Correct.    11:26:40

    Q.    That period from November 2,    11:26:40

2019 to July 11, 2021 is approximately    11:26:45

twenty months and ten days longer than    11:26:50

the longest version of the plaintiffs'    11:26:53

class period.    11:26:57

        Do you understand that?    11:26:57

Page 88

MS. WOLKE: I object to form.    11:26:58

THE WITNESS:  I will take your representation on that calculation.    11:26:59 11:27:00 11:27:01

Q.    Can you identify for me any other case in which, for purposes of examining market efficiency, you included in your analysis a period of time that Plaintiffs did not include in their proposed class period and that was approximately twenty months longer than the plaintiffs' proposed class period?    11:27:02 11:27:16 11:27:18 11:27:20 11:27:24 11:27:26 11:27:29 11:27:32 11:27:35

MS. WOLKE: I object to form.    11:27:36

THE WITNESS:  No.    11:27:36

Q.    Please look at paragraph two to your expert report.    11:27:53 11:27:55

A.    I'm there.    11:27:58

Q.    You state in paragraph two, in part, "I do not examine the few days covered by the class period in 2019 by themselves because that period is generally too short to provide robust analyses".    11:27:59 11:28:07 11:28:11 11:28:13 11:28:15 11:28:17

Those are your words;    11:28:19

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

correct?                                          11:28:21

A.     That is correct.                           11:28:21

Q.     So you did not examine                     11:28:21
whether Virgin Galactic's common stock            11:28:24
traded in an efficient market during              11:28:28
the period of October 25, 2019 to                 11:28:30
November 1, 2019; correct?                        11:28:34

          MS. WOLKE: I object to form.            11:28:36

          THE WITNESS:  By itself, I              11:28:36
    did not.  I mean, that is included            11:28:38
      in part of the larger period.              11:28:39

Q.     But you did not take                       11:28:42
October 25, 2019 through November 1,              11:28:44
2019 as a standalone period and analyze           11:28:47
whether, in that period, the market for           11:28:51
Virgin Galactic common stock was                  11:28:55
efficient; correct?                               11:28:57

A.     That is correct.                           11:28:59

          MS. WOLKE: I object to form.            11:28:59

Q.     Were you asked to examine                  11:29:00
market efficiency for the standalone              11:29:03
period of October 25, 2019 to                     11:29:06
November 1, 2019?                                 11:29:09

A.     I was not.                                 11:29:11

          MS. WOLKE: I object to form.            11:29:12

Page 90

Q.    And I take it you stand by your statement in paragraph two that, as a standalone period, November 25, 2019 [sic] --

MR. MCDONOUGH: Strike that.

Q.    I take it you stand by your statement in paragraph two that, as a standalone period, October 25, 2019 to November 1, 2019 is generally too short to provide robust analyses of market efficiency?

MS. WOLKE: I object to form.

THE WITNESS:  I do.

Q.    One of the factors you've examined regarding market efficiency during the analysis period was analyst coverage of Virgin Galactic; correct?

A.    That is correct.

Q.    You did not identify any analyst estimates during the period of October 25, 2019 through November 1, 2019; right?

MS. WOLKE: I object to form.

THE WITNESS:  That is correct.

Page 91

Q.    In fact, in Exhibit 4 to your    11:30:31
report, you state that "data regarding    11:30:36
analyst estimates is only available    11:30:39
starting December 19, 2019"; correct?    11:30:41

A.    I see that, Exhibit 4, yes.    11:30:44

Q.    Is that a true statement, as    11:30:48
far as you know?    11:30:50

A.    As far as I know, yes.    11:30:51

Q.    So as far as you know, data    11:30:52
regarding analyst estimates for Virgin    11:30:54
Galactic is only available starting    11:30:59
December 19 of 2019?    11:31:01

MS. WOLKE: I object to form.    11:31:02

THE WITNESS:  At least based    11:31:03
on the data source we reference    11:31:04
above, yes.    11:31:06

Q.    Are you aware of any analyst    11:31:07
estimate that was produced prior to    11:31:11
December 19, 2019?    11:31:13

A.    No, I am not.    11:31:16

MS. WOLKE: I object to form.    11:31:17

Q.    Are you aware of any analyst    11:31:21
report of any kind on Virgin Galactic    11:31:25
prior to December 19, 2019?    11:31:29

