**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANE LAVIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, and JON CAMPAGNA, <br><br> Defendants. | Case No. 1:21-cv-03070-ARR-TAM |

**REPLY BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT............................................................................................................... 4

      A.    Defendants Do Not Meaningfully Dispute That Class Certification is Warranted
            for the 2021 Period........................................................................................... 4

            1.    The Class is so Numerous that Joinder of All Class Members is
                  Impracticable........................................................................................... 4

            2.    Questions of Law and Fact Are Common to Members of the Class........... 5

            3.    Plaintiffs' Claims Are Typical of Those of the Class ............................... 7

            4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ..... 8

            5.    The Proposed Class Satisfies Rule 23(b)(3) ........................................... 13

      B.    Class Certification is Warranted for the 2019 Period Based Upon Dr. Tabak's
            Evidence Submitted and his Conclusions for the Analysis Period ....................... 14

            1.    Rules 23(a)(1)-(4) are Satisfied for the 2019 Period ............................... 14

            2.    Rule 23(b)(3) is Satisfied for the 2019 Period......................................... 17

III.  CONCLUSION.......................................................................................................... 24

## TABLE OF AUTHORITIES

CASES

*Abdul–Malik v. Coombe*,
1996 WL 706914 (S.D.N.Y. Dec. 6, 1996) ............................................................. 15

*Arkansas Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
879 F.3d 474 (2d Cir. 2018) ...................................................................................... 6

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ................................................................... 8, 9, 10, 11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ................................................................................................ 13

*Basile v. Valeant Pharm. Int'l, Inc.*,
2015 WL 7352005 (C.D. Cal. Nov. 9, 2015) ......................................................... 17

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) ............................................................................ 22

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) .......................................................... 14, 19, 20, 21

*City of Livonia Emps' Ret. Sys. v. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) ........................................................................... 12

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .................................................................................................. 23

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ................................................................................................ 23

*Fogarazzao v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) ...................................................................... 10, 17

*Freeman v. Laventhol & Horwath*,
915 F.2d 193 (6th Cir. 1990) .................................................................................. 18

*Gonzalez v. Hanover Ventures Marketplace LLC*,
2024 WL 1157074 (S.D.N.Y. Mar. 18, 2024) ....................................................... 25

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968) ................................................................................... 25

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
338 F.R.D. 205 (S.D.N.Y. 2021) .................................................................................... 9

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) .................................................................................... 3

*In re Frontier Ins. Grp., Inc. Sec. Litig.*,
172 F.R.D. 31 (E.D.N.Y. 1997) ................................................................................ 5, 13

*In re Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006) ........................................................................................... 6

*In re IsoRay, Inc. Sec. Litig.*,
2016 WL 7234807 (Oct. 20, 2016) .............................................................................. 19

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018) .................................................................... 16, 17

*In re Monster Worldwide, Inc. Sec. Litig.*,
251 F.R.D. 132 (S.D.N.Y. 2008) .................................................................................. 12

*In re Moody's Corp. Sec. Litig.*,
274 F.R.D. 480 (S.D.N.Y. 2011) .................................................................................. 12

*In re NIO, Inc. Sec. Litig.*,
2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023) ........................................................ *passim*

*In re Omnicom Grp., Inc. Sec. Litig.*,
2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007) ............................................................... 15

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017) .............................................................................. 2, 18, 24

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ................................................................................... 8, 9

*In re Ribozyme Pharms., Inc. Sec. Litig.*,
205 F.R.D. 572 (D. Colo. 2001) ................................................................................... 19

*In re Silver Lake Grp., LLC Sec. Litig.*,
108 F.4th 1178 (9th Cir. 2024) .................................................................................... 16

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) .................................................................................. 16

iii

*In re Synchrony Fin. Sec. Litig.*,
   2023 WL 1503032 (D. Conn. Feb. 3, 2023) ........................................................... 7

*In re Vale S.A. Sec. Litig.*,
   2019 WL 11032303 (S.D.N.Y. Sept. 27, 2019) ...................................................... 6

*In re Vale S.A. Sec. Litig.*,
   2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ......................................................... 20

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ....................................................................... 14

*Martinek v. AmTrust Fin. Servs., Inc.*,
   2022 WL 326320 (S.D.N.Y. Feb. 3, 2022) ..................................................... 7, 20

*McGuire v. Dendreon Corp.*,
   267 F.R.D. 690 (W.D. Wash. 2010) ................................................................... 13

*McIntire v. China MediaExpress Holdings, Inc.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014) ..................................................... 3, 6, 15, 21

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004) ......................................................................... 9

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
   327 F.R.D. 38 (S.D.N.Y. 2018) ......................................................................... 12

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ............................................................................. 24

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................................... 7

*Shupe v. Rocket Companies*,
   2024 WL 4349171 (E.D. Mich. Sept. 30, 2024) ................................................ 19

*Strougo v. Barclays PLC*,
   312 F.R.D. 307 (S.D.N.Y. 2016) ....................................................................... 24

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
   262 F.3d 134 (2d Cir. 2001) ............................................................................. 25

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363 (1966) ................................................................................. 8, 9, 13

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005) ............................................................... 16

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ................................................................................ 15

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017) .................................................................................... 24, 25

*Wallace v. IntraLinks*,
  302 F.R.D. 310 (S.D.N.Y. 2014) ................................................................................ 24

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................. 2, 5

*Weiner v. Tivity Health, Inc.*,
  334 F.R.D. 123 (M.D. Tenn. 2020) ........................................................................... 18

*Wilson v. LSB Indus., Inc.*,
  2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ....................................................... 6, 7, 12

## I.    **INTRODUCTION**

Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Opposition") is notable for what it does not dispute. It concedes that class treatment is appropriate for the period of July 12, 2021 through September 2, 2021 ("2021 Period"), arguing only that the proposed class representatives are either inadequate or atypical. Defendants contest class certification for the period of October 25, 2019 through November 1, 2019, but here, their dispute is limited to pointing out that Plaintiffs' expert Dr. David Tabak relied on a period longer than six trading days to determine market efficiency.[1]

Dr. Tabak examined both the 2021 Period and the period from October 25, 2019 through September 1, 2021 ("2019-2021 Period") to analyze market efficiency for Virgin Galactic's stock. ECF No. 133-1 at ¶2. Dr. Tabak opined that he did not examine the few days covered by the Class Period in 2019 by themselves because that period is generally too short to provide robust analyses on its own. *Id*. This rationale comports with reasoning from the Second Circuit, which has observed

---

[1] Defendants are Virgin Galactic Holdings, Inc. ("Virgin Galactic" or the "Company"), Richard Branson ("Branson"), and Chamath Palihapitiya ("Palihapitiya") (collectively "Defendants"). Unless otherwise stated, all Rules references are to the Federal Rules of Civil Procedure, all emphasis is added, and all internal quotations and citations are omitted. Plaintiffs seek certification of the following Class ("Class Period"), which is modified as noted in italics for the reasons specified herein:

> All persons and entities who or which purchased *or otherwise acquired* shares of Virgin Galactic common stock during the period from: (i) October 25, 2019 through November 1, 2019, inclusive; and/or (ii) July 12, 2021 through September 2, 2021, inclusive. Excluded from the Class are: (1) Defendants; (2) officers and directors of Virgin Galactic and Social Capital Hedosophia Holdings Corporation at all relevant times, and all subsidiaries thereof; (3) persons or entities who held shares of Vieco 10 Ltd. as of October 25, 2019, and all subsidiaries thereof; (4) the family members, heirs, assigns, and legal representatives of all persons set out in (1)-(3); and (5) all entities controlled by the persons set out in (1)-(4).

