EXHIBIT 3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

Civil Action No. 1:21-cv-03070

- - - - - - - - - - - - - - - - - - - x

SHANE LAVIN, Individually and on

Behalf of All Others Similarly

Situated,

                        Plaintiff,

      - against -

VIRGIN GALACTIC HOLDINGS, INC.;

MICHAEL A. COLGLAZIER, GEORGE

WHITESIDES, DOUG AHRENS, and JON

CAMPAGNA,

                        Defendants.

- - - - - - - - - - - - - - - - - - - x

November 21, 2024

9:59 a.m.

VIDEO RECORDED DEPOSITION of JENNIFER ORTIZ, a Plaintiff herein, taken by the Defendants, held at the offices of Veritext Legal Solutions, 290 West Mount Pleasant Avenue, Livingston, New Jersey, before Sara K. Killian, a Registered Professional Reporter, Realtime Certified Reporter and Notary Public.

Page 1

J. Ortiz

de-veered path when it shouldn't have.  So I bought the stock at a higher price than it should have been because after the truth was released, the stock price went down.

Q.      You said Richard.

Can you tell me who Richard is?

A.      He's the owner of Virgin Galactic.  He's the one who conducted the space flights.

Q.      And do you know his last name?

A.      Branson.

Q.      And you said veered -- that the flight had veered, I believe that was the word that you used.

A.      Veered off course.

Q.      Okay.

And can you just elaborate on that?

MR. HAKLAY:  Don't look at me. I'm not going to elaborate.

If you can, say yes.  If you can't, say no.

A.      No.

Q.      And can you tell me what you

Page 8

J. Ortiz

believe Richard Branson said that was untruthful?

A.    He said that the flight went flawless and perfectly.  And it did not.

Q.    Okay.  All right.

We'll get back into that in a little bit more.

I'll just go over some ground rules.  So you were sworn in.  Is there any reason that you can't give truthful testimony today?

A.    No.

Q.    And have you ever been deposed before?

A.    No.

Q.    And I'm going to try to make my questions as clear as possible, but if you have any -- if there's any confusion and you're not sure how to answer or you're unsure about what I'm asking you, just let me know and I can rephrase.

If you need to take a break at any time, let us know.

MR. HAKLAY:  Counsel, my

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

J. Ortiz

Q.          What statements did you rely on?

MR. HAKLAY:  Objection.

Calls for a legal conclusion, I think, if that's what you mean.  She's not here as -- to answer legal -- to reach legal conclusions.

MS. CALABRESE:  Okay.  Well, I don't believe this is a legal conclusion.  She said she relied on our statements when she purchased stock. So whatever she meant by "relied on."

A.          Just that publically he was saying things were going great, you know, the flight went well.  After, you know, the flight went off, it came back, he's, like, it went well, it went perfect, it went flawless.  So all that positive feedback encouraged me to buy stock.

Q.          Which flight are you referring to?

A.          Well, that -- the 2021.

Q.          Do you know when it was in 2021?

Page 62

J. Ortiz

A.      I believe it was, like, around July, around that time.

Q.      Do you know who the passengers were on that flight?

A.      No.

Q.      Have you ever read any of Virgin Galactic's public filings?

A.      No.

Q.      Have you ever read any analysts' reports about Virgin Galactic?

A.      No.

Q.      Have you ever read any earnings calls or listened to any earnings calls by Virgin Galactic?

A.      No.

Q.      Have you ever read any Virgin Galactic press releases?

A.      No.  I followed it on the news.

Q.      Okay.

Have you ever reviewed any presentations from Virgin Galactic?

A.      No.

Q.      Have you ever reviewed any Virgin -- any of Virgin Galactic's financial

Page 63

J. Ortiz

just been referenced in the record.  I don't know if the court reporter has any specifics --

MR. HAKLAY:  Good.

MS. CALABRESE:  Okay.

And then we're going to play another video that will be Exhibit 13. And we can send these to you if you need them, although you should have them already.

MR. HAKLAY:  Yeah.

(Whereupon, Exhibit 13 was marked for identification.)

MR. HAKLAY:  Can you identify the date again.

MS. CALABRESE:  So this would be a video that was aired on July 11, 2021.

Do you recognize this video?

A.      I don't think so, no.

Q.      Okay.  I'm going to play --

A.      July 11, 2021?

Q.      I'm going to play the entire video, and then if you could -- and then

Page 89

J. Ortiz

I'll have some questions.

THE WITNESS:  I'm sorry.

Before you do, when was the flight that it went bad, exactly --

MR. HAKLAY:  You can't ask her questions.

