**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANE LAVIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br><br> v. <br><br><br> VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, and JON CAMPAGNA, <br><br> Defendants. | CASE No.: 1:21-cv-03070-ARR-TAM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. PROCEDURAL HISTORY .............................................................................................. 2

      A.      The First And Second Amended Complaints ............................................. 2

      B.      Discovery ............................................................................................... 5

      C.      Virgin Galactic's Rule 30(b)(6) Testimony ............................................ 6

III. PLAINTIFFS MEET RULE 15 ...................................................................................... 7

      A.      Legal Standard ....................................................................................... 7

      B.      Amendment Will Not Be Futile .............................................................. 8

      C.      No Undue Prejudice Will Result From Plaintiffs' Amendment ............... 11

      D.      Plaintiffs' Request To Amend Is Made In Good Faith ............................ 12

IV. GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER TO PERMIT
     AMENDMENT UNDER RULE 16 ................................................................................ 13

V.  AMENDMENT WILL NOT IMPACT THE MOTION FOR CLASS CERTIFICATION ...... 14

VI. CONCLUSION .............................................................................................................. 15

## TABLE OF AUTHORITIES

### CASES

*Bensinger v. Denbury Res. Inc.*,
2013 WL 3353975 (E.D.N.Y. July 3, 2013) ............................................................................... 15

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir.1993) ...................................................................................................... 11

*Bray v. City of N.Y.*,
2004 WL 2852072 (S.D.N.Y. Dec. 13, 2004) ............................................................................ 8

*Capitol Recs., Inc. v. MP3tunes, LLC*,
2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009) ............................................................................ 8

*Cat3, LLC v. Black Lineage, Inc.*,
2015 WL 5559569 (S.D.N.Y. Sept. 21, 2015) .......................................................................... 11

*Cavalieri v. TJH Med. Servs., P.C.*,
2014 WL 7928459 (E.D.N.Y. Dec. 30, 2014) .......................................................................... 14

*Escoffier v. City of New York*,
2017 WL 65322 (S.D.N.Y. Jan. 4, 2017) ................................................................................... 8

*Est. of Ratcliffe v. Pradera Realty Co.*,
2007 WL 3084977 (S.D.N.Y. Oct. 19, 2007) ........................................................................... 14

*Gonzalez v. Wicked Taco LLC*,
2025 WL 353972 (E.D.N.Y. Jan. 31, 2025) ............................................................................. 12

*Hurtado v. Hudson Fulton Corp.*,
2023 WL 2945846 (S.D.N.Y. Apr. 14, 2023) ........................................................................... 13

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*,
783 F.3d 383 (2d Cir. 2015) ....................................................................................................... 8

*In re Aphria, Inc. Sec. Litig.*,
342 F.R.D. 199 (S.D.N.Y. 2022) .............................................................................................. 13

*In re NIO, Inc. Sec. Litig.*,
2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023) ............................................................................ 13

*In re Synchrony Fin. Sec. Litig.*,
2023 WL 1503032 (D. Conn. Feb. 3, 2023) ............................................................................. 13

*Jaigua v. Kayafas Contracting Co. Inc.*,
 2019 WL 1115025 (E.D.N.Y. Mar. 11, 2019) ................................................................. 8, 9

*Lee v. Regal Cruises, Ltd.*,
 916 F. Supp. 300 (S.D.N.Y. 1996) .................................................................................... 12

*Monahan v. N.Y.C. Dept. of Corr.*,
 214 F.3d 275 (2d Cir.2000) ................................................................................................11

*Noyes v. Kelly Servs.*,
 488 F.3d 1163 (9th Cir. 2007) ........................................................................................... 14

*Pasternack v. Shrader*,
 863 F.3d 162 (2d Cir. 2017) ...........................................................................................8, 11

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
 889 F. Supp. 2d 453 (S.D.N.Y. 2012) ............................................................................... 13

*Sheldon v. PHH Corp.*,
 1997 WL 91280 (S.D.N.Y. Mar. 4, 1997) .......................................................................... 8

