# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANE LAVIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br><br> v. <br><br><br> VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, and JON CAMPAGNA, <br><br> Defendants. | CASE No.: 1:21-cv-03070-ARR-TAM |

**PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT VIRGIN GALACTIC HOLDINGS, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs, by and through their undersigned counsel, will take the deposition upon oral examination of the designated representative or representatives of Virgin Galactic Holdings, Inc. ("Virgin Galactic"). Such deposition will take place on June 19, 2024, commencing at 9:00 a.m. PST, at the offices of Glancy Prongay & Murray LLP, 1925 Century Park East, Suite 2100, Los Angeles, CA 90067, or at such other time and place as the parties mutually agree. The deposition will be taken before a person authorized by law to administer oaths under Fed. R. Civ. P. 28(a) and shall continue from one day to the next, excluding Sundays and holidays, until the examination is completed. The deposition will be recorded stenographically and will be videotaped by a

qualified videographer.  Unless otherwise specified, the relevant time period for testimony is February 1 2019 through September 3, 2021, both dates inclusive, and includes information that concerns or relates to such period notwithstanding whether the information was gathered, prepared, or published outside of the relevant period.

Pursuant to Fed. R. Civ. P. 30(b)(6), Virgin Galactic shall designate and produce for deposition one or more of its officers, directors, managing agents, employees, or other persons most qualified to testify on behalf of Virgin Galactic regarding the matters set forth in Schedule A, which is attached hereto.

Dated: May 29, 2024

By: */s/ Natalie S. Pang*
Kara M. Wolke
Ex Kano Sams II
Natalie S. Pang
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150
Email: kwolke@glancylaw.com
         esams@glancylaw.com
         npang@glancylaw.com

Jonathan Horne, Esq. (JH 7258)
Laurence M. Rosen, Esq. (LR 5733)
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jhorne@rosenlegal.com
         lrosen@rosenlegal.com

*Attorneys for Plaintiffs*

1

## SCHEDULE A

### INSTRUCTIONS AND DEFINITIONS

1.      For the purpose of construing the scope of the topics identified in this notice (the "Topics"), the terms used shall be given their most expansive and inclusive interpretation.

2.      Each Topic shall be construed independently and not with reference to any other Topic for the purpose of limitation or exclusion.

3.      "Bloomberg Interview" means Bloomberg Markets' interview of Richard Branson and Michael Colglazier on July 11, 2021, following the Unity 22 Flight (as defined herein).

4.      "Branson" means Defendant Richard Branson.

5.      "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

6.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

8.      "FAA" means the Federal Aviation Administration.

9.      "FAA Investigation" means the FAA's investigation in connection with the Unity 22 Flight (as defined herein).

10.      "FAA Meeting" means the FAA's meeting with Virgin Galactic (as defined herein) following the Unity 22 Flight (as defined herein), on August 3, 2021.

11.      "February 2019 Flight" means Virgin Galactic's (as defined herein) test flight on February 22, 2019.

12.      "Individual Defendants" means Richard Branson and Chamath Palihapitiya.

13.      "Meeting" means the contemporaneous presence, whether in person or through any other means of Communications (as defined herein), of any natural persons, whether or not such

1

presence was by chance or prearranged and whether or not the meeting was formal, informal, or occurred in connection with some other activity.

14.     "Person" means any natural person or any legal entity, including, without limitation, any business and/or governmental entity or association.

15.     "Unity" means Virgin Galactic's (as defined herein) SpaceShipTwo Spaceship, VSS Unity.

16.     "Unity 22 Flight" means the Virgin Galactic (as defined herein) SpaceShip Two VH01 human spaceflight launch which occurred on July 11, 2021.

17.     "Virgin Galactic" or the "Company" means Virgin Galactic Holdings, Inc., and includes Virgin Galactic's current and former officers, directors, employees, committees, partnerships, joint ventures, domestic and foreign parents, predecessors, successors, direct and indirect subsidiaries, affiliates, divisions, branch offices, agents, representatives, attorneys, agents, consultants, contractors, and/or any other Person (as defined herein) acting or purporting to act on Virgin Galactic's behalf or on whose behalf Virgin Galactic is acting or purporting to act on behalf of.  The terms "subsidiary," "affiliates," and "joint venture," refer to any Person (as defined herein) in which there is partial or total ownership or control between Virgin Galactic and any other Person (as defined herein).

18.     The use of the singular form of any word includes the plural and vice versa.

19.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

20.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Topic all information that might otherwise be construed to be outside of its scope.

