**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANE LAVIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, and JON CAMPAGNA, <br><br> Defendants. | Case No. 1:21-cv-03070-ARR-TAM |

**REPLY BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................... 1

II.    AMENDING TO RESTORE COLGLAZIER AS A DEFENDANT IS WARRANTED ..... 1

       A.     Amendment Is Procedurally Proper ........................................................................ 1

       B.     The PSLRA Does Not Prohibit Amendment ......................................................... 4

       C.     The Court Should Amend The Scheduling Order To Allow Plaintiffs And The Class To Proceed Under The Proposed Fourth Amended Complaint ............................ 7

       D.     Plaintiffs Satisfy Rule 15 ...................................................................................... 8

             1.     Plaintiffs Diligently Sought Discovery And Moved To Add Colglazier As A Defendant As Soon As Reasonably Practicable Following The Discovery Of Supporting Evidence ............................................................................... 8

             2.     Defendants Fail To Articulate Any Legitimate Prejudice ....................... 11

                   (a)     Defendants Are Not Unfairly Prejudiced In Terms Of Timing Or Discovery, As Neither Will Be Impacted ..................................... 12

       E.     Amendment Is Not Futile Because The New Allegations State A Claim Against Colglazier ........................................................................................................... 13

             1.     The 4AC Alleges Precisely The Facts Of Colglazier's Scienter That The Court Previously Found Missing ............................................................. 13

             2.     Defendants' Arguments About The Interpretation Of Moses's Testimony Are Not Properly Decided In Their Favor On This Motion And, In Any Event, Colglazier's Own Testimony Further Supports His Scienter ........ 16

III.   THE REVISED CLASS DEFINITION IS APPROPRIATE ........................................... 20

IV.   CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

## CASES

*Berkley Ins. Co. v. Prime Ins. Co.*,
2022 WL 18135182 (E.D.N.Y. Mar. 28, 2022) ......................................................................... 17

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) ...................................................................................................... 17

*Crostley v. Lamar County*,
717 F.3d 410 (5th Cir. 2013) ...................................................................................................... 5

*D'Attore v. New York City*,
2011 WL 3629018 (S.D.N.Y. Aug. 17, 2011) ............................................................................ 7

*Gebhart v. S.E.C.*,
595 F.3d 1034 (2d Cir. 2010) .................................................................................................... 22

*Goureau v. Lemonis*,
2021 WL 5909742 (S.D.N.Y. Dec. 14, 2021) ............................................................................ 8

*In re Alibaba Grp. Holding Ltd. Sec. Litig.*,
2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023) ......................................................................... 17

*In re Bisys Sec. Litig.*,
496 F. Supp. 2d 384 (S.D.N.Y. 2007) ........................................................................... 6, 10, 11

*In re Constellation Energy Grp., Inc. Sec. Litig.*,
2012 WL 1067651 (D. Md. Mar. 28, 2012) ............................................................................... 9

*In re Initial Pub. Offering Sec. Litig.*,
358 F. Supp. 2d 189 (S.D.N.Y. 2004) ...................................................................................... 17

*In re N. Telecom Ltd. Sec. Litig.*,
42 F. Supp. 2d 234 (S.D.N.Y. 1998) ........................................................................................ 20

*In re Petrobras Sec. Litig.*,
2016 WL 3144395 (S.D.N.Y. May 5, 2016) ............................................................................ 10

*In re Pfizer Inc. Sec. Litig.*,
2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) .............................................................................. 9

*In re Silver Wheaton Corp. Sec. Litig.*,
2018 WL 1517130 (C.D. Cal. Mar. 26, 2018) ........................................................................... 9

*In re Turquoise Hill Resources Ltd. Sec. Litig.*,
 2024 WL 791545 (S.D.N.Y. Feb. 26, 2024) ................................................................ 6, 9, 10

*In re Vivendi, S.A. Sec. Litig.*,
 838 F.3d 223 (2d Cir. 2016) ................................................................................................ 8

*Lickteig v. Cerberus Cap. Mgmt., L.P.*,
 2020 WL 7629876 (S.D.N.Y. Dec. 22, 2020) ...................................................................... 8

*Maricultura Del Norte, S. de R.L. de C.v. v. WorldBusiness Cap., Inc.*,
 2016 WL 9735720 (S.D.N.Y. Dec. 7, 2016) ......................................................................... 7

*Medehkar v. U.S. Dist. Court for the N. Dist. of Cal.*,
 99 F.3d 325 (9th Cir. 1996) .............................................................................................. 10

*Novak v. Kasaks*,
 216 F.3d 300 (2d Cir. 2000) .............................................................................................. 17

*Olaf Sööt Design, LLC v. Daktronics, Inc.*,
 299 F. Supp. 3d 395 (S.D.N.Y. 2017) ............................................................................... 16

*Pasternack v. Shrader*,
 863 F.3d 162 (2d Cir. 2017) .............................................................................................. 12

*Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*,
 335 F.R.D. 54 (M.D. Pa. 2020) ....................................................................................... 6, 9

*Petrie v. Elec. Game Card, Inc.*,
 761 F.3d 959 (9th Cir. 2014) .............................................................................................. 8

*Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*,
 2022 WL 426199 (E.D.N.Y. Feb. 11, 2022) ...................................................................... 16

*Rooney v. EZCORP, Inc.*,
 2018 WL 3596054 n. 6 (W.D. Tex. July 26, 2018) .............................................................. 7

*Sacerdote v. New York University*,
 9 F.4th 95 (2d. Cir. 2021) ................................................................................................. 11

*Sanderson v. First Liberty Ins. Corp.*,
 2018 WL 11426749 (N.D.N.Y. Sept. 17, 2018) ................................................................... 7

