**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANE LAVIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIRGIN GALACTIC HOLDINGS, INC., MICHAEL A. COLGLAZIER, GEORGE WHITESIDES, DOUG AHRENS, and JON CAMPAGNA,<br><br>Defendants. | CASE No.: 1:21-cv-03070-ARR-TAM |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. SUMMARY OF THE LITIGATION AND THE SETTLEMENT .......... 2

A. Initiation of the Action and Filing of the Amended Complaint .......... 2

B. The 1AC and the Court's Motion to Dismiss Decision .......... 2

C. The 2AC and the Court's Decisions .......... 4

D. Subsequent Developments .......... 5

E. Discovery .......... 7

F. Class Certification .......... 7

G. Settlement Discussions .......... 8

H. Terms of the Settlement .......... 8

III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED .......... 8

A. The Settlement Class Satisfies the Requirements of Rule 23(a) .......... 9

1. Numerosity .......... 9

2. Commonality .......... 10

3. Typicality .......... 10

4. Adequacy .......... 11

a) Plaintiffs are Adequate Representatives .......... 12

b) Proposed Class Counsel are Adequate .......... 12

B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3) .......... 13

1. Common Questions Predominate .......... 13

2. A Class Action is Superior .......... 13

IV. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE .......... 14

A. Standards for Preliminary Approval .......... 14

B. The Settlement Should be Preliminarily Approved Because it is Procedurally and Substantively Fair ........ 16

1. Plaintiffs and Lead Counsel Adequately Represented the Class ........ 16

2. The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel ........ 16

3. The Proposed Settlement Is a Very Good Result for the Class in Light of the Settlement's Benefits and the Risks of Continued Litigation ........ 17

a) The Costs, Risks, and Delay of Trial and Appeal; the Risks of Establishing Liability and Damages and Maintaining the Class Through Trial ........ 17

b) The Stage of the Proceedings and the Amount Of Discovery Completed ........ 19

c) The Defendants' Ability to Withstand a Greater Judgment ........ 20

d) The Relief Provided tor the Class Is Adequate ........ 20

4. The Proposed Method for Distributing Relief is Effective ........ 21

5. The Proposed Award of Attorneys' Fees is Appropriate ........ 22

6. The Parties Have Entered a Side Agreement Regarding Opt-Outs ........ 22

7. There Was No Preferential Treatment; The Plan Treats All Class Members Equitably Based on the Strength of Their Claims ........ 23

V. THE COURT SHOULD APPROVE THE PROPOSED FORMS AND METHODS OF PROVIDING NOTICE TO THE SETTLEMENT CLASS ........ 24

VI. PROPOSED SCHEDULE OF EVENTS ........ 26

VII. CONCLUSION ........ 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 8, 13, 14

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ........ 19

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........ 24

*Bing Li v. Aeterna Zentaris, Inc.*,
324 F.R.D. 331 (D.N.J. 2018) ........ 12

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ........ 15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ........ 9

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........ 22

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........ 15, 17

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ........ 9

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ........ 17

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ........ 8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ........ 19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ........ 24

*In re "Agent Orange" Prods.* Liab. Litig.,
597 F. Supp. 740 (E.D.N.Y. 1984) ........ 20

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. April 6, 2006) ..... 13

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ..... 18

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..... 20

*In re: CCIV / Lucid Motors Sec. Litig.*,
110 F.4th 1181 (9th Cir. 2024) ..... 23

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ..... 17

*In re Citigroup, Inc. Sec. Litig.*,
965 F.Supp.2d 369 (S.D.N.Y. 2013) ..... 23

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ..... 11

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..... 10, 11, 15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ..... 10

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..... 10, 19

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ..... 14, 20

*In re Indep. Energy Holdings PLC*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..... 18

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ..... 16

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..... 11

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ..... 23

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................................ 20

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................................... 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................. 15

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ................................................................................. 10

*In re Platinum & Palladium Commodities Litig.*,
2014 WL 3500655 (S.D.N.Y. July 15, 2014) ............................................................. 16

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................. 12

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................................... 10

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. April 23, 2024) ........................................................... 12

*In re Twinlab Corp. Sec. Litig.*,
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ......................................................................... 10

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)............................................................................ 18

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)........................................................................................ 19

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011)......................................................................... 19

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................................. 13

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................... 23

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA*" Litig.,
364 F. Supp. 2d 980 (D. Minn. 2005)......................................................................... 19

*Lea v. Tal Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .......... 16

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......... 22

*Marisol A. by Forbes v. Giuliani*,
929 F. Supp. 662 (S.D.N.Y. 1996) .......... 10

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
54 F.4th 82 (2d Cir. 2022) .......... 4

*Mikhlin v. Oasmia Pharm. AB*,
2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) .......... 11, 17

