UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
SHANE LAVIN, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

      -against-

VIRGIN GALACTIC HOLDINGS, INC.,
MICHAEL A. COLGLAZIER, GEORGE
WHITESIDES, DOUG AHRENS, and JON
CAMPAGNA,

                Defendants.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21-CV-3070 (NRM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

This is a putative class action brought against Virgin Galactic Holdings, Inc.

("Virgin Galactic"), Michael A. Colglazier, George Whitesides, Richard Branson, and

Chamath Palihapitiya. *See* Fourth Am. Compl. ("FAC"), ECF 192, ¶¶ 1, 27–32

(collectively, "Defendants"). Plaintiffs Mark Kusnier, Robert Scheele (the "Lead

Plaintiffs"), Xinqiang Cui, Justin Carlough, Jennifer Ortiz, Richard O'Keefe-Jones,[1]

Vipul Gupta, Maria Josephine Rosales, Hesham Ibrahim, and Montgomery Brantley

(the "Named Plaintiffs") purchased or otherwise acquired the common stock of Virgin

Galactic or Social Capital Hedosophia Holdings Corp. ("Social Capital"), at some point

between July 10, 2019, through August 4, 2022, inclusive (the "Class Period"). FAC, ECF

192, ¶¶ 1, 25–26. Plaintiffs allege that, ahead of the reverse merger that ultimately took

Virgin Galactic public, Defendants made false statements regarding the company's

---

[1] Plaintiff O'Keefe-Jones passed away during the pendency of this litigation, and his surviving spouse, Raymond Ochs, was substituted in his place. *See* Suggestion of Death, ECF 142; Mot. to Substitute Party, ECF 163; Aug. 29, 2025 ECF Order.

readiness for commercial space travel, causing Plaintiffs to purchase the common stock at an artificially inflated price, in violation of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934. *See* FAC, ECF 192, *passim*.

Currently pending before the Court is Plaintiffs' unopposed motion for preliminary settlement approval. For the following reasons, the Court recommends granting Plaintiffs' motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

### I.   Factual Background

Defendant Virgin Galactic is an "aerospace company developing a system to take customers to space." FAC, ECF 192, ¶ 27. Defendant Branson was the controlling shareholder of the firm throughout the Class Period. *Id.* ¶ 28. Defendant Palihapitiya was the Chairman of the Board of Social Capital through February 2022; Social Capital is a publicly traded holding company founded to take private companies public through reverse mergers (a special purpose acquisition company, or "SPAC"), which did reverse-merge with Virgin Galactic in October 2019, taking the latter company public. *Id.* ¶¶ 29, 48–51. Defendant Colglazier has served as the CEO of Virgin Galactic and a member of its Board of Directors since July 2020, and its President since February 2021. *Id.* ¶ 31. Defendant Whitesides was CEO of Virgin Galactic until July 20, 2020. *Id.* ¶ 30.

Plaintiffs allege that, in the lead up to the reverse merger, Defendants claimed that they "had built and successfully tested a system that was ready to take passengers to space . . . creating the misleading impression that Virgin Galactic was on the cusp of commercial spaceflight," when in reality, the firm was not "anywhere near ready for regular commercial service." *Id.* ¶¶ 2, 8. In the main, Plaintiffs' claims center on two unsuccessful test flights, Defendants' allegedly false or misleading statements about

2

those flights, and the impact of those statements on Virgin Galactic's stock price. First, Defendants told investors that its prototype ship, Unity, "had flown to space twice," and the second flight was an "unqualified success"; however, on that second flight, in February 2019, the ship "nearly disintegrated midflight" and was grounded at the time of the reverse merger. *Id.* ¶¶ 58–59; *see also id.* ¶¶ 64–90. Second, on July 11, 2021, a test flight carrying Defendant Branson as a passenger "had dangerously strayed from its landing cone and FAA airspace," yet Defendants made public statements describing the event as "a landmark achievement," a "successful mission," and "absolutely and utterly flawless." *Id.* ¶¶ 228–39; *see also id.* ¶¶ 240–50 (discussing later investigation of this incident). Plaintiffs further aver that Defendants Virgin Galactic and Branson "collectively sold $800 million of shares after the July 2021 flight while in possession of material nonpublic information," *i.e.*, that these missions had not gone exactly to plan. *Id.* ¶ 252; *see also id.* ¶¶ 233–36. Plaintiffs contend that these public statements comprised "a scheme to deceive the market" and "artificially inflated the price of Virgin Galactic's common stock," claiming that public disclosure of Defendants' prior alleged misrepresentations precipitated a significant decline in the stock price. *Id.* ¶¶ 18, 206, 218, 220–74.

Lead and Named Plaintiffs allege that they each purchased or otherwise acquired Virgin Galactic securities during the Class Period, would not have done so if they had been aware that the stock price had been inflated by Defendants' statements, and suffered damages as a result of their purchases. *Id.* ¶¶ 25–26, 391, 402–03; *see also id.* ¶¶ 415–23.

3

## II. Procedural History

Plaintiff Shane Lavin[2] initiated this putative class action on May 28, 2021. *See generally* Compl., ECF 1. Following the filing of an amended complaint, *see* ECF 36, the Honorable Allyne R. Ross granted Defendants — at that time, Virgin Galactic, Branson, Colglazier, Palihapitiya, Whitesides, and Michael Moses — leave to move to dismiss the complaint. *See* Letter Mot. for Pre-Mot. Conf., ECF 43; Resp., ECF 44; Feb. 17, 2022 ECF Order. Defendants filed their fully briefed motion to dismiss on April 4, 2022, which Judge Ross granted in part and denied in part, with leave to amend the complaint. *See* Mot. to Dismiss, ECF 51; *see also* Order, ECF 58. Following Judge Ross's decision, the following claims remained: (1) Plaintiffs' Section 10(b) claims related to Defendants' failure to disclose the February 2019 flight damage and the false claims related to the July 2021 flight, against Defendants Branson and Virgin Galactic, and (2) Plaintiffs' Section 20A claims, related to Branson's August 2021 stock sales, against Defendant Branson alone. *See* Order, ECF 58; *see also* Pls.' Unopposed Mem. of L. in Supp. of Preliminary Settlement Approval ("Mem."), ECF 197, at 4.

On February 9, 2023, Plaintiffs filed a Second Amended Complaint, and later that month, Defendants again moved to dismiss.[3] Second Am. Compl. ("SAC"), ECF 68; *see*

---

[2] Lavin's role in this litigation ceased following the order appointing Lead Plaintiffs. *See generally* Docket; *see* Order, ECF 22 (appointing Robert Scheele and Mark Kusnier as Lead Plaintiffs); *see also* Jan. 5, 2026 Preliminary Fairness Hr'g Tr. ("Preliminary Fairness Hr'g Tr."), ECF 204, at 6:9–22.