A.    I am not.    11:31:30

Page 92

Q.    Let's take a look at                    11:31:34

paragraph twenty-three of your report.        11:31:36

        THE VIDEOGRAPHER: Doctor, can         11:31:41

    you just move your microphone up a        11:31:43

    little bit, please?                       11:31:45

        THE WITNESS:  Sure.                   11:31:46

        THE VIDEOGRAPHER: Thank you.          11:31:47

        MS. WOLKE: Kevin, I'm sorry,          11:31:49

    what paragraph?                           11:31:50

        MR. MCDONOUGH: Paragraph              11:31:51

    twenty-three.                             11:31:52

Q.    Paragraph twenty-three is              11:31:57

part of your discussion on analyst            11:32:08

coverage of Virgin Galactic; correct?         11:32:10

A.    Correct.                               11:32:12

Q.    In the last sentence of               11:32:13

paragraph twenty-three to your report,        11:32:16

you write, "even the month with the           11:32:19

lowest figure had two analyst estimates       11:32:21

above the situation found in Cammer           11:32:24

where there was an average of just over       11:32:28

one analyst report per month".                11:32:30

        Did I read that correctly?            11:32:32

A.    I believe so.                         11:32:34

Q.    In that sentence, when you            11:32:34

Page 93

talk about the month with the lowest    11:32:36

figure, that is in relation to the    11:32:38

other months in your analysis period;    11:32:41

correct?    11:32:44

      MS. WOLKE: I object to form.    11:32:44

      THE WITNESS:  Correct.    11:32:45

Q.    Do you realize then, sir,    11:32:45

that that sentence that I read to you    11:32:50

from paragraph twenty-three is not    11:32:53

accurate?    11:32:54

      MS. WOLKE: I object to form.    11:32:55

      THE WITNESS:  Yeah, I see    11:32:55

   what you're saying.  This was    11:32:56

   looking just at Exhibit 4 and    11:32:57

   you're right, the first two months    11:32:59

   have zero analyst reports that    11:33:01

   provide estimates.    11:33:03

Q.    So you agree with me that, as    11:33:05

written, the last sentence of paragraph    11:33:08

twenty-three to your report is    11:33:10

incorrect?    11:33:11

      MS. WOLKE: I object to form.    11:33:12

      THE WITNESS:  I would write    11:33:13

   it differently, so I think that's    11:33:14

   fair.    11:33:15

Page 94

Q.    And just so we have a clear     11:33:16
record, you agree with me that the last     11:33:21
sentence of paragraph twenty-three to     11:33:23
your report as written is not correct?     11:33:25

        MS. WOLKE: I object to form.     11:33:27

        THE WITNESS:  I think that's     11:33:28
    fair.     11:33:31

Q.    And part of the reason for     11:33:31
that is zero analyst estimates is a     11:33:33
lower figure than two analyst     11:33:36
estimates; correct?     11:33:38

A.    That is correct.     11:33:41

Q.    Sir, you've identified no     11:33:48
analyst coverage of any kind regarding     11:33:50
Virgin Galactic in the period of     11:33:54
October 25, 2019 through November 1,     11:33:54
2019; correct?     11:33:55

A.    I'm not aware of any.     11:33:57

Q.    And you have not identified     11:34:03
any; correct?     11:34:07

A.    That is correct.     11:34:08

Q.    So your report, either in the     11:34:08
text of the report or the exhibits to     11:34:10
the report, does not identify any     11:34:13
analyst report of any kind regarding     11:34:15