On January 15, 2025, Plaintiff filed a Suggestion of Death for Plaintiff Richard O'Keefe-Jones. ECF No. 142. As a result, Plaintiffs propose Jennifer Ortiz ("Ortiz"), Hesham Ibrahim ("Ibrahim"), and Montgomery Brantley ("Brantley") as class representatives. After Plaintiffs filed the Suggestion of Death, counsel for Defendants contacted Lead Counsel and indicated their intention to seek to file a Sur-Reply, suggesting Mr. O'Keefe-Jones's passing constituted a new development that entitles Defendants to (re-)address the *other* proposed class representatives' ability to serve. Mr. O'Keefe-Jones's unfortunate passing has absolutely no bearing on the typicality or adequacy of the remaining proposed class representatives, each of whom Defendants already addressed in their Opposition. Any attempt to file a Sur-Reply would be wholly improper.

that "small sample sizes may limit statistical power, meaning that only very large-impact events will be detectable." *In re Petrobras Sec.*, 862 F.3d 250, 278-79 (2d Cir. 2017). Dr. Tabak explained that unless there was a reason to suspect that the efficiency of the market for the Company's stock changed over the 2019-2021 Period – and he found no such reason – "***the results for the larger period [i.e., the 2019-2021 Period] should apply to the earlier period [i.e., the 2019 Period]***." *See* Declaration of Ex Kano S. Sams II in Support of Plaintiffs' Reply Brief For Plaintiffs' Motion for Class Certification ("Sams Decl."), Ex. 1 (Tabak Dep. Tr.) at 133:21-134:8.[2] Dr. Tabak found that the analyses demonstrate that Virgin Galactic's common stock traded in an efficient market over the entire Analysis Period, which ***includes the 2019 Period***, and thus indicates efficiency for the 2019 Period. *Id.*; *see also id.* at 134:25-135:16. Notably, Defendants produced no expert of their own to refute Dr. Tabak.

Second, Defendants suggest that because the claims in the 2019 Period are purportedly distinct from those in the 2021 Period, there is no commonality that can justify certifying the Class as proposed. But courts do not require the degree of commonality that Defendants demand. Class certification is proper under Rule 23(a)(2) if there are questions of law or fact common to the class that can "generate common answers apt to drive the resolution of the litigation" and that are "of such a nature that [they are] capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis omitted). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Id.* at 359. "This is a low hurdle that requires only a showing that Plaintiff's claims depend upon a common contention that is of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re NIO, Inc. Sec. Litig.*,

---

[2] For ease of reference, Dr. Tabak referred to the 2021 Period and the 2019-2021 Periods collectively as the "Analysis Period." *Id.*

2023 WL 5048615, at \*5 (E.D.N.Y. Aug. 8, 2023). Such is the case here because Plaintiffs allege that for both time periods, Defendants made material misrepresentations, half-truths, and/or omissions regarding, among other things, the success and prospects of Virgin Galactic's flights to space. While the details of the flights at issue for the 2019 Period and the 2021 Period may differ, the claims at their core are quite similar. Where, as here, "plaintiffs allege that class members have been injured by *similar* material misrepresentations and omissions, the Commonality Requirement is satisfied." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014) (emphasis added). Further, at most, Defendants' argument is that the 2019 Period and the 2021 Period should be treated as separate subclasses, which is simple enough to do—but this does not warrant denial of class certification. *See, e.g*., *NIO*, 2023 WL 5048615, at \*17 (certifying a class pursuant to the Securities Act of 1933 and a subclass under the Securities Exchange Act of 1934 "Exchange Act"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 338, 342-43 (S.D.N.Y. 2015) (certifying a class of two subclasses, one for retail investors and one for institutional investors).

Defendants also ignore Plaintiffs' Section 20A insider trading claims for the 2019 Period, which were clearly sustained by the Court's July 2, 2024 Order. *Compare* Opposition at 12 (Defendants' chart showing only §10(b) insider trading claims for the 2019 Period) *with* ECF No. 121 at 10 (sustaining §§10(b) and 20A insider trading claims for 2019 Period); ECF No. 128 (TAC) at Counts II and IV, asserting §§10(b) and 20A insider trading claims, respectively). Having failed to challenge certification of Plaintiffs' §20A claims for the 2019 Period, Defendants waived the argument. Moreover, unlike the §10(b) claims which have the element of reliance—thus implicating market efficiency concerns—reliance is not an element of §20A. While, as discussed herein in Sec. I.B.2, Plaintiffs have submitted sufficient evidence of market efficiency for the 2019

3

Period, proof of market efficiency is not necessarily *required* to certify that period as to the §20A

claims where the elements of Rules 23(a) and 23(b)(3) are otherwise met.

Finally, Defendants' remaining arguments also fail. Contrary to Defendants' contentions,

Plaintiffs Ortiz, Ibrahim, and Brantley have more than adequate knowledge of the case to serve as

class representatives. Defendants invent purported gaps in Plaintiffs' testimony and ignore the

testimony demonstrating precisely the knowledge Defendants claim is lacking. Additionally, as

demonstrated by a wealth of authority, the fact that Ms. Ortiz and Ms. Ibrahim purchased shares

after September 2021 does not render them inadequate. Put simply, that a plaintiff purchased

shares after artificial inflation has dissipated does not show the plaintiff disbelieved defendants'

statements when purchasing the company's stock at much higher prices. And, as Dr. Tabak

concluded, damages for Class members can be calculated through a common methodology or

methodologies. Accordingly, the Court should certify this case as a class action as proposed,

appoint Plaintiffs Ortiz, Ibrahim, and Brantley as class representatives, and appoint Glancy

Prongay & Murray LLP and The Rosen Law Firm, P.A. as Class Counsel.

## II.    ARGUMENT

### A.    Defendants Do Not Meaningfully Dispute That Class Certification is Warranted for the 2021 Period

#### 1.    The Class is so Numerous that Joinder of All Class Members is Impracticable

Defendants do not challenge numerosity under Rule 23(a)(1) for the 2021 Period, and for

good reason. Virgin Galactic's stock traded on the New York Stock Exchange. ECF No. 133-1 at

¶¶24, 47. Between July 12, 2021 and September 2, 2021, average weekly trading volume was

118.1 million. *Id*., ¶19. During the same time, Virgin Galactic's market capitalization and float

were always over $6 billion and $4 billion, respectively. *Id*., ¶31; *see also NIO*, 2023 WL 5048615,

at \*5 ("[C]ourts have acknowledged that numerosity in securities actions may be premised on a

showing that a large number of shares were outstanding and traded during the relevant period.").

Thus, Plaintiffs have demonstrated numerosity.