THE WITNESS:  Can I ask you?

MR. HAKLAY:  You can ask.  I can't answer.

THE WITNESS:  Oh, okay.

MR. HAKLAY:  So don't ask.

(Video played)

BY MS. CALABRESE:

Q.    Having viewed the video, have -- does it refresh your recollection? Have you ever viewed it before?

A.    I don't think that full video, no.

Q.    Have you viewed part of the video before?

A.    Not -- not that I recall. Mostly it was, like, the news recapping what happened.

Q.    Okay.

Page 90

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

J. Ortiz

A.      I don't think so.

Q.      Okay.

So have you ever seen this document before?

A.      I don't think so.

Q.      Okay.  Okay.

That's it then.

Do you have an understanding that -- whether -- actually, let's just look at the document, so it'll be Exhibit 19.

(Whereupon, Exhibit 19 was marked for identification.)

BY MS. CALABRESE:

Q.      Do you recognize this document, Ms. Ortiz?

A.      I think I may have seen this.

Q.      Do you know what it is?

A.      Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification.

Q.      Did you review this document before it was filed?

A.      I'm sure I did.  Yes.

Q.      Okay.

Page 107

J. Ortiz

And then did you review other documents that were filed with it?

A.    I don't recall specifically because there's -- but I'm sure I did.

Q.    Okay.

We can look at a document.

This is Exhibit 20.

MR. HAKLAY:  You can put that away.

(Whereupon, Exhibit 20 was marked for identification.)

BY MS. CALABRESE:

Q.    Do you recognize this document?

A.    Yes.

Q.    What is this document?

A.    My declaration in support of plaintiff's motion for class certification.

Q.    Do you understand that you've sought to become a class representative in this action?

A.    Yes.

Q.    What does that mean?

A.    That I represent other people like me who invested in 2021 and they

Page 108

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

J. Ortiz

invested at a price that was inflated.

Q.      What are your duties as a class representative?

A.      To testify, pride my -- provide my testimony, play an active role, work with lead counsel.

Q.      And just to be clear, were you --

MR. HAKLAY:  I'm sorry.  Were you finished?

THE WITNESS:  Yes.

MR. HAKLAY:  Okay.  Thank you.

BY MS. CALABRESE:

Q.      Were you referring to paragraph five of your declaration when you were just answering?

A.      Yes.  Yeah.

Q.      And paragraph five also says:

I understand that I owe a fiduciary duty to all members of the class to provide fair representation and to actively work with lead counsel to obtain the best possible recovery for the class.

Page 109

J. Ortiz

Do you have an understanding what your fiduciary duty is?

A.      It's like saying I have a responsibility.

Q.      The -- paragraph five goes on to say:  I have also agreed to take steps to keep myself --

MR. HAKLAY:  I'm sorry.  It's on the next page --

Q.      -- informed on the progress and status of the case, the strengths and weaknesses of the case, and the prospects for settlement.

Do you see that?

A.      Yes.

Q.      So what steps have you taken to keep yourself informed of the progress and status of the case?

A.      Contact with my lawyers, reviewing documents, communication with lawyers.

Q.      And what is your understanding of the current progress and status of the case?

Page 110

J. Ortiz

A.    So that after this, we could either go to mediation or maybe trial.

Q.    And when you say "after this," what are you referring to?

A.    The deposition.

Q.    Okay.

What is your understanding of the prospects for a settlement, so long as it doesn't reveal communications with your lawyers?

A.    That I'll get paid for, like, my time and, I guess, the prorated amount that I invested in it, the inflated portion of that.

Q.    Okay.

What steps have you taken to keep yourself informed as to the strengths and weaknesses of the case?

A.    Discussing it with my lawyer.

Q.    What do you view as the -- outside of your -- if you can't answer without referring to conversations with your lawyer, but I'm asking you, in your personal view, what you view as the strengths and

Page 111

J. Ortiz

Q.    If called upon or requested to participate in more discussions with your fellow -- hopefully -- class representatives, would you be willing to undertake those tasks?

A.    Yes.

Q.    About three lines down at the end, it says "I understand that I owe."

Do you see that?

A.    Yes.

Q.    I understand that I owe a fiduciary duty to all members of the class to provide fair representation and to actively work with lead counsel to obtain the best possible recovery for the class.

Did I read that correctly?

A.    Correct.

Q.    Okay.

Can you tell me whether or not you are willing to carry out a fiduciary duty to work with lead counsel and provide fair representation?

A.    Yes, I am.

Q.    Okay.

Page 144