*Shovah v. Mercure*,
 44 F. Supp. 3d 504 (D. Vt. 2014) ...................................................................................... 12

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
 341 F.R.D. 542 (S.D.N.Y. 2022) ....................................................................................... 15

*Sughrim v. N.Y.C.*,
 2022 WL 3447545 (S.D.N.Y. Aug. 17, 2022) ................................................................... 15

*Walsh v. Versa Cret Contracting Co., Inc.*,
 2023 WL 3570699 (E.D.N.Y. May 18, 2023) .................................................................... 14

## **RULES**

Fed R. Civ. P. 15(a)(2) ...................................................................................................... 7, 8

## I. INTRODUCTION

Plaintiffs' proposed Fourth Amended Complaint ("4AC"; ECF No. 148) revives claims for material misstatements made by Virgin Galactic's CEO, Michael Colglazier ("Colglazier") about Virgin Galactic's near-disastrous July 11, 2021 flight.

Plaintiffs previously alleged securities fraud claims based on, *inter alia,* a series of statements by Colglazier and Virgin Galactic founder Richard Branson ("Branson") describing Branson's July 11, 2021 flight to space. *See* Plaintiffs' First Amended Complaint ("FAC"; ECF No. 36) and Plaintiffs' Second Amended Complaint ("SAC"; ECF No. 69). Each called the flight an unqualified success, even though serious problems arose on the flight, which triggered an FAA investigation. The Court found both individuals' statements false or misleading. The Court further found that Plaintiffs had sufficiently alleged Branson's scienter. However, the Court found that Plaintiffs did not sufficiently allege Colglazier's scienter, as ***"[a]bsent any allegations that Colglazier was told that the flight deviated from its landing cone prior to making his public statements***, I cannot find that his statement was reckless[.]" ECF No. 58 at 50; ECF No. 90 at 41.

Discovery has now supplied the missing facts. Michael Moses ("Moses"), Virgin Galactic's President, testified at his deposition in late January 2025 that he specifically told Colglazier that the July 11, 2021 flight deviated from its landing cone on July 11 or 12, 2021. Moses then told Colglazier on July 23, 2021 that: (1) the flight had deviated from its FAA-authorized airspace - a violation; (2) Virgin Galactic had failed to alert the FAA - another violation; and (3) the FAA was investigating both violations. Moses then informed Colglazier of the fact and subject matter of a presentation that Virgin Galactic was to deliver to the FAA on August 3, 2021 about these violations. At the August 3, 2021 meeting with the FAA, Virgin Galactic admitted to the violations and attempted to reassure the FAA that such violations would never happen again. Thus, when

Colglazier told investors on August 5, 2021 that, *inter alia,* all flight and safety elements had performed as expected on the July 11, 2021 flight, he knew perfectly well that his statement was false.

The 4AC also meets the relevant procedural requirements. The 4AC does not add any new legal theories or otherwise add burdensome new allegations that would require extensive additional discovery, so Defendants will not be prejudiced. There is good cause to permit amendment because Plaintiffs expeditiously sought Defendants' consent to amend a mere two weeks after learning the facts addressing the findings that previously led the Court to dismiss Colglazier for lack of scienter. Moreover, Plaintiffs had been seeking the Rule 30(b)(6) deposition of Virgin Galactic since May of 2024, so any delay in seeking amendment results solely from *Defendants'* delay tactics.

## II. PROCEDURAL HISTORY

### A.   The First And Second Amended Complaints

Virgin Galactic is a space tourism company. The company flies passengers for 5-minute expeditions to space, using two vehicles: Eve, an aircraft which first carries a rocket ship to approximately 45,000 feet, and Unity, the rocket ship, which is then released and flies to a height of approximately 50 miles. Since 2019, Virgin Galactic has claimed that its commercial operations would begin with Branson flying to space. Branson's long-promised flight finally occurred on July 11, 2021.