21.     The term "including" shall be construed as meaning "including, but not limited to".

## TOPICS

1.     Virgin Galactic's management structure and lines of reporting.

2

2.    Virgin Galactic's insider trading policy, including but not limited to its application to the Individual Defendants.

3.    The February 2019 Flight, including but not limited to:

    a.  The identities, by job title or description and specific roles and responsibilities, of any Persons who may possess information (and the nature of that information) Concerning the February 2019 Flight, including but not limited to any subtopics within this Topic.

    b.  Any investigation into the February 2019 Flight.

    c.  Any damage sustained by Unity during and/or because of the February 2019 Flight, including the nature and extent of any damage to Unity's horizontal stabilizers, any inspection thereof, and any attempts to conceal damage to Unity.

    d.  The reasons for the resignation of Todd Ericson shortly before October 2019, and any connection between Todd Ericson's resignation and the February 2019 Flight.

    e.  Any repairs of and/or improvements made to Unity between the February 2019 Flight and October 25, 2019.

    f.  Any Meetings of Virgin Galactic's board of directors, including any committees and/or subcommittees thereof, between February 22, 2019, and October 25, 2019, both dates inclusive, at which information Concerning the February 2019 Flight was discussed.

    g.  All Documents and Communications provided by or exchanged between Virgin Galactic and Branson Concerning the February 2019 Flight or any subtopic of this Topic.

    h.  All sales of Virgin Galactic securities on October 25, 2019, made by Branson and/or entities under Branson's direct or indirect control, including V10 and Virgin Investments Limited, and including the

3

decision to engage in the transactions, the identity of any Persons involved in the decision to engage in the transactions, and the identity of any Persons involved in the execution and/or authorization of the transactions.

i. The process by which Virgin Galactic made the decision to disclose, or not disclose, any information Concerning the February 2019 Flight.

j. Virgin Galactic's Communications with investors, analysts, news reporters, or any other public source Concerning the February 2019 Flight.

k. Any discussion, analysis, or decision Concerning whether any non-publicly disclosed information Concerning the February 2019 Flight constituted material non-public information.

4. The Unity 22 Flight, including but not limited to:

a. The identities, by job title or description and specific roles and responsibilities, of any Persons who may possess information (and the nature of that information) Concerning the Unity 22 Flight, including but not limited to any subtopics within this Topic.

b. The planning and preparations for the Unity 22 Flight, including any preparatory and training materials, flight readiness plans, pre-flight meeting materials, the decisions Concerning who would be onboard Unity and Eve and in mission control in connection with the Unity 22 Flight, and the identities, job titles, and responsibilities of all Persons involved with preparing those materials or making decisions Concerning their content.

c. All engineering drawings and documentation for Unity as of the Unity 22 Flight depicting or describing Unity's interior layout as it was

4

configured for the Unity 22 Flight, Unity's top/cross-sections, bulkheads, netting, and chairs for crew and passengers.

d. The identities, job titles, and roles and responsibilities of each Person that was on board Unity and Eve or working in mission control in connection with the Unity 22 Flight.

e. The events and operations onboard Unity from takeoff to landing of the Unity 22 Flight, including Unity's deviation from its entry glide cone and Unity's departure from its planned route, all Communications by and between the Persons onboard Unity and any other Person whether onboard Unity, in mission control, or elsewhere, and any flight recordings or transcripts whether audio or visual of the Unity 22 Flight.

f. The actual and planned flight event phases and markers of the Unity 22 Flight.

g. Any flight readiness reviews Concerning the Unity 22 Flight, including the identities, job titles, and responsibilities of all Persons involved in preparing or creating the flight readiness reviews and the manner by which any information in the flight readiness reviews was transmitted to Virgin Galactic's management, senior management, and/or board of directors.

h. Any quick-look, day-of reviews Concerning the Unity 22 Flight, including the identities, job titles, and responsibilities of all Persons involved in preparing or creating the reviews and the manner by which any information in the reviews was transmitted to Virgin Galactic's management, senior management, and/or board of directors.

i. Any post-flight reviews Concerning the Unity 22 Flight, including the identities, job titles, and responsibilities of all Persons involved in preparing or creating the post-flight reviews, and the manner by which

any information in the post-flight reviews was transmitted to Virgin Galactic's management, senior management, and/or board of directors.

j.  The preliminary post-flight debriefing on July 11, 2021, following the Unity 22 Flight, including Virgin Galactic's decision not to inform the FAA during the debriefing that a potential or actual pilot deviation had occurred and/or that Unity had strayed outside of its FAA-authorized airspace during the Unity 22 Flight.