*State Farm Ins. Companies v. Kop-Coat, Inc.*,
 183 F. App'x 36 (2d Cir. 2006) .................................................................................... 16, 17

iii

*VanBrocklen v. Dept. of Homeland Sec.*,
2012 WL 2873373 (N.D.N.Y. July 12, 2012) ............................................................. 8

*Winer Family Trust v. Queen*,
503 F.3d 319 (3d Cir. 2007) ........................................................................................ 9

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
655 F.3d 1039 (9th Cir. 2011) ..................................................................................... 6

## **RULES**

Fed. R. Civ. P. 54(b) ................................................................................................... 6, 7

## I.    **INTRODUCTION**

In opposing Plaintiffs' motion for leave to amend, Defendants misapply doctrines and misstate facts in service of the thesis that a senior executive who misleads investors should never have to face these investors' claims unless these investors can specifically prove that executive's scienter with the information they had before discovery. Because the Private Securities Litigation Reform Act of 1995 ("PSLRA") only prohibits plaintiffs from obtaining discovery without stating a claim, with little to say about how plaintiffs may use this discovery to litigate their claims, the Court should grant leave to amend. Beyond that, amendment will not prejudice any Defendant, as it will not significantly expand discovery or change the contours of the case, nor will it otherwise delay the litigation. Colglazier's documents are already produced, he has been deposed, the fact discovery cut-off is still nearly two months away, and no trial date is set. The motion should be granted.

## II.    **AMENDING TO RESTORE COLGLAZIER AS A DEFENDANT IS WARRANTED**

### A.    **Amendment Is Procedurally Proper**

Defendants maintain that the Court's dismissal of the claims against Colglazier, which did not state whether dismissal was with prejudice, prevents Plaintiffs from reasserting claims. Defendants ask the wrong question and give the wrong answer.

First, whether dismissal was with or without prejudice is the wrong question. Colglazier is still before this Court because it never entered partial final judgment under Rule 54(b). *See Crostley v. Lamar County*, 717 F.3d 410, 420 (5th Cir. 2013) ("Because the district court did not certify as a final judgment its initial order dismissing the claims against Lamar County with prejudice, Lamar County was still a party to the suit at the time Appellants sought leave to amend their complaint. The district court thus abused its discretion in denying Appellants' motion for leave to amend.").

1

The real question is whether the Court's earlier decision dismissing a different version of the Complaint as to Colglazier is the law of the case, as one of Defendants' cited cases holds. *In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 386 (S.D.N.Y. 2007), *aff'd sub nom.* 305 F. App'x 742 (2d Cir. 2009).

There is no reason to apply the law of the case doctrine in this circumstance. When a plaintiff "seeks to assert new factual allegations addressing previously-identified pleading deficiencies," courts apply the traditional Rule 15 analysis. *See Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 74 (M.D. Pa. 2020), *aff'd,* 12 F.4th 337 (3d Cir. 2021) ("*SEPTA*").

But even if the law of the case applies, amendment is still warranted. Rule 54(b) permits amendment ***at any time before final judgment*** if Plaintiffs identify "an intervening change of controlling law, ***the availability of new evidence***, or the need to correct a clear error." Fed. R. Civ. P. 54(b) (emphasis added). Courts regularly find the Rule 54(b) standard satisfied when plaintiffs unearth new evidence in discovery supporting previously dismissed claims. *SEPTA*, 335 F.R.D. at 74 n.28. Indeed, they make these findings as a matter of course. *In re Turquoise Hill Resources Ltd. Sec. Litig.*, 2024 WL 791545, at *2, *5-*6 (S.D.N.Y. Feb. 26, 2024) ("Defendants do not dispute that the allegations are based on information disclosed for the first time in discovery, ***and that good cause therefore exists***."); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1059 (9th Cir. 2011) (holding that courts' ability to revive previously dismissed claims on the basis of newly discovered information should "temper[] the heightened pleading standards of the PSLRA."). Defendants do not even dispute that the newly alleged facts constitute "new evidence." And even if they did, the new facts are based on the testimony of senior Virgin

2

Galactic officials—including Colglazier himself—which Plaintiffs could only obtain through discovery.

Defendants' cited cases hold, at most, that where a complaint was dismissed with prejudice, plaintiffs may be required to meet the standard for amendment set out in Rule 54(b). *Sanderson v. First Liberty Ins. Corp.*, 2018 WL 11426749, at *3 (N.D.N.Y. Sept. 17, 2018); *Maricultura Del Norte, S. de R.L. de C.v. v. WorldBusiness Cap., Inc.*, 2016 WL 9735720, at *5 (S.D.N.Y. Dec. 7, 2016), *aff'd sub nom.* 769 F. App'x 44 (2d Cir. 2019). Moreover, it would have been sufficient for the courts to note that the cases had been dismissed with prejudice, but they did not do that. Instead, the courts ruled that amendment was futile.

Second, Defendants' assertion that dismissal was with prejudice is the wrong answer. Defendants do not point to any language in the Court's order finding dismissal ***with*** prejudice or otherwise discussing leave to amend. The Court did not discuss any of the reasons that would justify dismissal with prejudice: "[t]ellingly, the Court did not address whether further amendment would be futile." *Rooney v. EZCORP, Inc.*, 2018 WL 3596054, at *5 n. 6 (W.D. Tex. July 26, 2018). Courts in the Second Circuit do not dismiss with prejudice in orders that do not state as much. *D'Attore v. New York City*, 2011 WL 3629018 (S.D.N.Y. Aug. 17, 2011) ("[W]hile the June 2, 2011 Report & Recommendation recommends that the Court dismiss plaintiff's Fourteenth Amendment claim for overcrowding … ***it does not appear to unambiguously state whether the dismissal should be with or without prejudice. Accordingly, the Court hereby clarifies this ambiguity and orders that this claim be dismissed without prejudice***." *Id.* at *1 (emphasis added). *See also EZCORP*, 2018 WL 3596054, *5 (rejecting defendant's argument that silence meant with prejudice, stating "the Court's prior dismissal of Plaintiff's claims was not with prejudice....Indeed,

3

the Court's order made no mention of prejudice, nor did it give any other indication it intended its dismissal to be with prejudice.").