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023) .......... 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) .......... 24

*Palacio v. E*TRADE Fin. Corp.*,
2012 WL 2384419 (S.D.N.Y. June 22, 2012) .......... 14

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .......... 14

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) .......... 13

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) .......... 18

*Vinh Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .......... 12

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) .......... 21

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir.2005) .......... 25

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) .......... 8

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F) .......... 25

28 U.S.C. §1715 .......... 24

**Rules**

Fed. R. Civ. P. 23 .......... passim

Fed. R. Civ. P. 54(b) .......... 5

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs Jennifer Ortiz, Raymond Ochs, Hesham Ibrahim, and Montgomery Brantley (collectively, "Plaintiffs"), on behalf of themselves and the putative class, submit this memorandum in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion").[1]

## I. INTRODUCTION

After four years of hard-fought litigation—after reviewing more than 100,000 pages of documents, taking or defending 14 depositions, holding an unsuccessful mediation, and continuing settlement discussions for weeks thereafter—Plaintiffs are pleased to present for the Court's preliminary approval a settlement that would resolve all clams in this Action for $8.5 million ("Settlement").

The Settlement is substantively fair, reasonable, and adequate. It provides a substantial immediate recovery to investors and, concomitantly, bypasses the significant risk that Plaintiffs might lose on class certification, on summary judgment, or at trial, and recover nothing. Investors who have actionable claims are expected to recover roughly the same percentage of their damages as in cases of similar size. The settlement was also obtained in a procedurally fair manner—it was negotiated at arm's length between competent, well-informed counsel with the assistance of a skilled mediator. Under such circumstances, preliminary approval is appropriate.

The Court should also grant the requested ancillary relief necessary to give effect to its order. First, it should preliminarily certify the Settlement Class. Plaintiffs' submission in support of their opposed motion for class certification provides ample support for preliminary certification. Second, it should preliminarily approve the method by which notice of the Settlement will be

[1] All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and Agreement of Settlement dated November 3, 2025 ("Stipulation"), which is attached to the Declaration of Jonathan Horne ("Horne Decl.") as Ex. 1.

communicated to Settlement Class Members ("Notice Plan") and the proposed documents that Plaintiffs will use to communicate notice ("Notice").[2] Here, the Notice and the Notice Plan closely track the forms and methods routinely used to communicate notice in securities class actions. Third, the Court should preliminarily approve the plan of allocation ("Plan") because it is fair, reasonable, and adequate. Finally, the Court should schedule a Final Settlement Approval Hearing ("Settlement Hearing") at which the Court will consider the request for final approval of the proposed Settlement, class certification and the Plan, and consider Lead Counsel's request for attorneys' fees, reimbursement of expenses and PSLRA awards.

## II. SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A. Initiation of the Action and Filing of the Amended Complaint

The initial complaint in the above-captioned action ("Action") was filed on May 28, 2021. Dkt. No. 1. On September 17, 2021, the Court appointed Mark Kusnier and Robert Scheele to serve as Co-Lead Plaintiffs and approved their selection of Glancy Prongay & Murray LLP ("GPM") and The Rosen Law Firm, P.A. ("Rosen Law") to serve as Lead Counsel. Dkt. No. 22. Kusnier and Scheele filed their Amended Complaint ("1AC") on December 6, 2021, joined by, among others, named plaintiffs Richard O'Keefe-Jones and Jennifer Ortiz. Dkt. No. 35.[3]

### B. The 1AC and the Court's Motion to Dismiss Decision

Virgin Galactic is a development-stage space tourism company. It went public via a reverse merger with a SPAC, or Special Purpose Acquisition Corp., announced in July 2019 and consummated in October 2019 ("Reverse Merger"). The 1AC alleged, among other things, that in

[2] Proposed versions of the Long Notice, Summary Notice, and Postcard Notice are attached as Exhibits A-1, A-3, and A-4, respectively, to the Stipulation. Exhibit A-2 is the proposed Proof of Claim and Release Form.

[3] On December 7, 2021, Plaintiffs filed a Corrected Amended Complaint ("CAC"). The CAC alleged the same causes of action as the Amended Complaint. Dkt. No. 36.

the period leading to the Reverse Merger, Defendants concealed that on Virgin Galactic's February 2019 test flight, a critical part of its vehicle had "popped," which could have led to a failure of the vehicle integrity that would have killed all on board. 1AC ¶¶16-19. Plaintiffs allege the truth was revealed in an August 2020 delay of the subsequent test flight and in a February 2021 disclosure of the incident in a *Washington Post* book review. 1AC ¶21.