[3] Parts of the Second Amended Complaint and motion to dismiss briefing were filed under seal. *See* Mot. for Leave to File Document Under Seal, ECF 61; Dec. 14, 2022 ECF Order (denying ECF 61); Letter, ECF 65 (providing supplemental authority in support of sealing); Mot. for Leave to File Document Under Seal, ECF 66; Jan. 31, 2023 ECF Order (granting ECF 66); Mot. for Leave to File Document Under Seal, ECF 74 (seeking to file Defendants' memorandum of law in support of their motion to dismiss and exhibits under seal); Mot. for Leave to File Document Under Seal, ECF 81 (seeking to file, *inter alia*, Defendants' reply memorandum of law under seal).

*also* Redacted SAC, ECF 69; Second Mot. to Dismiss, ECF 72. Judge Ross again granted Defendants' motion in part and denied it in part: She found that the claims related to the July 2021 test flight survived the motion, but held that Plaintiffs did not have standing to sue over the February 2019 false statements under an intervening Second Circuit case, *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022). *See* Sealed Op. & Order, ECF 87; Redacted Op. & Order, ECF 90; *see also* Mem., ECF 197, at 4–5. Accordingly, only claims by Plaintiffs O'Keefe-Jones, Ortiz, and Ibrahim against Defendants Virgin Galactic, Branson, and Palihapitiya survived. Mem., ECF 197, at 4–5. Plaintiffs moved for reconsideration of this order, which was denied. *See* Mot. for Reconsideration, ECF 93; Order Denying Mot. for Reconsideration, ECF 98.

Following this second round of motion practice, an initial conference was held before the undersigned Magistrate Judge, and discovery commenced. *See* Feb. 8, 2024 ECF Min. Entry & Order. Around this same time, the parties began to engage in informal settlement and mediation discussions. Mem., ECF 197, at 8. As discovery proceeded, Plaintiffs moved to add Brantley as a Named Plaintiff. *See* Mot. to Amend, ECF 118; July 2, 2024 Order (granting Plaintiffs' motion). The parties stipulated to the filing of a Third Amended Complaint ("TAC"), which was filed on August 21, 2024. *See* Stipulation, ECF 125; Mot. for Leave to File Document Under Seal, ECF 126; Aug. 21, 2024 ECF Order (approving stipulation); Sealed TAC, ECF 127; Redacted TAC, ECF 128. Plaintiffs moved for class certification in October 2024. Mot. to Certify Class, ECF 131.

While the briefing on the class certification motion was ongoing throughout the spring of 2025, Plaintiffs filed a suggestion of death as to Plaintiff O'Keefe-Jones and a subsequent motion for substitution, which the undersigned Magistrate Judge granted on August 29, 2025. Suggestion of Death, ECF 142; Mot. to Substitute Party, ECF 163; Aug. 29, 2025 ECF Order. Simultaneously, Plaintiffs moved for leave to file the FAC,

which Judge Ross granted on June 12, 2025. Mot. to Amend, ECF 172; June 12, 2025 Op., ECF 186 (granting leave to amend); FAC, ECF 192. This version of the complaint sought to revive the claims against Colglazier that had been dismissed from the Second Amended Complaint. *See* FAC, ECF 192; *see also* Mem., ECF 197, at 6.

Amid all the other activity in this case, the parties' settlement discussions intensified, and on March 28, 2025, the parties participated in a full-day mediation session. Mem., ECF 197, at 8. While a settlement was not reached in that session, the parties subsequently accepted the mediator's double-blind recommendation to resolve the claims for $8.5 million. *Id.* On June 17, 2025, the parties — by this point, comprising only Plaintiffs Brantley, Ortiz, Ibrahim, and Ochs on behalf of O'Keefe-Jones and Defendants Virgin Galactic, Branson, and Palihapitiya — filed a letter advising the Court that they had reached a settlement in principle. Joint Letter, ECF 189. Judge Ross stayed the deadlines in the case, with two discrete exceptions, in order to allow the parties to finalize the settlement. June 20, 2025 ECF Order. The stay was extended following notice of the parties' executed memorandum of understanding ("MOU"); the undersigned Magistrate Judge directed the parties to file a motion for preliminary settlement approval or a joint status report by October 21, 2025. July 22, 2025 ECF Order; *see also* Letter, ECF 194 (apprising the Court of the MOU). Following a short extension of the deadline to file, Plaintiffs filed the instant motion on November 4, 2025. Mot. for Settlement Approval, ECF 196; *see also* Joint Status Report, ECF 195 (requesting extension); Oct. 23, 2025 ECF Order (granting extension).

The Court held a preliminary fairness hearing on January 5, 2026. Jan. 5, 2026 ECF Min. Entry & Order; *see* Preliminary Fairness Hr'g Tr., ECF 204. Discussion was held regarding the provisions of the proposed settlement allocating funds to payment of incentive awards for Named and Lead Plaintiffs, as well as payment of the case

administration costs and expenses. The Court directed Plaintiffs to revise the corresponding sections of the long form notice to clarify these allocations, and to more clearly explain (1) that settlement class members may represent themselves *pro se* and (2) how ERISA plan participants, beneficiaries, and administrators may submit claims. *See* Jan. 5, 2026 ECF Min. Entry & Order.

On January 12, 2026, Plaintiffs submitted a revised proposed notice. Letter, ECF 203. On January 13, 2026, this case was reassigned to the Honorable Nina R. Morrison as the presiding judge. Jan. 13, 2026 ECF Order Reassigning Case.

## DISCUSSION

Plaintiffs request that the Court (1) preliminarily certify the settlement class for the purposes of settlement; (2) preliminarily approve the notice plan and documents Plaintiffs will use to communicate notice; (3) preliminarily approve the plan of allocation; and (4) schedule a fairness hearing to consider final approval of the settlement. Mem., ECF 197, at 1–2.

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class — or a class proposed to be certified for purposes of settlement — may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "At the preliminary approval stage, a court makes an initial evaluation of fairness prior to notifying the class . . . ." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *3 (E.D.N.Y. Feb. 11, 2021).

Preliminary approval is guided by a "likelihood standard," *i.e.*, "whether the parties have shown that the court will *likely* be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) (hereinafter "*Payment Card*"); *see also* Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii). "If the court determines that notice to class members is 'justified by

7

the parties' showing'" as to the likelihood of final approval and class certification, "it 'must direct notice in a reasonable manner to all class members who [would] be bound by the proposal.'" *Rosenfeld*, 2021 WL 508339, at *4 (quoting Fed. R. Civ. P. 23(e)(1)(B)). The court must also appoint class counsel for purposes of settlement. *Payment Card*, 330 F.R.D. at 58.

The Court begins with an analysis of the likelihood of final settlement approval and class certification, then assesses the proposed form and manner of notice, and concludes with appointment of class counsel.