Page 95

Virgin Galactic in the period of      11:34:18

October 25, 2019 through November 1,      11:34:19

2019?      11:34:23

       MS. WOLKE: I object to form.      11:34:24

       THE WITNESS:  That is      11:34:25

  correct.      11:34:25

  Q.   Okay.      11:34:25

     Let's talk about market      11:34:29

makers and arbitragers.  Your      11:34:32

discussion of that topic starts on      11:34:36

paragraph twenty-four.      11:34:38

     Do you see that?      11:34:39

  A.   I do.      11:34:39

  Q.   You do not identify any      11:34:40

market makers who traded in Virgin      11:34:43

Galactic stock in the period of      11:34:46

October 25, 2019 through November 1,      11:34:47

2019; right?      11:34:49

       MS. WOLKE: I object to form.      11:34:51

       THE WITNESS:  I don't list      11:34:52

  those or identify those      11:35:01

  specifically.      11:35:02

  Q.   In your report, including the      11:35:03

exhibits, you do not identify any      11:35:05

market maker who traded in Virgin      11:35:08

Page 96

Galactic stock in the period of          11:35:11

October 25, 2019 through November 1,     11:35:12

2019; correct?                           11:35:15

MS. WOLKE: I object to form.         11:35:16

THE WITNESS:  Well, I don't          11:35:17

list out or specifically identify        11:35:19

any market makers.  I give               11:35:21

aggregate figures.                       11:35:24

Q.    So if you don't list out any,      11:35:25

then it would follow you don't list out  11:35:28

any for the period of October 25, 2019   11:35:31

through November 1, 2019; right?         11:35:33

MS. WOLKE: I object to form.         11:35:35

THE WITNESS:  That is true.          11:35:36

If there are no lists, there is no        11:35:37

list for that period either.              11:35:37

Q.    Are you aware of any market        11:35:39

makers or arbitragers who traded in      11:35:41

Virgin Galactic stock in the period of   11:35:44

October 25, 2019 through November 1,     11:35:45

2019?                                    11:35:48

MS. WOLKE: I object to form.         11:35:49

THE WITNESS:  Well, I don't          11:35:50

have specific names.  But we can          11:36:11

see in Exhibit 6a, for example,           11:36:13

Page 97

that there is short interest and

those are generally considered

arbitragers who believe that a

stock is overvalued.  So I can't

tell you the names of any

particular such arbitragers, but I

can tell you there were people

shorting the stock.

Q.    So to be clear, you cannot identify for me a single market maker for Virgin Galactic common stock in the period October 25, 2019 through November 1, 2019; is that fair?

MS. WOLKE: I object to form.

THE WITNESS:  Because I don't identify them for any period, I cannot do that for that specific period either.

Q.    So the answer to my question is yes?

MS. WOLKE: I object to form.

THE WITNESS:  I think the answer is yes but with the caveats that I described so that the answer's not misleading.

Page 98

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Q.    And with the same caveats, you can't say what the short interest was in Virgin Galactic common stock on November 1, 2019; correct?    11:53:27 11:53:30 11:53:32 11:53:35

A.    Correct.    11:53:37

Q.    I'd like to ask you now about Form S-3 eligibility.    11:53:50 11:53:53

A.    Okay.    11:53:58

Q.    What are your --    11:54:00

MR. MCDONOUGH: Strike that.    11:54:02

Q.    What is your understanding, sir, of the requirements for an issuer to be eligible to file a Form S-3 registration statement?    11:54:02 11:54:02 11:54:04 11:54:07

A.    It has to have a float of at least $75 million and not be delinquent in its SEC filings and have filed SEC filings for I believe one year.    11:54:09 11:54:11 11:54:14 11:54:18

Q.    If you look at paragraph thirty-two of your report, you'll see you do not mention the one year requirement for timely filing of SEC filings.    11:54:21 11:54:27 11:54:30 11:54:32 11:54:36

Do you see that?    11:54:36

A.    I do.    11:54:39

Page 116

Q.    Is it fair to say paragraph thirty-two is not correct as written?

MS. WOLKE: I object to form.

THE WITNESS:  I think it may be incomplete.  I would want to double-check.

Q.    Do you understand that, as of the period of October 25, 2019 to November 1, 2019, Virgin Galactic had not been an SEC filer for twelve months?

MS. WOLKE: I object to form.

THE WITNESS:  Virgin Galactic by itself including the -- basically the predecessor company Social Capital to which -- well, it merged.

Q.    Yeah, so my question is about Virgin Galactic, the issuer and Defendant in this case.

Are you aware that, as of October 25, 2019 and through the period of November 1, 2019, Virgin Galactic had not been an SEC filer for twelve months?

Page 117

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

MS. WOLKE: I object to form.    11:55:39

THE WITNESS:  Well, but the company it merged into was, I believe.    11:55:39  11:55:41  11:55:44

Q.    I'm asking you whether Virgin Galactic, the issuer of the securities at issue in this case, had been an SEC filer for twelve months as of October 25, 2019 or November 1, 2019.    11:55:44  11:55:47  11:55:49  11:55:53  11:55:55

MS. WOLKE: I object to form.    11:56:00

THE WITNESS:  My understanding is that, under the SEC requirements for eligibility for Form S-3, they would look to the company it merged into.    11:56:01  11:56:04  11:56:05  11:56:10  11:56:13

Q.    Is that something you researched in connection with your work on this case?    11:56:14  11:56:18  11:56:21

MS. WOLKE: I object to form.    11:56:21

THE WITNESS:  No.    11:56:22

Q.    Are you aware that Virgin Galactic, the issuer and defendant in this case, was not permitted to file a Form S-3 registration statement until October of 2020?    11:56:23  11:56:24  11:56:26  11:56:29  11:56:32