### 2. Questions of Law and Fact Are Common to Members of the Class

Although Defendants argue that commonality under Rule 23(a)(2) purportedly does not exist between members of the 2019 Period and the 2021 Period (discussed below), Defendants do not dispute that commonality exists among class members within the 2021 Period. As noted above, "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Wal-Mart*, 564 U.S. at 359. Plaintiffs allege that common questions in this action include: (1) whether Defendants' acts constituted violations of the federal securities laws; (2) whether Defendants' statements made to the investing public misrepresented material facts concerning the Company's business, operations, and financial condition; (3) whether the price of the Company's common stock was artificially inflated; and (4) to what extent the members of the Class have sustained damages and the proper measure of damages. ECF No. 128 at ¶377.

Although Defendants characterize these common questions as "generic," (Opposition at 13), courts have repeatedly found these same questions as sufficient under Rule 23. *See, e.g.*, *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (holding that the following "questions concerning defendants' liability and class members' entitlement to damages under the securities laws apply to all potential class members:" (1) "whether defendants violated Sections 10(b) and 20(a) of the Exchange Act, including SEC Rule 10b–5 promulgated thereunder and/or the common law;" (2) "whether defendants participated in and pursued, the concerted action or common course of conduct complained of;" (3) "whether documents, filings, releases and statements disseminated to the SEC and the investing public during the Class Period omitted or misrepresented material facts about the business, finances and prospects of [the company];" (4)

"whether the market prices of [the company's] common stock during the Class Period were artificially inflated due to the non-disclosures and/or misleading statements;" (5) "whether defendants acted knowingly or recklessly in omitting to state material facts, making misleading statements and omissions;" and (6) "whether the members of the Class have sustained damages, and, if so, what is the proper measure of such damages."); *see also Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *4 (S.D.N.Y. Aug. 13, 2018) (common questions included whether the company's "representations to the investing public during the Class Period regarding the status of the El Dorado construction project were materially false or misleading"); *McIntire*, 38 F. Supp. 3d at 424 (common questions included "whether the federal securities laws were violated by [the company's] acts and whether statements made by [defendants] to the investing public during the Class Period misrepresented material facts about the business operations of [the company]."). [3]

Whether Defendants made material misrepresentations or concealed material information related to Virgin Galactic's flights to space is one of the questions that is common to the 2019 Period and to the 2021 Period. Class members in both periods allegedly have been damaged by "*similar* material misrepresentations and omissions," *McIntire*, 38 F. Supp. 3d at 424 (emphasis added), such that "the Commonality Requirement is satisfied." [4] Moreover, even if the Court were

---

[3] Defendants' reliance upon *In re Vale S.A. Sec. Litig.*, 2019 WL 11032303 (S.D.N.Y. Sept. 27, 2019), is misplaced. Opposition at 13-14. Because of the unique issues of that case that do not exist here, where some statements allegedly led investors to believe that the company was responsible for a dam and other statements suggested the contrary, the court in *Vale* held that "[a]lthough Lead Plaintiffs' proposed common questions are insufficient, the Court has concluded that Lead Plaintiffs' allegations can be viewed to present a common question: Would a reasonable investor have believed that [the dam] was independent of Vale?" *Id*. at *5-*6. The court then held that because this common question "will generate common *answers* apt to drive resolution of the litigation," the "commonality requirement is satisfied." *Id*. at *6 (italics in original). And although the court found that issues existed regarding typicality, the court suggested that subclasses could remedy those issues. *Id*. at 7 n.5.

[4] For this reason, the cases Defendants cite, *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007), *Arkansas Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474 (2d Cir. 2018), and *Vale*, 2019 WL 11032303, are inapplicable.

not persuaded that the claims of the 2019 Period and the 2021 Period are sufficiently common to each other, the 2019 Period claims are themselves common, as discussed below.

### 3.    Plaintiffs' Claims Are Typical of Those of the Class

Defendants also do not seriously dispute that Plaintiffs have demonstrated typicality under Rule 23(a)(3) for the 2021 Period.  Although Defendants mention shares purchased by Ms. Ortiz and Ms. Ibrahim after September 2021 as implicating typicality and adequacy, for the reasons discussed below for adequacy, such purchases do not render Plaintiffs to be atypical. "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id*. at 936-37; *see also Wilson*, 2018 WL 3913115, at *4 ("As is true for commonality, typicality does not require the representative party's claims to be identical to those of all class members.").

Plaintiffs' claims here are typical of the claims of the Class because they all allege that they purchased the Company's securities at artificially inflated prices when Defendants were in possession of material non-public information. "In securities cases alleging dissemination of allegedly false or misleading statements, the nature of the common injury generally satisf[ies] typicality." *Martinek v. AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at *6 (S.D.N.Y. Feb. 3, 2022). Thus, "[s]o long as plaintiffs assert that defendants committed the same wrongful acts in the same manner, against all members of the class, they establish the necessary typicality." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 1503032, at *4 (D. Conn. Feb. 3, 2023). Such is the case here, where

7

Plaintiffs allege that Defendants made material misrepresentations or concealed material information related to Virgin Galactic's flights to space and, as a result, Plaintiffs purchased shares at artificially inflated prices.

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Plaintiffs have also demonstrated adequacy under Rule 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). As set forth within their opening brief, Plaintiffs readily satisfy Rule 23(a)(4) because their interests are directly aligned with the interests of other Class members because they purchased Virgin Galactic's securities at artificially inflated prices when Defendants were in possession of material non-public information. ECF No. 132 at 10-11. Plaintiffs have also demonstrated their adequacy by monitoring and participating in the litigation as class representatives. *Id*.[5]

Defendants suggest that "[t]he proposed class representatives who allege purchases of Virgin Galactic common stock during the 2021 Claim Period—Ortiz, Ibrahim, and O'Keefe-Jones—confirmed during their depositions that they do not have an adequate understanding of the claims in this case." Opposition at 7. Defendants are not only wrong, but "[p]ermitting defendants to police the adequacy of class representatives . . . is like permitting a fox . . . to take charge of the chicken house." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 48 (S.D.N.Y. 2012).

In *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363 (1966), the Supreme Court reversed the dismissal of a class action complaint based, in part, upon the adequacy of the proposed class representative. *Id*. at 365-73. The Court held that dismissal was not warranted even when the

---

[5] Defendants to not dispute that Plaintiffs' counsel is qualified and able to prosecute this action.

plaintiff showed that "she did not understand the complaint at all, that she could not explain the statements made in the complaint, that she had a very small degree of knowledge as to what the lawsuit was about, that she did not know any of the defendants by name, that she did not know the nature of their alleged misconduct . . . ." *Id*. at 366. The Court reasoned that the logic of the lower court would mean that a person "who is uneducated generally and illiterate in economic matters, could never under any circumstances be a plaintiff in a [ ] suit brought in the federal courts to protect her stock interests." *Id.* at 372.

Accordingly, "denial of class certification on the grounds of inadequacy should only occur in the most extreme instances." *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 212 (S.D.N.Y. 2021). Indeed, "[c]ourts rarely deny class certification on the basis of the inadequacy of class representatives," and will do so "only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *Pfizer*, 282 F.R.D. at 51; *see also Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) ("The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim . . . and will be deemed inadequate only if she is startlingly unfamiliar with the case.").