Defendants' statements about the flight were nothing short of ecstatic. But these statements concealed that Virgin Galactic had experienced several emergencies on the flight. Because Unity uses all its fuel to reach space, it must rely on its own forward momentum to glide its way back to the landing strip. For a landing to be possible, Unity must remain within an inverted "landing

cone," also known as the "entry glide cone." In the FAC, Plaintiffs alleged that during the flight, Unity had strayed from its landing cone for 1 minute and 41 seconds, approximately 10% of the flight. FAC ¶¶394, 395. The cabin was alerted with flashing lights: first, when Unity had reached 20 miles (about 30 miles short of its apogee), the yellow light turned on (indicating Unity was in danger of straying from its flight path); seconds later, it turned red (indicating Unity had indeed strayed). FAC ¶398. Unity also left its FAA-authorized airspace during the flight and failed to communicate the violation to the FAA. FAC ¶404.

Plaintiffs alleged that several of Colglazier's statements about the flight were false. First, a July 11, 2021 press release quoted Colglazier as stating: ***"Today is a landmark achievement for the Company and a historic moment for the new commercial space industry. With each successful mission we are paving the way for the next generation of astronauts*."** FAC ¶566.

Second, in a July 11, 2021 interview, Colglazier stated, in part:

**Q:** A lot of the event was about Richard, you know, Richard was front and center, but you know, as the CEO of the commercial business, what does today represent for you? What does it allow you to do?

**Defendant Colglazier:** Well, two things. I think for the world, it allows us to show that something people never thought was gonna happen in their lifetimes is actually happening now. ***The ability for regular people to be able to go to space and it will take years to really get the scale of it up but I think we showed today what that is going to be like and a taste of that going forward.*** So that was huge. And then at a business level, this was one of the remaining flight tests that we need to do as we move into commercial service. So we've got two more. ***This one was perfect.***

\*          \*          \*          \*          \*

**Q:** Was Sunday's event about selling tickets? Was that really what it was about?

**Michael Colglazier:** This event was about showcasing to the world what this Virgin Galactic experience is going to be. And ***this event was part of our incredible safety diligent program to make sure that we go step-by-step so that when we do open this up for commercial service, we've done all that needs to be done. So it's amazing and anchored in safety experience and that's what today was about.***

FAC ¶568.

3

In ruling on Defendants' motion to dismiss the FAC, the Court held, "[i]n context, these statements are not mere puffery and are materially misleading." ECF No. 58 at 27. Having held the statements were materially misleading, the Court proceeded to analyze Plaintiffs' scienter allegations. *Id.* at 41, 47, 50. The Court found scienter lacking as to Colglazier because Plaintiffs failed to allege facts demonstrating that he was aware of the July 11, 2021 flight deviation, stating, ***"[a]bsent any allegations that Colglazier was told that the flight deviated from its landing cone prior to making his public statements, I cannot find that his statement was reckless, and I dismiss the action with respect to him***." *Id.* at 50 (emphasis added).

The SAC again alleged that the statements in FAC ¶¶566 and 568 were actionable (*see* SAC ¶¶229, 230), and added the following similar statement from Colglazier, which he made during Virgin Galactic's August 5, 2021 earnings call:

> Our Unity 22 flight in July was a landmark achievement…. ***We executed a successful spaceflight*** with a full crew in the cabin. ***Unity 22 demonstrated further proof of our technical readiness*** and . . . ***validated the inherent safety and design of our system.***

SAC ¶316.

In ruling on Defendants' motion to dismiss the SAC, the Court again held that these statements were actionable, stating, "SAC ¶ 316 cites a call in which defendant Colglazier described the July 2021 flight as 'successful,' touts that it 'demonstrated further proof of our technical readiness' and 'validated the inherent safety and design of our system.' With respect to similar statements concerning the July 2021 flight describing it as 'successful,' 'perfect,' and 'flawless,' I previously ruled that these statements were not puffery and were materially misleading[.]" ECF No. 90 at 21. However, the Court held scienter was still lacking as to Colglazier because Plaintiffs failed to allege that he knew Unity had deviated from its landing cone and FAA-authorized airspace, or knew of the FAA investigation, when he made his August 5, 2021

4

statements. *See id.* at 37-41. The Court found that the SAC sufficiently alleged falsity and scienter as to Branson in connection with his statements about the July 11, 2021 flight, and the case then proceeded to discovery.[1]

### B. Discovery

Judge Merkl held a Rule 16 conference on February 8, 2024. The initial scheduling order Judge Merkl entered provided an August 30, 2024 deadline to complete fact discovery, and set a deadline of July 1, 2024, to amend pleadings and add parties. Minute Entry dated February 8, 2024.