k.  The Bloomberg Interview, including any preparatory materials or scripts, the identities of any Persons involved in preparations for the Bloomberg Interview, and any Documents and Communications which formed the basis for Branson's following statement during the Bloomberg Interview: "Well, look, the company is 17 years, they've had a number of flawless flights. They've never had any major, major technical issues even, you know, in the last 17 years and this was absolutely and utterly flawless[.]"

l.  All Communications by and between Branson and Virgin Galactic, including Virgin Galactic's board of directors or any individual director thereof, during the period of January 1, 2021 through September 3, 2021, both dates inclusive.

m.  All Communications by and between any of Branson's board designees and Virgin Galactic during the period of January 1, 2021 through September 3, 2021, both dates inclusive.

n.  The events leading up to the FAA Meeting, including: (1) how Virgin Galactic learned that the meeting would be held; (2) how the meeting was scheduled and planned; (3) how the location of the meeting was selected; (4) how Virgin Galactic identified or selected who from Virgin Galactic would attend the meeting; (5) what preparations Virgin

6

Galactic made for the meeting; (6) any communication with the FAA and/or local air traffic control regarding the nature of the FAA Meeting or the topics that could or would be discussed; (7) any Documents given to or received from the FAA and/or local air traffic control in advance of the FAA Meeting; and (8) the identifies of any and all Virgin Galactic personnel who communicated with the FAA and/or local air traffic control prior to or after the meeting, and the topics of any such Communications; (9) the creation, production, and/or collection of any Documents including any drafts, preparatory materials, research, minutes, Communications, and/or presentation slides; and (10) any internal presentations delivered in preparation for the FAA Meeting.

o. Any actions that the FAA required and/or recommended Virgin Galactic to take prior to conducting further FAA-licensed launches of Virgin Galactic's space vehicles following the Unity 22 Flight, and what, if any, steps Virgin Galactic took to address those required and/or recommended actions, including the anticipated and actual results, and the identities, job titles, and responsibilities of all Persons involved in overseeing, planning and/or carrying out such actions.

p. Any Meetings of Virgin Galactic's board of directors, including any committees and/or subcommittees thereof, between January 1, 2021 and September 3, 2021, both dates inclusive, at which information Concerning the Unity 22 Flight was discussed.

q. Virgin Galactic's Communications with investors, analysts, news reporters, or any other public source Concerning the Unity 22 Flight, including the FAA Meeting and the FAA Investigation.

r.  All Documents and Communications provided by and between Virgin Galactic and Branson Concerning the Unity 22 Flight, including the FAA Meeting and the FAA Investigation.

s.  Any sales of Virgin Galactic securities between August 10, 2021 and August 12, 2021, both dates inclusive, made by Branson and/or entities under Branson's direct or indirect control, including V10 and Virgin Investments Limited, and including the decision to engage in the transactions, the identity of any Persons involved in the decision to engage in the transactions, and the identity of any Persons involved in the execution and/or authorization of the transactions.

t.  Virgin Galactic's sales of its securities between July 12, 2021 and July 16, 2021, both dates inclusive, including the decision to engage in the transactions, the identity of any Persons involved in the decision to engage in the transactions, and the identity of any Persons involved in the execution and/or authorization of the transactions.

u.  Virgin Galactic's policies and procedures for its management, senior management, board of directors, and all employees who communicate with the FAA for work-related purposes Concerning the use of personal communications devices, personal email, personal computer or mobile devices, or any other non-Virgin Galactic maintained device for any work-related communications or any work-related functions, including the location and identification of all Documents Concerning this Topic.

5.  The locations where the Individual Defendants maintain Documents and electronically stored information Concerning their roles and responsibilities at Virgin Galactic and/or their involvement and any business with Virgin Galactic.

6.  The location, format, and accessibility of Virgin Galactic's electronically stored information, including all personal computing devices (including laptops, phones, and tablets),

8

network servers, cloud servers, messaging platforms, and email servers for its managers and senior managers, and in addition, those used by all Virgin Galactic employees who communicate with the FAA for work-related purposes.

7.      Virgin Galactic's litigation hold, if any, Concerning Documents relevant to this litigation; specifically, when such a hold was instituted, to whom, and how such a hold is being monitored for compliance.

8.      The location of all Documents Concerning the February 2019 Flight.

9.      The location of all Documents Concerning the Unity 22 Flight, including the FAA Investigation and the FAA Meeting.

10.     The location of all Documents Concerning Meetings and Communications with the FAA.

**CERTIFICATE OF SERVICE**

I certify that on May 29, 2024, a copy of this document was served on all counsel of record by email.

/s/ Alexia Shiri
Alexia Shiri