Defendants also misapply the cases they cite. Both cases involved the effect of a judgment. *VanBrocklen v. Dept. of Homeland Sec.*, 2012 WL 2873373, at \*3 (N.D.N.Y. July 12, 2012) (finding collateral estoppel because judgment presumed to be with prejudice); *Goureau v. Lemonis*, 2021 WL 5909742, at \*1 (S.D.N.Y. Dec. 14, 2021) (discussing preclusive effect of judgment). There is every reason to presume that a judgment is with prejudice, but that does not apply to interlocutory orders, as here.

### B.      The PSLRA Does Not Prohibit Amendment

The PSLRA is intended to prevent frivolous cases from proceeding to discovery. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 969 (9th Cir. 2014) ("The discovery stay was intended to prevent discovery abuses such as the 'unnecessary imposition of discovery costs on defendants,' particularly as a means to coerce settlement."). The PSLRA was not intended to, and does not, prevent plaintiffs in a meritorious ongoing case from using the fruits of discovery to allege new claims. *Id*. The Second Circuit decision in *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) rejected Defendants' argument that the PSLRA "confines securities-fraud plaintiffs to the particular alleged misstatements identified in their complaint" and instead just "prevent[s] securities-fraud plaintiffs from filing costly securities class-action suits on the basis of a barely formed hunch." *Id.* at 242, n.11; *see also Petrie*, 761 F.3d at 969 (allowing plaintiffs to use documents obtained in discovery to plead claims).

Thus, where later discovery permits plaintiffs to assert new claims or reassert dismissed claims, courts in PSLRA cases routinely allow leave to amend so long as it does not cause undue prejudice. *Vivendi*, 838 F.3d at 242; *see also Lickteig v. Cerberus Cap. Mgmt., L.P.*, 2020 WL 7629876, at \*6 (S.D.N.Y. Dec. 22, 2020) (rejecting argument that "permitting the amendment

4

would run afoul of the policies underlying the PSLRA by permitting information obtained in discovery to be used to amend the complaint"); *In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *2–3 (S.D.N.Y. Mar. 22, 2012) (granting leave to amend PSLRA complaint using information obtained during discovery and noting that "[c]ourts routinely grant leave to amend when a plaintiff seeks to refine the complaint to reflect evidence obtained during discovery"); *In re Constellation Energy Grp., Inc. Sec. Litig.*, 2012 WL 1067651, at *3 (D. Md. Mar. 28, 2012) (rejecting argument that "that the PSLRA prohibits plaintiffs from using information obtained through discovery to revive previously dismissed claims").

Thus, "[i]f a private securities case proceeds past the pleadings stage against a corporation and discovery reveals individual culpability, a plaintiff may seek permission to amend the complaint to assert claims against individual defendants." *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007); *see also Turquoise Hill*, 2024 WL 791545, at *2, *5-*6 (allowing plaintiffs to re-assert §10(b) claim against previously dismissed CEO defendant based on facts gleaned during discovery); *In re Silver Wheaton Corp. Sec. Litig.*, 2018 WL 1517130, at *5 (C.D. Cal. Mar. 26, 2018) (noting that courts "freely grant leave to amend in securities cases where plaintiffs learn new information during discovery," and rejecting argument that plaintiffs' efforts constituted an "'end run' around the PSLRA discovery stay through third-party discovery"); *SEPTA*, 335 F.R.D. at 75 ("the Court is persuaded by the authorities cited by [plaintiffs] concluding that the PSLRA discovery stay, explicitly directed at limiting the availability of discovery prior to a court sustaining the sufficiency of a complaint, does not bar the use of subsequently discovered evidence in support of a motion for leave to amend").

The Court found that the Second Amended Complaint stated a claim. ECF 87. The PSLRA has nothing to say about what further amendments plaintiffs may make. Nor is it unfair for

5

Plaintiffs to use evidence Defendants produced in discovery relating to the July 2021 flight, including testimony Colglazier himself gave, to allege a claim against Colglazier.

Defendants claim that *Petrobras* and *Bisys* support their argument that the PSLRA mandates against amendment during discovery after an earlier dismissal. Opp. at 9-10.[1] But as *Turquoise Hill* explained, both *Bisys* and *Petrobras* "were supportable on the conventional grounds of undue delay and prejudice." 2024 WL 791545, at *5. In *In re Petrobras Sec. Litig.*, 2016 WL 3144395 (S.D.N.Y. May 5, 2016), the plaintiffs sought leave to add marginal claims against an existing defendant raising "significantly different" legal issues. Weighing the claims' marginal merits against the disruption and prejudice caused by their assertion after discovery closed, the court declined to allow amendment. In *In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384 (S.D.N.Y. 2007), the plaintiffs sought to revive claims against a dismissed auditor. As in *Petrobras*, the plaintiffs' actions caused significant prejudice to a party (in *Bisys*, because the auditor had had no reason to participate in discovery), while the new facts added little "if any" weight to the existing claims. *Id.* at 387. As in *Petrobras*, the court found that prejudice outweighed the movant's showing. *See Turquoise Hill*, 2024 WL 791545, at *5 (distinguishing *Petrobras* and *Bisys* on these grounds).