The 1AC alleged that Defendants also concealed that a July 2021 test flight carrying Richard Branson dangerously veered from its trajectory and airspace, again endangering the passengers. 1AC ¶¶393-400. According to the 1AC, the truth was revealed in a September 2, 2021 announcement that the Federal Aviation Administration ("FAA") was grounding Virgin Galactic's vehicle. 1AC ¶408. The 1AC further alleged that Defendants' statements and misleading omissions on these subjects (and others) violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). The 1AC also alleged that certain Defendants were liable as controlling persons under Section 20(a) of the Exchange Act. Finally, the 1AC alleged that certain Defendants had sold shares while in possession of material non-public information in violation of Section 20A of the Exchange Act.

Defendants moved to dismiss the 1AC. The Court granted Defendants' motion in part, upholding at least one statement from each of the two theories set out above. Dkt. No. 58. The Court otherwise granted the motion to dismiss. *Id*. The following claims remained:

| | Basis | Class Period | Defendants | Plaintiffs |
|---|---|---|---|---|
| Section 10(b) claims | Failure to disclose February 2019 flight damage/accident | July 10, 2019 through February 1, 2021 | Branson, Virgin Galactic | |
| | July 11, 2021 misstatement concerning same-day Branson flight | July 11, 2021 through September 1, 2021 | Branson, Virgin Galactic | O'Keefe-Jones and Ortiz |
| Section 20A claims | Branson's August 2021 stock sales | Contemporaneous traders | Branson | O'Keefe-Jones and Ortiz |

### C. The 2AC and the Court's Decisions

In February 2023, Plaintiffs—now additionally joined by named plaintiff Hesham Ibrahim, among others—filed their Second Amended Complaint ("2AC"). The 2AC again raised claims based on Defendants' failure to disclose the problems with the February 2019 and July 2021 flights. 2AC ¶2, 225-253.

Defendants moved to dismiss the 2AC, and in August 2023, the Court again granted in part and denied in part Defendants' motion. The Court again upheld a statement from Plaintiffs' theory that Defendants concealed the allegedly dangerous departure during the July 2021 test flight ("Actionable Claims").

But as to statements concerning the February 2019 flight ("Dismissed Claims"), the Court found that an intervening case, *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 84 (2d Cir. 2022), compelled dismissal. *Frutarom* held that standing to sue for false statements was only available to plaintiffs who purchased or acquired the securities about which the statements were made. The Court held that because Plaintiffs purchased shares of the SPAC, Social Capital or the public company Virgin Galactic, they did not have standing to sue over statements

about private Virgin Galactic. And since all the statements Plaintiffs alleged misleadingly concealed the problems with the February 2019 flight were made before the Reverse Merger, the Court held that Plaintiffs had no standing to raise the theory.

As a result, the Court's order dismissed all claims brought by Lead Plaintiffs and every named Plaintiff except O'Keefe-Jones, Ortiz, and Ibrahim. It also dismissed every Defendant except Branson, Palihapitiya, and Virgin Galactic. The following claims remained:

| | Basis | Class Period | Defendants | Plaintiffs |
|---|---|---|---|---|
| Section 10(b) | July 11, 2021 misstatement concerning same-day Branson flight | July 11, 2021 through September 1, 2021 | Branson, Virgin Galactic | O'Keefe-Jones, Ortiz, and Ibrahim |
| Section 20(a) claims | Controlling person | July 11, 2021 through September 1, 2021 | Palihapitiya, Branson, and Virgin Galactic | O'Keefe-Jones, Ortiz, and Ibrahim |
| Section 20A | Branson's October 2019 stock sales | Contemporaneous traders | Branson | None |
| | Branson's August 2021 stock sales | Contemporaneous traders | Branson | O'Keefe-Jones and Ortiz |

### D. Subsequent Developments

After the Court's decision on Defendants' motion to dismiss the SAC, Plaintiffs timely moved for: (i) reconsideration of the Court's dismissal of a December 2019 statement containing a hyperlink to a February 2019 statement; (ii) certification of the Court's order on Defendants' motion to dismiss the SAC to allow an immediate appeal of the Court's application of *Frutarom*; and (iii) entry of judgment under Federal Rule of Civil Procedure 54(b) for Lead Plaintiffs and all other named Plaintiffs whose claims the Court dismissed. The Court denied the motion in December 2023. Dkt. No. 98.

In February 2024, Defendants filed a pre-motion letter requesting a conference regarding their anticipated motion for judgment on the pleadings as to Plaintiffs' Section 10(b) insider trading claim based on Branson's October 2019 sales, arguing that no plaintiff had standing to pursue them. Dkt. No. 108. Prior to briefing on Defendants' motion for judgment on the pleadings, Plaintiffs moved to file a Third Amended Complaint ("3AC"), which would, *inter alia,* add Montgomery Brantley as a named plaintiff. Dkt. Nos. 113, 118. On July 2, 2024, the Court issued an Order granting Plaintiffs' motion to amend and on August 21, 2024, Plaintiffs filed the 3AC. Dkts. No. 121, 128.