## I. Likelihood of Final Settlement Approval

### A. Legal Standards

In assessing the likelihood of final approval, courts "look[] to the factors contained in the text of Rule 23(e)(2)." *Payment Card*, 330 F.R.D. at 28. Under Rule 23(e)(2), courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "[P]aragraphs (A) and (B) are 'procedural' factors that address 'the conduct of the litigation and of the negotiations leading up to the proposed

settlement,' whereas . . . paragraphs (C) and (D) are 'substantive' factors that address

the 'relief that the settlement is expected to provide to class members.'" *Rosenfeld*, 2021

WL 508339, at *3 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018

amendment).

The substantive factors are supplemented by the nine *Grinnell* factors, which

"courts in this Circuit have traditionally considered" when "evaluating the fairness,

reasonableness, and adequacy of the proposed settlement." *Id.* (citing *City of Detroit v.*

*Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Payment Card*, 330 F.R.D. at 29 (noting the

"significant overlap" between the *Grinnell* and substantive factors). The *Grinnell* factors

include:

> (1) the expense, complexity, and likely duration of the litigation; (2) the
> class's reaction to the settlement; (3) the stage of the proceedings and
> amount of discovery completed; (4) the risks of establishing damages;
> (5) the risks of establishing liability; (6) the risks of maintaining the class
> throughout the litigation; (7) defendants' ability to withstand greater
> judgment; (8) the range of reasonableness of the settlement amount
> considering the best possible recovery; and (9) the range of reasonableness
> of the settlement amount given the risks of litigation.

*Rosenfeld*, 2021 WL 508339, at *3 (citing *Grinnell*, 495 F.2d at 463).

## B. Analysis

### 1. *Procedural Factors*

#### a. Adequate Representation

"In determining the adequacy of class representatives and counsel, courts

consider 'whether (1) plaintiff[s'] interests are antagonistic to the interests of other

members of the class and (2) plaintiff[s'] attorneys are qualified, experienced[,] and able

to conduct the litigation.'" *Rosenfeld*, 2021 WL 508339, at *4 (quoting *Cordes & Co. Fin.*

*Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)); *see Payment Card*, 330

9

F.R.D. at 30 n.25 (explaining that "Rule 23(a)(4) case law . . . guide[s]" the Rule

23(e)(2)(A) analysis). Class representatives "'must be part of the class and possess the

same interest and suffer the same injury as the [other] class members.'" *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v.*

*Rodriguez*, 431 U.S. 395, 403 (1977)); *see also Payment Card*, 330 F.R.D. at 31 (explaining

that the Due Process Clause requires adequate representation). As for class counsel, "[a]

court reviewing a proposed settlement must pay close attention to the negotiating

process, to ensure that . . . counsel have possessed the experience and ability, and have

engaged in the discovery[] necessary to effective representation of the class's interests."

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quotation marks omitted); *see*

*also* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("For example, the

nature and amount of discovery in this or other cases . . . may indicate whether counsel

negotiating on behalf of the class had an adequate information base.").

Here, the record illustrates that Plaintiffs' interests are aligned with those of the

proposed class. Plaintiffs seek to represent "all those who purchased or otherwise

acquired the Company's common stock during the Class Period, and who were

damaged thereby." FAC, ECF 192, ¶ 390. The proposed class would exclude:

> (a) persons and entities that suffered no compensable losses; and
> (b)(i) Defendants; (ii) any person who served as an officer or director of
> Virgin Galactic, Social Capital, and/or subsidiaries of either during the
> Settlement Class Period, and their Immediate Family; (iii) persons or
> entities who held shares of Vieco 10 Ltd. as of October 25, 2019, and all
> subsidiaries thereof; (iv) any trust of which an Individual Defendant was
> or is the settlor or which was or is for the benefit of an Individual
> Defendant and/or member(s) of their immediate families; (v) Defendants'
> liability insurance carriers; (vi) Virgin Group Holdings Limited and each
> of its controlled subsidiaries and affiliates; (vii) the legal representatives,
> heirs, successors, predecessors, and assigns of any person or entity
> excluded under provisions (i) through (vi) hereof; and (viii) all entities
> controlled by the persons and entities excluded under provisions
> (i) through (vii) hereof. Also excluded from the Settlement Class are any

persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

Proposed Prelim. Approval Order, ECF 198-1, at ECF p. 47. Plaintiffs claim financial harm stemming from Defendants' alleged violations of federal securities law, which other proposed class members must have suffered in order to join the class. FAC, ECF 192, ¶ 394. Absent any indication that Plaintiffs' interests in this action "are antagonistic to the interest[s] of other members of the class," the record demonstrates that Plaintiffs are well positioned to represent the proposed class. *Cordes*, 502 F.3d at 99 (quotation marks omitted).

The Court similarly finds that Plaintiffs are adequately represented by their attorneys (herein referred to as "Lead Counsel"). The Court notes that Lead Counsel have on several occasions been appointed class counsel for the purpose of settlement.[4] *See In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059 (KAM) (SJB), 2024 WL 1719632, at \*6 (E.D.N.Y. Apr. 22, 2024) (finding that co-Lead Counsel Glancy Prongay & Murray LLP has "substantial experience litigating class action lawsuits under federal securities laws"); *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886 (LDH) (SJB), 2020 WL 8225336, at \*1 (E.D.N.Y. Dec. 22, 2020) (appointing The Rosen Law Firm, P.A. as class counsel); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at \*7 (E.D.N.Y. Jan. 21, 2022) (same); *In re Akazoo S.A. Sec. Litig.*, No. 20-CV-1900 (BMC), 2021 WL

---

[4] The Court observes that, following Plaintiffs' submission of their motion, the Glancy firm changed its name from Glancy Prongay & Murray LLP to Glancy Prongay Wolke & Rotter LLP. *See* Michaela Ligman, "Glancy Prongay & Murray LLP Announces Name Change To Glancy Prongay Wolke & Rotter LLP," GLANCY PRONGAY WOLKE & ROTTER (Jan. 28, 2026), https://www.glancylaw.com/news-faqs/glancy-prongay-murray-llp-announces-name-change-to-glancy-prongay-wolke-rotter-llp/ (last visited Feb. 6, 2026); *cf. Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (observing that a court may take judicial notice of information on a party's website where the "website's authenticity is not in dispute" (quotation marks omitted)).

8945767, at *2 (E.D.N.Y. Apr. 28, 2021) (appointing The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP as class counsel).