Page 118

MS. WOLKE: I object to form.    11:56:33

THE WITNESS:  No, I was not.    11:56:33

Q.    Would that affect the    11:56:34
assertion you make in paragraph    11:56:40
thirty-two to your report?    11:56:43

MS. WOLKE: I object to form.    11:56:44

THE WITNESS:  If so, it    11:56:44
would.    11:56:45

Q.    In paragraph thirty-two where    11:56:46
you say a second requirement to be able    11:56:58
to file a Form S-3 registration    11:57:00
statement is that the issuer be current    11:57:05
in its SEC filings, you don't provide a    11:57:08
citation for that sentence.    11:57:13

Were you relying on any    11:57:14
particular source in making that    11:57:16
assertion?    11:57:17

MS. WOLKE: I object to form.    11:57:18

THE WITNESS:  I don't recall    11:57:19
offhand.    11:57:27

Q.    Did you direct anyone at your    11:57:27
team --    11:57:29

MR. MCDONOUGH: Strike that.    11:57:31

Q.    Did you direct anyone on your    11:57:32
team at NERA to undertake research into    11:57:34

Page 119

eligibility requirements to file a Form    11:57:37

S-3 registration statement in    11:57:42

connection with your work on this case?    11:57:43

     MS. WOLKE: I object to form.    11:57:46

     THE WITNESS:  No, I did not.    11:57:46

Q.    In the last sentence of    11:57:47

paragraph thirty-two you write, "as it    11:57:59

satisfied the two requirements, Virgin    11:58:01

Galactic was eligible to file a    11:58:03

Form S-3 thereby satisfying this Cammer    11:58:05

factor and supporting a finding of    11:58:09

market efficiency".    11:58:11

     Is there a source you're    11:58:12

relying on for authority for that    11:58:15

sentence, sir?    11:58:17

A.    Well, it's based on the    11:58:18

above, but based on what you said here,    11:58:21

I will take a look at that.    11:58:23

Q.    What do you mean by it's    11:58:24

based on the above?    11:58:25

A.    Based on the requirements    11:58:27

discussed in paragraph thirty-one and    11:58:29

thirty-two.    11:58:32

Q.    Do you have any citations for    11:58:32

the assertions that you make in    11:58:38

Page 120

paragraph thirty-one and thirty-two?    11:58:40

MS. WOLKE: I object to form.    11:58:43

THE WITNESS:  I do not.    11:58:43

Q.    Were you working from memory    11:58:46
in preparing paragraph thirty-one and    11:58:51
thirty-two?    11:58:55

MS. WOLKE: I object to form.    11:58:55

THE WITNESS:  No.  I mean,    11:58:56
the basic text over there is from    11:58:57
prior reports.  Virgin    11:59:00
Galactic-specific information was    11:59:03
then placed in, such as its market    11:59:04
capitalization and float, but I've    11:59:07
been aware of this for a long time.    11:59:09
I just did not reinvestigate.    11:59:11

Q.    You did not reinvestigate    11:59:14
Form S-3 registration eligibility    11:59:20
requirements in connection with your    11:59:23
work on this case; correct?    11:59:24

A.    That is correct.    11:59:25

Q.    Let's turn to the next    11:59:26
section of your report, stock response    11:59:46
to news.    11:59:50

Do you see that on page    11:59:50
fifteen?    11:59:52

Page 121

A.   I do.                                    11:59:52

Q.   To test the response of              11:59:53
Virgin Galactic's stock price to news,        11:59:57
you performed an event study; is that         12:00:00
right?                                        12:00:02

A.   Call it an event study or             12:00:02
series of event studies.                      12:00:05

Q.   What do you consider to be            12:00:07
the more accurate term?  Would it be          12:00:08
"event studies", plural?                      12:00:11

A.   I think in this case, yes.            12:00:12

Q.   Among the event studies that         12:00:14
you performed, you did not perform an         12:00:17
event study for the standalone period         12:00:19
for October 25, 2019 through                  12:00:21
November 1, 2019; correct?                    12:00:24

A.   I did not do a comparison of          12:00:25
news and non-news days for that period,       12:00:28
yes.                                          12:00:31

Q.   And are you distinguishing            12:00:31
that description news and non-news from       12:00:34
event study?                                  12:00:37

A.   I think so.  Typically we             12:00:38
think of the analysis on every                12:00:40
individual day as an event study.             12:00:42