Indeed, particularly "in complex securities litigation," the "named plaintiffs are not expected to possess expert knowledge of the details of the case and must be expected to rely on expert counsel." *Baffa*, 222 F.3d at 61-62. "Because a representative in a complex securities action may properly depend on class counsel to understand the details of the case, a representative's lack of knowledge should not be disqualifying unless it demonstrates that the representative is truly unwilling or unable to pursue the litigation on behalf of the class." *AMC*, 338 F.R.D. at 212–13;

9

*see also Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 181 (S.D.N.Y. 2005) ("[I]t is well established that in complex litigations such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance upon the expertise of counsel is to be expected."); *Baffa*, 222 F.3d at 62 (overturning a district court's decision that a class representative was inadequate). As set forth below, the proposed class representatives have more than a sufficient understanding of the case and have demonstrated their willingness and ability to serve as class representatives.

**Hesham Ibrahim.** Ms. Ibrahim testified that "[m]y understanding is that this lawsuit is about investors like myself being deceived by statements that were made by Virgin Galactic and also the concealing of certain facts about the flights that were not disclosed to investors, and therefore we lost a lot of money . . . ." Sams Decl., Ex. 2 (Ibrahim Dep. Tr.) at 17:23-19:18. Ms. Ibrahim testified further that "there was a violation with FAA when the spaceship, for lack of a better term, was landing and it deviated from the flight path. As an investor, I found out about that in the press. Virgin Galactic never disclosed it. Had I known there was any deviation or problem with that flight, I as an investor would have behaved very differently . . . ." *Id*. at 19:7-14. Additionally, Ms. Ibrahim testified that "[t]he defendants in this case are Virgin Galactic, Sir Richard Branson, and Chamath Palihapitiya." *Id.* at 51:15-19; 7:5-11. Ms. Ibrahim also testified to the work she has done in the case and identified Judge Ross as the presiding judge, stating: "I reviewed all the early court filings. I reviewed some of the things that Judge Ross had dismissed." *Id.* at 11:3-13. She further testified that "I have an understanding that the judge dismissed certain defendants because Judge Ross narrowed the window period of what was actionable." *See id*. at 109:7-19. Ms. Ibrahim testified further that she has been "a very long-term and still am a huge fan of Sir Richard Branson," but "frankly, deception is deception, and I feel very deceived by Virgin

10

Galactic." *Id*. at 118:21-119:12. While Defendants complain that Ms. Ibrahim could not describe the "trick" she believed Defendant Branson played on investors except in "a very general sense" (Opposition at 8), they ignore her testimony demonstrating that she ***clearly*** understands the claims relating to the July 2021 flight's airspace deviation, and her recollection that Defendants made misleadingly positive statements about the flight. Sams Decl., Ex. 2 (Ibrahim Dep. Tr.) at 19:7-14; 24:1-26:25.

**Jennifer Ortiz.** Ms. Ortiz similarly demonstrated her adequacy to serve as a class representative. Defendants twice asked Ms. Ortiz what Defendant Branson's misrepresentations were. Sams Decl., Ex. 3 (Ortiz Dep. Tr.) at 8:25-9:5, 63:2-20. Both times, Ms. Ortiz explained that Branson falsely claimed Unity 22 was "flawless." *Id.* at 9:4-5; 62:14-20. Not liking Ms. Ortiz's accurate answer, Defendants then showed Ortiz a lengthy video of Branson's interview that included the "flawless" statement. *Id.* at 89:6-90:1. Thus, while Defendants misleadingly imply that Ms. Ortiz did not know Branson had falsely claimed Unity 22 was "flawless," in truth, she had simply not noticed Branson's statement upon being showed the video in which he claimed the flight was "flawless." *Id.* at 89:15-90:10. Ms. Ortiz also testified to her understanding of her role as a class representative to "represent other people like me who invested in 2021 and they invested at a price that was inflated" (*id.* at 108:19-109:1) as well as her duties to "testify, . . . provide my testimony, play an active role, work with lead counsel." *Id.* at 109:3-7. She also testified to her understanding of the procedural posture of the case, stating: "after this, we could go to mediation or maybe trial." *Id.* at 110:23-111:3. She also testified to the work she has done in this case, including reviewing Court filings and communicating with her lawyers about the strengths, weaknesses, and progress of the case, and that she is willing to continue discharging her duties as a class representative. *Id*. at 107:15-24, 111:17-20, 144:12-24.

Additionally, contrary to Defendants' argument (Opposition at 8-9), that Ms. Ortiz and Ms. Ibrahim purchased additional Virgin Galactic shares after September 2021 does not render them inadequate. Indeed, numerous courts have repeatedly rejected this argument. *See, e.g.*, *Wilson*, 2018 WL 3913115, at *6 ("we fail to see any unique defense that Wilson might be subjected to based on his post-corrective disclosure purchases of LSB stock"); *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 44 n.2 (S.D.N.Y. 2018) ("[N]umerous courts have held [that] the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not the representative relied on the integrity of the market during the class period."); *City of Livonia Emps' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 179 (S.D.N.Y. 2012) ("[Plaintiffs'] post-disclosure purchases do not present a class conflict sufficient to defeat Plaintiffs' motion for class certification."); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 488 (S.D.N.Y. 2011) ("the strategy of cost averaging down is a common investment strategy that decreases the average cost of an investment. It does not in any way implicate a shareholder's initial decision to purchase stock"); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) ("the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [the representative] relied on the integrity of the market during the class period").

Additionally, although Ms. Ibrahim purchased more gross shares after the Class Period, she spent approximately ***10 times more*** on her shares ***during the Class Period*** than she did afterward (Defendants' Ex. 18 ($22,622.40 during the Class Period compared to $2,535.72 after)).[6]

_____

[6] Defendants claim that Ms. Ibrahim made "more than $16,000 in purchases of Virgin Galactic stock in 2023." Opposition at 8, 20 n.12 (citing Defendants' Ex. 18). Plaintiffs suspect that Defendants may have looked at the position cost basis in June 2024 ($15,815.75, Defendants' Ex. 18 at PLTF_VG_82438) and conflated that with the cost basis for shares purchased in 2023. If so, Defendants are mistaken. Between January and May 2023, Ms. Ibrahim only sold

As Ms. Ibrahim testified, she purchased shares after the Class Period out of "sheer desperation in trying to recover my financial loss." Sams Decl., Ex. 2 (Ibrahim Dep. Tr.) at 49:4-50:3; 58:12-20; *see also In re Frontier*, 172 F.R.D. at 42 ("The fact that [plaintiff] attempted to recoup her losses by continuing to purchase [company] stock after the disclosure of the alleged misrepresentations has no bearing on whether or not she relied on the integrity of the market during the class period."). Thus, Plaintiffs are adequate class representatives.[7]

### 5. The Proposed Class Satisfies Rule 23(b)(3)

As demonstrated within Plaintiffs' opening brief, this action also satisfies the requirements of Rule 23(b)(3) because questions of law or fact common to class members predominate over any questions affecting only individual members and because a class action is superior to other available methods for fairly and effectively adjudicating the controversy. ECF No. 132 at 12-23. Specifically, Plaintiffs have shown that under *Basic Inc. v. Levinson*, 485 U.S. 224, 245-247 (1988), a presumption of class-wide reliance based upon the fraud-on-the-market theory is

---

shares, then in June 2023 transferred her 400 remaining shares from the first account (purchased before Jan 2023 under a Last-In, First-Out "LIFO" or First-In, First-Out "FIFO" analysis) into a new account, and purchased an additional 400 shares (Defendants' Ex. 18 at PLTF_VG_82388). Thus, by the end of June 2023, Ms. Ibrahim had 800 shares, but only 400 were purchased in 2023 (and those 400 2023 shares have a basis of $2,001.26). Then, in October 2023, Ms. Ibrahim purchased an additional 335 shares for $534.46 (Defendants' Ex. 18 at PLTF_VG_82412), bringing her 2023 expenditure to $2,535.72, and her total share count (including 400 transferred in that were not purchased in 2023) to 1,135.