On July 29, 2024, Judge Merkl reset the completion of fact discovery to December 11, 2024, and the deadline to amend pleadings to August 21, 2024. Minute Order dated July 29, 2024.

On October 23, 2024, the Court extended the deadline for fact discovery completion to March 21, 2025. ECF No. 137.

Throughout this time, Plaintiffs were attempting to secure Virgin Galactic's deposition. On May 29, 2024, Plaintiffs served a Rule 30(b)(6) deposition notice on Virgin Galactic, with a deposition date of June 19, 2024. On June 13, 2024, Defendants sent Plaintiffs a letter asserting objections to the deposition topics and stated that Virgin Galactic would not produce a representative for a deposition on the noticed date. Virgin Galactic also declined to provide an alternative date.

Plaintiffs elected to meet and confer with Defendants about the deposition topics. The parties finally agreed on a set of deposition topics in August 2024. At the close of negotiations, after Plaintiffs proposed multiple dates, Defendants stated that Virgin Galactic's representative

---

[1] On consent, Plaintiffs filed a Third Amended Complaint on August 21, 2024, which made the same allegations as the SAC, with the exception of new allegations concerning then newly-added Plaintiff Montgomery Brantley. ECF No. 128. Defendants did not move to dismiss the Third Amended Complaint, and filed their answer thereto on September 11, 2024 (ECF No. 130).

(Michael Moses, its President) was not available until October of 2024. Plaintiffs agreed to the only date in October that Defendants offered: October 23, 2024. But then, without providing any reason, Defendants subsequently stated that Mr. Moses was no longer available on that date and could only appear for a deposition on October 18, 2024. On September 9, 2024, Plaintiffs confirmed their agreement to take Virgin Galactic's deposition on October 18, 2024 instead.

On October 3, 2024, Defendants unilaterally cancelled the deposition, stating that the witness was no longer available on October 18, 2024 and did not provide any alternative dates. On October 3, October 10, October 17, and November 13, 2024, Plaintiffs requested that Defendants offer alternative dates, adding that they would travel to meet Mr. Moses wherever he was available. Finally, on December 10, 2024, Defendants offered Mr. Moses for a combined fact/30(b)(6) representative deposition on January 23 and 24, 2025, which then proceeded on those dates.

### C. Virgin Galactic's Rule 30(b)(6) Testimony

At his deposition as Virgin Galactic's Rule 30(b)(6) designee, and as reflected in the 4AC, Moses testified that he had kept Colglazier informed of all material developments concerning the July 11, 2021 flight in near real-time. Moses confirmed that he had told Colglazier on July 11 or 12, 2021, that Unity had strayed from its landing cone during the flight. Moses also confirmed that he had told Colglazier that the deviation had triggered a rare red Crew Alert System ("CAS") message; such messages are reserved for emergency conditions requiring immediate action. Moses further stated that on July 23, 2021, he told Colglazier that Unity had strayed from its FAA-authorized airspace during the flight, that Virgin Galactic had not disclosed the deviation to the FAA, and that the FAA was investigating both violations. 4AC ¶385.

Moses stated that he then told Colglazier that Virgin Galactic was to deliver a presentation to the FAA on August 3, 2021, and the subject matter thereof (Virgin Galactic's violations in

connection with the July 11, 2021 flight). 4AC ¶¶387, 389. In the August 3, 2021 FAA presentation slides, Virgin Galactic admitted that it had violated FAA rules both by deviating from its authorized airspace and by failing to disclose such violation to the FAA. *Id.* Virgin Galactic also told the FAA that it was taking action "to ensure it doesn't happen again." 4AC ¶249.