Moreover, that courts weigh new evidence and prejudice against each other shows, in some cases, the balance will tilt in favor of allowing amendment. This is one of those cases. Colglazier is, and was, Virgin Galactic's CEO, and all defendants are represented by the same counsel. Colglazier had every reason to participate in discovery. Plaintiffs have taken his deposition, and

---

[1]Defendants' reliance on *Medehkar v. U.S. Dist. Court for the N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996) (Opp. at 9) is entirely inapposite. That case merely held that a defendant would not be compelled to provide initial disclosures while a motion to dismiss was pending, *i.e.*, no discovery would be conducted before the PSLRA discovery stay was lifted.

reasserting claims against him does not mandate substantial additional discovery. Moreover, here, unlike in *Bisys* or *Petrobras*, Plaintiffs have found the proverbial "smoking gun": Virgin Galactic's Rule 30(b)(6) representative testified that Colglazier was told of the very conditions he concealed from shareholders.

**C.    The Court Should Amend The Scheduling Order To Allow Plaintiffs And The Class To Proceed Under The Proposed Fourth Amended Complaint**

The Second Circuit requires a liberal approach to amendment even after the time for amendment as of right in a scheduling order has passed. In the Second Circuit, a scheduling order must explicitly state that "no amendment will be permitted" after a particular date "in order to trigger the Rule 16 standard." *Sacerdote v. New York University*, 9 F.4th 95, 116 (2d. Cir. 2021) (reversing district court order that denied leave to amend based on a failure to show good cause under Rule 16). After the "expiration of a specified period in a scheduling order" that does *not* have this explicit language, "the plaintiff must move the court for leave to amend, but the court should grant such leave 'freely . . . when justice so requires' pursuant to Rule 15(a)(2)." *Id*. at 115. Magistrate Judge Merkl's July 29, 2024 scheduling order states that "[t]he deadline for joining additional parties and amending the pleadings as of right is 8/21/2024," but does not state that no amendments would be permitted after that date. Thus, Rule 15(a)(2) governs, and the amendment should be allowed because "justice so requires."

Even if Rule 16 applied, Rule 16 merely requires a showing of good cause, which Plaintiffs have made. This Court has already held that Colglazier made statements likely to mislead a reasonable investor. ECF 58 at 26-27, 40, 41 (citing Colglazier's statements in FAC ¶¶566, 568, now 4AC ¶¶229-230, which described the July 11, 2021 flight as "successful" and "perfect"). The SAC added Colglazier's August 5, 2021 statements, claiming the Company "executed a successful spaceflight," and that "Unity 22 demonstrated further proof of our technical readiness" and

7

"validated the inherent safety and design of our system." SAC ¶¶316-19, 4AC ¶316. Again, the Court held these statements were misleading for substantially the same reasons as the statements made on July 11, 2021. ECF 87 at 21, 37.[2] The Court also held that loss causation was alleged for Colglazier's statements relating to the July 11 flight. ECF 58 at 40; ECF 87 at 37. In short, Plaintiffs have already adequately alleged that investors were misled by Colglazier, causing their losses.    The only missing element was scienter. ECF 58 at 26-27 and 50; ECF 87 at 37-41. Plaintiffs have filled that gap. Good cause exists to allow Plaintiffs to proceed on their claim against Colglazier.

### D.      Plaintiffs Satisfy Rule 15

Under Rule 15, which requires granting leave to amend when justice requires, parties may amend their pleadings "in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). Defendants show neither here.

#### 1.      Plaintiffs Diligently Sought Discovery And Moved To Add Colglazier As A Defendant As Soon As Reasonably Practicable Following The Discovery Of Supporting Evidence

While Defendants do not argue bad faith, they protest Plaintiffs' supposed delay. First, they complain that Plaintiffs did not seek reconsideration of the dismissal of Colglazier following the Order on the SAC. Opp. at 3-4. But Plaintiffs did not do so because, acting in good faith based on

---

[2] The 4AC also includes a new, substantially similar statement from Colglazier, also on August 5, 2021 that "**all safety and flight-**related ***elements from the ships performed as expected***," while disclosing the inconsequential loss of "live video feed [which was] not a flight issue [or] a safety issue." 4AC ¶316. Plaintiffs had good cause not to seek amendment immediately after the dismissal of the Second Amended Complaint because, at that time, they had no new facts to plead to address the Court's ruling on scienter. Had Plaintiffs sought amendment, the Court would have reached precisely the same conclusion on this additional statement that it set out in dismissing the similar statements from the SAC.

the information in their possession *at the time*, they did not have access to the facts the Court held were lacking and necessary to state a claim against Colglazier. Now they do.

Second, Defendants argue that Plaintiffs waited too long to move to amend. But within just two weeks of first learning new facts that supported Colglazier's scienter at the January 23-24, 2025 Rule 30(b)(6) deposition of Virgin Galactic's corporate designee, Michael Moses, Plaintiffs took steps to amend based on testimony given during that deposition. Mot. at 14; *see also* Ex. 1.[3] Plaintiffs filed their letter motion to amend within 13 business days of learning the new information. ECF 148. There was no delay.

Defendants' claim that "[t]he delay completing the Virgin Galactic 30(b)(6) deposition and the filing of Plaintiffs' Motion rests on Plaintiffs' shoulders alone" (Opp. at 14-15) is outrageous and false. Any delay in completing the deposition and the relevant information coming to light was caused by ***Defendants***. As detailed below, Plaintiffs diligently litigated their case and pursued the Rule 30(b)(6) deposition for months, in the face of Defendants' blatant delay tactics.

On May 29, 2024, Plaintiffs served their Rule 30(b)(6) Deposition Notice. Following negotiations, the Parties came to an agreement on the subject topics, and on or about August 28, 2024, Plaintiffs suggested dates for the deposition to occur in September or early October 2024. Ex. 2.[4] On September 4, 2024, Defendants' counsel responded that Virgin Galactic's designee was not available on any of the suggested dates and provided an alternative date of October 23, 2024. Ex. 3. On September 9, 2024, Plaintiffs confirmed the October 23 date. Ex. 4. In response to that email, Defendants' counsel suddenly said Mr. Moses was no longer available on October 23, 2024,

---

[3] All exhibits cited herein are attached to the concurrently-filed Declaration of Ex Kano S. Sams, II.