In January 15, 2025, Plaintiffs filed a notice of Mr. O'Keefe-Jones's untimely death. Dkt. No. 142. Plaintiffs moved to replace him with his surviving spouse and sole beneficiary, Raymond Ochs. Dkt. No. 163. The Court granted Mr. Och's motion. *See* unnumbered docket entry dated August 29, 2025.

On February 24, 2025, Plaintiffs filed a letter seeking a pre-motion conference concerning a motion for leave to file a Fourth Amended Complaint ("4AC"). Dkt. No. 148. While the Court had found the 2AC sufficiently alleged that a July 11, 2021 statement by Branson was actionable, it had dismissed claims against Virgin Galactic CEO Michael Colglazier for misleading August 5 statements about Branson's flight, ruling that Plaintiffs failed to allege his scienter. In their proposed 4AC, Plaintiffs sought to revive the claim based on the testimony of Virgin Galactic's Rule 30(b)(6) deponent. In June 2025, the Court granted Plaintiffs' motion. Dkt. No. 186.

| | Basis | Class Period | Defendants | Plaintiffs |
|---|---|---|---|---|
| Section 10(b) | July 11, 2021, and August 5, 2021 misstatements concerning July 11, 2021 Branson flight | July 11, 2021 through September 1, 2021 | Branson, Colglazier, Virgin Galactic | O'Keefe-Jones, Ortiz, and Ibrahim |

| | | | | |
|---|---|---|---|---|
| Section 20(a) claims | Controlling person | July 11, 2021 through September 1, 2021 | Palihapitiya, Branson, and Virgin Galactic | O'Keefe-Jones, Ortiz, and Ibrahim |
| Section 20A | Branson's October 2019 stock sales | Contemporaneous traders | Branson | Brantley |
| | Branson's August 2021 stock sales | Contemporaneous traders | Branson | O'Keefe-Jones and Ortiz |

### E. Discovery

During discovery, Virgin Galactic produced approximately 10,615 documents (totaling roughly 68,700 pages). In addition, Plaintiffs obtained approximately 1,735 documents (totaling roughly 32,925 pages) from third parties. Lead Counsel deposed eight fact witnesses, including two Individual Defendants, and defendants deposed four plaintiffs, one fact witness, and one of Plaintiffs' experts. Plaintiffs propounded three sets of requests for production of documents, four sets of interrogatories, and one set of requests for admissions (containing 97 requests), and served six subpoenas *duces tecum* on various third parties. Defendants propounded two sets of interrogatories and two sets of requests for production of documents upon Plaintiffs. Plaintiffs produced approximately 85,050 pages of documents to Defendants and responded to Defendants' first set of interrogatories.

### F. Class Certification

On October 12, 2024, Plaintiffs Jennifer Ortiz, Hesham Ibrahim, Montgomery Brantley, and Richard O'Keefe-Jones moved for class certification relying, *inter alia*, on the expert report of David I. Tabak, PhD. Dkt. Nos. 131-134. Plaintiffs Ortiz, Ibrahim, Brantley, and O'Keefe-Jones, as well as Dr. Tabak, all sat for depositions. The motion was fully briefed on March 21, 2025. Dkt No. 154.

### G. Settlement Discussions

The Parties held informal discussions concerning settlement and mediation beginning after the Court's decision on the 2AC. These discussions intensified in early 2025, leading to a March 28, 2025, full-day mediation overseen by Jed D. Melnick, Esq. of JAMS, an experienced securities class action mediator. Prior to the mediation, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits that addressed both liability and damages. The Parties did not reach a settlement that day but continued informal discussions. After subsequent negotiations, Mr. Melnick made a double-blind mediator's recommendation to resolve the Action for $8.5 million, which the Parties accepted.

The Parties promptly informed the Court (Dkt. No. 189), then negotiated an agreement in principle to settle the Action, memorialized in a term sheet dated July 18, 2025. The Parties subsequently negotiated the Stipulation and exhibits thereto.

### H. Terms of the Settlement

The Settlement resolves all claims in this Action for a payment of $8.5 million in exchange for a customary release. The Settlement Class includes both the Actionable Claims (shares purchased between July 11, 2021, and September 1, 2021) and Dismissed Claims (all other shares purchased between July 10, 2019 and August 4, 2022).