Both the pleadings and motion papers demonstrate a thorough investigation by Lead Counsel into the underlying facts and applicable law. *See generally* FAC, ECF 192; Mem., ECF 197. Lead Counsel also attended a full-day mediation to work towards a settlement. Mem., ECF 197, at 8. Plaintiffs additionally represent that the parties engaged in significant discovery in this case prior to agreeing to the settlement, a fact that supports the conclusion that Lead Counsel has adequately represented the interests of the proposed class. *Id.* at 7. Indeed, Plaintiffs state that the parties reviewed over 100,000 pages of documents, took or defended 14 depositions (including those of two Individual Defendants, four Plaintiffs, and one expert), and propounded multiple sets of requests for production of documents and interrogatories, as well as one set of requests for admissions. *Id.* at 1, 7. In light of Lead Counsel's experience and efforts in this case to investigate and substantiate the alleged violations, the Court finds that Plaintiffs are being represented by "qualified, experienced" legal counsel. *Cordes*, 502 F.3d at 99 (quotation marks omitted).

b. <u>Arm's Length Negotiation</u>

"A class settlement reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation is entitled to a presumption of fairness." *Rosenfeld*, 2021 WL 508339, at *5 (quotation marks omitted). Likewise, "a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato*, 236 F.3d at 85.

As to the parties' selected mediator, Jed D. Melnick, several courts in this circuit have held that Mr. Melnick's involvement has supported a finding that class-action

12

settlement agreements were fair. *See In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2023 WL 5018625, at *5 (E.D.N.Y. June 5, 2023), *report and recommendation adopted as modified*, 2023 WL 4621716 (E.D.N.Y. July 19, 2023); *Gordon v. Vanda Pharms. Inc.*, No. 19-CV-1108 (FB) (LB), 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022*); Fulton County Emps.' Ret. Sys. ex rel. Goldman Sachs Grp. Inc. v. Blankfein*, No. 19-CV-1562 (VSB), 2022 WL 4292894, at *3 (S.D.N.Y. Sept. 16, 2022). Additionally, as noted above, Plaintiffs represent that the mediation was one full day session and that settlement was only reached following the issuance of a mediator's proposal. Mem., ECF 197, at 8; *see* Preliminary Fairness Hr'g Tr., ECF 204, at 11:5–12:20. At the preliminary fairness hearing, the parties represented that Mr. Melnick also facilitated follow-up discussions that occurred between the March 28, 2025 mediation session and June 17, 2025, when the parties reported to the Court that they had achieved a settlement in principle. Preliminary Fairness Hr'g Tr., ECF 204, at 12:21–13:16; *see* Joint Status Report, ECF 189. The record in this case amply establishes that the negotiation was at arm's length; there is no "'evidence or indicia suggesting that the negotiations were collusive.'" *Gordon*, 2022 WL 4296092, at *4 (quoting *Simerlein v. Toyota Motor Corp.*, No. 17-CV-1091 (VAB), 2019 WL 1435055, at *13 (D. Conn. Jan. 14, 2019)). The Court therefore finds that the parties' proposed settlement was the result of arm's length negotiations.

  2. *Substantive Factors*

   a. <u>Adequate Relief</u>

    i. <u>*Costs, Risks, and Delay of Trial and Appeal*</u>

  The first factor in assessing whether the proposed settlement provides adequate relief for the putative class is an evaluation of the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). This factor "'subsumes several *Grinnell* factors,' including the complexity, expense and likely duration of litigation, the risks of

establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial" (factors 1, 4, 5, and 6). *Rosenfeld*, 2021 WL 508339, at *5 (quoting *Payment Card*, 330 F.R.D. at 36). Put simply, courts must assess whether the proposed settlement "'results in substantial and tangible present recovery, without the attendant risk and delay of trial.'" *Id.* (quoting *Payment Card*, 330 F.R.D. at 36).

Plaintiffs have submitted the parties' proposed settlement agreement, which indicates that the settlement amount is $8.5 million. *See* Stipulation and Agreement of Settlement, ECF 198-1, at 7–8. Plaintiffs represent that without approval of the settlement agreement, litigation would resume, exposing Plaintiffs to "substantial risks" at trial. Mem., ECF 197, at 17–18. For one, as Plaintiffs put it, "this case is about literal rocket science," with Defendants standing to benefit from the inherent complexity in presenting the evidence because a jury is likely to "presume they are authorities." *Id.* at 17. For another, given that only one allegedly false statement remains live following the second motion to dismiss, an adverse jury finding on that statement would preclude Plaintiffs from any recovery at all. *Id.* at 17–18. Plaintiffs also represent that proving loss causation and damages at trial would involve considerable risk and expense, given the likelihood of a "battle of the experts" at trial, and the probability that Defendants would engage in post-verdict motion practice and appeal likewise imperils Plaintiffs' chance of recovery. *Id.* at 18 (quotation marks omitted). Defendants confirmed this position at the Fairness Hearing. *See* Preliminary Fairness Hr'g Tr., ECF 204, at 23:18–24:3.

The parties have shown that the costs, risks, and likely duration of continuing to litigate this matter are significant and that a settlement would result in a tangible present recovery. This factor therefore weighs in favor of preliminary approval of the parties' proposed settlement.

14

###### ii.    *Effectiveness of Proposed Method of Distributing Relief*

The Court next evaluates the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "An allocation formula need only have a reasonable, rational basis" and "need not be perfect." *Payment Card*, 330 F.R.D. at 40 (quotation marks omitted). As to claims processing, the proposed method should "'deter or defeat unjustified claims' without imposing an undue demand on class members." *Rosenfeld*, 2021 WL 508339, at *6 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

The parties' proposed order preliminarily approving settlement and providing for notice states that "Settlement Class Members who wish to participate in the Settlement and to be eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form" within 120 days of the Notice Date, if the Court does not choose another date. Prelim. Approval Order, ECF 198-1, at ECF pp. 52–53. The claim forms must be completed timely, "accompanied by adequate supporting documentation for the transactions and holdings reported therein," contain a certification of the executor's authority to act in a representative capacity on behalf of a settlement class member, if necessary, and be signed under penalty of perjury. *Id.* at ECF p. 53. The parties' stipulation sets out the process for obtaining a distribution of the Net Settlement Fund. Each claim will be reviewed by the Claims Administrator to determine whether the claim is allowable, and, if so, what the claimant's *pro rata* share should be; if a claim is rejected, the Claims Administrator will timely "communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted." *Id.* at ECF pp. 28–31. Claimants whose claims are rejected will have 20 days to contest such a rejection, providing any supporting documentation, and request Court review of the rejection. *Id.* at ECF p. 31.

15

On notice to Defendants' counsel, Lead Counsel will move for a Class Distribution Order, approving the Claims Administrator's determinations, approving payment of administrative fees, and directing distribution of funds to authorized claimants, if the effective date has occurred. *Id.*; *see also id.* at ECF p. 33 (explaining criteria for determining effective date). "This allocation plan appears to be rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld*, 2021 WL 508339, at *6. Likewise, it appears that the claims processing method imposes a minimal burden on claimants and will adequately filter out unjustified claims to settlement funds. The Court therefore finds that the proposed methods of processing claims and distributing relief are rational and fair.