Page 122

Q.    Okay.                                          12:00:48

So then is it fair to say                            12:00:48

that for the period of October 25                    12:00:50

through November 1, 2019, as a                       12:00:53

standalone period, you didn't conduct                12:00:56

any event studies?                                   12:00:58

MS. WOLKE: I object to form.                          12:00:59

THE WITNESS:  Well, no, those                         12:01:00

would be included within the larger                  12:01:01

analysis.  Each day there is within                  12:01:03

the larger analysis period.                          12:01:05

Q.    Okay.                                          12:01:14

So then you did not do a                             12:01:14

comparison of news --                                12:01:18

MR. MCDONOUGH:  Strike that.                          12:01:20

Q.    You did not perform a                          12:01:20

comparison of news and non-news days                 12:01:21

for the standalone period of                         12:01:24

October 25, 2019 to November 1, 2019;                12:01:26

correct?                                             12:01:29

A.    That is correct.                               12:01:29

Q.    Let's turn now to the bid/ask                  12:01:50

spread.                                              12:01:53

A.    Okay.                                          12:01:54

Do you have a page number?                            12:01:55

Page 123

Q.    It starts with paragraph                12:01:56
fifty.  I'm going to try to use              12:01:57
paragraph numbers since we have two          12:01:59
different page numbers, one at the top,      12:02:02
one at the bottom.                           12:02:05

A.    That's fair.                           12:02:06

Q.    It starts at paragraph fifty           12:02:07
of your report and that discussion           12:02:10
continues through paragraph fifty-one;       12:02:12
correct?                                     12:02:15

A.    That is correct.                       12:02:16

Q.    In connection with your work           12:02:16
on this case, you did not analyze the        12:02:20
bid/ask spread for Virgin Galactic           12:02:23
stock for the standalone period of           12:02:27
October 25, 2019 to November 1, 2019;        12:02:29
right?                                        12:02:33

      MS. WOLKE: I object to form.           12:02:33

      THE WITNESS:  Actually, I              12:02:34
   think the data for every single day       12:02:34
   there is included in the exhibits.        12:02:35
   I just did not provide some type of       12:02:36
   summary specifically for that             12:02:39
   period.                                   12:02:41

Q.    You didn't analyze the                 12:02:42

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

bid/ask spread information for that   12:02:44

standalone period of October 25, 2019   12:02:47

to November 1, 2019?   12:02:50

MS. WOLKE: I object to form.   12:02:52

THE WITNESS:  The problem is   12:02:53

that that question can be   12:02:54

interpreted in two different ways.   12:02:56

The data for every single day there   12:02:56

was analyzed, but I did not   12:02:59

provide, for example, a mean or a   12:02:59

median to summarize the data for   12:03:01

that particular period.   12:03:03

Q.    Maybe this will make it   12:03:05

easier.   12:03:08

In paragraphs fifty and   12:03:08

fifty-one of your report, you do not   12:03:12

discuss the bid/ask spread within the   12:03:15

standalone period of October 25, 2019   12:03:18

to November 1, 2019; is that fair?   12:03:20

A.    For just that period, that is   12:03:24

correct.   12:03:29

Q.    And as you said, you did not   12:03:29

calculate the bid/ask spread average   12:03:43

for the period of October 25, 2019 to   12:03:45

November 1, 2019; correct?   12:03:47

Page 125

MS. WOLKE: I object to form.    12:03:50

THE WITNESS:  That is    12:03:50
correct.    12:03:51

Q.    In the last paragraph --    12:04:05
sorry, in the last sentence of    12:04:21
paragraph fifty-one, you write, "this    12:04:23
low level of the bid/ask spread    12:04:25
supports a finding that arbitragers    12:04:28
would have an incentive to trade on any    12:04:31
perceived mispricing and therefore    12:04:33
would have an incentive to undertake    12:04:37
the activities that lead to a stock    12:04:39
trading in an efficient market,    12:04:42
supporting a finding of market    12:04:44
efficiency".    12:04:46

Did I read that correctly?    12:04:47

A.    I believe so.    12:04:49

Q.    In that sentence, when you    12:04:49
referenced this low level of the    12:04:52
bid/ask spread, are you referring to    12:04:53
the percentages in the prior sentence    12:04:55
which are .07 percent and .35 percent?    12:04:58

MS. WOLKE: I object to form.    12:05:05

THE WITNESS:  That is    12:05:06
correct.    12:05:08

Page 126

Q.    You consider those    12:05:08
percentages to be a low level of bid to    12:05:09
ask spread; correct?    12:05:13