[7] Although Plaintiffs no longer propose Mr. O'Keefe-Jones as a class representative, Plaintiffs want to clarify the record regarding Defendants' arguments related to Mr. O'Keefe-Jones. For example, Defendants state that Mr. O'Keefe-Jones could not identify the Defendants in the case. Opposition at 8. Defendants, however, inexplicably omitted Mr. O'Keefe-Jones's full answer, in which he identified two of the three Defendants, but could not recall Chamath Palihapitiya. Sams Decl., Ex. 4 (O'Keefe-Jones Dep. Tr.) at 70:3-7 ("Q. Who are the defendants in this case? A. Yikes. To my knowledge, it would have to be **Richard Branson** under **Virgin Galactic**, and I believe there was one other individual, but I have forgotten the name. I apologize."). Defendants' gross mischaracterization of Mr. O'Keefe-Jones's testimony is highly misleading. In any event, not recalling the name of a defendants does not demonstrate inadequacy. *Surowitz*, 383 U.S. at 366. Additionally, Mr. O'Keefe-Jones also had a sufficient understanding of the case. Sams Decl., Ex. 4 (Jones Dep. Tr.) at 17:4-18:3; 82:12-14; 82:25-83:9; 84:12-85:1; 114:8-115:3. That Mr. O'Keefe-Jones could not recall the names of Plaintiffs' expert or the judge does not demonstrate inadequacy. *See, e.g.*, *McGuire v. Dendreon Corp.*, 267 F.R.D. 690, 697 (W.D. Wash. 2010) ("Here, while [plaintiff] may not know the judge's last name or the legal terms of art, he does know that [the company] made misrepresentations, members of the class bought shares in reliance on that misrepresentation, and members of the class lost money when the misrepresentation was revealed.").

warranted, and that, based upon Dr. Tabak's findings, the factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), and *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001), demonstrate market efficiency for Virgin Galactic stock during the Analysis Period. ECF No. 132 at 12-23. Defendants have not produced any expert to rebut Dr. Tabak's conclusions, nor have they disputed this fact with respect to the 2021 Period. In short, Defendants concede market efficiency, and that Rule 23(b)(3) predominance is satisfied for the 2021 Period.

**B.     Class Certification is Warranted for the 2019 Period Based Upon Dr. Tabak's Evidence Submitted and his Conclusions for the Analysis Period**

Defendants are wrong that Plaintiffs provided no evidence that the 2019 Period satisfies Rules 23(a)(1)-(4) and Rule 23(b)(3). While Plaintiffs do not concede the 2019 Period needs to separately satisfy Rules 23(a)(1)-(4) and 23(b)(3), the evidence indicates that it does. While Dr. Tabak did not separately opine in the narrative portion of his report on just the few days covered by the 2019 Period, as set forth below, the evidence he submitted in his report and the exhibits thereto, and at his deposition, supports certification with respect to this period.

**1.     Rules 23(a)(1)-(4) are Satisfied for the 2019 Period**

**Rule 23(a)(1) numerosity:** Defendants are simply wrong when they claim that "Plaintiffs provide none of the information necessary to assess numerosity" for the 2019 Period. Opposition at 16. Exhibit 3 to the Tabak Report shows adjusted weekly trading volume of 5,363,043 shares as of October 25, 2019 and 25,645,327 shares as of October 28, 2019. ECF No. 133-1 at 81. Not adjusted for market-maker participation, the average weekly trading volume was 6,461,498 shares as of October 25, 2019 and 30,897,984 shares as of October 28, 2019. *Id.* Dr. Tabak's Exhibit 7 shows the public float from October 25, 2019 through November 1, 2019, exceeded 55 million shares. *Id.* at 92. Moreover, Dr. Tabak specifically pointed to this evidence during his deposition

(Sams Decl., Ex. 1 (Tabak Dep. Tr.) at 128:7-17), yet Defendants chose to ignore it. This level of trading volume and sizeable float easily satisfies numerosity. *NIO*, 2023 WL 5048615, at \*11-\*12.

**Rule 23(b)(2) commonality:** Defendants claim that "[b]ecause the claims in the 2019 Claim Period are entirely distinct from the claims in the 2021 Claim Period, there is no commonality that can justify certifying the class that Plaintiffs have proposed." Opposition at 1; *id.* at 17. This argument, however, also fails. As discussed above, the claims need only be ***similar***, not identical. *McIntire*, 38 F. Supp. 3d at 424; *see also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members."). Moreover, "[t]he standard is particularly permissive in the context of securities fraud litigation." *NIO*, 2023 WL 5048615, at \*5. Here, the 2019 Period and the 2021 Period claims are sufficiently similar to satisfy commonality, as Plaintiffs during both periods allege that Defendants made material misrepresentations, half-truths, and omissions regarding, among other things, the success and prospects of Virgin Galactic's flights to space.

However, the 2019 Period claims are, themselves, sufficiently similar to warrant certification. All class members who purchased during the 2019 Period will ask common questions, including, for example, whether Branson sold shares while in possession of material non-public information regarding Virgin Galactic's flight program.

**Rule 23(b)(3) typicality and Rule 23(b)(4) adequacy:** As with commonality, "typical" does not mean "identical." *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 2007 WL 1280640, at \*4 (S.D.N.Y. Apr. 30, 2007); *Trief*, 144 F.R.D. at 200. The "typicality requirement is not defeated by minor variations in the fact patterns of individual class member[s'] claims." *Abdul–Malik v.*

*Coombe*, 1996 WL 706914, at *3 (S.D.N.Y. Dec. 6, 1996); *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 141 (S.D.N.Y. 2019) (same).