Within two weeks of the deposition, Plaintiffs requested that Defendants consent to the filing of the 4AC and provided a copy of the proposed 4AC to Defendants. Defendants did not consent.

The 4AC re-alleges the statements made by Colglazier that the Court previously dismissed. In addition, the 4AC alleges a new actionable statement, Colglazier's August 5, 2021 claim that ***"all safety and flight-related elements from the ships performed as expected."*** 4AC ¶316. But the 4AC's most significant additions are allegations that cure the deficiencies the Court previously identified as to Colglazier's scienter. Indeed, the 4AC alleges that Moses told Colglazier the facts that show the latter's statements were false: on July 11 or 12, 2021, that Unity had deviated from its flight cone, and on July 23, 2021, that Unity had deviated from its FAA-authorized airspace and that Virgin Galactic had failed to alert the FAA, and that the FAA was investigating both violations. Accordingly, Colglazier knew at the time of his statements on August 5, 2021, that his statements were false or misleading.

The 4AC also amends the class definition to include persons "who purchased ***or otherwise acquired***" Virgin Galactic securities (4AC ¶1 (emphasis added)) and corrects a mathematical error concerning Plaintiff Montgomery Brantley's transactions (4AC ¶419).

## III. PLAINTIFFS MEET RULE 15

### A.  Legal Standard

Under Fed R. Civ. P. 15(a)(2), leave to amend a complaint shall freely be granted if justice

so requires, "and should not be denied unless (1) the motion is filed after undue delay, (2) the movant acts in bad faith, (3) granting the leave to amend would prejudice the adverse parties or (4) the amendment sought will be futile." *Bray v. City of N.Y.*, 2004 WL 2852072, at *1 (S.D.N.Y. Dec. 13, 2004). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).

Motions to "join new parties (or to re-join parties who have previously been dismissed from an action) [are] governed by Rule 21." *Escoffier v. City of New York*, 2017 WL 65322, at *2 (S.D.N.Y. Jan. 4, 2017); *Capitol Recs., Inc. v. MP3tunes, LLC*, 2009 WL 3364036, at *4 (S.D.N.Y. Oct. 16, 2009) ("Rule 21 provides that 'the court may at any time, on just terms, add or drop a party.' Rule 21 on its face is not limited to new parties. Courts in this circuit have considered rejoining a previously dismissed defendant pursuant to Rule 21."). Whether Rule 21 or 15 governs is immaterial because "in deciding Rule 21 motions, 'courts adhere to the same standard of liberality afforded to motions to amend under Rule 15.'" *Escoffier*, 2017 WL 65322, at *2. *See also Sheldon v. PHH Corp.*, 1997 WL 91280, at *3 (S.D.N.Y. Mar. 4, 1997), *aff'd* 135 F.3d 848 (2d Cir. 1998) ("While plaintiffs' motion properly is considered under Rule 21 rather than Rule 15, nothing material turns on this distinction. Under either rule, leave of the Court is required to add VMS as a defendant. To the extent the limited case law under Rule 21 permits a conclusion, the standard under that rule is the same as under Rule 15.").

**B. Amendment Will Not Be Futile**

"[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *Jaigua v. Kayafas Contracting Co. Inc.*, 2019 WL 1115025, at *2 (E.D.N.Y. Mar. 11, 2019) (quoting *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund*

*v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015)). "To survive the futility analysis, as with a motion to dismiss, a proposed amended complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.*

The Court's previous findings establish that the 4AC states a claim and thus, that amendment would not be futile. The Court previously found that Plaintiffs had sufficiently alleged falsity for Colglazier's August 5, 2021 statement that "*[w]e executed a successful spaceflight …*  ***Unity 22 demonstrated further proof of our technical readiness*** and [the flight] … ***validated the inherent safety and design of our system.***" ECF No. 90 at 21; *see* 4AC ¶316 (re-alleging statement). The 4AC newly alleges another statement Colglazier made on August 5, 2021, that ***"all safety and flight-related elements from the ships performed as expected*** " and cited a minor issue on the flight while assuring investors that "***[t]his is not a flight issue and it's not a safety issue.***" 4AC ¶316. This statement is also misleading for the same reasons. 4AC ¶317.