[4] Defendants mislead the Court by claiming the scope of the Rule 30(b)(6) Notice was the cause of the scheduling delay. Opp. at 14. The scope of topics settled by August 28, 2024.

instead suggesting October 18. Ex. 5, Ex. 6. On September 9, 2024, Plaintiffs confirmed October 18 for the Rule 30(b)(6) deposition. Ex. 7.

On September 23, 2024, Plaintiffs served deposition notices for Michael Moses (Virgin Galactic's President of Missions and Safety) and Beth Moses (astronaut instructor and flight crew member) as percipient witnesses, to occur on October 17, 2024, and October 25, 2024, respectively.  Ex. 8. Plaintiffs subsequently agreed to continue these percipient witness depositions to a later mutually agreeable date while the parties sorted out issues relating to Defendants' document productions and the case schedule. Ex. 9.

In an October 1, 2024 email discussing the case schedule, Defendants' counsel stated: "We also appreciate your offer to table the noticed depositions for Mike and Beth Moses and ***also propose tabling the 30(b)(6) deposition scheduled for October 18, 2025 (as Mike Moses is the planned designee)***." Ex. 10 (emphasis added). In response, Plaintiffs' counsel stated, "Regarding the 30(b)(6) deposition, our intention would be to keep that on calendar for now[.]" Ex. 11. The same day, Defendants unilaterally cancelled the scheduled deposition, stating: "Our 30(b)6 is no longer available on October 18, so we will need to look for a new date for that." Ex. 12. Plaintiffs' counsel immediately asked for alternative dates in October for the Rule 30(b)(6) deposition. Ex. 13. After Defendants failed to provide new dates, Plaintiffs' counsel inquired again on October 10, 2024. Ex. 14. Defense counsel stated they would propose dates "next week." Ex. 15. Having heard nothing further from Defendants' counsel, Plaintiffs' counsel asked again for dates on October 17, 2024. Ex. 16. Defendants responded, "I hope to be back to you before the weekend." Ex. 17. The weekend came and went with no proposed dates.

Defendants finally provided dates during a meet and confer call on Monday, October 21; unfortunately, those dates did not work for Plaintiffs' counsel. Ex. 18.  Defendants' counsel

thereafter requested that Plaintiffs conduct the Rule 30(b)(6) deposition simultaneously with Mr. Moses's percipient witness testimony. After negotiations regarding the parameters of a joint deposition, the parties agreed to a structure which accommodated Defendants' request to combine Mr. Moses's percipient witness and Rule 30(b)(6) Company testimony into one deposition to take place over two consecutive days,[5] but still did not have a date. Meanwhile, Defendants deposed each of the four proposed class representatives and Plaintiffs' market efficiency expert during November and early December 2024.

Ultimately, on December 10, 2024, Defendants provided dates for Mr. Moses's deposition to occur in January 2025. Ex. 19. The deposition took place on January 23-24, 2025. On February 7, 2025, in an attempt to meet and confer to avoid unnecessary motion practice, Plaintiffs sent a draft of the contemplated Fourth Amended Complaint to Defendants, stating "Please let us know by the close of business on February 10 whether Defendants will stipulate to the filing of the amended complaint." Ex. 1.  Defendants did not consent, and Plaintiffs promptly filed their letter motion for leave to amend on February 12, 2025. ECF 148. As the foregoing demonstrates, Defendants' accusation of "gamesmanship" (Opp. at 15) is highly disingenuous.

### 2.    Defendants Fail To Articulate Any Legitimate Prejudice

Defendants claim that if the 4AC is allowed to be filed, they will suffer "unfair prejudice." Opp. at 15. Yet they fail to articulate any legitimate prejudice sufficient to warrant denial of the motion. It is not "undue prejudice" to face liability for fraudulently misleading investors.

---

[5] While Defendants complain about the two-day deposition (Opp. at 14), they omit that this was done as an *accommodation* to Defendants' request—made after the date for the Rule 30(b)(6) deposition was twice set and twice unilaterally cancelled by Defendants—to conduct Mr. Moses's percipient witness testimony and Rule 30(b)(6) Company testimony simultaneously. Plaintiffs would have been happy to—and in fact strongly preferred—to conduct a single-day Rule 30(b)(6) deposition of Virgin Galactic. It was *Defendants* who refused.

11

**(a)    Defendants Are Not Unfairly Prejudiced In Terms Of Timing Or Discovery, As Neither Will Be Impacted**

Defendants complain that the parties are less than two months away from the close of discovery (Opp. at 15), but there is no prejudice because there is no need to expand discovery or enlarge the case schedule. Colglazier has already been deposed, he was included as an ESI discovery custodian, and that ESI discovery covered the July 2021 flight, the ensuing FAA investigation, and the various public statements relating to the same. Defendants do not identify any additional discovery that would have to be taken. *If* Defendants have satisfied their obligation to produce relevant and responsive Colglazier documents, then there is little additional discovery that Plaintiffs need to pursue their claims. Allowing Plaintiffs to pursue their claim against Colglazier will not derail or delay resolution of this matter in any regard (Opp. at 15); this claim will proceed right alongside the pending claims against Branson, Palihapitiya, and the Company, relating to the July 2021 flight. *See Olaf Sööt Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 399-400 (S.D.N.Y. 2017) (finding no prejudice and granting motion to amend where "[w]hile amending the Complaint at this point in the litigation's lifecycle is later than preferable, no trial date has been set, and the interrelation of the old claim and a new related, narrow claim to this patent case indicates that additional discovery, while warranted, will not prolong the proceedings significantly"). Indeed, where a proposed amendment "arise[s] out of the same transactions and occurrences which are already the subject matter of [a] lawsuit[,]" "there is little prejudice to the defendant." *See Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.,* 2022 WL 426199, at *6 (E.D.N.Y. Feb. 11, 2022).