## III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Courts may certify classes solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). A settlement class, like other certified classes, must satisfy all the requirements of Fed. R. Civ. P. 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997)

("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested[.]").

Here, the Parties stipulated to certification of the Settlement Class for settlement purposes only.[4] Stipulation ¶ 3. The proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and 23(b)(3).

### A. The Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable" *i.e.*, "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Although the exact size of the Settlement Class is not yet known, numerosity is generally satisfied in a securities class action as "a large number of shares were outstanding and traded during the

[4] The Settlement Class consists of all persons and entities who or which purchased or otherwise acquired the publicly traded shares of Virgin Galactic and/or Social Capital common stock between July 10, 2019, through August 4, 2022, both dates inclusive. Excluded from the Settlement Class are: (a) persons and entities that suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as an officer or director of Virgin Galactic, Social Capital, and/or subsidiaries of either during the Settlement Class Period, and their Immediate Family; (iii) persons or entities who held shares of Vieco 10 Ltd. as of October 25, 2019, and all subsidiaries thereof; (iv) any trust of which an Individual Defendant was or is the settlor or which was or is for the benefit of an Individual Defendant and/or member(s) of their immediate families; (v) Defendants' liability insurance carriers; (vi) Virgin Group Holdings Limited and each of its controlled subsidiaries and affiliates; (vii) the legal representatives, heirs, successors, predecessors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof; and (viii) all entities controlled by the persons and entities excluded under provisions (i) through (vii) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court. Stipulation, ¶1(tt).

relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, *12 (S.D.N.Y. July 27, 2007) (numerosity generally met with nationally traded securities). Here, there are thousands of potential Settlement Class Members as Virgin Galactic's common stock traded on the New York Stock Exchange during the three-year Settlement Class Period.

**2. Commonality**

The commonality requirement "is applied permissively," only requiring that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004).

Securities fraud cases easily satisfy this standard where plaintiffs allege that "putative class members have been injured by similar material misrepresentations and omissions," *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012), such as those appearing in a company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015). Here, the common issues include whether Defendants made materially false statements or omissions, with the requisite state of mind, that caused the Settlement Class's losses, and the proper measure of damages.

**3. Typicality**

Typicality requires that "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd* 126 F.3d 372 (2d Cir. 1997). In a securities case, typicality exists where all class members were allegedly harmed by "the distribution of false and misleading information which artificially inflated the stock." *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002). "Typical," does not, however, mean identical (*EVCI*, 2007 WL 2230177, at *13), and differences in the amount of damages claimed,

or small variations in the fact patterns of individual claims, do not defeat typicality. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009) (differences in acquisition dates, type of securities purchased, and manner of acquisition will not destroy typicality "if each class member was the victim of the same material misstatements and the same fraudulent course of conduct").

Plaintiffs allege a common course of conduct affecting all Settlement Class Members. They and all Settlement Class members purchased Virgin Galactic common stock at prices that were allegedly artificially inflated by Defendants' alleged misrepresentations and were harmed in the same way when the truth emerged. *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *10 (E.D.N.Y. Jan. 6, 2021). Plaintiffs' claims stand or fall with those of the Settlement Class and they are thus typical.

Plaintiffs are also typical because they hold both Actionable and Dismissed Claims. Ibrahim purchased $10,128.08 of Virgin Galactic stock before July 11, 2021; Ortiz, $10,665.54; and Ochs, $3,139.21.

#### 4. Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the class's interests. This requirement traditionally entails a two-pronged inquiry: first, the showing that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, the representative parties' counsel is qualified, experienced, and able to conduct the litigation vigorously. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *EVCI*, 2007 WL 2230177, at *13; Fed. R. Civ. Proc. 23(g). Both prongs are satisfied.

**a) Plaintiffs are Adequate Representatives**

Plaintiffs' interests are aligned with, not antagonistic to, those of the proposed Settlement Class. Plaintiffs purchased Virgin Galactic common stock during the Settlement Class Period at artificially inflated prices. They seek—on their own behalf and on behalf of all other Settlement Class Members—to maximize the recovery. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest…"). Thus, Plaintiffs are adequate class representatives.

**b) Proposed Class Counsel are Adequate**

Plaintiffs retained skilled and experienced counsel with a record of successfully representing investors in similar securities cases. *See Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 346 (D.N.J. 2018) (finding, with respect to GPM and Rosen Law, that the firms "have extensive experience in securities litigation and have demonstrated competency in litigating the present matter."); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (noting that Rosen Law "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement); *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *13 (C.D. Cal. April 23, 2024) ("GPM's attorneys have many years of experience litigating complex federal civil cases, and, in particular, shareholder and securities class actions.").