### iii.    *Proposed Award of Attorneys' Fees*

The third factor in the evaluation of whether the settlement provides adequate relief is an assessment of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). "Courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), (hereinafter "*Visa U.S.A.*") (citing *Goldberger*, 209 F.3d at 50).

Here, Lead Counsel intends to "apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 33 1/3% of the Settlement Fund," as well as "reimbursement of Litigation Expenses in an amount not to exceed $1.55 million." Revised Proposed Short Form Notice, ECF 203, at ECF p. 4; *see* Proposed Long Form Notice, ECF 198-1, at ECF p. 63; *see also* Mem., ECF 197, at 22. "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness" — particularly "in cases with funds of less than $10 million." *Rosenfeld*, 2021 WL 508339, at *6 (quotation marks

16

omitted). Assuming that Lead Counsel's request for litigation expenses is documented and substantiated, the Court finds that the requested award for attorneys' fees will likely be found to be reasonable.[5]

####        iv.        _Other Agreements_

The fourth factor requires courts to consider "any agreement required to be identified under Rule 23(e)(3)," _i.e._, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Rule 23(e)(3) is aimed at revealing "undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others," namely, the representative plaintiffs or their attorneys. Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment; _see also_ J. Alex Grimsley, Annotated Manual for Complex Litigation § 21.631 (4th ed. 2025) ("Requiring the parties to file the complete agreement might elicit comments from class members and facilitate judicial review.").

Here, the parties represent that they have entered a confidential side agreement that "establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a certain percentage of Virgin Galactic Securities traded during the Settlement Class Period request exclusion (or 'opt out') from the Settlement." Mem., ECF 197, at 22; _see also_

---

[5] The Court notes that Lead Counsel's requested award is, of course, subject to modification at final settlement approval. _See Rosenfeld v. Lenich_, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *7 (E.D.N.Y. Feb. 11, 2021). Lead Counsel should be prepared to submit contemporaneous time records to facilitate a cross-check against the lodestar. _See In re PPDAI Grp. Inc. Sec. Litig._, No. 18-CV-6716 (TAM), 2022 WL 198491, at *14–17 (E.D.N.Y. Jan. 21, 2022); _see also Marion S. Mishkin L. Off. v. Lopalo_, 767 F.3d 144, 148–49 (2d Cir. 2014) (discussing the "strict rule" that any request for attorneys' fees must be "accompanied by contemporaneous time records" (quotation marks omitted)).

Preliminary Fairness Hr'g Tr., ECF 204, at 34:6–10. Courts in this circuit have found that such an agreement is "standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631 (CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *see Trostorff v. Mynaric AG*, No. 24-CV-7602 (KAM) (CLP), 2025 WL 2696442, at *3 (E.D.N.Y. Sept. 22, 2025). At the preliminary fairness hearing, the Court conducted an *in camera* review of the side agreement here; it is consistent with the parties' representations as set forth above and does not impact the fairness of the settlement. *See* Preliminary Fairness Hr'g Tr., ECF 204, at 34:20–35:18.

> b. Equitable Treatment

The proposed settlement must "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In making this assessment, "the court may weigh 'whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Rosenfeld*, 2021 WL 508339, at *7 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). As explained above, the Settlement Agreement provides for *pro rata* disbursement to Class Members according to their documented losses. "In this way, the agreement appropriately and fairly accounts for . . . point[s] of differentiation among class members' claims." *Id.* The Court further notes that the proposed settlement agreement contemplates an incentive award to Plaintiffs not to exceed $55,000 in the aggregate ($10,000 each to four Plaintiffs, and $7,500 each to two Plaintiffs), to be paid out of the $1.55 million set aside for litigation expenses. *See* Revised Proposed Long Form Notice, ECF 203, at ECF pp. 7, 19.

Plaintiffs explain that the Plan allocates a larger portion of the Net Settlement Fund to "actionable claims" (those relating to the July 2021 flight, 88.2%) than "dismissed claims" (all others, 11.8%). Mem., ECF 197, at 23 (capitalization modified). Plaintiffs posit that this "distinction is reasonable because the Dismissed Claims faced an arduous and risky path to recovery," in light of intervening changes in case law since the case was first brought. *Id.* at 23–24. Courts in this circuit have found that such allocations are reasonable. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005) ("Settlement proceeds may be allocated according to the strengths and weaknesses of the various claims possessed by Class Members." (citing *In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001)). Here, the Court finds that this plan of allocation treats class members equitably relative to each other and to their claims, particularly in light of the challenges to recovery on the dismissed claims if the case were to proceed with further litigation.

c. Stage of Proceedings and Amount of Discovery Completed (*Grinnell* Factor 3)[6]

"This [*Grinnell*] factor requires the Court to consider whether the parties have adequate information about their claims." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012). "To approve a proposed settlement," however, "the Court need not find that the parties have engaged in extensive discovery." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000). The Court need only ensure that the parties have sufficiently investigated the facts such that the settlement is fair and reasonable. *See id.*

---

[6] The second *Grinnell* factor, "the class's reaction to the settlement," cannot be assessed at this time. *Rosenfeld*, 2021 WL 508339, at *3; *see id.* at *4 n.2 (declining to assess this factor at the preliminary approval stage).

Plaintiffs submit that this factor supports preliminary approval because "the case has been heavily litigated on the pleadings, the Parties have engaged in substantial discovery, class certification was fully briefed, and the Parties engaged in a long, hard-fought mediation process." Mem., ECF 197, at 20. The procedural history here demonstrates just that. *See generally* Docket. Accordingly, the Court finds that Plaintiffs were adequately informed about their claims and risks prior to reaching a proposed settlement.

d. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

"Under the *Grinnell* analysis, the court also considers Defendants' ability to withstand a greater judgment than that provided for in the proposed settlement." *Rosenfeld*, 2021 WL 508339, at *7. The Court notes, however, that a defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Pinnacle Grp.*, 874 F. Supp. 2d at 201 (quotation marks omitted). Indeed, courts consider this factor "much less important" than the others, especially where "the other *Grinnell* factors weigh heavily in favor of settlement approval." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) (quotation marks omitted). Here, the parties "view this factor as immaterial." Mem., ECF 197, at 20. At the preliminary fairness hearing, Defendants reiterated this position and noted that while "Virgin Galactic does not have any financial concerns" and therefore "could have withstood a greater judgment," given the existence of insurance coverage for the claims at issue, Defendants "didn't see it as an important issue one way or the other." Preliminary Fairness Hr'g Tr., ECF 204, at 37:5–14. Plaintiff did not dispute this assessment. *Id.* at 37:17–20.