A.    For these purposes, yes,    12:05:14
because they're presumably going to be    12:05:16
low compared to any allegations of the    12:05:19
level of inflation of the stock price.    12:05:21

Q.    Let's turn now to the float    12:05:25
which you discuss in paragraph    12:05:46
fifty-two of your report; is that    12:05:49
correct?    12:05:51

A.    That is correct.    12:05:51

Q.    You do not analyze Virgin    12:05:52
Galactic's float in the standalone    12:05:56
period of October 25, 2019 to    12:05:58
November 1, 2019; right?    12:06:01

MS. WOLKE: I object to form.    12:06:05

THE WITNESS:  I think that's    12:06:06
going to be the same answer as    12:06:12
before.  I do provide that    12:06:13
information.  I simply do not    12:06:15
provide a summary statistic such as    12:06:16
a mean for a median, but I provide    12:06:19
it on all the trading days in that    12:06:21
period.    12:06:24

Page 127

Q.    You don't discuss Virgin Galactic's float in the standalone period of October 25, 2019 to November 1, 2019 in paragraph fifty-two of your report; right?

A.    That is correct.

Q.    In fact, is it fair to say you don't discuss anywhere in your report the Virgin Galactic float in the standalone period of October 25, 2019 to November 1, 2019?

MS. WOLKE: I object to form.

THE WITNESS:  Again, the numbers are reported in this case in Exhibit 7 on a daily basis but there's no discussion of that period.

Q.    And you haven't reached any opinion about Virgin Galactic's float within the standalone period of October 25, 2019 to November 1, 2019; right?

MS. WOLKE: I object to form.

THE WITNESS:  I have not provided such an opinion.

Page 128

class-wide methodology?  01:21:37

A.   That is correct.  01:21:38

Q.   And the members of a putative  01:21:40
class, this putative class who would  01:21:43
have Rule 10b-5 claims, for example,  01:21:46
for the period of July 11, 2021 through  01:21:49
September 1, 2021, that group also  01:21:52
could calculate alleged damages through  01:21:57
a common methodology?  01:21:58

A.   That is correct.  01:22:00

Q.   But the methodology for  01:22:02
Section 10(b), Rule 10b-5 damages would  01:22:04
be a different methodology than  01:22:08
Section 20A damages; is that fair?  01:22:10

A.   That is fair.  01:22:12

Q.   And do you understand that  01:22:18
within the July 11, 2021 through  01:22:20
September 1, 2021 period, there are  01:22:24
putative class claims both under  01:22:30
Section 10(b) and Rule 10b-5 on the one  01:22:32
hand and Section 20A on the other hand?  01:22:38

A.   For the August 10 through 12  01:22:39
period there, there's also a 20A claim,  01:22:41
is my understanding.  01:22:44

Q.   And so the damages  01:22:45

Page 144

calculation for the August, 2021                          01:22:48

Section 20A claim would be calculated                     01:22:50

through a different methodology than                      01:22:53

the Section 10(b), Rule 10b-5 damages                     01:22:54

would be calculated in the July, 2021                     01:23:00

through September, 2021 period?                           01:23:02

A.    Yes.                                                01:23:04

MR. MCDONOUGH: I may be done,                             01:23:06

believe it or not.  Why don't we go                       01:23:09

off the record.  I'll spend some                          01:23:10

time to go through my notes and let                       01:23:12

you know.                                                 01:23:15

MS. WOLKE: Okay.                                          01:23:16

THE VIDEOGRAPHER: The time is                             01:23:18

1:23 p.m., and we are off the                             01:23:18

record.                                                   01:23:23

(Whereupon a break was taken)                             01:23:23

THE VIDEOGRAPHER: The time is                             01:37:13

1:36 p.m., and we are back on the                         01:37:19

record.                                                   01:37:22

MR. MCDONOUGH: Dr. Tabak,                                 01:37:23

thank you for your time.  We have                         01:37:24

no further questions for you at                           01:37:26

this time.                                                01:37:27

THE WITNESS:  Thank you, Mr.                              01:37:28

Page 145

CERTIFICATION BY REPORTER

I, Wayne Hock, a Notary Public of the State of New York, do hereby certify:

That the testimony in the within proceeding was held before me at the aforesaid time and place;

That said witness was duly sworn before the commencement of the testimony, and that the testimony was taken stenographically by me, then transcribed under my supervision, and that the within transcript is a true record of the testimony of said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, that I am not interested directly or indirectly in the matter in controversy, nor am I in the employ of any of the counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of November, 2024.

Wayne Hock

Page 148