Although Defendants assert that Plaintiff Brantley faces issues regarding typicality and adequacy because the shares he purchased were shares of Social Capital that, as Defendants acknowledge, "were automatically converted into shares of Virgin Galactic" three days later (Opposition at 5-6), Plaintiffs propose a slight modification of the Class Definition as indicated in Footnote 1 to read "all persons and entities who or which purchased ***or otherwise acquired*** shares of Virgin Galactic common stock during the period from: (i) October 25, 2019 through November 1, 2019, inclusive; and/or (ii) July 12, 2021 through September 2, 2021, inclusive." (emphasis added). As Plaintiff Brantley testified, his intent in purchasing Social Capital shares was to "own a piece of Virgin Galactic:"

> Q. What securities did you own prior to the merger by which Virgin Galactic became a public company that led to your acquisition of three shares of Virgin Galactic common stock? . . .
>
> A. I'm not sure of the exact name of the company off the top of my head.
>
> Q. What do you know about the company? . . .
>
> A. I know it was the company that was founded to facilitate the IPO that was to become Virgin Galactic. ***My intention in buying the stock was to own a piece of Virgin Galactic***.
>
> Q. You purchased shares in a company called Social Capital, correct? . . .
>
> A. That could have been the name.
>
> Q. And it was your understanding that Social Capital may become or facilitate a public company version of Virgin Galactic? . . .
>
> A. That is correct.[8]

---

[8] The Complaint contains a typographical error regarding the number of shares that Plaintiff Brantley purchased. ECF No. 128 at ¶402. The correct number is three shares. Additionally, Defendants claim Plaintiffs "improperly" redacted information from Plaintiff Brantley's account statements. Opposition at 5 n.4. On the contrary, rather than refuse to provide unredacted copies to Defendants, Plaintiffs provided such unredacted copies to Defendants for purposes of transparency. And although Defendants cite *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005), *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178 (9th Cir. 2024), and *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 589 (S.D.N.Y. 2018), none of these cases addresses the situation here, where Plaintiff Brantley purchased stock to "own a piece" of the company at issue and where such stock was automatically converted three days later. Additionally, Defendants' argument that Plaintiff Brantley is somehow situated differently from others because of a purported increase in the Company's stock price

Sams Decl., Ex. 5 (Brantley Dep. Tr.) at 85:5-86:7.

Courts routinely certify classes for investors who either purchased a company's stock ***or otherwise acquired*** the company's stock. *See Fogarazzao*, 232 F.R.D. at 190 (certifying a class that included "all persons who purchased or otherwise acquired shares"). For the same reason, Mr. Brantley also has standing under §20A, and he is a typical and adequate representative for that claim, because he purchased the same class of security that Branson sold. *See Basile v. Valeant Pharm. Int'l, Inc.*, 2015 WL 7352005, at *8-9 (C.D. Cal. Nov. 9, 2015). In *Basile*, the court held that a plaintiff need not purchase "the exact same type of security" as an inside seller, and that options and common stock are considered the same class because options confer the right to acquire common stock. *Id.* Even more compelling than an option (which must be exercised), here, Mr. Brantley purchased shares (at the same time Branson sold) that would automatically convert to Virgin Galactic shares in just a few days. Finally, Defendants notably do not assert that Plaintiff Brantley lacked adequate knowledge of the case or was otherwise inadequate as a class representative. Mr. Brantley is a typical and adequate class representative.

### 2.      Rule 23(b)(3) is Satisfied for the 2019 Period

As discussed above, Defendants did not challenge Plaintiffs' §20A insider trading claim for the 2019 Period. Moreover, because reliance is not an element of §20A, market efficiency need not necessarily be shown to satisfy Rule 23(b)(3) predominance of common issues. Indeed, common issues will predominate with respect to the 2019 Period §20A claim, including most notably whether Mr. Branson sold shares while in possession of material nonpublic information about Virgin Galactic's flight program.

---

(Opposition at 19) fails because, as their own authority holds, "[a] lack of net injury does not compel a finding that the named plaintiff has failed to allege sufficient injury-in-fact for Article III standing purposes." *LIBOR*, 299 F. Supp. 3d 430 at 589.

17

Further, Plaintiffs ***do*** show market efficiency for the 2019 Period. As noted above, Dr. Tabak examined the longer 2019-2021 Period to analyze market efficiency, concluded it demonstrated efficiency, and also determined that there was no reason to conclude that the shorter 2019 Period within that longer Analysis Period was not also efficient. Sams Decl., Ex. 1 (Tabak Dep. Tr.) at 133:21-134:8, 134:25-135:16; ECF No. 133-1 at ¶2. In addition to, and in support of, those analyses, he attached a number of exhibits that contain the evidence of efficiency discussed in his report. *Id.* at Exs. 2 through 15(b). Dr. Tabak stated that he did not draw conclusions regarding the few days covered by the Class Period in 2019 independently because that period is generally too short to provide robust analyses of efficiency standing alone. *Id.* As the Second Circuit has declared, "small sample sizes may limit statistical power, meaning that only very large-impact events will be detectable." *Petrobras*, 862 F.3d at 278-79; *see also Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 136 (M.D. Tenn. 2020) (granting class certification and rejecting defendants' expert's argument that "for a short class period of say one week, analyzing information beyond that week is unhelpful because it would not automatically show the market reaction during the week at issue"). Indeed, courts have recognized this principle in similar contexts:

> Defendants then pivot and argue that Coffman's event study is "fundamentally flawed" not because of the two days it excludes, but because of the two-and-a-half years it considers. Once again, Defendants' argument parrots the opinions of its own rebuttal expert. (arguing "[a]s [Dr.] Stulz explains, 'in economics, inferences based on a longer time period are only valid when the longer period data is representative to the subperiod of interest,' " and that "[u]nlike Coffman, Dr. Stulz did the analysis and found that Coffman's 2.5-year period is not representative of the two-month Class Period" But the Sixth Circuit has recognized that event studies are relevant to the market efficiency argument precisely because they provide a *historical* snapshot of how the price of a given security reacts to public information. *See Freeman v. Laventhol & Horwath*, 915 F.2d 193, 199 (6th Cir. 1990) (describing the fifth *Cammer* factor as "a history of immediate movement of the stock price caused by unexpected corporate events or financial releases"). ***If the price of a security has historically reacted in a statistically meaningful way to the release of public information about the security, it is more likely the price of the stock during the relevant class period reflected that public information—the***

18

> *central premise of market efficiency and the "foundation for the fraud on the market theory."* **Cammer v. Bloom***, 711 F. Supp. 1264, 1287 (D.N.J. 1989).* *Coffman explained that he analyzed the broader "Analysis Period to* **enhance** *the power of [his] statistical tests." This makes sense, given federal courts' recognition of the limitations of small event-study analysis periods within securities litigation* . . . .

*Shupe v. Rocket Companies*, 2024 WL 4349171, at *22 (E.D. Mich. Sept. 30, 2024) (emphasis added, italics in original); *see also In re Tesla, Inc. Sec. Litig.*, Case No. 3:18-cv-04865, ECF No. 298 (N.D. Cal. Nov. 30, 2020) (order certifying class spanning 10 days, from 12:48pm EDT on August 7, 2018 to August 17, 2018); *In re IsoRay, Inc. Sec. Litig.*, 2016 WL 7234807, *1 (Oct. 20, 2016) (certifying 2-day class period, May 20-21, 2015, pursuant to Rule 23(a) and 23(b)(3) for settlement purposes); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 205 F.R.D. 572, 581 (D. Colo. 2001) (granting certification of a class of "persons who purchased or otherwise acquired the common stock of Ribozyme Pharmaceuticals, Inc. between the close of trading on November 15, 1999 and the close of trading on November 16, 1999").