The 4AC addresses the Court's prior findings that Plaintiffs did not allege Colglazier's scienter because Plaintiffs did not make "***any allegations that Colglazier was told that the flight deviated from its landing cone prior to making his public statements***" or make "any particularized allegation that Colglazier was informed of the FAA's inquiry into Unity's deviation from its airspace" in the simplest possible way (ECF No. 58 at 50; ECF No. 90 at 41): the 4AC shows that Colglazier was told as much. Moses told Colglazier that Unity deviated from its landing cone during the July 11, 2021 flight on either the same day of the flight (July 11, 2021), or one day after the flight (July 12, 2021). 4AC ¶382. Moses also conveyed the seriousness of the deviation, explaining that the deviation had caused a rare red CAS message. *Id.* The deviation was just one of the serious safety and flight issues Moses communicated to Colglazier. Indeed, Moses told Colglazier on or around July 23, 2021, that Unity had also deviated from its FAA-authorized

9

airspace during the July 11, 2021 flight, that Virgin Galactic had failed to inform the FAA as required, and that the FAA was investigating both violations. 4AC ¶385. Moses told Colglazier Virgin Galactic would be meeting with the FAA on August 3, 2021, during which meeting Virgin Galactic admitted its violations to the FAA and assured the agency it was taking action to "to ensure it doesn't happen again." 4AC ¶249. Thus, Colglazier was told, in detail, prior to his August 5, 2021 statements, that Unity had "deviated from its landing cone" during the July 11, 2021 flight, and much more. The 4AC sufficiently alleges Colglazier's recklessness.

In opposing Plaintiffs' letter motion seeking leave to amend (ECF No. 148-1), Defendants did not dispute the veracity of the 4AC's new allegations. ECF No. 151. Defendants also did not dispute that the 4AC sufficiently alleges that when Colglazier made his statements claiming there were no safety or flight issues on the July 11, 2021 flight, Colglazier knew that Unity had deviated from its flight cone and its FAA-authorized airspace, that Virgin Galactic had not contemporaneously reported as much to the FAA, and that the FAA was investigating both violations. *Id.* Instead, Defendants argued that Colglazier's statements were not false because these many defects were not sufficiently serious, which is merely a disfavored materiality argument. *Id.* at 2. Moreover, Defendants' argument improperly relies on information extrinsic to the 4AC.

Further, the facts Defendants refer to, at best, create a premature factual dispute not suitable for resolution on a motion to dismiss or even at summary judgment. Defendants rely on their subjective assessment of Virgin Galactic's Rule 30(b)(6) witness in a deposition in which the witness was defended by Defendants' counsel. It is hardly surprising that Virgin Galactic is taking its own side in this litigation.

10

Because the 4AC supplies precisely what the Court previously found lacking, it states a claim for Colglazier's material misstatements about the July 11, 2021 flight. Thus, Plaintiffs' requested amendment would not be futile.

### C. No Undue Prejudice Will Result From Plaintiffs' Amendment

Only "undue" prejudice can justify denying leave to amend. *Shrader*, 863 F.3d at 174. "In deciding whether … prejudice exists, courts should consider whether the new claim would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute.'" *Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir.2000) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993)). "The possibility 'that an amendment will require the expenditure of additional time, effort, or money [does] not constitute 'undue prejudice.'" *Cat3, LLC v. Black Lineage, Inc.*, 2015 WL 5559569, at *4 (S.D.N.Y. Sept. 21, 2015). "[D]elay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice." *Shrader*, 863 F.3d at 174.

Defendants will not need to expend significant additional resources as a result of Plaintiffs' requested amendment. The parties have already been engaging in discovery on the details of the July 11, 2021 flight and subsequent FAA investigation - these are some of the central issues in this case. Moreover, because Colglazier made his last alleged misstatements on August 5, 2021 and the operative complaint alleges insider trading claims for Branson's sales on August 12-15, 2021, the parties have also been conducting discovery on what Virgin Galactic learned up until that date. Plaintiffs will likely need some supplemental document discovery that bears on Colglazier's scienter, but certainly will not need to restart at step one.[2] Further, "'[w]here the additional facts alleged in an amended complaint 'arise out of the same core of operative facts,' as here, prejudice

---

[2] While Colglazier was a custodian, Defendants have produced surprisingly few of his emails.