By contrast, this case is nothing like Defendants' cited cases. Opp. at 15. In *State Farm Ins. Companies v. Kop-Coat, Inc.*, 183 F. App'x 36 (2d Cir. 2006), the court denied a motion to amend based on undue prejudice where, ***a year after the close of discovery and five months after***

*district court's summary judgment ruling*, the plaintiff sought to add an entirely new claim for the first time under a statute that was not even mentioned in any previous pleading. *Id.* at 37-38. In *Berkley Ins. Co. v. Prime Ins. Co.*, 2022 WL 18135182 (E.D.N.Y. Mar. 28, 2022), the defendant delayed seeking to add an entirely new counterclaim for more than two months after the new information was uncovered and just weeks before the close of fact discovery. *Id.* at *2. And unlike in *Block v. First Blood Assocs.*, 988 F.2d 344 (2d Cir. 1993), including Colglazier as a defendant would ***not*** require Defendants to "expend significant additional resources to conduct discovery and prepare for trial [and] significantly delay the resolution of the dispute." *Id.* at 350. Provided that Defendants have complied with their discovery obligations, discovery is already substantially complete.

### E. Amendment Is Not Futile Because The New Allegations State A Claim Against Colglazier

To plead scienter, "[p]laintiffs must show conduct by defendants that is at the least highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *In re Alibaba Grp. Holding Ltd. Sec. Litig.*, 2023 WL 2601472, *12 (S.D.N.Y. Mar. 22, 2023) (quoting *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 216 (S.D.N.Y. 2004)). Scienter is satisfied where the plaintiff alleges the defendant "knew facts or had access to information suggesting that their public statements were not accurate ... [or] ... failed to check information they had a duty to monitor." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). The 4AC does so.

#### 1. The 4AC Alleges Precisely The Facts Of Colglazier's Scienter That The Court Previously Found Missing

For ease of reference, Colglazier's misleading statements about the July 2021 flight are reprinted below:

13

July 11, 2021: ***Today is a landmark achievement for the Company and a historic moment for the new commercial space*** industry***. With each successful mission we are paving the way for the next generation of astronauts***.

FAC ¶566, SAC ¶229, 4AC ¶229.

July 11, 2021: "[A]t at a business level, this was one of the remaining flight tests that we need to do as we move into commercial service. So we've got two more. ***This one was perfect.***
* * *
This event was about showcasing to the world what this Virgin Galactic experience is going to be. ***And this event was part of our incredible safety diligent program to make sure that we go step-by-step so that when we do open this up for commercial service, we've done all that needs to be done. So it's amazing and anchored in safety experience and that's what today was about.***

FAC ¶568, SAC ¶230, 4AC ¶230.

August 5, 2021: Our Unity 22 flight in July was a landmark achievement after 17 years of research, engineering, and innovation. ***We executed a successful spaceflight*** with a full crew in the cabin. ***Unity 22 demonstrated further proof of our technical readiness*** and we were able to share this event with the world as over 19 million viewers around the globe enjoy the excitement and wonder the spaceflight experience through our livestream and live television broadcast. Watching VSS Unity streak once again above the atmosphere arc back towards Earth into a perfect viewing position and feather gracefully for return to Spaceport America ***validated the inherent safety and design of our system.***

SAC ¶316, 4AC ¶316.

***While all safety and flight-***related ***elements from the ships performed as expected***, the live video feed from the cabin to the ground experienced intermittent connection and we are reworking the video transmission system for our next flight. ***This is not a flight issue and it's not a safety issue,*** but it is relevant to our consumer experience and we want to have it resolved for our next flight, Unity 23.

4AC ¶316.

As explained above, the Court has already held that the July 11 statements were misleading because, among other things, "they omit to disclose Unity's dangerous departure from its landing cone during the flight" and "Plaintiffs have pleaded that one of the risks of the deviation was the regulatory intervention by the FAA,…." ECF 58 at 40. The Court explained, "[a] reasonable

14

investor would not conclude from defendants' characterizations of the July 11, 2021 test flight as 'successful,' 'perfect,' and 'flawless' that the flight had deviated from its vertical glide cone and FAA airspace. Each of these statements implies that the flight had, at most, minor problems." ECF 58 at 27. Colglazier's August 5, 2021 statements are misleading for substantially similar reasons, as well as the fact that by August 5, the FAA had initiated an investigation into what went wrong during the flight. ECF 87 at 21, 37; *see also* SAC ¶255, 4AC ¶¶255, 385-86.

Regarding scienter, in its order on the Second Amended Complaint, the Court explained that Plaintiffs failed to sufficiently allege facts suggesting Colglazier knew about the FAA inquiry, that Unity deviated from its glide cone, or had left its designated FAA airspace. ECF 87 at 39-40.

These are exactly the facts now alleged in the 4AC, and they are derived from the testimony of Virgin Galactic's own corporate designee, Michael Moses, who served as the Company's President of Missions and Safety at the time of the July 2021 flight (*i.e.*, "Unity 22"). *See generally* 4AC ¶¶373-89. More specifically, Moses told Colglazier that Unity 22 had experienced red WARNING CAS messages concerning the entry glide cone either on the day of the flight (July 11) or the day after the flight (July 12). 4AC ¶382. On July 23, 2021, the FAA informed Virgin Galactic that it was investigating an FAA airspace violation during the July 2021 flight. 4AC ¶385. Moses learned about the FAA's inquiry the same day as Virgin Galactic (*i.e.*, on July 23) and he also told Colglazier about the investigation that same day (July 23), as well as the subject thereof. 4AC ¶385. Moses thereafter provided regular updates to Colglazier concerning the FAA investigation and Unity leaving its FAA airspace. 4AC ¶386.