Plaintiffs and Lead Counsel diligently prosecuted this Action through pleadings, class certification, and fact discovery. Moreover, during discovery, Plaintiffs and their counsel did not merely collect evidence; they promptly employed the evidence by repleading claims the Court had initially dismissed. They are adequate.

### B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

#### 1. Common Questions Predominate

Predominance exists where questions capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud[.]" *Amchem*, 521 U.S. at 625.

Here, there are common questions of law and fact involving violations of the securities laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("The common issues in this action include whether defendants issued materially false and misleading statements . . . , scienter, reliance, and causation. All plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability."). The predominance requirement has, therefore, been satisfied. *See id.*; *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at *5 (S.D.N.Y. April 6, 2006) (finding predominance requirement readily met because "[a]llegations of [d]efendants' misrepresentations and the improper inflation of AOL's accounting revenues underlie the factual and legal claims of every Class Member").

#### 2. A Class Action is Superior

Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the

likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Securities suits easily satisfy the superiority requirement of Rule 23(b)(3), because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015).

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[M]ost of the plaintiffs would have no realistic day in court if a class action were not available."). Further, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

## IV. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A. Standards for Preliminary Approval

Courts apply a "strong judicial policy favoring settlements, particularly in the class action context." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012). Complex class action litigation ties up judicial resources and spends the parties' time and money, and litigating through a jury verdict and appeal significantly delays recovery. *Palacio v. E*TRADE Fin. Corp.*, 2012 WL

2384419, at *3 (S.D.N.Y. June 22, 2012) ("Litigation through trial would be complex, expensive, and long."). Thus, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at *4. When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Under Federal Rule of Civil Procedure 23(e), `a court's question at preliminary approval is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement, after considering "the four factors outlined in Rule 23(e)(2) holistically." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *see also* Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) governs final approval and requires courts to determine if a proposed settlement is fair, reasonable, and adequate, after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

These factors "add to, rather than displace, the *Grinnell* factors"[5] considered by courts within the Second Circuit. *Moses*, 79 F.4th at 243.

[5] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

### B. The Settlement Should be Preliminarily Approved Because it is Procedurally and Substantively Fair

In conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014). A settlement is procedurally fair when well-informed counsel reaches it through arm's-length negotiations. *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021). A settlement is substantively fair when the relief to the class is adequate after evaluating the Rule 23(e) and *Grinnell* factors. *Id.* at *9. Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig*., 243 F.R.D. 79, 87 (S.D.N.Y. 2007). Here, the Settlement is both procedurally and substantively fair.

#### 1. Plaintiffs and Lead Counsel Adequately Represented the Class

As explained at pages 11-12 above, Plaintiffs and Lead Counsel are adequate representatives.[6]

#### 2. The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Here, as set forth in detail at page 7 above, the Parties engaged in a lengthy mediation process with Mr. Melnick. The arm's-length nature of the settlement negotiations, and the involvement of a mediator with substantial experience mediating complex securities class

[6] That Plaintiffs all sat for their depositions further shows their commitment.

actions, support the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *see also In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

**3. The Proposed Settlement Is a Very Good Result for the Class in Light of the Settlement's Benefits and the Risks of Continued Litigation**

Each of the factors set out in Rule 23(e)(2)(C), as well as the non-duplicative factors set out in *Grinnell*, 495 F.2d at 463, weigh in favor of preliminarily approving the Settlement.

**a) The Costs, Risks, and Delay of Trial and Appeal; the Risks of Establishing Liability and Damages and Maintaining the Class Through Trial**

"[S]ecurities class actions are notably difficult and notoriously uncertain to litigate." *Mikhlin*, 2021 WL 1259559, at *5. On the substance, this case is about literal rocket science. Key documents that Plaintiffs would show the jury are filled with complex mathematical equations and physics concepts. Defendants are likely to benefit from this complexity because the jury will presume they are authorities: Defendants' principal fact witnesses include one of NASA's previous administrators and Virgin Galactic pilots who have flown to space.

There were substantial risks in this Action. Plaintiffs had not secured class certification, nor survived summary judgment. When the Parties reached the Settlement, Plaintiffs' motion for leave to file the FAC was still pending. Thus, there was only one allegedly false statement in the case. Defendants would dispute that the statement was false, that Branson in fact had any knowledge of the flight deviation at the time he made the statement shortly after his spaceflight concluded, or that it caused Plaintiffs' losses. Moreover, the statement was made hours after

Branson had flown to space, fulfilling what he had claimed for decades was one of his key life goals. The jury might well have found that his statement resulted from elation rather than recklessness or an intent to defraud. Had Plaintiffs lost at trial, the Settlement Class would receive no recovery at all.