Accordingly, although the proposed $8.5 million settlement may be less than Defendants' theoretical capacity to pay, the Court finds that this factor is not likely to

20

preclude settlement approval because the settlement provides reasonable value based on investors' actual claims.

e. Range of Reasonableness of Settlement Fund (*Grinnell* Factors 8 and 9)

The Court next considers "the range of reasonableness of the settlement fund in light of [both] the best possible recovery" and "the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see Payment Card*, 330 F.R.D. at 47–48 (noting that these "two *Grinnell* factors . . . are often combined for the purposes of analysis"). To calculate the best possible recovery, courts "assume complete victory on both liability and damages as to all class members on every claim asserted against each defendant in the [a]ction." *Payment Card*, 330 F.R.D. at 48 (quotation marks omitted). The risks of litigation include "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa U.S.A.*, 396 F.3d at 119 (quotation marks omitted).

Plaintiffs represent that their total maximum damages associated with the actionable claims "would be approximately $302.2 million." Mem., ECF 197, at 20–21; *see* Preliminary Fairness Hr'g Tr., ECF 204, at 38:24–39:9. The settlement therefore represents a recovery of 2.81% of that "best case scenario," a percentage in line with the median recovery in comparable securities class action settlements. *Id.* at 21; *see also* Horne Decl., Ex. 2, ECF 198-2, at 26 (fig. 23). If Plaintiffs were able to resurrect their Dismissed Claims — on appeal, after trial — their estimate for the total maximum recovery could be as high as $1.436 billion, making the $8.5 million settlement amount 0.59% of the maximum recovery — less than the 1.3% median recovery in class action cases of comparable value. Mem., ECF 197, at 21 n.8; *see also* Horne Decl., Ex. 2, ECF 198-2, at 26 (fig. 23). At the preliminary fairness hearing, Plaintiffs conceded that, as to the Dismissed Claims, "there was a very remote likelihood that [P]laintiffs would ever

21

see recovery on those claims for a variety of reasons." Preliminary Fairness Hr'g Tr., ECF 204, at 39:10–16; *see id.* at 39:16–40:12 (discussing intervening changes in law in the Second and Ninth Circuits that would likely preclude revival of the Dismissed Claims).

It is well established that although "a proposed settlement may only amount to a fraction of the potential recovery," that does not "mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2. This is because the "best possible recovery" may not be "a realistic" one. *Cagan v. Anchor Sav. Bank FSB*, No. 88-CV-3024 (CPS), 1990 WL 73423, at *13 (E.D.N.Y. May 22, 1990). Accordingly, it remains important to evaluate the settlement amount "in light of the strengths and weaknesses of plaintiffs' case." *Rodriguez v. CPI Aerostructures, Inc.*, No. 20-CV-0982 (ENV) (CLP), 2023 WL 2184496, at *16 (E.D.N.Y. Feb. 16, 2023) (quotation marks omitted).

Given the myriad risks of litigation described above, the Court finds that the parties' settlement amount falls within a reasonable range.

*   *   *   *   *

On balance, the Court concludes that both the procedural and substantive factors set forth in Rule 23 and *Grinnell* indicate that the parties' proposed settlement is fair and reasonable.

## II. Likelihood of Class Certification

### A. Legal Standards

"In order to conclude that giving notice to the putative class is justified, the court must also determine that it will likely be able to certify the class for purposes of judgment on the proposal" under Rule 23(a) and (b). *Rosenfeld*, 2021 WL 508339, at *8. It

is the burden of the party seeking class certification to "affirmatively demonstrate" compliance with these rules. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237 (2d Cir. 2012) (quotation marks omitted).

Rule 23(a) sets forth the familiar "four prerequisites for class certification": (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Rosenfeld*, 2021 WL 508339, at *8; *see* Fed. R. Civ. P. 23(a). "In addition to the explicit requirements of Rule 23(a), the class must satisfy the implied requirement of ascertainability." *Payment Card*, 330 F.R.D. at 50 (citing *In re Petrobras Sec.*, 862 F.3d 250, 266 (2d Cir. 2017)).

Rule 23(b) "lays out three alternative 'types' of class actions that may be maintained." *Rosenfeld*, 2021 WL 508339, at *9. As relevant here, Plaintiffs seek certification under Rule 23(b)(3), which "requires both that (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and that (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Payment Card*, 330 F.R.D. at 50 (quoting Fed. R. Civ. P. 23(b)(3)); *see* Mem., ECF 197, at 8–9, 13–14.

**B. Analysis**

  1. *Rule 23(a) Requirements*

     a. <u>Numerosity</u>

"The numerosity requirement mandates that the class be 'so numerous that joinder of all members is impracticable.'" *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). The "inquiry is not strictly mathematical but must take into account the context of the particular case." *Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *see also id.* (listing factors to consider). As a general rule, when a class consists of 40 or more

23

members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Plaintiffs assert that "there are thousands of potential Settlement Class Members as Virgin Galactic's common stock traded on the New York Stock Exchange during the three-year Settlement Class Period." Mem., ECF 197, at 10. Defendants concur. At the preliminary fairness hearing, defense counsel represented that the initial list of potential class members, which includes only registered stockholders, contains at least 800 names, and that the notice will be sent to investment firms that manage funds on behalf of others, who will then provide notice to their beneficial holders. Preliminary Fairness Hr'g Tr., ECF 204, at 41:15–25. The Second Circuit recognizes that numerosity may be found where the proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Based on the nature of the claims in this case, Plaintiffs have established a high likelihood that the numerosity requirement will be satisfied at the time of final settlement approval.

b. Commonality

"Commonality requires a showing that common issues of fact or law affect all class members." *In re Sadia*, 269 F.R.D. at 304 (citing Fed. R. Civ. P. 23(a)(2)). It "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "In other words, the relevant inquiry is whether a classwide proceeding is capable of 'generat[ing] common *answers* apt to drive the resolution of the litigation.'" *Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 6 (2d Cir. 2015) (alteration in original) (quoting *Dukes*, 564 U.S. at 350 (internal quotation marks omitted)).

Plaintiffs assert that securities fraud cases "easily satisfy this standard where plaintiffs allege that 'putative class members have been injured by similar material misrepresentations and omissions.'" Mem., ECF 197, at 10 (quoting *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012) (internal quotation marks omitted)). As Plaintiffs argue, this case involves common questions of law and fact regarding violations of federal securities laws, based on Defendants' "common course of conduct," which was "directed at the entire Settlement Class." Mem., ECF 197, at 13. All class members' claims depend on the same core questions — whether Defendants made materially false and misleading statements with the requisite state of mind. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (collecting cases finding similar claims satisfy the commonality requirement), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). At the preliminary fairness hearing, Plaintiffs explained that in discovery, they obtained information regarding how investors received notice of Defendants' allegedly false and misleading statements, which goes to whether they were "injured in the same way" or whether "damages would be calculated in a manner that was common." Preliminary Fairness Hr'g Tr., ECF 204, at 45:10–46:7 (noting that "a lot of the alleged misrepresentations were disseminated in a similar fashion," *e.g.*, via televised interviews that other investors may have seen).