Accordingly, although Defendants attempt to parse and analyze the 2019 Period in a vacuum (Opposition at 15-25), their attempt is inconsequential because it fails to appreciate the analysis that Dr. Tabak conducted and the evidence he presented with respect to the Analysis Period, which includes the 2019 Period. Unless there was a reason to suspect that the efficiency of the market for the Company's stock changed over the 2019-2021 Period – **and Dr. Tabak found no such reason, <u>nor have Defendants provided evidence of one</u>** – the demonstration of efficiency during the larger 2019-2021 Period *includes* the smaller subset of the 2019 Period. ECF No. 133-1 at ¶2; *see also* Sams Decl., Ex. 1 (Tabak Dep. Tr.) at 132:18-133:8 ("Q. And just to be clear, you have not concluded that just within the standalone period of October 25, 2019 through November 1, 2019 that Virgin Galactic's common stock traded in an efficient market? MS. WOLKE: I object to form. THE WITNESS: I haven't done a separate analysis for that, but *that fits within the larger*

19

*analysis period, so I haven't yet seen sufficient evidence to say that the analysis for the larger period would not also cover that same period and the same on conclusions would apply*."); *see also id.* at 135:15-16 ("the evidence does point towards efficiency for that [2019] period.").

In addition to his *Cammer 5* market efficiency analysis of the 2019-2021 Period (which covers and indicates efficiency for the 2019 Period), the evidence Dr. Tabak submitted in the Exhibits to his Report provide additional indicia of efficiency for the 2019 Period. To be clear, this information for the 2019 Period was contained within his Report and specifically discussed during Dr. Tabak's deposition[9]—but Defendants *chose* to ignore it.

*Cammer 1:* **Trading volume.** The first week of the 2019 Period includes one day, October 25, 2019. As Dr. Tabak's Exhibit 3 shows, the trading volume that day as a percentage of shares outstanding was 2.74%. ECF 133-1 at 81. The next week, beginning October 28, 2019, trading volume increased to 13.11%. *Id.* These figures easily surpass the 2% level found to support a "strong presumption" of efficiency in *Cammer.* 711 F. Supp. at 1293.

*Cammer 2:* **Analyst reports.** While analysts had not yet initiated coverage during the 2019 Period, such that this element does not lend support to a finding of efficiency, the lack of analyst coverage does not *negate* a finding of market efficiency. *See, e.g*., *Martinek*, 2022 WL 326320, at *12-*18 (finding market efficiency even where "Plaintiff has not adduced evidence that financial analysts or the broader financial media covered the Preferred Stocks over the proposed class period"); *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *15 (E.D.N.Y. Jan. 11, 2022) (finding efficiency even where *Cammer 2* "does not weigh in favor of a finding of market efficiency").

---

[9] *See, e.g.*, Sams Decl.*,* Ex. 1 at 97:17-100:23 (discussing market makers and Exhibit 6a); *id.* at 105:9-106:15 (discussing arbitrageurs and Exhibit 5); *id.* at 109:16-111:8 (discussing arbitrageurs and short interest, Exhibits 5 and 6a); *id.* at 112:10-113:2 (discussing short interest and Exhibit 6a); *id.* at 124:12-24 (noting bid-ask spread for the 2019 Period is covered in the Exhibits to the Tabak Report); *id.* at 127:13-25 (noting Virgin Galactic's float is provided for all days during the Analysis Period, including the 2019 Period).

*Cammer 3:* **Market makers and arbitrageurs.** Dr. Tabak's Exhibit 5 shows that 66 institutions held over 63 million shares of Virgin Galactic, or 73.3% of the shares outstanding, as of September 30, 2019 (the last calendar quarter-end before the 2019 Period started). ECF No. 133-1 at 86-87. And 116 institutions held over 39 million shares of Virgin Galactic, or 20.4% of the shares outstanding, as of December 31, 2019 (the first calendar quarter-end after the 2019 Period ended. *Id.* That institutions changed their holdings is indicative of their attention to the price of Virgin Galactic stock, and supports efficiency. *Cammer*, 711 F. Supp. at 1282-83; *McIntire*, 38 F. Supp. 3d at 432 (20 market makers supported market efficiency). Additionally, Dr. Tabak testified as follows:

> Q: Are you aware of any market makers or arbitragers who traded in Virgin Galactic stock in the period of October 25, 2019 through November 1, 2019?
>
> A: Well, I don't have specific names. But we can see in Exhibit 6a, for example, that there is short interest and those are generally considered arbitragers who believe that a stock is overvalued. So I can't tell you the names of any particular such arbitragers, but I can tell you there were people shorting the stock.

Sams Decl., Ex. 1 (Tabak Dep. Tr.) at 97:17-98:8. Thus, this factor also supports a finding of efficiency.

*Cammer 4:* **Form S-3 eligibility.** To be eligible to file a registration statement on SEC Form S-3, a company must (among other things) show that the average market value of its public float exceeded $75 million. *Cammer*, 711 F. Supp. at 1284-85. Meeting the float requirement, regardless of actual eligibility to file an S-3, suffices for this *Cammer* factor. *Id.* at 1287 ("[I]t is the number of shares traded and value of shares outstanding that involve the facts which imply efficiency"); *see also NIO*, 2023 WL 5048615, at *12 & n.9 (factor 4 supported efficiency even though company could not file an S-3). During the 2019 Period, Virgin Galactic's float exceeded

21

$517 million (more than 6 times the requirement of $75 million. *See* Tabak Report, ECF No. 133-1, at 98 (Exhibit 7).[10]

**Listing on a major exchange:** During the Analysis Period, including the 2019 Period, Virgin Galactic traded on both the Nasdaq Stock Exchange and the New York Stock Exchange. ECF No. 133-1 (Tabak Report) at ¶¶24, 47. This also supports market efficiency. *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 159 (S.D.N.Y. 2012) ("If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is presumed to be efficient.").

In sum, Dr. Tabak found that his analyses demonstrate that Virgin Galactic's common stock traded in an efficient market over the Analysis Period, *which includes the 2019 Period*, thus indicating efficiency for the 2019 Period as well. And Dr. Tabak saw no evidence to determine that the 2019 Period was inefficient. To the contrary, as discussed above, additional evidence in his Report and Exhibits supports the conclusion that the market for Virgin Galactic stock was efficient during the 2019 Period. Significantly, *his conclusions stand unrebutted by any other expert in this case*. *Id*.[11] Defendants could have produced an expert to rebut Dr. Tabak's

---

[10] Further, Virgin Galactic filed a Form S-3 on November 18, 2019. Defendants claim—without citation—that the Company was *not* eligible to file a Form S-3 during the 2019 Period because the Company was later "required to withdraw the Form S-3 that it filed on November 18, 2019." Opposition p. 24, n.16. On February 14, 2020, Virgin Galactic filed a Form S-1 stating it had "converted" the Form S-3 to a Form S-1—it says nothing about withdrawal. https://www.sec.gov/Archives/edgar/data/1706946/000119312520038372/d903370ds1a.htm. To the extent Virgin Galactic converted the Form S-3 to an S-1 because it was no longer eligible to rely on the previous year of Social Capital's SEC filings (which is a requirement of Form S-3), that issue was not settled by the SEC until September 2020. https://www.sec.gov/rules-regulations/staff-guidance/compliance-disclosure-interpretations/securities-act-forms#115.18. Defendants do not explain how investors in 2019 would have relied on SEC guidance that was not formally memorialized until September 2020.