11

is mitigated because the original complaint provided the defendant with adequate notice of the allegations." *Shovah v. Mercure*, 44 F. Supp. 3d 504, 508 (D. Vt. 2014); *Gonzalez v. Wicked Taco LLC*, 2025 WL 353972, at *19 (E.D.N.Y. Jan. 31, 2025) (amendments "do not prejudice a defendant in light of the notice provided for 'additional claims aris[ing] from the same operative facts as the original claim.'").

Nor will amendment significantly delay the resolution of the dispute. While discovery has been ongoing, no critical case events would have to be redone due to Plaintiffs' amendment. Plaintiffs notified Defendants' counsel that they sought to amend on February 7, 2025, which, at that time, was four months before the close of fact discovery, five months before expert reports were due, and nine months before the deadline for filing motions for summary judgment. Moreover, Colglazier's interests have been effectively represented throughout this litigation. All Defendants in this case have at all relevant times been represented by the same counsel. And, as Virgin Galactic's CEO at all relevant times during this litigation, Colglazier had every incentive to oversee Virgin Galactic's counsel and he would have had the opportunity to weigh in on any decisions impacting the course of the litigation.

Finally, even if there were any prejudice, it would certainly not be "undue" because it was self-inflicted. Plaintiffs would have taken Virgin Galactic's deposition in June 2024 if Defendants had cooperated. And Plaintiffs would have taken the deposition in October 2024, on the date(s) that the parties had agreed to, had Defendants not unilaterally cancelled it. It was Defendants whose repeated delays forced Plaintiffs to take the deposition in late January 2025.

### D. Plaintiffs' Request To Amend Is Made In Good Faith

Courts rarely deny leave to amend due to bad faith and only when a party has failed to make allegations at the time of an earlier pleading despite having the facts available to do so. *Lee*

12

*v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 304 (S.D.N.Y. 1996), *aff'd,* 116 F.3d 465 (2d Cir. 1997). Plaintiffs alleged claims against Colglazier in the FAC and the SAC. The Court previously dismissed Plaintiffs' claims against Colglazier because it found that Plaintiffs had not shown Colglazier knew facts that made his statements false or misleading. Upon obtaining evidence in discovery that demonstrated that Colglazier knew such facts, Plaintiffs promptly sought leave to amend to conform the pleadings to proof. There is no evidence that Plaintiffs' requested amendment was made in bad faith.[3]

## IV. GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER TO PERMIT AMENDMENT UNDER RULE 16

The deadline under the scheduling order to amend pleadings or add new parties as of right passed on August 21, 2024. However, courts allow amendment past a scheduling order's deadline to amend the pleadings if the movant shows good cause. "The 'good cause' inquiry turns on the diligence of the party seeking to modify the scheduling order." *Hurtado v. Hudson Fulton Corp.*, 2023 WL 2945846, at *4 (S.D.N.Y. Apr. 14, 2023). Courts find good cause when parties move to amend shortly after the discovery of new evidence that they could not have unearthed before the deadline to amend. *See, e.g., Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (finding good cause because plaintiff "could not realistically have added allegations" before uncovering facts in Rule 30(b)(6) deposition).

---

[3] Amendment is also appropriate to conform the pleadings to Plaintiffs' proposed class definition because courts routinely certify classes of investors who have "purchased or otherwise acquired" the securities at issue. *See, e.g.*, *In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *17 (E.D.N.Y. Aug. 8, 2023) (certifying a class of "[a]ll persons and entities who purchased or otherwise acquired" the company's securities); *In re Synchrony Fin. Sec. Litig.*, 2023 WL 1503032, at *14 (D. Conn. Feb. 3, 2023) (same); *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 209 (S.D.N.Y. 2022) (same).