In addition, to prepare for an August 3, 2021 meeting with the FAA, Moses and other Virgin Galactic employees held a preparation session with Unity 22 pilot, David MacKay, on August 2, 2021, in which they ran through the presentation that MacKay would give to the FAA.

¶388. Moses informed Colglazier of the August 3 FAA meeting and its subject matter **before that meeting occurred**. 4AC ¶¶387-89.

These are ample factual allegations that Colglazier knew of *both* the flight deviation *and* the FAA investigation before the August 5, 2021 earnings call. Plaintiffs have thus alleged a strong inference of scienter that Colglazier knowingly or recklessly misled investors by concealing these facts—all the while claiming the flight had supposedly "demonstrated further proof of our technical readiness" and "validated the inherent safety and design of our system." 4AC ¶316.

          **2.**    **Defendants' Arguments About The Interpretation Of Moses's Testimony Are Not Properly Decided In Their Favor On This Motion And, In Any Event, Colglazier's Own Testimony Further Supports His Scienter**

Defendants raise various arguments about the interpretation of Moses's testimony, none of which defeats the strong inference of scienter alleged. Opp. at 11-12. The allegations are sufficient to allege scienter under the Court's prior orders, and the Court is not to resolve evidentiary disputes in ruling on this motion:

> Whether plaintiffs can sustain those allegations in the face of an evidentiary challenge is a matter that we are not called upon to decide at present. All that we need determine is whether the inclusion of this claim in the proposed amended complaint would be futile because of the absence of allegations of a colorable claim. Since the allegations are sufficient as a matter of pleading, the amendment should be permitted.

*In re N. Telecom Ltd. Sec. Litig.*, 42 F. Supp. 2d 234, 251 (S.D.N.Y. 1998).

Even if considered, Defendants' evidentiary arguments fail to defeat the strong inference of scienter. Ignoring Moses's testimony establishing that he discussed the FAA issues with Colglazier on multiple occasions before August 5, 2021, Defendants claim (incorrectly) that Moses's testimony was ambiguous on the timing of the relevant communications. Opp. at 11. Defendants misrepresent his testimony to create confusion where none exists; Moses testified that he learned about the FAA investigation "two to three weeks after landing" (Ex. 20 at 262:7-263:4)

and he told Colglazier about the FAA investigation the same day he learned about it (Ex. 20 at 266:12-20). Regarding the August 3, 2021, FAA meeting, Moses testified "yes, I informed Mr. Colglazier we were having a meeting with the FAA to discuss the issue" and "he was informed the moment we had an FAA investigation that we were being investigated, and I would provide him regular updates on the status of that investigation, including the fact that the next step was an in-person meeting." Ex. 20 at 276:12-25; *id.* at 272:10-22 (indicating the Company's presentation "as part of the investigation into the launch incident" was made to FAA on August 3).

Colglazier himself admits to having been informed of the FAA investigation and glide cone and airspace issues prior to the August 5, 2021 earnings call. Colglazier, deposed after Plaintiffs filed the proposed 4AC, testified that he recalls Virgin Galactic getting notified by the FAA "that we had tripped airspace, which was somewhere in July, I think a couple weeks after the flight, then that got into the dialogue of, okay how did we go through airspace?" Ex. 21 at 156:7-18. Asked if the first time he heard of any issues regarding the glide cone was a couple of weeks after the flight, he said "Yeah. My recollection is the concept of the word 'glide cone,' which is a fairly specific word, came up in the conversation after we had received a note from the FAA… that says …. We have flown out of the airspace that we had reserved." Ex. 21 at 157:12-158:13. Colglazier testified that he knew "we had deviated from the airspace in July, yes, that's correct." Ex. 21 at 160:12-161:22.

Defendants also claim that Moses testified, generally, that post-flight briefings with the FAA were "typical" or "standard." Opp. at 11. But the circumstances surrounding the July 2021 flight show these post-flight interactions with the FAA were *not* routine. Moses testified that the issues were "complicated" because they involved "a trajectory condition with a glide cone warning with an airspace violation." Ex. 20 at 274:11-13. He emphasized that "[t]his was an investigation

17

of the FAA; that's a serious thing and we take seriously." Ex. 20 at 276:2-4. Unity traveled 6.8 nautical miles in commercial airspace that could have been occupied by a commercial airliner. *See*, *e.g.*, Ex. 22 at 138:6-19. That is hardly routine.

Moreover, Defendants pivot—conceding, as they must, that Colglazier was aware of the FAA investigation and flight deviation issues, but arguing that "Plaintiffs have not shown that post-flight knowledge of the deviation demonstrates that Colglazier subjectively believed that the Unity 22 flight was in any way unsuccessful or unsafe." Opp. at 12. Colglazier's supposed *subjective* belief—which, in any event, is a disputed evidentiary inquiry not before the Court on this motion—is not enough to defeat the inference of scienter in the face of the facts alleged. Colglazier was the CEO of a space tourism company that needed to demonstrate a consistently repeated flight profile, strict adherence to technical and safety requirements, and, significantly, the blessing of the FAA to successfully launch commercial operations. Once alerted to the flight path and airspace issues, Colglazier *at minimum* was obligated to fully investigate and understand them, as well as the potential risks and outcomes of the FAA investigation, before concealing them from investors. *Gebhart v. S.E.C.*, 595 F.3d 1034, 1043-44 (2d Cir. 2010) (even where defendants "may have sincerely, if mistakenly, believed" their statements were accurate, scienter was alleged where it appeared that defendants "conducted no meaningful independent investigation to confirm the truth of their representations").