Proving loss causation and damages at trial would also be risky, complicated, and uncertain, involving conflicting expert testimony. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages."). Even if Plaintiffs successfully proved Defendants' liability at trial, the jury might reduce damages significantly. *See In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting that "[f]ew cases tried before a jury result in a verdict awarding the full amount of damages claimed.").

Plaintiffs might still lose their case even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012). Even if Plaintiffs won at trial, secured a verdict for damages, and then defended the verdict from the Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million jury verdict). Thus, even beyond the trial itself, Plaintiffs faced additional, substantial risks that could take years to litigate.

The sheer duration of securities class actions also imperils recovery. Securities class actions are so lengthy and so complex that plaintiffs risk that the law will shift beneath their feet, eliminating a victory that was unimpeachable under the standards that existed when it was secured.

*See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011) (in case brought in 2005, Supreme Court decision after entry of verdict in plaintiffs' favor reduced the billion-dollar verdict into an approximately $78 million recovery), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016).[7]

This is a case in point. The Court first upheld Plaintiffs' claims as to the February 2019 accident but then, based on an intervening controlling decision, dismissed them. The dismissal eliminated one of Plaintiffs' theories and cut damages by 80%. *See In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the … litigation to assess the risks involved.").

By contrast, the Settlement provides a favorable, immediate cash recovery for the Class and eliminates the risk, delay, and expense of continued litigation. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

#### b) The Stage of the Proceedings and the Amount Of Discovery Completed

This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of

---

[7] *See also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds because intervening Supreme Court decision had made then-proper jury instructions erroneous); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231–32 (10th Cir. 1996) (case filed in 1973 and tried to a verdict for plaintiffs in 1988 with jury instructions compelled by then-controlling precedent which the Supreme Court overruled in a 1994 opinion causing the court to vacate the jury verdict in 1996).

settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). As set forth above, the case has been heavily litigated on the pleadings, the Parties have engaged in substantial discovery, class certification was fully briefed, and the Parties engaged in a long, hard-fought mediation process. Under such circumstances, this factor supports preliminary approval. *See IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

**c) The Defendants' Ability to Withstand a Greater Judgment**

A defendant's ability to withstand a judgment greater than that secured by settlement is generally not one of the determining factors, and the Parties view this factor as immaterial. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'").

**d) The Relief Provided tor the Class Is Adequate**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). Here, the proposed Settlement provides for a cash payment of $8,500,000 for the benefit of the Settlement Class. This is a very good result considering the significant risks of continued litigation (*see* pages 17-19 above) and the fact that the Court had previously dismissed claims constituting 90% of Plaintiffs' maximum damages.

Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on their Actionable Claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages

theory—*i.e.*, Plaintiffs' best case scenario—the total ***maximum*** damages potentially available in this Action would be approximately $302.2 million. Under this scenario, the Settlement represents a recovery of 2.81% of the Settlement Class's maximum estimated damages. In comparison, the median recovery in securities class actions settled between January 2015 and December 2024 with damages of between $200-399 million was approximately 2.9% of estimated damages. *See* Horne Declaration, Ex. 2 (excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) at p. 26 (Fig. 23)).[8] In any case, Defendants vociferously disputed Plaintiffs' damages numbers. Indeed, a "complete and total victory" on liability and loss causation for all of the alleged false statements "occurs with the regularity of unicorn sightings." *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440 (E.D. Pa. Sept. 20, 2017). Accordingly, the amount recovered supports preliminary approval.

**4. The Proposed Method for Distributing Relief is Effective**

Plaintiffs propose well-establish, effective procedures for processing Settlement Class Members' claims and distributing relief. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. These procedures are effective, as well as necessary, because as neither Plaintiffs nor Defendants

[8] Total maximum damages including the Dismissed Claims, which Plaintiffs would have had to resurrect on appeal following a trial on the Actionable Claims, are $1.436 billion. Assuming this unlikely scenario, the recovery equates to 0.59% of maximum damages. While this is less than the 1.3% recovery in cases with similar damages (*see* NERA Report), the procedural hurdles to recovery are imposing.

possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[9]

**5. The Proposed Award of Attorneys' Fees is Appropriate**

As disclosed in the Notice, Lead Counsel will be applying, on behalf of themselves and additional counsel, for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services they have rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable considering the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (finding 33⅓% fee request of settlement fund valued at $11.5 million "falls comfortably within the range of fees typically awarded in securities class actions"). In addition, Lead Counsel will receive no payment until after the Court issues an order awarding attorneys' fees following the Settlement Hearing.