Given the nature of the allegations in this case, the Court concludes that the pleadings establish that the class members suffered a common injury that can be addressed by a class-wide proceeding. As a result, commonality is present.

c. Typicality

"[T]he typicality requirement[] is satisfied by a showing that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Deutsche Bank AG Sec.*

*Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted)). It "is usually met" where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). In this case, where all class members purchased Virgin Galactic common stock at allegedly artificially inflated prices, "Plaintiffs and the proposed class would therefore present similar legal arguments in prosecuting their cases." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 (JS) (AKT), 2017 WL 9480894, at *10 (E.D.N.Y. Mar. 9, 2017), *report and recommendation adopted*, 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017). The Court finds that Plaintiffs have demonstrated the typicality requirement in this case.

### d. Adequacy of Representation

To satisfy the adequacy requirement, "[p]laintiffs must meet two standards — that 'class counsel . . . be qualified, experienced[,] and generally able to conduct the litigation,' and that 'the class members . . . not have interests that are antagonistic to one another.'" *Balestra v. ATBCOIN LLC*, No. 17-CV-10001 (VSB), 2022 WL 950953, at *4 (S.D.N.Y. Mar. 29, 2022) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (internal quotation marks omitted)). Based on the Court's determinations *supra* regarding the parallel requirements under Rule 23(e)(2), the Court finds that the proposed class is adequately represented by Plaintiffs and Lead Counsel, and that the adequacy requirement will likely be found at the time of final settlement approval and judgment.

### e. Ascertainability

"[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 257. In securities

26

litigation, a class that includes "persons who acquired specific securities during a specific time period" meets this standard. *Id.* at 257, 269. Here, the class is clearly defined by those exact criteria: It includes "all persons and entities who or which purchased or otherwise acquired the publicly traded shares of Virgin Galactic and/or Social Capital common stock between July 10, 2019, through August 4, 2022," and excludes a similarly definite class of individuals and entities. Mem., ECF 197, at 9 n.4; Proposed Prelim. Approval Order, ECF 198-1, at ECF pp. 47–48. Accordingly, the Court concludes that the class is reasonably ascertainable here.

### 2. *Rule 23(b)(3) Requirements*

"Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to proceed by class action, namely, predominance and superiority." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015); *see* Fed. R. Civ. P. 23(b)(3) (requiring "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). These inquiries are ordinarily guided by four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). However, in the settlement context, "'[s]ome inquiries essential to litigation [of] class certification,' including the issue of 'manageability — how the case will or can be tried, and whether there are questions of fact or law that are capable

of common proof,'" are no longer relevant. *Rosenfeld*, 2021 WL 508339, at *10 (quoting *In re Am. Int'l Grp.*, 689 F.3d at 239 (internal quotation marks omitted)). The other factors, however, "demand undiluted, even heightened, attention." *In re Am. Int'l Grp.*, 689 F.3d at 239 (quotation marks omitted).

  a. <u>Predominance</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Again, because the prospect of settlement obviates the manageability concerns ordinarily assessed as part of this inquiry, the focus is instead whether "'the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Payment Card*, 330 F.R.D. at 55 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotation marks omitted)); *see also Rosenfeld*, 2021 WL 508339, at *10.

The Supreme Court has observed that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud." *Amchem Prods., Inc.*, 521 U.S. at 625. Here, class members' claims, *i.e.*, that Defendants' allegedly misleading or false claims artificially inflated the price of Virgin Galactic stock purchased by class members, involve similar, if not identical, questions of law and fact. To the extent there are unique issues as to each class member, for instance, whether they purchased stock before the reverse merger or after (and therefore whether their claims are "actionable" or "dismissed"), the common questions are much "more substantial." *Payment Card*, 330 F.R.D. at 55 (quotation marks omitted). Accordingly, the Court finds that common questions of law and fact predominate over individual questions, and the proposed

class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.

   b.   Superiority

"Rule 23(b)(3)'s superiority requirement may be satisfied when 'the costs of bringing individual actions outweigh the expected recovery,' and when consolidation 'will achieve significant economies of time, effort and expense, and promote uniformity of decision.'" *Rosenfeld*, 2021 WL 508339, at *10 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (internal quotation marks omitted)). "The superiority requirement is designed to avoid repetitious litigation and possibility of inconsistent adjudications." *Payment Card*, 330 F.R.D. at 57 (quotation marks omitted). Additionally, "[c]ourts have found that the superiority requirement is satisfied" when "potential class members are both significant in number and geographically dispersed." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (quotation marks omitted). In the securities context, courts have held that a class action is the superior method of litigation because "'the alternatives are either no recourse for thousands of stockholders' or 'a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.'" *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015) (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968)); *see also In re NIO, Inc. Sec. Litig.*, No. 19-CV-1424 (NGG) (JRC), 2023 WL 5048615, at *17 (E.D.N.Y. Aug. 8, 2023) (finding class action superior in securities context).

Here, Plaintiffs submit that "there is no evidence that putative class members desire to bring separate individual actions," and it would be "desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case." Mem., ECF 197, at 14. Given the numerosity and geographic dispersion of potential class members, "there is great utility in resolving the claims of the many

29

[members of] the class through the class action mechanism." *Meredith Corp.*, 87 F. Supp. 3d at 661. Furthermore, in light of these factors, "[c]lass adjudication of this case is superior to individual adjudication because it will conserve judicial resources." *Zeltser v. Merrill Lynch & Co.*, No. 13-CV-1531 (FM), 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014). The Court therefore finds it likely that the superiority requirement will be met.

\* \* \* \* \*

For the above reasons, the Court finds that Plaintiffs have demonstrated a good likelihood of class certification. Having concluded that Plaintiffs have also demonstrated a likelihood of final settlement approval, the Court respectfully recommends granting preliminary settlement approval and finding that notice to "all class members who would be bound by the proposal" is justified. Fed. R. Civ. P. 23(e)(1)(B).

## III. Notice

Under Rule 23, notice may be issued by either "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Additionally:

> The notice must clearly and concisely state in plain, easily understood language:
>
> > (i) the nature of the action;
> >
> > (ii) the definition of the class certified;
> >
> > (iii) the class claims, issues, or defenses;
> >
> > (iv) that a class member may enter an appearance through an attorney if the member so desires;
> >
> > (v) that the court will exclude from the class any member who requests exclusion;
> >
> > (vi) the time and manner for requesting exclusion; and

30

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Ultimately, "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa U.S.A.*, 396 F.3d at 113. Courts in this Circuit have found that a settlement notice is substantively sufficient "when it describe[s] the terms of the settlement generally, inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing." *Payment Card*, 330 F.R.D. at 58 (alterations in original) (quotation marks omitted); *see id.* at 58–59 (collecting cases). Courts are concerned both procedurally and substantively with whether the notice plan will provide "'class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014) (quoting Fed. R. Civ. P. 23(c)(2)(B)); *see also id.* at 26–27 (stating that notice to class members must be "sent by an adequate physical delivery method" and "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" (quotation marks omitted)).