[11] Defendants misleadingly claim that the last sentence of paragraph 23 of Dr. Tabak's report "is not accurate" because it purportedly does not identify any market maker who traded in Virgin Galactic stock in the period of October 25, 2019 through November 1, 2019. Opposition at 23 n.15. Dr. Tabak testified, however, that because his report does not identify specific market makers for any period, his report did not do so for that specific period. Sams Decl., Ex. 1 (Tabak Dep. Tr.) at 98:9-18. Similarly, Defendants claim that Dr. Tabak had not "investigated Virgin Galactic's eligibility to file a Form S-3" while omitting his testimony that he has been aware of the Form S-3 registration eligibility requirements "for a long time" but did not "reinvestigate" those requirements specifically for his report. *Id*. at 121:4-20.

conclusions, or they could have challenged Dr. Tabak's analysis through a motion brought pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Defendants failed to do so. In short, Plaintiffs have shown by preponderance of the evidence, based upon the conclusions that Dr. Tabak found for the Analysis Period and based upon the other evidence contained in the Exhibits to his report, that the market for Virgin Galactic stock was efficient during the 2019 Period. Class certification is warranted for the 2019 Period.

### C.      Damages Can Be Established on a Class-Wide Basis

Through Dr. Tabak's expert analysis, Plaintiffs have also demonstrated that damages in this action can be established on a class-wide basis and that Plaintiffs' proposed damages methodologies are consistent with class-wide theories of liability. ECF No. 132 at 23-25; ECF No. 133-1 at ¶¶65-71. In an argument relegated to a footnote, however, Defendants contend that Dr. Tabak purportedly "did not offer any evidence to support this conclusion and later was forced to walk it back during his deposition when he admitted under oath that because the 2019 and 2021 Claim Periods involve different types of securities fraud claims, the entire methodology for calculating damages for the 2019 Claim Period will differ from the methodology for calculating damages for the 2021Claim Period."  Opposition at 14 n.7.  In fact, Dr. Tabak's report discusses a damages methodology for Rule 10b-5 claims (ECF No. 133-1 at ¶¶66-71) and for Section 20A claims (ECF No. 133-1 at ¶72).

In any event, Defendants are wrong. In *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), the Supreme Court reversed the lower court's certification of a class in an antitrust case, holding that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at 34-38. The Second Circuit, however, has subsequently interpreted *Comcast* very narrowly:

> We have since interpreted *Comcast* as precluding class certification only because the sole theory of liability that the district court determined was common in that antitrust action . . . was a theory of liability that the plaintiffs' model indisputably failed to measure when determining the damages for that injury. In other words, we have stated that *Comcast* held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury.

*Waggoner v. Barclays PLC*, 875 F.3d 79, 105–06 (2d Cir. 2017). Thus, "*Comcast* does not mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of measurement on a classwide basis." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015). Indeed, class certification is appropriate pursuant to Rule 23(b)(3) even in cases "involving individualized damages calculations." *Id.* at 408. And since *Comcast*, numerous courts have held that a potential need for individualized damages calculations in securities cases does not impose a high hurdle on Rule 23(b)(3)'s predominance requirement. *See, e.g.*, *Strougo v. Barclays PLC*, 312 F.R.D. 307, 313 (S.D.N.Y. 2016) ("Issues and facts surrounding damages have rarely been an obstacle to establishing predominance in section 10(b) cases."); *Wallace v. IntraLinks*, 302 F.R.D. 310, 318 (S.D.N.Y. 2014) ("Individualized calculations of damages do not generally defeat the predominance requirement."). Defendants, moreover, do not dispute that even if the methodology for calculating damages may differ for the two time periods, the methodologies can be calculated in a formulaic manner for each respective time period. Thus, Defendants' argument fails, and class certification is appropriate for both the 2019 Period and the 2021 Period.

## III.    CONCLUSION

For the foregoing reasons, class certification is warranted. When determining whether a plaintiff has proven market efficiency, a district court should not "view direct and indirect evidence as distinct requirements" and should, instead, conduct "***a holistic analysis based on the totality of the evidence presented***." *Petrobras*, 862 F.3d at 277. Put differently, "[t]he *Cammer*

24

and *Krogman* factors are simply tools to help district courts analyze market efficiency in determining whether the *Basic* presumption of reliance applies in class certification decision-making." *Waggoner*, 875 F.3d at 98. "But they are no more than tools in arriving at that conclusion, and certain factors will be more helpful than others in assessing particular securities and particular markets for efficiency." *Id.*

As the Second Circuit has declared, moreover, "if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968); *accord Gonzalez v. Hanover Ventures Marketplace LLC*, 2024 WL 1157074, at *3 (S.D.N.Y. Mar. 18, 2024). Thus, Plaintiffs respectfully request that the Court issue an Order: (1) certifying this case as a class action pursuant to Rule 23 and certifying the Class as requested; (2) appointing Plaintiffs Jennifer Ortiz, Hesham Ibrahim, and Montgomery Brantley as class representatives; and (3) appointing Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A. as Class Counsel.[12]

Dated: January 24, 2025

Respectfully submitted,

By: */s/ Ex Kano S. Sams II*
Kara M. Wolke
Ex Kano S. Sams II
Natalie S. Pang
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
phone: (310) 201-9150
fax: (310) 432-1495

---

[12] The proposed Class can and should be certified as one class. But, if the Court were to hold otherwise, the 2019 Period and the 2021 Period each independently satisfies 23(a) and 23(b)(3), and it is within the Court's discretion to so certify them separately. Rule 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class…" Indeed, the Second Circuit has made clear it is within the district court's discretion to modify a class or create subclasses whenever warranted. *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134 (2d Cir. 2001) (denying defendant's Rule 23(f) petition to appeal order certifying class of plaintiffs with Federal RICO and state common-law fraud claims).

Email: kwolke@glancylaw.com
esams@glancylaw.com
npang@glancylaw.com

-and-

By: */s/ Jonathan Horne*
Jonathan Horne, Esq.
Laurence M. Rosen, Esq.
Brent LaPointe, Esq.
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
jhorne@rosenlegal.com
lrosen@rosenlegal.com
blapointe@rosenlegal.com

*Counsel for Plaintiffs*

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

I, Ex Kano S. Sams II, declare that pursuant to Local Civil Rule 7.1(c), that excluding captions, indices, table of contents, table of authorities, and signature blocks, this brief contains 9,225 words.  I further declare that Local Civil Rule 7.1(c) states that the provisions for the length of memoranda of law provided therein govern except "as otherwise directed by the court," and that Section III(B) of this Court's Individual Practices and Rules provides that "[t]he court expects counsel to exercise their professional judgment as to the length of briefs and may impose limits if that expectation is not met."

*s/Ex Kano S. Sams II*
Ex Kano S. Sams II

27

## PROOF OF SERVICE

I hereby certify that on this 24th day of January, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II

## PROOF OF SERVICE

I hereby certify that on this 16th day of April, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II