Here, Plaintiffs had no ability to obtain evidence showing Colglazier's scienter until Virgin Galactic's Rule 30(b)(6) deposition. The Court previously dismissed Plaintiffs' claims against Colglazier because it found that Plaintiffs had not sufficiently alleged that he knew Unity had left its landing cone during the July 11, 2021 flight or that he knew about the FAA investigation at the time of his statements. None of the documents Defendants have produced in discovery show as much either. As Plaintiffs learned at the deposition, Moses did tell Colglazier of these events, and many other alarming details, in oral conversations. Plaintiffs could not uncover these facts before they had an opportunity to examine Moses at the January 2025 deposition. Plaintiffs then promptly moved to amend within two weeks of learning these new facts. Plaintiffs' dispatch easily satisfies the diligence requirement. *Walsh v. Versa Cret Contracting Co., Inc.*, 2023 WL 3570699, at *3 (E.D.N.Y. May 18, 2023) ("[G]ood cause has been found when "the basis for the claim arose several months before the party requested the amendment.""); *Est. of Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977, at *3 (S.D.N.Y. Oct. 19, 2007) (plaintiffs showed diligence by moving to amend "a mere ten days" after deposition revealed evidence); *Cavalieri v. TJH Med. Servs., P.C.*, 2014 WL 7928459, at *3 (E.D.N.Y. Dec. 30, 2014) (good cause to amend despite two-month delay in moving).

Moreover, where delay in seeking amendment is caused by an adverse witness, as here, courts find the diligence requirement met. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 (9th Cir. 2007). Plaintiffs agreed to several continuances to resolve any issues about the deposition topics' scope and further, because Defendants employed delaying tactics to avoid producing a witness.

## V. AMENDMENT WILL NOT IMPACT THE MOTION FOR CLASS CERTIFICATION

The 4AC slightly modifies the class definition to include, in addition to persons who "purchased" Virgin Galactic common stock, those who "otherwise acquired" such securities. 4AC

14

¶1. The amendment comports with Plaintiffs' requested class. ECF No. 143 at 1 n.1. Because the Court has discretion to modify the class definition, amending the complaint has no impact on the pending motion for class certification. Moreover, the Court has already granted Defendants an opportunity to make their arguments in opposition to Plaintiffs' request to modify the class definition to include persons who "otherwise acquired" Virgin Galactic common stock. ECF No. 153. Any prejudice to Defendants has thus been addressed.

Amendment would have no other impact on the pending motion for class certification. Courts commonly grant motions for leave to amend when motions for class certification are pending or even after granting class certification. *See, e.g., Bensinger v. Denbury Res. Inc.*, 2013 WL 3353975, at *3 (E.D.N.Y. July 3, 2013) (granting motion for leave to amend after granting class certification motion); *Sughrim v. N.Y.C.*, 2022 WL 3447545, at *2 (S.D.N.Y. Aug. 17, 2022) (granting motion for leave to amend with motion for class certification pending). These include decisions that, unlike here, have an impact on class issues. *See, e.g., Bensinger*, 2013 WL 3353975, at *3 (adding new plaintiff after class certification granted). Likewise, Plaintiffs repleading their claims against Colglazier will not require the filing of a renewed motion for class certification because Defendants "have had ample notice of Plaintiffs' claim given that Plaintiffs attempted to plead it two times previously, and it is premised on the same theory as their existing claims." *Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 547, 553 (S.D.N.Y. 2022) (granting motion for leave to amend to replead claims filed after full briefing of motion for class certification).

## VI. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and permit Plaintiffs to file the 4AC.

15

Dated: March 26, 2025

Respectfully submitted,

GLANCY PRONGAY & MURRAY LLP

By: */s/ Natalie S. Pang*
Kara M. Wolke
Ex Kano S. Sams II
Natalie S. Pang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495
Email: kwolke@glancylaw.com
　　　esams@glancylaw.com
　　　npang@glancylaw.com

THE ROSEN LAW FIRM, P.A.
Jonathan Horne, Esq. (JH 7258)
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jhorne@rosenlegal.com
　　　lrosen@rosenlegal.com

*Counsel for Plaintiffs*

16