Testimony from numerous parties involved reveal the problems' severity. Unity 22's chief pilot, David Mackay, testified that the red CAS warning meant "danger or emergency" and he wrote that Unity 22 was "***highly unsatisfactory*** from a boost performance point of view." Ex. 22 at 95:7-19, 148:4-11 (emphasis added). When asked "[w]as it a profile you would want to repeat?" Mackay responded, "No. No." The question continued: "In order to commercialize Unity, did you

have to develop a repeatable profile?" He answered "Yeah, absolutely." *Id.* at 148:12-149:1. Unity 22 flight spaceship supervisor, Nicola Pecile, testified that the Unity 22 flight was the only time in his experience that a RED warning Crew Alert System message was displayed. Ex. 23 at 145:18-146:10. He also testified that following the flight, he expressed his opinion that the flight should have been aborted rather than finishing its full boost phase. Ex. 23 at 127:4-8. Pecile echoed Mackay's view that the pilots were "not happy with what we achieved in terms of the repeatability of the trajectory" and that a repeatable trajectory was "absolutely" necessary for commercial service. Ex. 23 at 187:23-188:15. And longtime Virgin Galactic pilot, Mark Stucky, testified that the CAS message alerted the pilots to a necessary danger, stating: "It flagged when it should have. They kind of barely made it back, but they made it back." Ex. 24 at 213:7-9.

In sum, the flight was ***not*** "a 'success' by any reasonable measure." Opp. at 12. Contrary to Defendants' claims, Virgin Galactic had to do more than barely get to space and back without killing Sir Richard Branson. And Defendants' newly proffered inference—now conceding that Colglazier knew of the airspace deviation but insisting he had no reason to believe the flight was "in any way unsuccessful or unsafe" (Opp. at 12)—simply is not credible. The FAA does not investigate "successful" flights. Having established Colglazier's knowledge of the FAA investigation and glide cone issues prior to the August 5, 2021 earnings call, it is *at least equally compelling* to infer that he did not mention these issues during the call because it was critical to Virgin Galactic to present the July 2021 flight of Sir Richard Branson—trumpeted as the long-awaited launch of commercial operations—as an unmitigated success. Plaintiffs have sufficiently alleged that the risk of misleading investors by omitting any mention of the FAA investigation (and thus concealing its associated risks) while touting the success of the flight is "so obvious that [Colglazier] must have been aware of it." Whether the totality of the evidence, including an

19

assessment of Colglazier's credibility, is ultimately sufficient to *prove* his scienter is a matter of disputed fact that the jury will have to decide.

III.    **THE REVISED CLASS DEFINITION IS APPROPRIATE**

In their opening class certification brief, Plaintiffs sought to certify a class of investors who "purchased" Virgin Galactic securities contemporaneously with Branson's October 25, 2019 sales, and proposed Plaintiff Montgomery Brantley as a class representative. Mr. Brantley purchased Social Capital shares with the intent of owning a piece of Virgin Galactic, and on October 25, his Social Capital shares were converted into Virgin Galactic shares.

In opposition to Plaintiffs' class certification motion, Defendants maintained that Mr. Brantley had only ever engaged in one securities transaction: the purchase of Social Capital. According to Defendants, the conversion of Mr. Brantley's Social Capital shares into Virgin Galactic shares was not a transaction, and, as a result, Mr. Brantley did not trade contemporaneously with Branson.

Defendants' argument is wrong on the merits. Mr. Brantley plainly bought Virgin Galactic shares, even if the consideration he paid was Social Capital stock rather than cash. It does not matter that Mr. Brantley had effectively decided to buy Virgin Galactic shares before October 25. Market participants commonly do so, whether it is participants in individual retirement plans who pre-specify monthly contributions or investors who use reinvestment plans to automatically use dividends to acquire new stock. Though these investors had decided to buy securities long before, it is the actual purchase that counts as a securities transaction.

Nevertheless, because of the nature of the consideration Mr. Brantley paid – *i.e.*, shares rather than cash – there is residual uncertainty concerning whether he "purchased" or "otherwise acquired" Virgin Galactic stock. Defendants did not make this argument, but on reflection,

20

Plaintiffs sought to modify the class definition to include those who "otherwise acquired" Virgin Galactic stock. But whatever prejudice Defendants suffered from addressing a potential problem they did not raise was cured when the Court permitted them to file a sur-reply addressing Plaintiffs' claims.

Thus, amendment will have no impact on class certification both because Defendants never actually raised the argument that Mr. Brantley only "acquired" Virgin Galactic stock and because the Court has already given them an opportunity to address Plaintiffs' new proposed class definition.

## IV.    **CONCLUSION**

Amendment should be allowed because Plaintiffs acted expeditiously and in good faith, the litigation will not be delayed or disrupted in any way, and Defendants will suffer no undue prejudice. To the contrary, where the Court has already held Colglazier's statements about the July 11 flight were sufficiently alleged to be misleading and to have caused investors' losses, justice requires allowing Plaintiffs to amend to pursue their claims against Colglazier.

Dated: April 23, 2025                    Respectfully submitted,

GLANCY PRONGAY & MURRAY LLP

By: */s/ Ex Kano S. Sams II*
Kara M. Wolke
Ex Kano S. Sams II
Natalie S. Pang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495
Email: kwolke@glancylaw.com
      esams@glancylaw.com
      npang@glancylaw.com

21

THE ROSEN LAW FIRM, P.A.
Jonathan Horne, Esq. (JH 7258)
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jhorne@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiffs*

22

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On April 23, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 23, 2025.

*/s/ Ex Kano S. Sams II*
Ex Kano S. Sams II