**6. The Parties Have Entered a Side Agreement Regarding Opt-Outs**

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. Here, the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a certain percentage of Virgin Galactic Securities traded during the Settlement Class Period request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

---

[9] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

**7. There Was No Preferential Treatment; The Plan Treats All Class Members Equitably Based on the Strength of Their Claims**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, detailed in ¶¶28-52 of the proposed Notice (Ex. A-1 to Ex. 1 of the Horne Decl.), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F.Supp.2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

The Plan does, however, allocate a larger portion of the Net Settlement Fund to the Actionable Claims (relating to Branson's July 2021 flight), than to the Dismissed Claims (all others). *See* Notice, ¶¶32-33 (allocating 88.2% to the Actionable Claims and 11.8% to the Dismissed Claims). Such a distinction is reasonable because the Dismissed Claims faced an arduous and risky path to recovery. Plaintiffs can only appeal the Court's dismissal after litigating the Actionable Claims to judgment. Moreover, since the Court's decision on Defendants' motion to dismiss the SAC, the Ninth Circuit has held that investors in SPACs do not have standing to sue based on statements directed to the public investors but nominally about the private company. *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181, 1186 (9th Cir. 2024). While Plaintiffs believe that while *Lucid Motors* is distinguishable, the decision reduces Plaintiffs' odds of restoring the Dismissed Claims on appeal. Accordingly, given the procedural posture of the case, and the relatively small likelihood of restoring the Dismissed Claims, dividing the Net Settlement Fund between Actionable Claims (88.2%) and Dismissed Claims (11.8%) is appropriate. *See In re*

*WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005) ("Settlement proceeds may be allocated according to the strengths and weaknesses of the various claims possessed by Class Members.").

## V. THE COURT SHOULD APPROVE THE PROPOSED FORMS AND METHODS OF PROVIDING NOTICE TO THE SETTLEMENT CLASS

**The Notice Plan is Adequate:** Rule 23(e) requires that notice of the Settlement be provided to Settlement Class Members in such manner as the Court directs. The proposed Notice Plan includes: (a) emailing links to the Long Notice and Proof of Claim, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long Notice, Proof of Claim, and Stipulation on a Settlement website maintained by SCS; (c) allowing Settlement Class Members to submit their claims electronically at the Settlement website; (d) upon request, mailing copies of the Long Notice and/or Proof of Claim; and (e) publishing the Summary Notice over *PR Newswire* and in *Investor's Business Daily*.

This proposed notice plan is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Indeed, Courts routinely find these methods of notice sufficient. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (collecting cases and stating, "The use of a combination of a mailed post card [sic] directing class members to a more detailed online notice has been approved by courts."); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving similar notice program). Defendants will also provide notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq*.; Stipulation ¶59.

**The Notice is Adequate:** In addition to being "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." (Fed. R. Civ. P. 23(c)(2)(B)), a settlement notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 114 (2d Cir.2005).

The proposed Notice includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and due process. In plain wording the Notice sets forth: (a) the rights of Settlement Class Members, including the manner in which they may lodge objections or request exclusion and instructions on how to complete and submit a Claim Form to the Claims Administrator; (b) the nature of the litigation; (c) the proposed Settlement Amount; (d) a description of the proposed Plan; (e) the maximum attorneys' fees and expenses and awards to Plaintiffs to be sought by Lead Counsel; (f) the definition of the Settlement Class; (f) the reasons the Parties have proposed the Settlement; (h) the estimated distribution per damaged share; (i) the nature of the Settlement Class's claims; (j) the Parties' disagreement over damages and liability; (k) contact information for all counsel and the Court; and (l) the time, date, and location of the Settlement Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice alerts Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees of up to 33⅓% of the Settlement Fund, reimbursement of Litigation Expenses in an amount not to exceed $1.55 million, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class in an aggregate amount not to exceed $55,000, all to be paid from the Settlement Fund. Accordingly, the Notice Plan and the Notice each satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.

## VI. PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the schedule below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. Plaintiffs request that Court schedule the Settlement Hearing at least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice or emailing a link to the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 25 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶27) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶¶13, 17) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶27) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

## VII. CONCLUSION

For the foregoing reasons, the Court should grant this unopposed motion and enter the proposed Preliminary Approval Order.

Dated: November 4, 2025

Respectfully submitted,

GLANCY PRONGAY & MURRAY LLP

By: *s/ Ex Kano S. Sams II*
Kara M. Wolke
Ex Kano S. Sams II
Joseph D. Cohen
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
phone: (310) 201-9150
fax: (310) 432-1495
Email: kwolke@glancylaw.com
esams@glancylaw.com
jcohen@glancylaw.com

THE ROSEN LAW FIRM, P.A.

By: *s/ Jonathan Horne*
Jonathan Horne, Esq. (JH 7258)
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jhorne@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jonathan Horne*
Jonathan Horne