## A. The Notice Plan

Plaintiffs request that the Court appoint Strategic Claims Services ("SCS") to administer the notice process. Mem., ECF 197, at 21. At the preliminary fairness hearing, Plaintiffs represented that this vendor was chosen because it "provides services at a low cost and is very proactive about resolving any issues that may arise in the claims administration process," in Lead Counsel's experience having worked with SCS as a claims administrator previously. Preliminary Fairness Hr'g Tr., ECF 204, at 28:11–25; *see id.* at 31:13–24 (representing that SCS was the claims administrator appointed in *In re 3D*

31

*Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2023 WL 5018625 (E.D.N.Y. June 5, 2023)). In Plaintiffs' supplemental filing, they indicated that SCS's total notice and administration costs are estimated at $985,000, which will be paid out separately from the $1.55 million set aside for litigation expenses. *See* Pls. Letter, ECF 203, at 1; Revised Proposed Short Form Notice, ECF 203, at ECF p. 4; Revised Proposed Long Form Notice, ECF 203, at ECF pp. 7, 19. Finding that there are no grounds on which to deny Plaintiffs' choice of claims administrator, the Court recommends appointing SCS to administer the notice process.

The Notice Plan consists of the following components: (1) an email and postcard notice campaign; (2) posting the Long Notice, Proof of Claim, and Stipulation on a website maintained by SCS; (3) allowing class members to submit their claims via the settlement website; (4) upon request, mailing copies of the Long Notice and/or Proof of claim; and (5) an informational release via *PR Newswire* and *Investor's Business Daily*. Mem., ECF 197, at 24; *see also* Proposed Prelim. Approval Order, ECF 198-1, at ECF pp. 50–51. SCS will obtain the mailing and/or email addresses of settlement class members from Defendants, who will provide their security holder lists for purchasers of Virgin Galactic and Social Capital common stock during the class period within 10 days of the entry of the proposed order. *See* Proposed Prelim. Approval Order, ECF 198-1, at ECF pp. 49–50.

### B. Notice Content

Plaintiffs have submitted a long form notice for the Court's review. *See* Revised Proposed Long Form Notice, ECF 203, at ECF pp. 6–23; *see also* Proposed Long Form Notice, ECF 198-1, at ECF pp. 62–79. This notice sets forth an extensive description of the action and claims process and addresses the concerns the Court raised at the preliminary fairness hearing. Specifically, the Court requested that the long form notice

clearly communicate (1) that $55,000 of the Litigation Expenses is intended to cover incentive awards for the Named and Lead Plaintiffs; (2) that settlement class members may represent themselves *pro se* to register objections or opt-out; and (3) how ERISA plan participants, beneficiaries, and administrators may submit claims. Jan. 5, 2026 Min. Entry & Order; *see* Revised Proposed Long Form Notice, ECF 203, at ECF pp. 7–8, 11, 13, 19; *see also* Revised Proposed Short Form Notice, ECF 203, at ECF p. 4.

Having carefully reviewed the parties' filings, the Court finds that the proposed notices contain the information required by Rule 23, set forth "in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs have also submitted the following proposed schedule of events:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice or emailing a link to the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Approval Order ¶ 7(b)) | Not later than 25 business days after entry of Prelim. Approval Order |
| Deadline for publishing the Summary Notice (Prelim. Approval Order ¶ 7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Prelim. Approval Order ¶ 27) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Approval Order ¶¶ 13, 17) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶ 27) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Approval Order ¶ 10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Approval Order, or at the Court's earliest convenience thereafter |

Mem., ECF 197, at 26; Proposed Prelim. Approval Order, ECF 198-1, at ECF pp. 46–61.

The Court finds that Plaintiffs' proposed schedule and manner of notice as reflected in their submissions comply with Rule 23 and adequately afford due process. Notice should be ordered as proposed by the parties, including distribution of the revised long form notice and online notices. *See* Revised Proposed Long Form Notice, ECF 203, at ECF pp. 6–23; Revised Proposed Short Form Notice, ECF 203, at ECF p. 4.

## IV. Appointment of Class Counsel

"When a district court certifies a class, it must appoint class counsel." *Payment Card*, 330 F.R.D. at 58. Under Rule 23(g)(1)(A), the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). "The adequacy of counsel requirement is [ordinarily] satisfied where the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case." *Mendez v. MCSS Rest. Corp.*, No. 16-CV-2746 (NGG) (RLM), 2019 WL 2504613, at *13 (E.D.N.Y. June 17, 2019) (quotation marks omitted).

As discussed above, the filings in this case show that Lead Counsel has engaged in significant investigation of the underlying claims, that they are experienced in class action litigation and are knowledgeable in the applicable area of law, and that they have the resources necessary to represent the class. The Court therefore respectfully recommends appointment of Lead Counsel as class counsel for the purposes of settlement.

34

**CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for preliminary settlement approval be granted. Mot., ECF 196. The Court further recommends that (1) the settlement class be preliminarily certified for the purposes of settlement; (2) Plaintiffs be appointed as the class representatives; (3) The Rosen Law Firm P.A. and Glancy Prongay Wolke & Rotter LLP be appointed as class counsel; (4) the settlement agreement be preliminarily approved; (5) the notice plan be approved[7]; (6) SCS be appointed as settlement administrator and be directed to commence the notice plan; (7) a fairness hearing be scheduled[8] to consider final approval of the settlement; and (8) the Proposed Preliminary Approval Order be entered, *see* Proposed Prelim. Approval Order, ECF 198-1, at ECF pp. 46–61.

\*    \*    \*    \*    \*

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Nina R. Morrison, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal before both the district and

---

[7] The Court observes a typographical error in the Revised Proposed Long Form Notice. *See* Revised Proposed Long Form Notice, ECF 203, at ECF p. 11 (advising class members that they are "represented by Plaintiffs and Lead Counsel, unless you *chose* to represent yourself or enter an appearance through counsel . . ." (emphasis added)). The Court recommends that the Notice Plan be approved subject to the condition that Plaintiffs correct this typographical error ("unless you *choose* to represent yourself") before disseminating the Long Form Notice in the manner specified by the Notice Plan.

[8] Alternatively, the undersigned Magistrate Judge respectfully recommends referring the parties to this Court for scheduling of the final approval hearing.

appellate courts. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

      **SO ORDERED.**

Dated:  Brooklyn, New York
        February 24, 2026

                                *Taryn A. Merkl*
                                TARYN A. MERKL
                                UNITED STATES MAGISTRATE JUDGE